UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SCANDINAVIAN MARINE CLAIMS OFFICE, INC., <br><br> *Plaintiff*, <br><br> - *against* - <br><br> SIRI OSTENSEN, <br><br> *Defendant*, <br><br> - *against* - <br><br> SCANDINAVIAN MARINE CLAIMS OFFICE, INC., SCANDINAVIAN UNDERWRITERS AGENCY, SCUA AMERICAS, INC., S.M.C.O., A.S., AND NORWEGIAN HULL CLUB, <br><br> *Counterclaim and Third-Party Defendants*. | Civil Action No. 3:02CV678 (RNC) |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR
PROTECTIVE ORDER**

Jeffrey M. Eilender (Bar. No. CT 25177)
John M. Lundin (Bar No. phv0185)
**SCHLAM STONE & DOLAN**, LLP
26 Broadway, Suite 1900
New York, NY 10004
(212) 344-5400 (Telephone)
(212) 344-7677 (Facsimile)
*Attorneys for Siri Ostensen*

Sharon E. Jaffe (Bar. No. CT. 04623)
**LEVIN & GLASSER, PC**
P.O. Box 1098
Weston, CT 06883
(203) 221-3008 (Telephone)
(203)221-3010 (Facsimile)
*Attorneys for Siri Ostensen*

TABLE OF CONTENTS

Table of Authorities ..................................................................................................................... ii

Preliminary Statement.................................................................................................................1

Factual and Procedural Background ..........................................................................................2

Argument ..................................................................................................................................10

I.      THE FRIEDMAN TEST ILLUSTRATES WHY MOVANTS SHOULD BE
        DEPOSED........................................................................................................................10

II.     MOVANTS HAVE PRESENTED NO BASIS FOR EXCUSING THEM FROM
        PRODUCING DOCUMENTS IN RESPONSE TO THE SUBPOENAS........................15

III.    GIVEN THE POSSIBILITY THAT MOVANTS MAY HAVE TO BE
        DISQUALIFIED, ANY DELAY IN OBTAINING DISCOVERY FROM THEM
        WILL MERELY PREJUDICE THEIR CLIENTS AND MRS. OSTENSEN .................17

Conclusion ................................................................................................................................18

TABLE OF AUTHORITIES

CASES

*Alcon Labs, Inc. v. Pharmacia Corp.*,
    225 F. Supp.2d 340 (S.D.N.Y. 2002)..............................................................14, 15

*Bogan v. Northwestern Mutual Life Insurance Co.*,
    152 F.R.D. 9 (S.D.N.Y. 1993) .......................................................................................13

*Gerald B. Lefcourt, P.C. v. United States*,
    125 F.3d 79 (2d Cir. 1997).............................................................................................14

*In re: Subpoena Issued to Dennis Friedman*,
    350 F.3d 65 (2003).......................................................................................10, 12, 15

*Loftis v. Amics Mutual Insurance Co.*,
    175 F.R.D. 5 (D. Conn. 1997).......................................................................................14

*Resqnet.com, Inc .v. Lansa, Inc.*,
    No. 01 Civ. 3578 (RWS), 2004 WL 1627170 (S.D.N.Y. July 21, 2004) ..........................14

*Stauber v. The City of New York*,
    No. 03 Civ. 9162 (RWS), 03 Civ. 0163 (RWS) and 03 Civ. 0164 (RWS), 2004
    WL 1013342 (S.D.N.Y May 7, 2004) .............................................................................15

*Thomson-CSF, S.A. v. American Arbitration Association*,
    64 F.3d 773 (2d Cir. 1995)............................................................................................11

*United States Fidelity & Guaranty Co. v. Brasperto Oil Services Co.*,
    No. 97 Civ. 6124 ((JGK) (THK) and No. 98 Civ. 3099 (JGK) (THK), 2000 WL
    1253262 (S.D.N.Y. Sept. 1, 2000) ................................................................................15


RULES

Federal Rule of Civil Procedure 26 .......................................................................................15

Local Civil Rule 83.13 .........................................................................................................17

Defendant Siri Ostensen in her individual capacity and as the executrix of the estate of her husband, Tom Ostensen ("Mrs. Ostensen"), by her undersigned counsel, submits this memorandum of law, along with the Declaration of John M. Lundin, and the exhibits attached thereto, in opposition to the motion by third-parties Donald J. Kennedy ("Kennedy") and Carter Ledyard & Milburn, LLP ("Carter Ledyard") (collectively, "Movants") for a protective order with respect to the subpoenas served upon them in this action.

## Preliminary Statement

Movants seek to avoid their obligation to provide discovery pursuant to subpoenas issued by Mrs. Ostensen in this action. Movants claim that they should be excused from providing that discovery because

> (a) the subpoenas seek testimony and documents from the law firm and trial counsel representing the plaintiff; (b) Ostensen has not established a specific need to seek testimony and documents from opposing counsel; (c) Ostensen has not established that either Kennedy or Carter Ledyard played any role in connection with the transactions underlying the pending litigation; (d) privilege and attorney work-product issues are certain to arise; and (e) Ostensen has not yet taken discovery from the plaintiff or third-party defendants, which might be sufficient.

