## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

SCANDINAVIAN MARINE CLAIMS
OFFICE, INC.,

*Plaintiff*,

- *against* -

SIRI OSTENSEN,

*Defendant*,

- *against* -

SCANDINAVIAN MARINE CLAIMS
OFFICE, INC., SCANDINAVIAN
UNDERWRITERS AGENCY, SCUA
AMERICAS, INC., S.M.C.O., A.S., AND
NORWEGIAN HULL CLUB,

*Counterclaim and Third-Party Defendants.*

Civil Action No. 3:02CV678 (RNC)

DECLARATION OF JOHN M. LUNDIN

Pursuant to 28 U.S.C. § 1746, JOHN M. LUNDIN hereby declares:

1.      I am an associate of the firm of Schlam Stone & Dolan LLP, counsel for

Defendant Siri Ostensen in her individual capacity and as the executrix of the estate of her

husband, Tom Ostensen ("Mrs. Ostensen") in this action.  I submit this affirmation in support of

Mrs. Ostensen's opposition to the motion by third-parties Donald J. Kennedy ("Kennedy") and

Carter Ledyard & Milburn, LLP ("Carter Ledyard") (collectively, "Movants") for a protective

order with respect to the subpoenas served upon them in this action.

2.      The matters stated herein are based upon my personal knowledge or a

review of my files.

### SMCO and the Related Other Companies

3.      SMCO claims that Mrs. Ostensen owes it money due under promissory

notes (the "Notes") that Mrs. Ostensen and her late husband, Tom Ostensen, signed (Mr.

Ostensen's estate has been substituted as a party in this action). However, SMCO and Third-

Party Defendants Scandinavian Underwriters Agency, SCUA Americas, Inc., SMCO A.S., and

Norwegian Hull Club (collectively, and without SMCO, the "Related Other Companies") owe

Mrs. Ostensen a much greater debt.

        4.      SMCO was a wholly-owned subsidiary of Third-Party Defendant SMCO

A.S. (Plaintiff Scandinavian Marine Claims Office, Inc.'s Response to Defendant Siri

Ostensen's First Interrogatories ("SMCO's Interrog. Resp."), Response No. 1, a true and

complete copy of which is attached hereto as Exhibit 1.) In April 1997, SMCO and SMCO A.S.

signed a "Management Agreement" pursuant to which SMCO, A.S. provided SMCO

"managerial support, consulting services and maintain[ed] board-to-board relationship to

SMCO." (Management Agreement dated April 15, 1997, a true and complete copy of which is

attached hereto as Exhibit 2.) SMCO paid SMCO A.S. a fee for those services. (*Id.*) Further,

from 1997 until 2000, SMCO A.S.'s board of directors acted as the board of directors of SMCO

as well. (SMCO AS Board Meeting – Bergen, 2 April 1997, a true and complete copy of which

is attached hereto as Exhibit 3 ("The SMCO AS Board was elected under an extraordinary

general meeting Friday, 14 February 1997 and is also to be elected in those companies who have

hereto had their own boards.").)

        5.      In 2001, SMCO, A.S. decided to: (1) close SMCO's headquarters, firing

SMCO management; (2) form a new company, SCUA Americas, Inc., to take over the business

of SMCO's Houston and Miami offices; and (3) sell SMCO's subsidiary, SMQI, Inc. (Minutes

of the SMCO AS Board Meeting, a true and complete copy of which is attached hereto as Exhibit

4.) Further, on June 21, 2001, the SMCO A.S. Board recommended "to the ultimate

shareholders that they provide the capital necessary to liquidate" SMCO "based on **full payment** of **all** obligations **except** balances with **Mr. Ostensen**."  (SMCO A.S. Board Meeting Minutes dated June 21, 2001, a true and complete copy of which is attached hereto as Exhibit 5 (emphasis added).)

> 6.     The majority owner of SMCO, A.S. was Third-Party Defendant NHC, (Ex. 1, Response No. 1); prior to January 2001, SMCO, A.S.'s majority owners were NHC's corporate predecessors, Bergen Hull Club and Unitas, (*id.*).

**Discovery Sought by Mrs. Ostensen**

> 7.     By a Report and Recommendation (the "Report") dated and filed on September 5, 2003, the Court interpreted the arbitration provision in Paragraph 6.4 of the Non-Qualified Plan broadly, requiring Mrs. Ostensen to arbitrate almost all of her counterclaims against SMCO.

> 8.     Recognizing the need for discovery both on whether the Related Other Companies are subject to the arbitration provision of the Non-Qualified Plan and on Mrs. Ostensen's counterclaims, which are inextricably related to SMCO's claims against her, at the March 3, 2005 settlement conference the Court set a schedule for Mrs. Ostensen to have discovery related to her claims and defenses, including, in particular, to show that the Related Other Companies knew about, and are liable for SMCO's obligations under, the Non-Qualified Plan.  Pursuant to that schedule, on March 31, 2005, Mrs. Ostensen served discovery demands on SMCO and the Related Other Companies, as well as subpoenas to third parties.  (*See* Defendant's First Request for Documents to Plaintiff and Third-Party Defendants (the "Document Demand"), a true and complete copy of which is attached hereto as Exhibit 6; Defendant's First Interrogatories to Scandinavian Marine Claims Office, Inc. (the "SMCO

Interrog."), a true and complete copy of which is attached hereto as Exhibit 7; Defendant's First

Interrogatories to Scandinavian Underwriters Agency (the "SCUA Interrog."), a true and

complete copy of which is attached hereto as Exhibit 8; Defendant's First Interrogatories to

SCUA Americas, Inc. (the "SCUAA Interrog."), a true and complete copy of which is attached

hereto as Exhibit 9; Defendant's First Interrogatories to SMCO, A.S. (the "SMCO A.S.

Interrog."), a true and complete copy of which is attached hereto as Exhibit 10; Defendant's First

Interrogatories to Norwegian Hull Club (the "NHC Interrog."), a true and complete copy of

which is attached hereto as Exhibit 11; Subpoena in a Civil Case to Donald J. Kennedy, Esq.

("Kennedy Subpoena"), a true and complete copy of which is attached hereto as Exhibit 12;

Subpoena in a Civil Case to Carter Ledyard & Milburn, LLP ("Carter Ledyard Subpoena"), a true

and complete copy of which is attached hereto as Exhibit 13.) It is the Kennedy Subpoena and

the Carter Ledyard Subpoena that are the subject of the present motion.

**The Role of Kennedy and Carter Ledyard**

9.    As discussed above, a key area of discovery is whether the Related Other

Companies should be parties to the upcoming arbitration between SMCO and Mrs. Ostensen

regarding her claims relating to the Non-Qualified Plan. Upon information and belief, Mr.

Kennedy and Carter Ledyard possess evidence that is highly relevant to the decision of that issue.

10.    For example, Mr. Kennedy omits to mention in his declaration that until

April 1991, he was SMCO's corporate secretary. (SMCO's Interrog. Resp., Response No. 4,

Ex. 1.) After that date, he and other Carter Ledyard attorneys continued to perform work for

SMCO and, it is our understanding, the Related Other Companies. Part of the work Carter

Ledyard performed for SMCO and the Related Other Companies was evaluating the obligations

of SMCO and the Related Other Companies to the Ostensens under the Non-Qualified Plan.

4

(SMCO A.S. Board Meeting Minutes dated November 4, 2001 at 3, a true and complete copy of which is attached hereto as Exhibit 14; SMCO A.S. Board Meeting Minutes dated September 6, 2002, a true and complete copy of which is attached hereto as Exhibit 15.)

**Mrs. Ostensen's Attempt to Obtain Discovery Regarding Movants**

11.     Mrs. Ostensen has been unable to determine the full scope of Movants' involvement in the refusal of SMCO's corporate parents, NHC and SMCO, A.S., to allow SMCO to operate as a separate business entity because she has thus far been denied almost all of the discovery she has sought on that topic. Mrs. Ostensen has sought the following discovery regarding the relationship between Mr. Kennedy and other Carter Ledyard attorneys provided to SMCO and the Related Other Companies from SMCO and the Related Other Companies:

- Document Demand, Request No. 23: Documents sufficient to identify all legal counsel who have provided legal advice to NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. regarding any transaction, litigation or other proceeding involving SMCO at any time from January 1, 1990 to the present, including, but not limited to, the identification of the entities who sought, received and paid for such advice. (Ex. 6.)

- Document Demand, Request No. 24: Documents sufficient to all legal expenses for SMCO from January 1, 1990 to the present including, but not limited to, the identity of the firm providing the legal work, the general subject matter of the work, the date and amount of each bill for legal work and the person or entity that paid each such bill. (*Id.*)

- SMCO Interrog., Interrogatory No. 6: Identify all legal counsel who have provided legal advice to SMCO at any time from January 1, 1990 to the present. (Ex. 7.)