(Movants' Brief at 4.) However, Movants have got it wrong on every ground.

**First**, Movants are not exempt from discovery simply because they are trial counsel. The law is clear that in many situations—including this one—it is entirely appropriate to take discovery from counsel.

**Second**, as set forth below, Movants are likely to have non-privileged evidence that is highly relevant to the issue of the liability of the Third-Party Defendants for SMCO's obligations to Mrs. Ostensen, including whether they should be made parties to her arbitration with SMCO. In particular, based on the little evidence so far produced in this action, Mrs. Ostensen believes that Movants possess evidence regarding SMCO's domination by its corporate

parents, including their restriction of its ability to make a profit, their decision to sell SMCO's

assets, such as its subsidiary SMQI, Inc., and the transfer of most of SMCO's business to another

subsidiary of SMCO, A.S., SCUA Americas, Inc., leaving SMCO an asset-less shell, their

decision to pay certain liabilities of SMCO but to direct it to pay none of its obligations to Mr.

Ostensen under one of its pension plans. Finally, Mrs. Ostensen needs the discovery she has

sought in order to determine if she should move to disqualify Movants because of the necessity

of calling them as witnesses at trial.

**Third**, Mrs. Ostensen does not seek the production of privileged information or

attorney work-product. Indeed, to the extent Movants claim that all communications between

SMCO and the Third-Party Defendants are privileged, it simply proves Mrs. Ostensen's point

that the Third-Party Defendants so dominated SMCO that it was treated as simply another office

of its corporate parents rather than a separate business, with its own financial and legal concerns.

**Fourth**, Mrs. Ostensen has sought discovery from SMCO and the Third-Party

Defendants and has been rebuffed. Despite having made discovery demands on SMCO and all of

the other Third-Party Defendants, Mrs. Ostensen has received only a response from SMCO, and

that response was insufficient in many respects. Further, it appears that Movants may be the only

entity to possess some of the evidence that Mrs. Ostensen seeks.

### Factual and Procedural Background

SMCO claims that Mrs. Ostensen owes it money due under promissory notes (the

"Notes") that Mrs. Ostensen and her late husband, Tom Ostensen, signed (Mr. Ostensen's estate

has been substituted as a party in this action). However, SMCO and Third-Party Defendants

Scandinavian Underwriters Agency, SCUA Americas, Inc., SMCO A.S., and Norwegian Hull

Club (collectively, and without SMCO, the "Related Other Companies") owe Mrs. Ostensen a

much greater debt.

**SMCO and the Related Other Companies**

SMCO was a wholly-owned subsidiary of Third-Party Defendant SMCO A.S. (Plaintiff Scandinavian Marine Claims Office, Inc.'s Response to Defendant Siri Ostensen's First Interrogatories ("SMCO's Interrog. Resp."), Response No. 1, Exhibit 1 to the Declaration of John M. Lundin ("Lundin Decl.").)  In April 1997, SMCO and SMCO A.S. signed a "Management Agreement" pursuant to which SMCO, A.S. provided SMCO "managerial support, consulting services and maintain[ed] board-to-board relationship to SMCO." (Management Agreement dated April 15, 1997, Lundin Decl. Ex. 2.)  SMCO paid SMCO A.S. a fee for those services.  (*Id.*)  Further, from 1997 until 2000, SMCO A.S.'s board of directors acted as the board of directors of SMCO as well.  (SMCO AS Board Meeting – Bergen, 2 April 1997, Lundin Decl. Ex. 3 ("The SMCO AS Board was elected under an extraordinary general meeting Friday, 14 February 1997 and is also to be elected in those companies who have hereto had their own boards.").)

In 2001, SMCO, A.S. decided to:  (1) close SMCO's headquarters, firing SMCO management; (2) form a new company, SCUA Americas, Inc., to take over the business of SMCO's Houston and Miami offices; and (3) sell SMCO's subsidiary, SMQI, Inc.  (Minutes of the SMCO AS Board Meeting, Lundin Decl. Ex. 4.)  Further, on June 21, 2001, the SMCO A.S. Board recommended "to the ultimate shareholders that they provide the capital necessary to liquidate" SMCO "based on **full payment** of **all** obligations **except** balances with **Mr. Ostensen**."  (SMCO A.S. Board Meeting Minutes dated June 21, 2001, Lundin Decl. Ex. 5 (emphasis added).)

The majority owner of SMCO, A.S. was Third-Party Defendant NHC, (Lundin

Decl. Ex. 1, Response No. 1); prior to January 2001, SMCO, A.S.'s majority owners were NHC's corporate predecessors, Bergen Hull Club and Unitas, (*id.*).