- NHC Interrog., Interrogatory No. 7: Identify all legal counsel who have provided legal advice to NHC at any time from January 1, 1990 to the present. (Ex. 11.)

- SMCO, A.S. Interrog., Interrogatory No. 7: Identify all legal counsel who have provided legal advice to S.M.C.O., A.S. at any time from January 1, 1990 to the present. (Ex. 10.)

- SCUA Interrog., Interrogatory No. 7: Identify all legal counsel who have provided legal advice to SCUA at any time from January 1, 1990 to the present. (Ex. 8.)

- SCUAA Interrog., Interrogatory No. 7: Identify all legal counsel who have provided legal advice to SCUAA at any time from January 1, 1990 to the present. (Ex. 9.)

12.     However, SMCO and the Related Other Companies have provided almost none of the discovery Mrs. Ostensen has sought from them relating to Mr. Kennedy and Carter Ledyard.  Mrs. Ostensen has not yet received any discovery responses from Norwegian Hull Club, SMCO, A.S., Scandinavian Underwriters Agency or SCUA Americas, Inc.  Further, SMCO refused to produce any documents responsive to Mrs. Ostensen's document requests Nos. 23 and 24—which are mirrored by Mrs. Ostensen's Request Nos. 5 and 6 to Carter Ledyard. (Plaintiff Scandinavian Marine Claims Office, Inc.'s Response to Defendant Siri Ostensen's First Request for Documents ("SMCO's Document Response"), Response Nos. 23 and 24, a true and complete copy of which is attached hereto as Exhibit 16; Carter Ledyard Subpoena, Schedule B, Request Nos. 5 and 6, Ex. 13.)  With respect to Mrs. Ostensen's Request No. 23, SMCO referred to its response to Mrs. Ostensen's interrogatories to SMCO, (Ex. 16), but those responses did not provide the information sought by Mrs. Ostensen's Request No. 23, (SMCO's Interrog. Resp., Response No. 6, Ex. 1.)  Rather, SMCO's interrogatory response showed only that Carter Ledyard provided legal services to SMCO without disclosing the timing or scope of that support or, most important, who engaged, paid and directed Carter Ledyard's provision of legal services to SMCO.

**Mrs. Ostensen's Attempt to Obtain Other Relevant Discovery**

13.     Further, Mrs. Ostensen was unable to obtain from SMCO and the Related Other Companies the discovery she has sought from Mr. Kennedy and Carter Ledyard.  Mrs. Ostensen's document demands to SMCO and the Related Other Companies sought, in many cases, the same categories of documents that Mrs. Ostensen sought from Mr. Kennedy and Carter Ledyard.  However, SMCO and the Related Other Companies have not provided most of the requested discovery.

14.    For example, Mrs. Ostensen's subpoena to Carter Ledyard sought 13 categories of documents, all of which mirrored requests that that she had served on SMCO and the Related Other Companies, and all of which Mrs. Ostensen had a good faith belief would be in Carter Ledyard's possession, custody or control by virtue of its representation of SMCO and the Related Other Companies. (*Compare*, SMCO's Document Response, Ex. 16 *with* Carter Ledyard Subpoena, Ex. 13.) As discussed above with respect to her Request Nos. 5 and 6 to Carter Ledyard, and as discussed below with respect to most of her remaining requests, almost none of the documents she sought from SMCO and the Related Other Companies were produced. **First**, as discussed above, none of the Third-Party Defendants other than SMCO has yet provided any response to Mrs. Ostensen's discovery demands.

15.    **Second**, as shown below, SMCO produced almost none of the documents Mrs. Ostensen sought from it on topics also covered by her request to SMCO.

- Carter Ledyard Subpoena Request No. 1 and Document Demand, Request No. 8 sought "documents relating to or concerning the selection of the members of the board of directors or other similar governing body, officers or managers of SMCO," but in response to Mrs. Ostensen's Request No. 8, SMCO produced only SMCO's board meeting minutes. (SMCO's Document Response, Response No. 8, Ex. 16.) Those minutes contain **nothing** about the selection of board members.

- Carter Ledyard Subpoena Request No. 3 and Document Demand, Request No.11 sought "documents relating to or concerning the payment or guarantee by NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. of the debt of any other entity or individual," but in response to Mrs. Ostensen's Request No. 11, SMCO produced some loan documents, (*see* SMCO's Document Response, Response No. 11, Ex. 16), but nothing (other than board meeting minutes) regarding the decision by SMCO, A.S. and NHC to pay most of SMCO's debts while leaving the Non-Qualified Plan and other debts to Mr. Ostensen unpaid.

- Carter Ledyard Subpoena Request No. 4 and Document Demand, Request No. 12 sought "documents relating to or concerning the communications from the board of directors or other similar governing body, officers or managers of NHC, SCUA, SCUAA, SCUA Holdings and SMCO A.S. to . . . the board of directors or other similar governing body, officers or managers of SMCO regarding the business of SMCO, but in response to Mrs.

Ostensen's Request No. 12, SMCO produced its board minutes, (*see* SMCO's Document Response, Response No. 12, Ex. 16), but such minutes unquestionably do not constitute all of the documents "relating to or concerning the communications" between SMCO's board and Carter Ledyard or the Related Other Companies.

- Carter Ledyard Subpoena Request No. 7 and Document Demand, Request No. 26 sought "documents relating to or concerning any potential or actual plans or discussions concerning the ceasing the expansion, acquisition, downsizing, termination or relocation of the operations of SMCO," but as with its response to Mrs. Ostensen's Request No. 12, in response to Mrs. Ostensen's Request No. 26, SMCO produced only its board minutes, (*see* SMCO's Document Response, Response No. 26, Ex. 16). However, such minutes unquestionably do not constitute all of the documents "relating to or c concerning any potential or actual plans or discussions concerning the ceasing the expansion, acquisition, downsizing, termination or relocation of the operations of SMCO." For example, no other documents were produced regarding the sale of SMCO's assets, such as its subsidiary SMQI, Inc., or the transfer of most of its business to another subsidiary of SMCO, A.S., SCUA Americas, Inc. We have reason to believe that as counsel for SMCO and the Related Other Companies, Carter Ledyard would possess such documents and would be able to provide non-privileged deposition testimony on this topic.

- Carter Ledyard Subpoena Request No. 12 and Document Demand, Request No. 31 sought "documents relating to or concerning the assumption by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. of SMCO's obligations under the Non-Qualified Plan," but SMCO refused to produce any such documents, notwithstanding that this is perhaps the central dispute in this action. (SMCO's Document Response, Response No. 31, Ex. 16.)

- Carter Ledyard Subpoena Request No. 13 and Document Demand, Request No. 32 sought "documents relating to or concerning the assumption by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. of SMCO's obligations other than the Non-Qualified Plan," but as with its response to Mrs. Ostensen's Request No. 12 and 26, in response to Mrs. Ostensen's Request No. 32, SMCO produced only its board minutes, (*see* SMCO's Document Response, Response No. 32, Ex. 16). However, such minutes unquestionably do not constitute all of the documents "relating to or concerning the assumption by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. of SMCO's obligations other than the Non-Qualified Plan." We have reason to believe that as counsel for SMCO and the Related Other Companies, Carter Ledyard would possess such documents and would be able to provide non-privileged deposition testimony on this topic.

    16.    I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 16, 2005

JOHN M LUNDIN

8

Exhibit 1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------X
SCANDINAVIAN MARINE CLAIMS OFFICE,
INC.

                    Plaintiff,

      v.

SIRI OSTENSEN,

                    Defendant,

      v.

SCANDINAVIAN MARINE CLAIMS
OFFICE, INC., SCANDINAVIAN
UNDERWRITERS AGENCY, SCUA
AMERICAS, INC., S.M.C.O., A.S., AND
NORWEGIAN HULL CLUB,

      Counterclaim and Third-Party Defendants.
---------------------------------------------------------X

Civil Case No.
3:02 CV 678 (RNC)

Magistrate Judge Donna F. Martinez

## PLAINTIFF SCANDINAVIAN MARINE CLAIMS OFFICE, INC.'S RESPONSE TO DEFENDANT SIRI OSTENSEN'S FIRST INTERROGATORIES TO SCANDINAVIAN MARINE CLAIMS OFFICE, INC.

Plaintiff Scandinavian Marine Claims Office, Inc. ("SMCO"), by its attorneys

Carter Ledyard & Milburn LLP and Levett Rockwood P.C., responds as follows to

Defendant Siri Ostensen's First Interrogatories to Scandinavian Marine Claims Office,

Inc.