### The Non-Qualified Plan

Mr. and Mrs. Ostensen signed the Notes to the benefit of SMCO for the express purpose of funding a non-qualified pension plan for senior executives of SMCO, including Mr. Ostensen (the "Non-Qualified Plan"). The Related Other Companies, which were affiliated with, and dominated, SMCO, forced SMCO to renege on its promise regarding the Non-Qualified Plan. The Related Other Companies drained SMCO of assets, forcing it to provide them with services at rates that were too low to allow SMCO to earn a profit, transferring SMCO's business and assets to other entities and paying SMCO's debts to certain creditors, but intentionally leaving SMCO unable to fund the Non-Qualified Plan. The Related Other Companies' misconduct deprived Mrs. Ostensen of the significant benefits—total payments of well over $2 million between 2009 and 2022—to which she contractually is entitled under the plan, benefits that were the consideration for the Ostensen's execution of the Notes.

### Discovery Sought by Mrs. Ostensen

By a Report and Recommendation (the "Report") dated and filed on September 5, 2003, the Court interpreted the arbitration provision in Paragraph 6.4 of the Non-Qualified Plan broadly, requiring Mrs. Ostensen to arbitrate almost all of her counterclaims against SMCO. Further, because the Related Other Companies are liable for, among other things, SMCO's obligations under the Non-Qualified Plan under alter-ego or agency principles, they also should be parties to the arbitration.

Recognizing the need for discovery both on whether the Related Other Companies are subject to the arbitration provision of the Non-Qualified Plan and on Mrs. Ostensen's

counterclaims, which are inextricably related to SMCO's claims against her, at the March 3,

2005 settlement conference the Court set a schedule for Mrs. Ostensen to have discovery related

to her claims and defenses, including, in particular, to show that the Related Other Companies

knew about, and are liable for SMCO's obligations under, the Non-Qualified Plan.  Pursuant to

that schedule, on March 31, 2005, Mrs. Ostensen served discovery demands on SMCO and the

Related Other Companies, as well as subpoenas to third parties.  (*See* Defendant's First Request

for Documents to Plaintiff and Third-Party Defendants (the "Document Demand"), Lundin Decl.

Ex. 6; Defendant's First Interrogatories to Scandinavian Marine Claims Office, Inc. (the "SMCO

Interrog."), Lundin Decl. Ex. 7; Defendant's First Interrogatories to Scandinavian Underwriters

Agency (the "SCUA Interrog."), Lundin Decl. Ex. 8; Defendant's First Interrogatories to SCUA

Americas, Inc. (the "SCUAA Interrog."), Lundin Decl. Ex. 9; Defendant's First Interrogatories to

SMCO, A.S. (the "SMCO A.S. Interrog."), Lundin Decl. Ex. 10; Defendant's First

Interrogatories to Norwegian Hull Club (the "NHC Interrog."), Lundin Decl. Ex. 11; Subpoena in

a Civil Case to Donald J. Kennedy, Esq. ("Kennedy Subpoena"), Lundin Decl. Ex. 12; Subpoena

in a Civil Case to Carter Ledyard & Milburn, LLP ("Carter Ledyard Subpoena"), Lundin Decl.

Ex. 13.)  It is the Kennedy Subpoena and the Carter Ledyard Subpoena that are the subject of the

present motion.

**The Role of Kennedy and Carter Ledyard**

As discussed above, a key area of discovery is whether the Related Other

Companies should be parties to the upcoming arbitration between SMCO and Mrs. Ostensen

regarding her claims relating to the Non-Qualified Plan.  Upon information and belief, Mr.

Kennedy and Carter Ledyard possess evidence that is highly relevant to the decision of that issue.

For example, Mr. Kennedy omits to mention in his declaration that until April

5

1991, he was SMCO's corporate secretary. (SMCO's Interrog. Resp., Response No. 4, Lundin

Decl. Ex. 1.) After that date, he and other Carter Ledyard attorneys continued to perform work

for SMCO and, it is our understanding, the Related Other Companies. Part of the work Carter

Ledyard performed for SMCO and the Related Other Companies was evaluating the obligations

of SMCO and the Related Other Companies to the Ostensens under the Non-Qualified Plan.

(SMCO A.S. Board Meeting Minutes dated November 4, 2001 at 3, Lundin Decl. Ex. 14; SMCO

A.S. Board Meeting Minutes dated September 6, 2002, Lundin Decl. Ex. 15.)