## GENERAL OBJECTIONS

1.     SMCO reserves all objections at any hearing or trial or on any motion to

the use or admissibility of any information, material or documents identified or disclosed.

1306750.1

The identification or disclosure of any information, material or documents does not constitute an admission by SMCO that such information, material or documents are relevant to the action or admissible in evidence.

2.      Inadvertent reliance on or disclosure of any information, material or documents subject to the attorney-client privilege, prepared in anticipation of litigation or for trial, or otherwise protected or immune from discovery shall not constitute a waiver of any privilege or of any other ground for objecting to discovery of such information, material or documents or their subject matter, or of SMCO's rights to object to the use of such information, material or documents during this or any later proceeding.

3.      SMCO reserves the right to modify, supplement or amend any response hereto.

4.      The Interrogatories, as recorded herein, have been quoted in substantially the same form as found in Defendant's First Interrogatories to Scandinavian Marine Claims Office, Inc., dated March 31, 2005.

5.      SMCO objects to the Interrogatories to the extent that they seek to impose obligations on SMCO beyond those imposed under the Federal Rules of Civil Procedure and the Local Rules, including but not limited to Local Civil Rule 33.3 of the Southern District of New York.

6.      Objection to Definitions:  SMCO objects to the definitions in paragraphs 2,3,5,6,7,8 and 9.

## SPECIFIC OBJECTIONS

1.      SMCO objects to this Interrogatory to the extent it is unduly burdensome, oppressive and/or harassing, taking into account the needs of the case and the issues

presented, and/or seeks documents that are obtainable from some other source that is more convenient, less burdensome or less expensive.

2.    SMCO objects to this Interrogatory on the ground that it seeks information that is not relevant to the subject matter of this litigation or reasonably calculated to lead to the discovery of admissible evidence.

3.    SMCO objects to this Interrogatory on the ground that it is overly broad.

4.    SMCO objects to this Interrogatory on the ground that it is unduly vague, ambiguous and unanswerable as propounded.

5.    SMCO objects to this Interrogatory on the ground that it seeks the discovery of trade secrets or other confidential, sensitive or proprietary information, and SMCO will not respond to this Interrogatory unless and until an appropriate confidentiality order is agreed to by the parties and approved by the Court.

6.    SMCO objects to this Interrogatory to the extent the discovery sought is unreasonably cumulative or duplicative.

7.    SMCO objects to this Interrogatory on the ground that the information requested is more appropriately discovered through depositions.

8.    SMCO objects to this Interrogatory on the ground that it seeks documents that are protected from discovery by the attorney-client privilege, the work product doctrine and/or other applicable privilege.

## RESPONSES TO INTERROGATORIES

1.    **Interrogatory No. 1:**

Identify all persons who have, or who have had, an ownership interest in SMCO any time from January, 1990 to the present including, but not limited to, the names and business addresses of all persons or entities having an ownership interest in SMCO, when that interest was acquired (and, if applicable, divested) and the percentage ownership of each entity at the end of each calendar or fiscal year.

**Response to Interrogatory No. 1:**  Specific Objection Nos. 1-4 and 7.  Subject to the foregoing objections and without waiver thereof:

(a)  The ownership interest in SMCO from January 1, 1990 to January 1, 2001 was:

i)    Scandinavian Marine Claims Office AS
Address from January 1990 to March 1997:
c/o Wikborg, Rein & Co.
Kronprinsesse Märthas plass 1
P.O. Box 1513 Vika
NO - 0117 Oslo, Norway

Address from April 1997:
Olav Kyrres gt 11
P.O. Box 75 Sentrum
NO – 5803 Bergen, Norway

ii)   The ownership interest was 100%

(b)  The ownership interest of <u>Scandinavian Marine Claims Office AS</u> from January 1, 1990 to January 1, 2001 were:

| January 1, 1990 | | |
|---|---|---|
| Bergen Hull Club | 34 shares | 16.7% |
| Unitas | 68 shares | 33.3% |
| Christiansands Skibsassuranceforening | 34 shares | 16.7% |
| CEFOR - Central Union | 68 shares | 33.3% |
| September 24, 1991 | | |
| Gjensidige Skibsassurandørers Komité | 1136 shares | 66.7% |
| CEFOR - Central Union | 568 shares | 33.3% |

1306750.1

August 21, 1995

| | | |
|---|---|---|
| Gjensidige Skibsassurandørers Komité | 1136 shares | 66.7% |
| Uni Storebrand | 284 shares | 16.7% |
| Vesta Forsikring AS | 284 | 16.7% |

October , 1997

| | | |
|---|---|---|
| Bergen Hull Club | 568 shares | 33.33% |
| Unitas | 568 shares | 33.33% |
| UniStorebrand | 284 shares | 16.66% |
| Vesta Forsikring AS | 284 shares | 16.66% |

January , 2000

| | | |
|---|---|---|
| Bergen Hull Club | 568 shares | 33.33% |
| Unitas | 568 shares | 33.33% |
| IF P&C | 568 shares | 33.33% |

January , 2001

| | | |
|---|---|---|
| Norwegian Hull Club | 1136 shares | 66.6% |
| IF P&C[1] | 568 shares | 33.3% |

(c) The addresses of shareholders of Scandinavian Marine Claims Office AS were:

> Bergen Hull Club
> Olav Kyrresgate 11
> P.O. Box 75
> N-5001
> Bergen, Norway

> Norwegian Hull Club
> Olav Kyrresgate 11
> P.O. Box 75 Sentrum
> NO - 5803 Bergen, Norway

> Unitas Gjensidig Assuranseforening
> Radhusgaten 25
> P.O. Box 1290 Vika
> 0111 Oslo, Norway

> Christiansands Skibsassuranceforening
> Østre Strandgate 3
> P.O. Box 489
> NO – 4664 Kristiansand S. Norway

---

[1] Gard Services AS purchased IF P&C Insurance Ltd. (publ)'s shares in Scandinavian Marine Claims Office AS effective July 1, 2000 when Gard Services AS established and commenced its operations.

CEFOR (The Central Union of Marine Underwriters)
P.O. Box 2550 Solli
NO – 0202 Oslo, Norway

Gjensidige Skibsassurandørers Komité
Kronprinsesse Märthas Plass 1
Postboks 1513 Vika
0117 Oslo, Norway

Uni-Storebrand Skadeforsikring AS
Oslo

Vesta Forsikring AS
5020 Bergen, Norway

IF P&C
c/o Gard AS
Servicebox 600
NO – 4809 Arendal, Norway

Gard AS
Servicebox 600
NO – 4809 Arendal, Norway

2.     **Interrogatory No. 2:**

Identify each address or location from which SMCO and each affiliate of
SMCO has operated at any time from January 1, 1990 to the present.

**Response to Interrogatory No. 2:**  Specific Objection Nos. 1-4 and 7.  Subject to the
foregoing objections and without waiver thereof, SMCO moved its office from Stamford,
Connecticut to Florida in August, 2000 and ceased operations in December, 2000.  The
office address and location from which SMCO has operated from January 1, 1990 to
December, 2000 are:

333 Ludlow Street
Stamford, CT  06912

One Landmark Square
Stamford, Connecticut  06901-2625

1730 Nasa Road 1
Suite 207
Houston, Texas  77058

One East Broward Boulevard
Suite 1410
Fort Lauderdale, Florida 33301

255 Alhambra Circle
Coral Gables, Florida 33134

250 Catalonia Avenue
Suite 304
Coral Gables, Florida 33134

3.    **Interrogatory No. 3:**

Identify the members of the board of directors or other similar governing
body of SMCO at any time from January 1, 1990 to the present, including,
but not limited to, each person's position.

**Response to Interrogatory No. 3:**  Specific Objection Nos. 1-4 and 7.  Subject to the
foregoing objections and without waiver thereof, SMCO ceased operations in December
2000, and the members of the Board of Directors of SMCO from January 1, 1990 to
December, 2000 are:

| 1/90 - 6/91 | Affiliation |
| --- | --- |
| John Wiik | Bergen Hull Club |
| Hans Terje Anonsen | Vesta Forsikring |
| Lars Lindfelt | Swedish Club |
| Jan Lunde | Unitas |

| 6/91 - 6/94 | Affiliation |
|---|---|
| Havar Poulsson | Skuld |
| Jan Lunde | Unitas |
| Knut Lund | Storebrand |

| 11/94 - 3/97 | |
|---|---|
| Hävar Poulsson | Skuld |
| Jan Lunde | Unitas |
| Lars Lindfelt | Swedish Club |
| Kitty Kendel | Vesta Forsikring |

| 4/97 - 12/00 | Affiliation |
|---|---|
| Arne Selvik | Administrativt Forskning Fond[1] |
| Fred Benjaminsen | SCUA Rotterdam |
| Morten Hjemsaeter | Storebrand |
| Karl Hystad | Bergen Hull Club |
| Havar Poulsson | Skuld |
| Jan Lunde | Unitas (until 1998) |
| Torleiv Aaslestad | Unitas (replaces Jan Lunde) |
| Tom Midttun | Vesta Forsikring |
| Gunnar Topland | Gard P&I (a company related to IF P&C) |

[1] Administrativt forskningsfond ved Norges Handelshoyskole (Administrative Research Institute at the Norwegian School of Economic and Business Administration).