**Mrs. Ostensen's Attempt to Obtain Discovery Regarding Movants**

Mrs. Ostensen has been unable to determine the full scope of Movants'

involvement in the refusal of SMCO's corporate parents, NHC and SMCO, A.S., to allow SMCO

to operate as a separate business entity because she has thus far been denied almost all of the

discovery she has sought on that topic. Mrs. Ostensen has sought the following discovery

regarding the relationship between Mr. Kennedy and other Carter Ledyard attorneys provided to

SMCO and the Related Other Companies from SMCO and the Related Other Companies:

- <u>Document Demand, Request No. 23</u>: Documents sufficient to identify all legal counsel who have provided legal advice to NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. regarding any transaction, litigation or other proceeding involving SMCO at any time from January 1, 1990 to the present, including, but not limited to, the identification of the entities who sought, received and paid for such advice. (Lundin Decl. Ex. 6.)

- <u>Document Demand, Request No. 24</u>: Documents sufficient to all legal expenses for SMCO from January 1, 1990 to the present including, but not limited to, the identity of the firm providing the legal work, the general subject matter of the work, the date and amount of each bill for legal work and the person or entity that paid each such bill. (*Id.*)

- <u>SMCO Interrog., Interrogatory No. 6</u>: Identify all legal counsel who have provided legal advice to SMCO at any time from January 1, 1990 to the present. (Lundin Decl. Ex. 7.)

- <u>NHC Interrog., Interrogatory No. 7</u>: Identify all legal counsel who have provided legal advice to NHC at any time from January 1, 1990 to the present. (Lundin Decl. Ex. 11.)

- <u>SMCO, A.S. Interrog., Interrogatory No. 7</u>: Identify all legal counsel who have provided legal advice to S.M.C.O., A.S. at any time from January 1, 1990 to the present. (Lundin Decl. Ex. 10.)

- <u>SCUA Interrog., Interrogatory No. 7</u>: Identify all legal counsel who have provided legal advice to SCUA at any time from January 1, 1990 to the present. (Lundin Decl. Ex. 8.)

- <u>SCUAA Interrog., Interrogatory No. 7</u>: Identify all legal counsel who have provided legal advice to SCUAA at any time from January 1, 1990 to the present. (Lundin Decl. Ex. 9.)

However, SMCO and the Related Other Companies have provided almost none of the discovery Mrs. Ostensen has sought from them relating to Mr. Kennedy and Carter Ledyard. Mrs. Ostensen has not yet received any discovery responses from Norwegian Hull Club, SMCO, A.S., Scandinavian Underwriters Agency or SCUA Americas, Inc. Further, SMCO refused to produce any documents responsive to Mrs. Ostensen's document requests Nos. 23 and 24—which are mirrored by Mrs. Ostensen's Request Nos. 5 and 6 to Carter Ledyard. (Plaintiff Scandinavian Marine Claims Office, Inc.'s Response to Defendant Siri Ostensen's First Request for Documents ("SMCO's Document Response"), Response Nos. 23 and 24, Lundin Decl. Ex. 16; Carter Ledyard Subpoena, Schedule B, Request Nos. 5 and 6, Lundin Decl. Ex. 13.) With respect to Mrs. Ostensen's Request No. 23, SMCO referred to its response to Mrs. Ostensen's interrogatories to SMCO, (Lundin Decl. Ex. 16), but those responses did not provide the information sought by Mrs. Ostensen's Request No. 23, (SMCO's Interrog. Resp., Response No. 6, Lundin Decl. Ex. 1.) Rather, SMCO's interrogatory response showed only that Carter Ledyard provided legal services to SMCO without disclosing the timing or scope of that support or, most important, who engaged, paid and directed Carter Ledyard's provision of legal services to SMCO.

**Mrs. Ostensen's Attempt to Obtain Other Relevant Discovery**

Further, Mrs. Ostensen was unable to obtain from SMCO and the Related Other Companies the discovery she has sought from Mr. Kennedy and Carter Ledyard. Mrs. Ostensen's document demands to SMCO and the Related Other Companies sought, in many cases, the same categories of documents that Mrs. Ostensen sought from Mr. Kennedy and Carter Ledyard. However, SMCO and the Related Other Companies have not provided most of the requested discovery.

For example, Mrs. Ostensen's subpoena to Carter Ledyard sought 13 categories of documents, all of which mirrored requests that that she had served on SMCO and the Related Other Companies, and all of which Mrs. Ostensen had a good faith belief would be in Carter Ledyard's possession, custody or control by virtue of its representation of SMCO and the Related Other Companies. (*Compare*, SMCO's Document Response, Lundin Decl. Ex. 16 *with* Carter Ledyard Subpoena, Lundin Decl. Ex. 13.) As discussed above with respect to her Request Nos. 5 and 6 to Carter Ledyard, and as discussed below with respect to most of her remaining requests, almost none of the documents she sought from SMCO and the Related Other Companies were produced. **First**, as discussed above, none of the Third-Party Defendants other than SMCO has yet provided any response to Mrs. Ostensen's discovery demands.

**Second**, as shown below, SMCO produced almost none of the documents Mrs. Ostensen sought from it on topics also covered by her request to SMCO.