4.    **Interrogatory No. 4:**

> Identify the officers or managers of SMCO at any time from January 1, 1990 to the present, including, but not limited to, each person's position.

**Response to Interrogatory No. 4:**  Specific Objection Nos. 1-4 and 7.  Subject to the foregoing objections and without waiver thereof, SMCO ceased operations in December, 2000, and the officers of SMCO from January 1, 1990 to January 1, 2001 were:

| Tom Ostensen | President: 1990 - 2000 |
|---|---|
| Robert Jones | Treasurer: 1990 - 2000 |
| Leif Chr. Husjord | Executive Vice President |
| Carl A. Cederstav | Senior Vice President |
| Manuel R. Llorca | Senior Vice President |

| | |
|---|---|
| Donald J. Kennedy | Secretary: Term ended April 1991 |
| Robert Jones | Secretary: Term beginning June 1991 |
| Herbert C. Phelps | Vice President |
| Michael F. Guilford | Vice President |
| Pradeep K. Nayyar | Senior Vice President |
| Renan Alamina | Vice President |
| Margaret Killip | Vice President |
| David Smith | Vice President |
| Erik Kappelin | Acting President May 22, 2000 |

5.     **Interrogatory No. 5:**

Identify all accountants or auditors who have performed work for SMCO at any time from January 1, 1990 to the present.

**Response to Interrogatory No. 5:** Specific Objection Nos. 1-4 and 7. Subject to the foregoing objections and without waiver thereof, SMCO ceased operations in December, 2000, and the accountants for SMCO from January 1, 1990 to December 31, 2001 were:

Gordon, La Marco, Barron & Orbuck LLC
962 E. Putnam Avenue
Cos Cob, Connecticut 06807

Messina, Ceci, Archer & Company, Inc.
1241 East Main Street
Stamford, Connecticut 06902

Arty, Cahn, Feuer CPA
1150 Northwest 72nd Avenue
Suite 760
Miami, Florida 33126

Robert Jones
Perla Palomino

Lawrence A. Herrup, C.P.A, PA
326 Seventyfirst Street
Miami Beach, Florida 33141-3038

6.     **Interrogatory No. 6:**

Identify all legal counsel who have provided legal advice to SMCO at any time from January 1, 1990 to the present.

**Response to Interrogatory No. 6:** Specific Objection Nos. 1-4, 7 and 8. Subject to the foregoing objections and without waiver thereof, lawyers who provided legal advice to

SMCO were Haight Gardner Poor & Havens, Cummings & Lockwood, Robertson & Cole, Kirlin Campbell & Keating, Roberts & Holland, Nourse & Bowles,The Law Office of Sharon M. Jones, 191 Post Road West, Westport, Connecticut, Carter Ledyard & Milburn LLP , Levitt Rockwood p.c and Coyne, Von Kuhn, Brady & Fries LLC,999 Oronoque Lane, Stratford,Ct.06614.

7.    **Interrogatory No. 7:**

List all funds or other assets transferred between or among SMCO, on the one hand, and NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S., on the other, at any time from January 1, 1990 to the present.

**Response to Interrogatory No. 7:** Specific Objection Nos. 1-4 and 7. Loans were made to SMCO. See SMCO's Response to Defendant's First Request For Documents to Plaintiff and Third Party Defendants, Request No. 10.

8.    **Interrogatory No. 8:**

Identify the four persons most knowledgeable regarding the transfer of funds or other assets between or among SMCO, on the one hand, and NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S., on the other, at any time from January 1, 1990 to the present.

**Response to Interrogatory No. 8:** Specific Objection Nos. 1-4 and 7. Subject to the foregoing objections and without waiver thereof, the most knowledgeable person regarding funds transfer would be Robert Jones, the Treasurer of SMCO. Other knowledgeable people include Hävar Poulsson, Jan Lunde, and Arne Selvik.

9.    **Interrogatory No. 9:**

List all assets and obligations of SMCO, including real property, chattel, securities, or pledges.

**Response to Interrogatory No. 9:** Specific Objection Nos. 1-4 and 7. Subject to the foregoing objections and without waiver thereof, see SMCO's financial statements, copies of which are contained in SMCO's Response to Defendant Siri Ostensen's First Request For Documents (Bates Nos. SM 1239 to SM 1454).

10.   **Interrogatory No. 10:**

Identify all obligations of SMCO that have been assumed by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. at any time from January 1, 1990 to the present.

**Response to Interrogatory No. 10:** Specific Objection Nos. 2 and 7. Subject to the foregoing objections and without waiver thereof, after January 1, 2001 the shareholder of SMCO made funds available to SMCO to meet its Qualified Pension Plan funding obligations, settle certain claims made against SMCO and have an orderly winding down process.

11.     **Interrogatory No. 11:**

Identify the four persons most knowledgeable regarding the assumption of SMCO's obligations by NHC, SCUA, SCUAA, SCUA Holding or SMCO A.S. at any time from January 1, 1990 to the present.

**Response to Interrogatory No. 11:** Specific Objection Nos. 2 and 7. Subject to the foregoing objections and without waiver thereof, upon information and belief, Robert Jones, Hävar Poulsson, Jan Lunde and Arne Selvik are the most knowledgeable persons with regard to this Interrogatory.

12.     **Interrogatory No. 12:**

Identify all obligations of NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. that have been assumed by SMCO at any time from January 1, 1990 to the present.

**Response to Interrogatory No. 12:** Specific Objection Nos. 2 and 7. Subject to the foregoing objections and without waiver thereof, SMCO did not assume any obligations of third parties.

13.     **Interrogatory No. 13:**

Identify the four persons most knowledgeable regarding the assumption of NHC, SCUA, SCUAA, SCUA Holdings and/or SMCO A.S.'s obligations by SMCO at any time from January 1, 1990 to the present.

**Response to Interrogatory No. 13:** Specific Objection Nos. 2 and 7. Subject to the foregoing objections and without waiver thereof, upon information and belief, Robert Jones, Hovar Paulsson, Jan Lunde and Arne Selvik are the four most knowledgeable persons with regard to this Interrogatory.

14.     **Interrogatory No. 14:**

Identify all persons involved in the negotiation and drafting of the Non-Qualified Plan, including a summary of each such person's involvement.

**Response to Interrogatory No. 14:** Specific objection Nos. 1-4 and 7. Subject to the foregoing objections and without waiver thereof, SMCO is not aware of any negotiations

in connection with the Non-Qualified Plan, and the persons involved in the drafting of the Non-Qualified plan were:

    Tom Ostensen: President of SMCO
    Deceased

    Kevin M. Sweeney: Actuary for SMCO
    Comprehensive Employee Plans

    Ernesto V. Luzzatto: Attorney for SMCO
    Hill Rivkins & Hayden
    45 Broadway - Suite 1500
    New York, New York  10006-3739

15.    **Interrogatory No. 15:**

    Identify when NHC, SCUA, SCUAA, SCUA Holdings and SMCO A.S. first learned of the existence and terms of the Non-Qualified Plan, including, but not limited to, SMCO's obligations under the Non-Qualified Plan, including the identity of the NHC, SCUA, SCUAA, SCUA Holdings and SMCO A.S. employees who first learned of the Non-Qualified Plan.

**Response to Interrogatory No. 15:** Specific objection Nos. 1-4 and 7.  Subject to the foregoing objections and without waiver thereof, it is unknown when NHC, SCUA, SCUAA, SCUA Holdings and SMCO A.S. first learned of the existence and terms of the Non-Qualified Plan.

16.    **Interrogatory No. 16:**

    Identify the five persons most knowledgeable regarding the funding of the Non-Qualified Plan including, but not limited to, the promissory note referred to in the Complaint and life insurance policies on the lives of participants in the Non-Qualified Plan, and the communication of that information to NHC, SCUA, SCUAA, SCUA Holdings, or SMCO A.S.

**Response to Interrogatory No. 16:**  Specific objection Nos. 1-4 and 7.  Subject to the foregoing objections and without waiver thereof, the Non-Qualified plan by its own terms, Article V, 5.1 does not provide for funding.  Robert Jones, Hävar Paulsson, Jan Lunde, Arne Selvik and Erik Kappelin are the most knowledgeable persons with regard to this Interrogatory.