- Carter Ledyard Subpoena Request No. 1 and Document Demand, Request No. 8 sought "documents relating to or concerning the selection of the members of the board of directors or other similar governing body, officers or managers of SMCO," but in response to Mrs. Ostensen's Request No. 8, SMCO produced only SMCO's board meeting minutes. (SMCO's Document Response, Response No. 8, Lundin Decl. Ex. 16.) Those minutes contain **nothing** about the selection of board members.

- Carter Ledyard Subpoena Request No. 3 and Document Demand, Request No.11 sought "documents relating to or concerning the payment or guarantee by NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. of the debt of any other entity or individual," but in response to Mrs. Ostensen's Request No. 11, SMCO produced some loan documents, (*see* SMCO's Document Response, Response No. 11, Lundin Decl. Ex. 16), but nothing (other than board meeting minutes) regarding the decision by SMCO, A.S. and NHC to pay most of SMCO's debts while leaving the Non-Qualified Plan and other debts to Mr. Ostensen unpaid.

- Carter Ledyard Subpoena Request No. 4 and Document Demand, Request No. 12 sought "documents relating to or concerning the communications from the board of directors or other similar governing body, officers or managers of NHC, SCUA, SCUAA, SCUA Holdings and SMCO A.S. to . . . the board of directors or other similar governing body, officers or managers of SMCO regarding the business of SMCO, but in response to Mrs. Ostensen's Request No. 12, SMCO produced its board minutes, (*see* SMCO's Document Response, Response No. 12, Lundin Decl. Ex. 16), but such minutes unquestionably do not constitute all of the documents "relating to or concerning the communications" between SMCO's board and Carter Ledyard or the Related Other Companies.

- Carter Ledyard Subpoena Request No. 7 and Document Demand, Request No. 26 sought "documents relating to or concerning any potential or actual plans or discussions concerning the ceasing the expansion, acquisition, downsizing, termination or relocation of the operations of SMCO," but as with its response to Mrs. Ostensen's Request No. 12, in response to Mrs. Ostensen's Request No. 26, SMCO produced only its board minutes, (*see* SMCO's Document Response, Response No. 26, Lundin Decl. Ex. 16). However, such minutes unquestionably do not constitute all of the documents "relating to or c concerning any potential or actual plans or discussions concerning the ceasing the expansion, acquisition, downsizing, termination or relocation of the operations of SMCO." For example, no other documents were produced regarding the sale of SMCO's assets, such as its subsidiary SMQI, Inc., or the transfer of most of its business to another subsidiary of SMCO, A.S., SCUA Americas, Inc. We have reason to believe that as counsel for SMCO and the Related Other Companies, Carter Ledyard would possess such documents and would be able to provide non-privileged deposition testimony on this topic.

- Carter Ledyard Subpoena Request No. 12 and Document Demand, Request No. 31 sought "documents relating to or concerning the assumption by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. of SMCO's obligations under the Non-Qualified Plan," but SMCO refused to produce any such documents, notwithstanding that this is perhaps the central dispute in this action. (SMCO's Document Response, Response No. 31, Lundin Decl. Ex. 16.)

- Carter Ledyard Subpoena Request No. 13 and Document Demand, Request No. 32 sought "documents relating to or concerning the assumption by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. of SMCO's obligations other than the Non-Qualified Plan," but

as with its response to Mrs. Ostensen's Request No. 12 and 26, in response to Mrs. Ostensen's Request No. 32, SMCO produced only its board minutes, (*see* SMCO's Document Response, Response No. 32, Lundin Decl. Ex. 16). However, such minutes unquestionably do not constitute all of the documents "relating to or concerning the assumption by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. of SMCO's obligations other than the Non-Qualified Plan." We have reason to believe that as counsel for SMCO and the Related Other Companies, Carter Ledyard would possess such documents and would be able to provide non-privileged deposition testimony on this topic.

## Argument

## I.    THE *FRIEDMAN* TEST ILLUSTRATES WHY MOVANTS SHOULD BE DEPOSED

The parties agree that the test for whether Movants should be exempted being deposed is set forth in *In re: Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2003). However, the application of the *Friedman* factors to the facts of this action show that it is entirely appropriate that Movants be deposed.

**First**, *Friedman* makes clear that there is no rule exempting counsel from providing discovery, including depositions. Indeed, *Friedman* explicitly **rejects** the proposition advanced by Movants that their depositions should not be allowed to go forward because "[t]he Second Circuit disfavors depositions of opposing counsel." (Movants' Brief at 3.) The principle message of *Friedman* is that "the fact that the proposed deponent is a lawyer does **not** automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices." *Friedman*, 350 F.3d at 72 (noting that any "disfavor with which the practice of seeking discovery from adversary counsel is regarded is not a talisman for the resolution of . . . controversies" regarding such depositions) (emphasis added). Notwithstanding their citation to *Friedman*, Movants would have the Court ignore that message.