Dated: May 4, 2005

<div style="margin-left:40%">

CARTER LEDYARD & MILBURN LLP

By: _____
Donald J. Kennedy
Federal Bar No. ct23620
2 Wall Street
New York, New York  10005
Telephone:  (212) 732-3200
Facsimile:  (212) 732-3232

Madeleine F. Grossman
Federal Bar No. ct05987
Dorit S. Heimer
Federal Bar No. ct01219
LEVETT ROCKWOOD P.C.
33 Riverside Avenue
Post Office Box 5116
Westport, Connecticut  06880
Telephone: (203) 222-0885
Facsimile: (203) 226-8025

</div>

## VERIFICATION

Erik Kappelin, being duly sworn, deposes and says that he is an officer, to wit, Acting President of Scandinavian Marine Claims Office, Inc., a corporation in the State of New York and the Plaintiff herein; that he has read the foregoing Responses to Interrogatories and knows the contents thereof; and that the same is true to his own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters he believes them to be true.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 4, 2005.

_____
ERIK KAPPELIN

1306750.1

Exhibit 2

# MANAGEMENT AGREEMENT

between

## SCANDINAVIAN MARINE CLAIMS OFFICE AS (SMCO AS)
### (Org. No. 930059749)

and

## SCANDINAVIAN MARINE CLAIMS OFFICE, Inc. (SMCO Inc.)

### § 1

This agreement regulates the managerial and corporate governance relationship and exchange of services between SMCO AS and SMCO Inc.

### § 2

SMCOAS is, under this agreement, obliged to render managerial support, consulting services, and maintain board-to-board relationship to SMCO Inc.  SMCO AS shall charge an annual  management fee for these services, based on the time and type of services delivered.

### § 3

SMCO Inc. shall keep SMCO AS management and board regularly informed of its plans and activities, and shall bring all major policy issues to the attention of the the board secretariat.

### § 4

Any disputes under this agreement shall be handled by negotiations and arbitration between the parties.  If not solved, any legal issues shall be regulated by Norwegian law and brought before the Bergen Byrett.

Stamford, Conn., April 20, 1997          Bergen, April 15, 1997
for SMCO Inc                             For SMCO AS

--------------------------------          --------------------------------
Tom Østensen                              Arne Selvik
President                                 Chairman

SM 000013

Exhibit 3

## SMCO AS BOARD MEETING - BERGEN, 2 APRIL 1997

## SUMMARY OF THE MINUTES

**Present:**    Arne Selvik, Chairman
Fred Benjaminsen
Morten Hjemsæter
Karl Hystad
Jan Lunde
Tom Midttun
Gunnar Toppland

**Absent:**    Håvar Paulsson

### Agenda

Notice of the meeting and it's agenda were approved.

### The New Board

The SMCO AS Board was elected under an extraordinary general meeting Friday, 14 February 1997 and is also to be elected in those companies who have hereto had their own boards.

### The Board's Main Duties and Responsibilities

The following was discussed:

<u>Strategy / Objectives</u>
In addition to their role as "an extended arm of underwriters" and "one of the most important infrastructure elements on the claims side" it was suggested that the agencies should be a marketing tool able to promote "the Norwegian market and system", but not any one company. However it was also stressed that an important balance exists between the agencies being independent suppliers of services to a wide range of international clients whilst also representing their owners.

An increased openness between agencies is to be encouraged, including the exchange of information and experiences in order that high levels of quality can be consolidated. Clients need to be receiving the right balance of price and quality. It may be that a common costing and pricing philosophy is necessary. An important question in this respect is what price differentiation exists today? It was also suggested that SMCO AS could well benefit from a common personnel policy.

How the Board intends to follow up it's strategy and objectives will be a theme for further discussion based on an examination of current reporting procedures and the possibility of producing consolidated key figures.

1

Organisation

The Board's decision to have a "working chairman" and a part-time secretariat has established an important organisational foundation for the next few years. There was also agreement that the Board should be involved in the appointment of key agency personnel based on recommendations from agency management. The Board is also to be involved in questions pertaining to the establishment, closure and relocation of offices.

Control

The Board's control functions will continue as before through co-operation with each company's finance managers and auditors.

It was considered necessary to maintain certain key board positions in a transitional phase. The Board agreed that the outgoing chairmen for USA (Jan Lunde), Europe (Karl Hystad) and Japan (Morten Hjemsæter) will act as contact persons between the board and agency management for the remainder of 1997. However from 1998 the new Chairman of SMCO AS will have direct contact.

**Board Working Practices - Preliminary Discussions**

In accordance with proposals put forward by the project group established to evaluate the organisation of the agencies, the Board aims to take care of the co-ordination and management tasks in the SMCO system in a cost effective manner. The intention is to hold 4 to 6 ordinary general meetings per year, one of which to be held outside Norway.

The Board intends to use the international meetings to become acquainted with the employees of the different agencies and their working environments, practices etc. Agency management will be invited to contribute to the meetings held in their region and will be asked to prepare a technical program in that respect.

The European management are to be invited to a meeting in May and the USA will be in focus in the autumn. A meeting is planned in Japan for 1998.

Travel costs for the board members will be covered by their respective Clubs and companies, whilst travel costs for agency representatives, the Chairman and Secretary to the Board, will be covered by SMCO AS.

The Board elected David Bellamy, Bergen Hull Club, as Secretary to the Board. Minutes of board meetings will be conducted in English and short summaries will be distributed to all agencies. The necessary secretariat functions will be taken care of by Bellamy and the Chairman. The Board and secretariat will call upon the services of lawyer Haakon Stang Lund in legal matters.

**Accounting**

A budget for SMCO AS is to be prepared in time for the next meeting.

The Chairman is to investigate how accounting is taken care of today and evaluate how it might be simplified and perhaps included in AFF's project accounts.

2

SM 000567

**Establishment of a London Office - Status**

It is hoped that an office will have been established in London by the 1" of July 1997.
draft co-operation agreement is to be discussed with Wikborg, Rein & Co. in
London, 16 April 1997.

**Schedule of Meetings for 1997**

Bergen, Wednesday, 21 May.

New York, Thursday, 25 September (in connection with the USA agency's centenary
celebrations).

Oslo, Thursday, 20 November.

**Any Other Business**

Jan Lunde reported back from the USA board regarding their economic situation.
The Board has asked Tom Østensen to send an application direct to the owners.

David Bellamy
Secretary to the Board

3

SM 000568

Exhibit 4

## Minutes of the SMCO AS Board Meeting
## Bergen Hull Club - Bergen, 23rd May 2000

**Present:**     Arne Selvik, Chairman
Fred Benjaminsen
Morten Hjemsæter
Karl Hystad
Tom Midttun
Håvar Poulsson
Gunnar Topland
Torleiv Aaslestad
David Bellamy, Secretary to the Board

The Chairman opened the meeting at 10.05 hours.

The running order of the meeting was not strictly followed in order that Item 2. could be comprehensively addressed.

### 2. Organisation, Operation and Financing of SMCO Inc.

This item also constituted the board meeting for SMCO Inc., the minutes of which have been produced as a separate document. The Board resolution can be summarised as follows.

Discussions in respect of the reorganisation of the global network of claims agencies continued from previous meetings. The offices have experienced many changes in recent years as a result of meeting the global challenges facing the organisation.

Following such discussions the Board has decided to take further action in the US market. Despite changes already made at the Stamford office, involving the closing down of the P&I department and relocating to new premises, the amount of work for SMCO Inc. no longer warrants head office functions.

Consequently the Board has resolved:

i.    to close down the head office functions of SMCO Inc. in Stamford Connecticut. This will regrettably affect head office management, administrative and secretarial staff in the form of redundancies.

ii.   to maintain the claims offices in Houston and Miami as part of the long-term commitment to the US market. Staffing requirements of these offices will be examined in order to meet market demands.

iii.  to sell the non-core activity of SMQI Inc.

iv.   that the claims offices in Miami and Houston shall participate in global SCUA branding and invoicing.

SM 000738

The Chairman, Arne Selvik, has been authorised to implement these decisions in the most effective way possible.

### 6. SMCO AS 1999 Annual Report and Accounts
The 1999 Annual Report and Accounts were approved and signed.

For sake of good order the Chairman will investigate details of the entry "Other Financial Costs" totalling NOK61.140. It is probably related to commission paid on bank guarantees that Bergen Hull Club provides for SCUA Far East.