**Second**, Movants ignore the relevance of the evidence Mrs. Ostensen seeks.

10

Movants claim that they were not involved in the issuance of the Notes or the "establishment" of the Non-Qualified Plan that is the subject of one of Mrs. Ostensen's claims. (Movants' Brief at 4-5.) It is unnecessary for the Court to ponder either the truth or the completeness of those representations, because they are mostly irrelevant.

While Mrs. Ostensen is seeking discovery regarding the Notes and the Non-Qualified Plan, that is not her principal goal in seeking discovery from Movants. Rather—and as stated to the Court at the March 3, 2005 settlement conference—Mrs. Ostensen's primary goal is to obtain discovery, and ultimately a ruling from the Court, regarding whether the Related Other Companies should be subject to the arbitration clause in the Non-Qualified Plan. *See Thomson-CSF, S.A. v. American Arbitration Association*, 64 F.3d 773, 776 (2d Cir. 1995) (Under the Federal Arbitration Act, non-signatory parties may be bound to an arbitration agreement if so dictated by "ordinary principles of contract and agency," including, inter alia, the piercing of the corporate veil.). The factors listed in *Thomson* include "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Thomson-CSF*, 64 F.3d at 776. It is primarily in connection with this facet of discovery that Mrs. Ostensen has sought Movants' depositions. What she primarily seeks from Movants is evidence relating to the true nature of the relationship between SMCO and the Related Other Companies, including the Related Other Companies' involvement in the Non-Qualified Plan, and which Mrs. Ostensen believes Movants possess through their involvement in those matters.

For that reason, Mrs. Ostensen seeks to depose Movants regarding "[t]he roles of" the Related Other Companies "in the ownership, finances and management of SMCO" and "financial transactions between or among" SMCO and the Related Other Companies (Carter Ledyard Subpoena, Schedule A, Topic Nos. 1 and 2, Lundin Decl. Ex. 31), the legal

11

representation of SMCO and the Other Relates Parties, (*id.* Topics Nos. 3 and 4), "plans or discussions concerning ceasing the expansion, acquisition, downsizing, termination or relocation of the operations of SMCO" and "[t]he assumption by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. of SMCO's obligations," (*id.* Topics Nos. 5 and 10), the Non-Qualified Plan, including its funding—by the Notes or otherwise, (*id.* Topics Nos. 6-8), and statements by the Related Other Companies that SMCO is or was their agent, (*id.* Topic No. 9).

**Third**, the *Friedman* factors support the taking of Movants' depositions.  Under *Friedman*, the Court should consider:

> the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted.

*Friedman*, 350 F.3d at 72.

**The Need to Depose Mr. Kennedy and Carter Ledyard**

The evidence that Mrs. Ostensen has been able to obtain shows that Movants provided legal advice to SMCO and, upon information and belief, the Related Other Companies on a variety of topics.  Mr. Kennedy and Carter Ledyard have knowledge regarding which entity engaged, paid and directed counsel that provided advice to SMCO.  Mrs. Ostensen believes that this evidence will show that SMCO, A.S. and NHC directed SMCO counsel, leading to decisions that benefited SMCO, A.S. and NHC, not SMCO, and rendered SMCO without assets sufficient to pay its obligations to the Ostensen's under the Non-Qualified Plan.  Mrs. Ostensen seeks evidence on all transaction showing the Related Other Companies' domination and control of SMCO.  However, it is clear that with respect to the Non-Qualified Plan, Carter Ledyard has evidence regarding the control exercised by the Related Other Companies over SMCO because

12

SMCO, A.S.'s board meeting minutes show their involvement. (Lundin Decl. Exs. 14-15.)

**The Role of Mr. Kennedy and Carter Ledyard in Connection with the Matter on Which Discovery is Sought and in Connection with the Pending Litigation**

Mr. Kennedy and Carter Ledyard are counsel for SMCO and the Related Other Companies in this action. However, Mrs. Ostensen does not seek discovery of their work product or privileged communications. Rather, as discussed above, she seeks discovery of non-privileged facts—some of which likely are uniquely within Movants' control—regarding events in the years leading up to SMCO's demise and the bringing of this action.

Where the attorney whose deposition is being sought took "part in significant relevant pre-events and the attorney-client privilege does not apply," any presumptions against the deposition of counsel do "not bar such depositions. *Bogan v. Northwestern Mutual Life Ins. Co.*, 152 F.R.D. 9, 14 (S.D.N.Y. 1993). Mr. Kennedy and Carter Ledyard are the best (perhaps the sole) source of much of the discovery that is being sought from them. For example, they likely are the only reliable source of discovery regarding the issues of which entity engaged, paid and directed counsel that provided advice to SMCO, when and regarding what that advice was offered and who made the decisions regarding SMCO's business in the context of the actions and transactions where they represented SMCO. Further, it appears that Mr. Kennedy (SMCO's former corporate secretary) and his firm, Carter Ledyard, provided advice to SMCO and the Related Other Companies on a variety of matters, including transactions in which the Related Other Companies transferred SMCO's business to other entities, leaving it an asset-less shell. All of that evidence is highly relevant to the question of the Related Other Companies' liability for SMCO's obligations to the Ostensens.