### 1. Minutes of the Board Meeting 3rd March 2000
The revised minutes of the Board Meeting 3rd March 2000 were approved and signed. Two changes were made:
Item 5:
The section in brackets covering the Geilo seminar shall be deleted from the minutes. A separate memo from the seminar shall be prepared. Before the
Item 6:
This sentence shall be added before the last section: The board decided to continue its discussion in its next board meeting.

### 5. Common Pricing Policy for the Agencies
The Board noted the contents of the Fee Scale Memo dated 18th May 2000. It was decided to postpone any in-depth discussions and thereby conclusions until the next board meeting.

### 3. Agency Quarterly Reports
The Board noted the contents of the quarterly reports with the following comments:
Arne, her overlater jeg ordet til deg!

### 4. 1st Quarter Income Statements and Revised Budgets for Rotterdam and London
The Board noted the contents of the above named documents with the following comments:
Arne, her overiater jeg ordet til deg!

### 7. Appointment of a Surveyor in Dubai
The Board sanctioned the employment of Raymond Caldwell at the Dubai office as presented by Patrick Cannie in his report to the Board.
Arne, her overlater jeg ordet til deg!

### 8. Ownership Composition of SMCO AS
Arne, her overlater jeg ordet til deg!

### 9. Board Composition and Workings
Arne, her overlater jeg ordet til deg!

SM 000739

**10. A.O.B.**

It was decided to hold the next Board Meeting, and at the same time Annual General Meeting, on 21ª June in Oslo at Unitas' offices.


The meeting was closed at 17.15hrs.

David Bellamy
Secretary to the Board


      Arne Selvik        Fred Benjaminsen        Morten Hjemsæter


                Karl Hystad        Tom Midttun


      Håvar Poulsson        Gunnar Topland        Torleiv Aaslestad

SM 000740

Exhibit 5

23-10 '01 09:49 FAX 55559555          BERGEN HULL CLUB          - SMCO CORAL GABLE  ☒002

MINUTES of a Meeting of the Board of Directors of **Scandinavian Marine Claims Office, Inc.** held on Thursday 21 June 2001 at 11.00 a.m. at the offices of Norwegian Hull Club. Bergen, Norway.

Present:          Mr. Karstein J. Espelid. Chairman
                  Mr. Tom Midttun
                  Mr. Per Gustav Blom

### 1.    Formalities.

Karstein Espelid took the Chair and Per Gustav Blom agreed to act as Secretary to the Meeting.

### 2.    Approval of minutes from Meeting held 1 February and 6 April, 2001.

The minutes from Meeting held on 1 February 2001 were approved and signed. The minutes from the Meeting held on 6 April 2001 were not available and will be distributed separately to the Directors.

### 3.    Sale of SMQI Inc. – present position – financial consequences.

Mr. Arne Selvik has informed the Chairman that the Stock Purchase Agreement with Hudson Marine Management Service has been signed subject to certain conditions being fulfilled. A copy of the agreement was tabled and considered by the Directors.

Without any supporting documentation, the exact consequences of a number of the clauses were unclear. The Chairman would therefore send a letter to Mr. Selvik asking for clarification of these clauses and Mr. Blom would check a number of issues separately with Mr. Erik Kappelin.

When these issues have been clarified, the Directors will consider whether execution of the agreement can be recommended to the ultimate shareholders of the Company.

Mr. Blom then tables a draft statement which the Company's auditor's has proposed be issued by the Board regarding the sale of SMQI, Inc. and the 2000 accounts. Pending clarification of the sale and exact implications of the Stock Purchase Agreement, the Directors are not in a position to sign this statement.

### 4.    Relationship to former employees – offer for final settlement.

The Chairman referred to the developments since the last Meeting, including advise from the US counsel that loans owed by former employees can be offset against their claims for pensions under the Non Qualified Pension Plan ("NQPP") and the reduction in service period assumed for two of the former employees.



SM 000783

The net effect of these developments, excluding the balances due from and owed to the former President, is that the Company's obligation has increased by about USD 37,000. The relation to the former President was discussed under item 5. It was

RESOLVED to recommend to the ultimate shareholders that outstanding balances to and from former employees, excluding the former President, be settled 100 % based on the calculation of pension obligations received from the actuary on 1 June 2001 and set out in a separate spreadsheet "SMCO Inc.: Outstanding balances NQPP personnel 01.06.01". A copy of this spreadsheet is annexed to these Minutes. It was further RESOLVED to recommend the ultimate shareholders to provide the necessary capital to implement such settlement.

**5.    Alternatives for enforcing claims against the former President of the Company.**

Per Gustav Blom informed the Meeting of the meeting that had taken place between Mr. John Wiik and Mr. Blom, acting for the Company, and Mr. Tom Østensen on 8 June and subsequent correspondence. No agreement had yet been reached. The positions can be summarised as follows:

- The Company's proposal was that all outstanding balances and issues would be settled by Mr. Østensen paying USD 150,000.

- Mr. Østensen has stated he will consider an agreement whereby he receives holiday pay due (USD 20 840) and all other balances and issues are offset.


# Redacted


. The ultimate shareholders will thereafter be asked to establish their minimum requirements for an agreement with Mr. Østensen.

**6.    Dispute with Coiffi and Hudson.**

The Chairman summarised the case. With reference to the resolution passed on 1 February 2001, it was

RESOLVED that the Company will not pursue or in any way engage in the lawsuit against Coiffi, Hudson or any other former employees of SMQI, Inc.

**7.    Dispute with Nayyar.**

The Chairman summarised the position. Mr. Nayyar lost his lawsuit against the Company and has not appealed. The Company does not have any obligation to take any further action in this case.

3

The Directors took due notice of the case which was closed unless Mr. Nayyar takes further action.

**8.    Proposal for liquidation of SMCO Inc.**

The Directors discussed the Company's position and various issues relating to the liquidation thoroughly. After careful consideration, the Directors

RESOLVED to recommend to the ultimate shareholders that they provide the capital necessary to liquidate the company based on full payment of all obligations except balances with Mr. Tom Østensen and subject to a satisfactory agreement regarding the sale of SMQI, Inc. This recommendation is based on the assumption that the Company's obligations are as set out in the enclosed table labelled "SMCO Inc. obligations 21.06.2001". Based on the documentation available, it is estimated that the Company will need a further USD 328,000 in capital in order to be liquidated, excluding the settlement with Mr. Østensen.

The Directors wish to present an offer for settlement to former employees excluding Mr. Østensen and to continue negotiations with Mr. Østensen in order to reach an agreement out of court.

The Company's US counsel will be asked to present a legal opinion on the Company's position versus Mr. Østensen and to prepare offers to the other former employees.

**9.    Any other business.**

Per Gustav Blom informed the Meeting of the recent development regarding two widows of former SMCO employees who have been receiving pensions from a Trust Fund established in 1959. This fund has been exhausted and was to be terminated in December 2000. Gard Services and Norwegian Hull Club, as ultimate shareholders, have decided they will honour these pensions obligations directly. The Directors took notice of this information.

Mr. Blom tabled draft accounts for the Company for 2000 prepared by the auditors. The Board will need specification of the various items on the balance sheet before considering the accounts.

# Redacted

There being no further business, the proceedings then concluded.

Karstein J. Espelid

(Chairman)

Tom Midttun                    Per Gustav Blom

SM 000785

Exhibit 6

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

SCANDINAVIAN MARINE CLAIMS
OFFICE, INC.,

*Plaintiff,*

- *against* -

SIRI OSTENSEN,

*Defendant,*

- *against* -

SCANDINAVIAN MARINE CLAIMS
OFFICE, INC., SCANDINAVIAN
UNDERWRITERS AGENCY, SCUA
AMERICAS, INC., S.M.C.O., A.S., AND
NORWEGIAN HULL CLUB,

*Counterclaim and Third-Party Defendants.*

MARGARET KILLIP,

*Plaintiff,*

- *against* -

SCANDINAVIAN MARINE CLAIMS
OFFICE, INC., SCANDINAVIAN
UNDERWRITERS AGENCY, SCUA
AMERICAS, INC., SCUA HOLDINGS, B.V.,
AND NORWEGIAN HULL CLUB,

*Defendants and  Third-Party Plaintiffs,*

- *against* -

TOM OSTENSEN

*Third-Party Defendant.*

Civil Action No. 3:02CV678 (RNC)

**DEFENDANT'S FIRST REQUEST FOR
DOCUMENTS TO PLAINTIFF AND
THIRD-PARTY DEFENDANTS**

Civil Action No. 3:02CV678 (RNC)

**THIRD-PARTY DEFENDANT'S FIRST
REQUEST FOR DOCUMENTS TO
DEFENDANTS AND THIRD-PARTY
PLAINTIFFS**

Defendant Siri Ostensen in her individual capacity and as the executrix of the estate of her husband, Tom Ostensen, by her undersigned counsel, request, pursuant to Federal Rules of Civil Procedure 26 and 34, that Scandinavian Marine Claims Office, Inc., Scandinavian Underwriters Agency, SCUA Americas, Inc., SMCO., A.S., SCUA Holdings, B.V. and Norwegian Hull Club, produce the following documents at the offices of Mrs. Ostensen's counsel, Schlam Stone & Dolan LLP, 26 Broadway, 19th Floor, New York, New York 10004 no later than May 2, 2005.