**The Risk of Encountering Privilege and Work-Product Issues**

Because Mrs. Ostensen does not seek work-product relating to this action or privileged communications between counsel and clients, there is little danger of the disclosure of privileged information or work-product. In this regard it is important to note that no privilege attaches to billing records, a general description of work provided or the identity of clients. *See, e.g.*, *Loftis v. Amics Mutual Ins. Co.*, 175 F.R.D. 5, 10 (D. Conn. 1997); *Gerald B. Lefcourt, P.C. v. United States*, 125 F.3d 79, 86 (2d Cir. 1997). Further, SMCO and the Related Other Companies can hardly claim that communications in which Mr. Ostensen took part are privileged as to his estate, which is a party to this action.

**The Extent of Discovery Already Conducted**

As discussed above, Mrs. Ostensen has sought much of the discovery she seeks from Movants from SMCO and the Related Other Companies and has been unsuccessful in obtaining most of what she has sought. These facts make the cases cited by Movants in their brief inapposite. Further, while Movants quote *Friedman* for the proposition that interrogatories should be considered as an alternative to the deposition of counsel, (Movants' Brief at 3), because Movants are not parties to this action, they are not subject to interrogatories. *See, e.g.*, *Alcon Labs, Inc. v. Pharmacia Corp.*, 225 F. Supp.2d 340, 344 (S.D.N.Y. 2002) (refusing to quash deposition subpoena to trial counsel). Further, as noted above, SMCO and the Related Other Companies have not provided most of the evidence sought from Movants in the responses to the interrogatories posed to them.

\* \* \*

This is not a case, such as *Resqnet.com, Inc .v. Lansa, Inc.*, No. 01 Civ. 3578 (RWS), 2004 WL 1627170 (S.D.N.Y. July 21, 2004) and *Stauber v. The City of New York*, No.

14

03 Civ. 9162 (RWS), 03 Civ. 0163 (RWS) and 03 Civ. 0164 (RWS), 2004 WL 1013342

(S.D.N.Y May 7, 2004), cited by Movants, where the discovery sought from counsel was

available from other sources. Here, Mrs. Ostensen has been rebuffed in her efforts to obtain

discovery from other sources; at any rate, it is not clear that there are other sources for much of

the discovery she seeks. Thus, like *United States Fidelity & Guaranty Co. v. Brasperto Oil Svcs.

Co.*, No. 97 Civ. 6124 ((JGK) (THK) and No. 98 Civ. 3099 (JGK) (THK), 2000 WL 1253262

(S.D.N.Y. Sept. 1, 2000), the deposition of Movants is necessary because they "are likely to

possess information which is relevant, indeed crucial," to Mrs. Ostensen's claims. *United States

Fidelity & Guaranty Co.*, 2000 WL 1253262, at *3; *see also Alcon Labs*, 225 F. Supp.2d at 343

(refusing to quash deposition subpoena to trial counsel). Thus, there is no basis for reliving

Movants from their obligation to provide discovery in this action.

## II.   MOVANTS HAVE PRESENTED NO BASIS FOR EXCUSING THEM FROM PRODUCING DOCUMENTS IN RESPONSE TO THE SUBPOENAS

Movants do not cite any law in support of their proposition that they should be

excused from producing documents in response to Mrs. Ostensen's subpoenas to them. Indeed,

their memorandum of law is written in such a way that it invites the reader to assume that

*Friedman* governs the production of documents from counsel as well as depositions of counsel.

That, however, is not the law. Rather, the regular discovery requirements of Federal Rule of

Civil Procedure 26 (including, of course, its protections for work product and privileged

information) apply.

There is no reason to excuse Movants from producing the documents requested by

Mrs. Ostensen. The evidence Mrs. Ostensen seek is highly relevant to one of the key issues in

this action—whether the Related Other Companies are liable to Mrs. Ostensen not just for their

own misconduct, but also for the conduct and obligations of SMCO, including its obligations under the Non-Qualified Plan.