## DEFINITIONS

1.     The definitions applicable to discovery requests of Local Civil Rule 26(c) of the United States District Court for the District of Connecticut are incorporated herein by reference.

2.     "Complaint" means the Complaint filed in Civil Action No. 3:02CV678 (RNC) on May 22, 2003.

3.     "NHC" means Norwegian Hull Club and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of NHC or any of its affiliates.

4.     "Non-Qualified Plan" means the agreement dated June 13, 1995 between SMCO and Tom Ostensen.

5.     "SCUA" means Scandinavian Underwriters Agency and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUA or any of its affiliates.

2

6.    "SCUAA" means SCUA Americas, Inc. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUAA or any of its affiliates.

7.    "SCUA Holdings" means SCUA Holdings, B.V. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUA Holdings or any of its affiliates.

8.    "SMCO" means Scandinavian Marine Claims Office, Inc. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SMCO or any of its affiliates.

9.    "SMCO A.S." means SMCO A.S. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SMCO A.S. or any of its affiliates.

## INSTRUCTIONS

1.    The rules of construction of Local Civil Rule 26(d) of the United States District Court for the District of Connecticut are incorporated herein by reference.

2.    No request shall be construed to create a limitation upon any other request.

3.    Each document responsive to these requests is to be produced, along with any non-identical version thereof, including drafts.

3

4.    Except as discussed below with respect to audio and video files, documents stored on computers, magnetic tape or in a similar fashion shall, if possible, be printed and produced in printed form. If it is not possible to produce such documents in printed form, the documents should be produced on compact disk in a format that is readable and searchable using one of the Microsoft Office for Windows suite of programs. Such compact disk shall be labeled with the name(s) of the file(s) being produced and the computer program by which they were created.

5.    Audio and video files shall be produced on compact disk or digital video disk. Such disk shall be labeled with the name(s) of the file(s) being produced and the computer program by which they were created.

6.    The term "any" shall be construed as necessary to bring within the scope of these requests all documents, communications or subject matter that might otherwise be construed to be outside the scope of these requests.

7.    In producing the documents requested herein, indicate the specific request(s) in response to which each document or group of documents is being produced.

8.    With respect to each document withheld on a claim of privilege, provide a statement setting forth the information required by Local Civil Rule 37(a)(1) of the United States District Court for the District of Connecticut.

9.    This document request shall be construed as continuing in nature and your response thereto shall be supplemented if and as additional responsive materials become available.

10.    Unless otherwise directed, the time period covered by these requests is from January 1, 1990 to the present.

4

## DOCUMENTS TO BE PRODUCED

Subject to the foregoing definitions and instructions, Mrs. Ostensen requests the following documents:

1.    Documents sufficient to show the organization of NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. at all times from January 1, 1990 to the present, including, but not limited to, organization charts for each entity.

2.    Documents sufficient to show the ownership of NHC, SCUA, SCUAA, SCUA Holdings and SMCO A.S. including, but not limited to, the names of all persons or entities having an ownership interest in those parties at any time from January 1, 1990 to the present, when that interest was acquired and the percentage ownership of each entity at the end of each calendar or fiscal year.

3.    All documents relating to or concerning the business plans or strategic planning for NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. at all times from January 1, 1990 to the present.

4.    All documents relating to or concerning the ownership of SMCO including, but not limited to, the names of all persons or entities having an ownership interest in SMCO at any time from January 1, 1990 to the present, when that interest was acquired and the percentage ownership of each entity at the end of each calendar or fiscal year.

5.    Documents sufficient to identify each address or location from which NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. and each affiliate of those entities has operated at any time from January 1, 1990 to the present.

6.    Documents sufficient to identify the members of the board of directors or other similar governing body of NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO

5

A.S. at any time from January 1, 1990 to the present, including, but not limited to, each person's position.

      7.    Documents sufficient to identify the officers or managers of NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. at any time from January 1, 1990 to the present, including, but not limited to, each person's position.

      8.    All documents relating to or concerning the selection of the members of the board of directors or other similar governing body, officers or managers of SMCO including, but not limited to, the role of NHC, SCUA, SCUAA, SCUA Holdings and SMCO A.S. in such selection.

      9.    The minutes of all meetings of the board of directors or other similar governing body of NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. from January 1, 1990 to the present.

      10.    All documents relating to or concerning payments or guarantees of the debts of NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. or any of their employees, directors, or officers, including but not limited to their ability to issue or to honor such a guarantee.

      11.    All documents relating to or concerning the payment or guarantee by NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. of the debt of any other entity or individual.

      12.    All documents relating to or concerning the communications from the board of directors or other similar governing body, officers or managers of NHC, SCUA, SCUAA, SCUA Holdings and SMCO A.S. to the board of directors or other similar governing body, officers or managers of SMCO regarding the business of SMCO.

6

13.    All financial statements, whether audited or unaudited, of NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. from January 1, 1990 to the present.

14.    Documents sufficient to identify all accountants or auditors who have performed work for NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. at any time from January 1, 1990 to the present.

15.    All communications between NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. and any accountant or auditor engaged by any of them.

16.    All tax returns for NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. from January 1, 1990 to the present from January 1, 1990 to the present.

17.    All documents submitted by or on behalf of NHC, SCUA, SCUAA, SCUA Holdings, SMCO or SMCO A.S. to a lender or creditor (whether actual or prospective) pursuant to or as part of an application or request for a loan, credit or financing of any kind.

18.    All documents relating to or concerning the finances of SMCO from January 1, 1990 to the present.

19.    All communications relating to or concerning the capitalization or financial status of NHC, SCUA, SCUAA, SCUA Holdings, SMCO or SMCO A.S, including but not limited to their solvency or insolvency.

20.    All documents relating to or concerning the transfer of funds or other assets between or among NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. at any time from January 1, 1990 to the present, regardless of whether such transfer was carried out.

21.    Documents sufficient to identify every asset, including real property, chattel, securities, or pledges of NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S., or any of their affiliates.

7

22.    All bank statements, checks, drafts, wire transfer requests, vouchers, agreements, or other documents concerning the financial dealings between or among NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. at any time from January 1, 1990 to the present.

23.    Documents sufficient to identify all legal counsel who have provided legal advice to NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. regarding any transaction, litigation or other proceeding involving SMCO at any time from January 1, 1990 to the present, including, but not limited to, the identification of the entities who sought, received and paid for such advice.

24.    Documents sufficient to all legal expenses for SMCO from January 1, 1990 to the present including, but not limited to, the identity of the firm providing the legal work, the general subject matter of the work, the date and amount of each bill for legal work and the person or entity that paid each such bill.

25.    All documents relating to or concerning any transactions between or among NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. or any affiliates of those entities, including but not limited to agreements, contracts, invoices, bills, purchase orders and/or work orders, estimates, bank statements, wire transfer requests, vouchers, checks, drafts, promissory notes, loans, security agreements, liens, and attachments at any time from January 1, 1990 to the present.

26.    All documents relating to or concerning any potential or actual plans or discussions concerning the ceasing the expansion, acquisition, downsizing, termination or relocation of the operations of SMCO.

8

27.     All documents relating to or concerning the Non-Qualified Plan that were communicated to NHC, SCUA, SCUAA, SCUA Holdings, or SMCO A.S.

28.     All documents relating to or concerning the funding of the Non-Qualified Plan including, but not limited to, the promissory note referred to in the Complaint and life insurance policies on the lives of participants in the Non-Qualified Plan, that were communicated to NHC, SCUA, SCUAA, SCUA Holdings, or SMCO A.S.

29.     All documents relating to or concerning the ability of NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. to fulfill their obligations under the Non-Qualified Plan.

30.     All documents relating to or concerning public or private statements or claims by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. that SMCO is or was an agent of one or more of NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S., including, but not limited to, the scope of such agency.

31.     All documents relating to or concerning the assumption by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. of SMCO's obligations under the Non-Qualified Plan.

32.     All documents relating to or concerning the assumption by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. of SMCO's obligations other than the Non-Qualified Plan.