Mrs. Ostensen seeks evidence of the Related Other Companies' control of SMCO through "the selection of the members of" SMCO's "board of directors." (Carter Ledyard Subpoena, Schedule B, Request No. 1, Lundin Decl. Ex. 13; *see also id.* Request No. 4 (seeking communications between SMCO's board and the boards of the Related Other Companies) and 11 (seeking documents concerning claims by the Related Other Companies that SMCO was their agent).) Mrs. Ostensen also seeks evidence of the Related Other Companies' control of SMCO's finances, (*id.* Request Nos. 2 and 3 (seeking documents relating to "payments or guarantees" of debts) and 13 (seeking documents concerning the Related Other Companies' assumption of SMCO's debts)), SMCO's dissolution, (*id.* Request No. 7), and the Non-Qualified Plan, including the decision by SMCO and the Related Other Companies to pay other debts, but not its debts to Mr. Ostensen, including its obligation under the Non-Qualified Plan, (*id.* Request Nos. 8-10, 12). Finally, Mrs. Ostensen seeks evidence relating to legal representation of SMCO and the Other Relates Parties. (*Id.* Request Nos. 5 and 6.) The purpose of this last category of requests was to determine which entity engaged, paid and directed counsel that provided advice to SMCO. Mrs. Ostensen believes that this evidence will show that SMCO, A.S. and NHC directed SMCO counsel, leading to decisions that benefited them, not SMCO.

Further, as discussed above, Mrs. Ostensen has sought similar information in its discovery demands to SMCO and the Related Other Companies but has received almost none of the discovery she sought. None of the Related Other Companies have yet responded to Mrs. Ostensen's discovery demands. SMCO has responded, but has provided only a fraction of the discovery sought by Mrs. Ostensen. (*See* SMCO's Document Response, Lundin Decl. Ex. 16.)

16

In short, the documents Mrs. Ostensen seeks are highly relevant to the parties' claims and defenses, are not privileged or attorney work product, and have not been made available to Mrs. Ostensen from other sources. In light of those facts, Movants have no basis for resisting their production.

### III. GIVEN THE POSSIBILITY THAT MOVANTS MAY HAVE TO BE DISQUALIFIED, ANY DELAY IN OBTAINING DISCOVERY FROM THEM WILL MERELY PREJUDICE THEIR CLIENTS AND MRS. OSTENSEN

The evidence Mrs. Ostensen seeks from Movants is highly relevant to yet another issue in this action—whether Movants should be disqualified from representing SMCO and the Related Other Companies in this action.

Local Civil Rule 83.13 requires Movants to withdraw once "it is obvious that" Mr. Kennedy or another lawyer from Carter Ledyard "may be called as a witness" by Mrs. Ostensen and that that testimony will 'or may be prejudicial to" their clients. Local Civ. R. 83.13. Under this rule, it is disqualified counsel's entire firm, and not just disqualified counsel, which must withdraw. *Id.*

As discussed above, Mrs. Ostensen has a good-faith belief that Movants possess highly relevant evidence regarding SMCO's domination by the Related Other Companies and the Related Other Companies' decision to transfer SMCO's business to other entities and pay its debts—except for its debts to Mr. Ostensen—and that the presentation of this evidence will be fatal to the attempts of the Related Other Companies to evade liability in this action and in the arbitration regarding SMCO's failure to pay Mrs. Ostensen pension benefits. Indeed, Mrs. Ostensen suspects that Movants may be essential witnesses in that regard.

However, Mrs. Ostensen faces the dilemma that SMCO, the Related Other Companies and Movants have resisted her efforts to obtain full discovery, including discovery

regarding the need to call Movants as witnesses.  This has resulted in her inability to make a

motion to disqualify now.  However, there is no doubt that if she is forced to wait until discovery

closes and all discovery disputes have been decided, SMCO and the Related Other Companies

will claim that she has prejudiced them by delaying the motion.  Even more, however, Mrs.

Ostensen herself will be prejudiced by last-minute changes in counsel, with the attendant delays.

   SMCO and the Related Other Companies should be forced to give full disclosure

of all relevant evidence now, including evidence showing whether their counsel was so involved

in the events that gave rise to this action that they must be called as witnesses at trial, and thus

disqualified.  It is in the best interests of all parties, and the Court, to resolve the question of

Movants' continued participation as counsel in this action now.  This can only be done if

Movants are required fully to meet their obligations to provide discovery to Mrs. Ostensen now.

### Conclusion

   For the reasons set forth above, Mrs. Ostensen respectfully requests that the Court

deny Movants' motion for protective order.


Dated: New York, New York
  May 16, 2005


                            _____
                            Jeffrey M. Eilender (Bar. No. CT 25177)
                            John M. Lundin (Bar No. phv0185)
                            **SCHLAM STONE & DOLAN**, LLP
                            26 Broadway, Suite 1900
                            New York, NY 10004
                            (212) 344-5400 (Telephone)
                            (212) 344-7677 (Facsimile)
                            *Attorneys for Siri Ostensen*

18

Sharon E. Jaffe (Bar. No. CT. 04623)
**LEVIN & GLASSER, PC**
P.O. Box 1098
Weston, CT  06883
(203) 221-3008 (Telephone)
(203)221-3010 (Facsimile)
*Attorneys for Siri Ostensen*

19