Dated: New York, New York
      March 31, 2005

Jeffrey M. Eisender (Bar No. CT 25177)
John M. Lundin (Bar No. phv0185)
**SCHLAM STONE & DOLAN**, LLP
26 Broadway, Suite 1900
New York, NY 10004
(212) 344-5400 (Telephone)
(212) 344-7677 (Facsimile)
*Attorneys for Siri Ostensen*

Sharon E. Jaffe (Bar. No. CT. 04623)
**LEVIN & GLASSER, PC**
P.O. Box 1098
Weston, CT  06883
(203) 221-3008 (Telephone)
(203)221-3010 (Facsimile)
*Attorneys for Siri Ostensen*

Exhibit 7

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SCANDINAVIAN MARINE CLAIMS OFFICE, INC., <br><br> *Plaintiff,* <br><br> - against - <br><br> SIRI OSTENSEN, <br><br> *Defendant,* <br><br> - against - <br><br> SCANDINAVIAN MARINE CLAIMS OFFICE, INC., SCANDINAVIAN UNDERWRITERS AGENCY, SCUA AMERICAS, INC., S.M.C.O., A.S., AND NORWEGIAN HULL CLUB, <br><br> *Counterclaim and Third-Party Defendants.* | Civil Action No. 3:02CV678 (RNC) <br><br> **DEFENDANT'S FIRST INTERROGATORIES TO SCANDINAVIAN MARINE CLAIMS OFFICE, INC.** |
| MARGARET KILLIP, <br><br> *Plaintiff,* <br><br> - against - <br><br> SCANDINAVIAN MARINE CLAIMS OFFICE, INC., SCANDINAVIAN UNDERWRITERS AGENCY, SCUA AMERICAS, INC., SCUA HOLDINGS, B.V., AND NORWEGIAN HULL CLUB, <br><br> *Defendants and Third-Party Plaintiffs,* <br><br> - against - <br><br> TOM OSTENSEN, <br><br> *Third-Party Defendant.* | Civil Action No. 3:02CV678 (RNC) <br><br> **DEFENDANT'S FIRST INTERROGATORIES TO SCANDINAVIAN MARINE CLAIMS OFFICE, INC.** |

Defendant Siri Ostensen in her individual capacity and as the executrix of the estate of her husband, Tom Ostensen, by her undersigned counsel, requests, pursuant to Federal Rules of Civil Procedure 26 and 33, that Plaintiff Scandinavian Marine Claims Office answer the following Interrogatories no later than May 2, 2005.

## DEFINITIONS

1.     The definitions applicable to discovery requests of Local Civil Rule 26(c) of the United States District Court for the District of Connecticut are incorporated herein by reference.

2.     "Complaint" means the Complaint filed in Civil Action No. 3:02CV678 (RNC) on May 22, 2003.

3.     "NHC" means Norwegian Hull Club and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of NHC or any of its affiliates.

4.     "Non-Qualified Plan" means the agreement dated June 13, 1995 between SMCO and Tom Ostensen.

5.     "SCUA" means Scandinavian Underwriters Agency and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUA or any of its affiliates.

6.     "SCUAA" means SCUA Americas, Inc. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or

2

any person or entity holding himself or itself out to be affiliated with or acting on behalf of
SCUAA or any of its affiliates.

       7.      "SCUA Holdings" means SCUA Holdings, B.V. and any agent,
subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder,
principal, or any person or entity holding himself or itself out to be affiliated with or acting on
behalf of SCUA Holdings or any of its affiliates.

       8.      "SMCO" means Scandinavian Marine Claims Office, Inc. and any agent,
subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder,
principal, or any person or entity holding himself or itself out to be affiliated with or acting on
behalf of SMCO or any of its affiliates.

       9.      "SMCO A.S." means SMCO A.S. and any agent, subsidiary, affiliate,
parent, employee, officer, director, attorney, representative, shareholder, principal, or any person
or entity holding himself or itself out to be affiliated with or acting on behalf of SMCO A.S. or
any of its affiliates.

## INSTRUCTIONS

       1.      The rules of construction of Local Civil Rule 26(d) of the United States
District Court for the District of Connecticut are incorporated herein by reference.

       2.      Answer each interrogatory separately and under oath.  If any answer is
based upon information and belief rather than personal knowledge, such answer shall state that it
is made on that basis.

       3.      If you believe that any of these interrogatories cannot be answered in full,
then answer to the fullest extent possible, specify each reason for your belief or your inability to

answer the remainder of the interrogatory, and state whatever information or knowledge you have concerning the unanswered portion.

4.    In answering these interrogatories, furnish such information as is available to you regardless of whether it is not based on personal knowledge or records of you, your agents and representatives or others.

5.    No request shall be construed to create a limitation upon any other request.

6.    The term "any" shall be construed as necessary to bring within the scope of these requests all matters, communications or subject matter that might otherwise be construed to be outside the scope of these requests.

7.    If you decline to answer any interrogatory, in whole or in part, on the ground of any evidentiary privilege or discovery exclusion, (a) state the basis for assertion of the privilege or exclusionary principle, and (b) give a summary statement of the date, author, recipient, custodian (if applicable) and subject matter of the communication in sufficient detail to permit the Court to reach a determination in the event of a motion to compel.

8.    These interrogatories shall be construed as continuing in nature and your response thereto shall be supplemented if and as additional responsive materials become available.

9.    Unless otherwise directed, the time period covered by these interrogatories is from January 1, 1990 to the present.

### INTERROGATORIES

Subject to the foregoing definitions and instructions, Mrs. Ostensen requests that SMCO respond to the following interrogatories:

1.     Identify all persons who have, or who have had, an ownership interest in SMCO any time from January 1, 1990 to the present including, but not limited to, the names and business addresses of all persons or entities having an ownership interest in SMCO, when that interest was acquired (and, if applicable, divested) and the percentage ownership of each entity at the end of each calendar or fiscal year.

2.     Identify each address or location from which SMCO and each affiliate of SMCO has operated at any time from January 1, 1990 to the present.

3.     Identify the members of the board of directors or other similar governing body of SMCO at any time from January 1, 1990 to the present, including, but not limited to, each person's position.

4.     Identify the officers or managers of SMCO at any time from January 1, 1990 to the present, including, but not limited to, each person's position.

5.     Identify all accountants or auditors who have performed work for SMCO at any time from January 1, 1990 to the present.

6.     Identify all legal counsel who have provided legal advice to SMCO at any time from January 1, 1990 to the present.

7.     List all funds or other assets transferred between or among SMCO, on the one hand, and NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S., on the other, at any time from January 1, 1990 to the present.

8.     Identify the four persons most knowledgeable regarding the transfer of funds or other assets between or among SMCO, on the one hand, and NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S., on the other, at any time from January 1, 1990 to the present.

5

9.      List all assets and obligations of SMCO, including real property, chattel, securities, or pledges.

10.     Identify all obligations of SMCO that have been assumed by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. at any time from January 1, 1990 to the present.

11.     Identify the four persons most knowledgeable regarding the assumption of SMCO's obligations by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. at any time from January 1, 1990 to the present.

12.     Identify all obligations of NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. that have been assumed by SMCO at any time from January 1, 1990 to the present.

13.     Identify the four persons most knowledgeable regarding the assumption of NHC, SCUA, SCUAA, SCUA Holdings and/or SMCO A.S.'s obligations by SMCO at any time from January 1, 1990 to the present.

14.     Identify all persons involved in the negotiation and drafting of the Non-Qualified Plan, including a summary of each such person's involvement.

15.     Identify when NHC, SCUA, SCUAA, SCUA Holdings and SMCO A.S. first learned of the existence and terms of the Non-Qualified Plan, including, but not limited to, SMCO's obligations under the Non-Qualified Plan, including the identify of the NHC, SCUA, SCUAA, SCUA Holdings and SMCO A.S. employees who first learned of the Non-Qualified Plan.

16.     Identify the five persons most knowledgeable regarding the funding of the Non-Qualified Plan including, but not limited to, the promissory note referred to in the Complaint and life insurance policies on the lives of participants in the Non-Qualified Plan, and

6

the communication of that information to NHC, SCUA, SCUAA, SCUA Holdings, or SMCO A.S.

Dated: New York, New York
       March 31, 2005

_____
Jeffrey M. Eilender (Bar. No. CT 25177)
John M. Lundin (Bar No. phv0185)
**SCHLAM STONE & DOLAN**, LLP
26 Broadway, Suite 1900
New York, NY 10004
(212) 344-5400 (Telephone)
(212) 344-7677 (Facsimile)
*Attorneys for Siri Ostensen*

Sharon E. Jaffe (Bar. No. CT. 04623)
**LEVIN & GLASSER, PC**
P.O. Box 1098
Weston, CT  06883
(203) 221-3008 (Telephone)
(203)221-3010 (Facsimile)
*Attorneys for Siri Ostensen*