Exhibit 8

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SCANDINAVIAN MARINE CLAIMS OFFICE, INC., <br><br> *Plaintiff,* <br><br> - against - <br><br> SIRI OSTENSEN, <br><br> *Defendant,* <br><br> - against - <br><br> SCANDINAVIAN MARINE CLAIMS OFFICE, INC., SCANDINAVIAN UNDERWRITERS AGENCY, SCUA AMERICAS, INC., S.M.C.O., A.S., AND NORWEGIAN HULL CLUB, <br><br> *Counterclaim and Third-Party Defendants.* | Civil Action No. 3:02CV678 (RNC) <br><br> **DEFENDANT'S FIRST INTERROGATORIES TO SCANDINAVIAN UNDERWRITERS AGENCY** |
| MARGARET KILLIP, <br><br> *Plaintiff,* <br><br> - against - <br><br> SCANDINAVIAN MARINE CLAIMS OFFICE, INC., SCANDINAVIAN UNDERWRITERS AGENCY, SCUA AMERICAS, INC., SCUA HOLDINGS, B.V., AND NORWEGIAN HULL CLUB, <br><br> *Defendants and  Third-Party Plaintiffs,* <br><br> - against - <br><br> TOM OSTENSEN <br><br> *Third-Party Defendant.* | Civil Action No. 3:02CV678 (RNC) <br><br> **DEFENDANT'S FIRST INTERROGATORIES TO SCANDINAVIAN UNDERWRITERS AGENCY** |

Defendant Siri Ostensen in her individual capacity and as the executrix of the estate of her husband, Tom Ostensen, by her undersigned counsel, requests, pursuant to Federal Rules of Civil Procedure 26 and 33, that Third-Party Defendant/Third-Party Plaintiff Scandinavian Underwriters Agency answer the following Interrogatories no later than May 2, 2005.

## DEFINITIONS

1.     The definitions applicable to discovery requests of Local Civil Rule 26(c) of the United States District Court for the District of Connecticut are incorporated herein by reference.

2.     "Complaint" means the Complaint filed in Civil Action No. 3:02CV678 (RNC) on May 22, 2003.

3.     "NHC" means Norwegian Hull Club and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of NHC or any of its affiliates.

4.     "Non-Qualified Plan" means the agreement dated June 13, 1995 between SMCO and Tom Ostensen.

5.     "SCUA" means Scandinavian Underwriters Agency and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUA or any of its affiliates.

6.     "SCUAA" means SCUA Americas, Inc. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or

2

any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUAA or any of its affiliates.

   7.  "SCUA Holdings" means SCUA Holdings, B.V. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUA Holdings or any of its affiliates.

   8.  "SMCO" means Scandinavian Marine Claims Office, Inc. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SMCO or any of its affiliates.

   9.  "SMCO A.S." means SMCO A.S. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SMCO A.S. or any of its affiliates.

<div align="center">

**INSTRUCTIONS**

</div>

   1.  The rules of construction of Local Civil Rule 26(d) of the United States District Court for the District of Connecticut are incorporated herein by reference.

   2.  Answer each interrogatory separately and under oath.  If any answer is based upon information and belief rather than personal knowledge, such answer shall state that it is made on that basis.

   3.  If you believe that any of these interrogatories cannot be answered in full, then answer to the fullest extent possible, specify each reason for your belief or your inability to

<div align="center">3</div>

answer the remainder of the interrogatory, and state whatever information or knowledge you have concerning the unanswered portion.

      4.     In answering these interrogatories, furnish such information as is available to you regardless of whether it is not based on personal knowledge or records of you, your agents and representatives or others.

      5.     No request shall be construed to create a limitation upon any other request.

      6.     The term "any" shall be construed as necessary to bring within the scope of these requests all matters, communications or subject matter that might otherwise be construed to be outside the scope of these requests.

      7.     If you decline to answer any interrogatory, in whole or in part, on the ground of any evidentiary privilege or discovery exclusion, (a) state the basis for assertion of the privilege or exclusionary principle, and (b) give a summary statement of the date, author, recipient, custodian (if applicable) and subject matter of the communication in sufficient detail to permit the Court to reach a determination in the event of a motion to compel.

      8.     These interrogatories shall be construed as continuing in nature and your response thereto shall be supplemented if and as additional responsive materials become available.

      9.     Unless otherwise directed, the time period covered by these interrogatories is from January 1, 1990 to the present.

## INTERROGATORIES

      Subject to the foregoing definitions and instructions, Mrs. Ostensen requests that SCUA respond to the following interrogatories:

1.    Identify all persons who have, or who have had, an ownership interest in SCUA any time from January 1, 1990 to the present including, but not limited to, the names and business addresses of all persons or entities having an ownership interest in SCUA, when that interest was acquired (and, if applicable, divested) and the percentage ownership of each person or entity at the end of each calendar or fiscal year.

2.    Identify SCUA's ownership interest in NHC, SCUAA, SCUA Holdings, SMCO and SMCO A.S. any time from January 1, 1990 to the present including, but not limited to, when that interest was acquired (and, if applicable, divested) and the percentage ownership of SCUA in each entity at the end of each calendar or fiscal year.

3.    Identify each address or location from which SCUA and each affiliate of SCUA has operated at any time from January 1, 1990 to the present.

4.    Identify the members of the board of directors or other similar governing body of SCUA at any time from January 1, 1990 to the present, including, but not limited to, each person's position.

5.    Identify the officers or managers of SCUA at any time from January 1, 1990 to the present, including, but not limited to, each person's position.

6.    Identify all accountants or auditors who have performed work for SCUA at any time from January 1, 1990 to the present.

7.    Identify all legal counsel who have provided legal advice to SCUA at any time from January 1, 1990 to the present.

8.    List all funds or other assets transferred between or among SMCO, on the one hand, and NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S., on the other, at any time from January 1, 1990 to the present.

5

9.     Identify the four persons most knowledgeable regarding the transfer of funds or other assets between or among SMCO, on the one hand, and NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S., on the other, at any time from January 1, 1990 to the present.

10.    List all assets and obligations of SCUA, including real property, chattel, securities, or pledges.

11.    Identify all obligations of SMCO that have been assumed by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. at any time from January 1, 1990 to the present.

12.    Identify the four persons most knowledgeable regarding the assumption of SMCO's obligations by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. at any time from January 1, 1990 to the present.

13.    Identify all obligations of NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. that have been assumed by SMCO at any time from January 1, 1990 to the present.

14.    Identify the four persons most knowledgeable regarding the assumption of NHC, SCUA, SCUAA, SCUA Holdings and/or SMCO A.S.'s obligations by SMCO at any time from January 1, 1990 to the present.

15.    Identify when SCUA first learned of the existence and terms of the Non-Qualified Plan, including, but not limited to, SMCO's obligations under the Non-Qualified Plan, including the identify of the SCUA employees who first learned of the Non-Qualified Plan.

16.    Identify the five persons most knowledgeable regarding the funding of the Non-Qualified Plan including, but not limited to, the promissory note referred to in the Complaint and life insurance policies on the lives of participants in the Non-Qualified Plan, and the communication of that information to NHC, SCUA, SCUAA, SCUA Holdings, or SMCO A.S.

6

Dated: New York, New York
      March 31, 2005

Jeffrey M. Ellender (Bar. No. CT 25177)
John M. Lundin (Bar No. phv0185)
**SCHLAM STONE & DOLAN**, LLP
26 Broadway, Suite 1900
New York, NY 10004
(212) 344-5400 (Telephone)
(212) 344-7677 (Facsimile)
*Attorneys for Siri Ostensen*

Sharon E. Jaffe (Bar. No. CT. 04623)
**LEVIN & GLASSER, PC**
P.O. Box 1098
Weston, CT  06883
(203) 221-3008 (Telephone)
(203) 221-3010 (Facsimile)
*Attorneys for Siri Ostensen*

Exhibit 9

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SCANDINAVIAN MARINE CLAIMS OFFICE, INC.,<br><br>*Plaintiff,*<br><br>- against -<br><br>SIRI OSTENSEN,<br><br>*Defendant,*<br><br>- against -<br><br>SCANDINAVIAN MARINE CLAIMS OFFICE, INC., SCANDINAVIAN UNDERWRITERS AGENCY, SCUA AMERICAS, INC., S.M.C.O., A.S., AND NORWEGIAN HULL CLUB,<br><br>*Counterclaim and Third-Party Defendants.* | Civil Action No. 3:02CV678 (RNC)<br><br>**DEFENDANT'S FIRST INTERROGATORIES TO SCUA AMERICAS, INC.** |
| MARGARET KILLIP,<br><br>*Plaintiff,*<br><br>- against -<br><br>SCANDINAVIAN MARINE CLAIMS OFFICE, INC., SCANDINAVIAN UNDERWRITERS AGENCY, SCUA AMERICAS, INC., SCUA HOLDINGS, B.V., AND NORWEGIAN HULL CLUB,<br><br>*Defendants and Third-Party Plaintiffs,*<br><br>- against -<br><br>TOM OSTENSEN<br><br>*Third-Party Defendant.* | Civil Action No. 3:02CV678 (RNC)<br><br>**DEFENDANT'S FIRST INTERROGATORIES TO SCUA AMERICAS, INC.** |

Defendant Siri Ostensen in her individual capacity and as the executrix of the estate of her husband, Tom Ostensen, by her undersigned counsel, requests, pursuant to Federal Rules of Civil Procedure 26 and 33, that Third-Party Defendant/Third-Party Plaintiff SCUA Americas, Inc. answer the following Interrogatories no later than May 2, 2005.

## DEFINITIONS

1.       The definitions applicable to discovery requests of Local Civil Rule 26(c) of the United States District Court for the District of Connecticut are incorporated herein by reference.

2.       "Complaint" means the Complaint filed in Civil Action No. 3:02CV678 (RNC) on May 22, 2003.

3.       "NHC" means Norwegian Hull Club and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of NHC or any of its affiliates.

4.       "Non-Qualified Plan" means the agreement dated June 13, 1995 between SMCO and Tom Ostensen.

5.       "SCUA" means Scandinavian Underwriters Agency and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUA or any of its affiliates.

6.       "SCUAA" means SCUA Americas, Inc. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or

2

any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUAA or any of its affiliates.

       7.     "SCUA Holdings" means SCUA Holdings, B.V. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUA Holdings or any of its affiliates.

       8.     "SMCO" means Scandinavian Marine Claims Office, Inc. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SMCO or any of its affiliates.

       9.     "SMCO A.S." means SMCO A.S. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SMCO A.S. or any of its affiliates.

### INSTRUCTIONS

       1.     The rules of construction of Local Civil Rule 26(d) of the United States District Court for the District of Connecticut are incorporated herein by reference.

       2.     Answer each interrogatory separately and under oath. If any answer is based upon information and belief rather than personal knowledge, such answer shall state that it is made on that basis.

       3.     If you believe that any of these interrogatories cannot be answered in full, then answer to the fullest extent possible, specify each reason for your belief or your inability to

answer the remainder of the interrogatory, and state whatever information or knowledge you have concerning the unanswered portion.

4.    In answering these interrogatories, furnish such information as is available to you regardless of whether it is not based on personal knowledge or records of you, your agents and representatives or others.

5.    No request shall be construed to create a limitation upon any other request.

6.    The term "any" shall be construed as necessary to bring within the scope of these requests all matters, communications or subject matter that might otherwise be construed to be outside the scope of these requests.

7.    If you decline to answer any interrogatory, in whole or in part, on the ground of any evidentiary privilege or discovery exclusion, (a) state the basis for assertion of the privilege or exclusionary principle, and (b) give a summary statement of the date, author, recipient, custodian (if applicable) and subject matter of the communication in sufficient detail to permit the Court to reach a determination in the event of a motion to compel.

8.    These interrogatories shall be construed as continuing in nature and your response thereto shall be supplemented if and as additional responsive materials become available.

9.    Unless otherwise directed, the time period covered by these interrogatories is from January 1, 1990 to the present.

### INTERROGATORIES

Subject to the foregoing definitions and instructions, Mrs. Ostensen requests that SCUAA respond to the following interrogatories:

4

1.      Identify all persons who have, or who have had, an ownership interest in SCUAA any time from January 1, 1990 to the present including, but not limited to, the names and business addresses of all persons or entities having an ownership interest in SCUAA, when that interest was acquired (and, if applicable, divested) and the percentage ownership of each person or entity at the end of each calendar or fiscal year.

2.      Identify SCUAA's ownership interest in NHC, SCUA, SCUA Holdings, SMCO and SMCO A.S. any time from January 1, 1990 to the present including, but not limited to, when that interest was acquired (and, if applicable, divested) and the percentage ownership of SCUAA in each entity at the end of each calendar or fiscal year.

3.      Identify each address or location from which SCUAA and each affiliate of SCUAA has operated at any time from January 1, 1990 to the present.

4.      Identify the members of the board of directors or other similar governing body of SCUAA at any time from January 1, 1990 to the present, including, but not limited to, each person's position.

5.      Identify the officers or managers of SCUAA at any time from January 1, 1990 to the present, including, but not limited to, each person's position.

6.      Identify all accountants or auditors who have performed work for SCUAA at any time from January 1, 1990 to the present.

7.      Identify all legal counsel who have provided legal advice to SCUAA at any time from January 1, 1990 to the present.

8.      List all funds or other assets transferred between or among SMCO, on the one hand, and NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S., on the other, at any time from January 1, 1990 to the present.

9.      Identify the four persons most knowledgeable regarding the transfer of funds or other assets between or among SMCO, on the one hand, and NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S., on the other, at any time from January 1, 1990 to the present.

10.     List all assets and obligations of SCUAA, including real property, chattel, securities, or pledges.

11.     Identify all obligations of SMCO that have been assumed by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. at any time from January 1, 1990 to the present.

12.     Identify the four persons most knowledgeable regarding the assumption of SMCO's obligations by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. at any time from January 1, 1990 to the present.

13.     Identify all obligations of NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. that have been assumed by SMCO at any time from January 1, 1990 to the present.

14.     Identify the four persons most knowledgeable regarding the assumption of NHC, SCUA, SCUAA, SCUA Holdings and/or SMCO A.S.'s obligations by SMCO at any time from January 1, 1990 to the present.

15.     Identify when SCUAA first learned of the existence and terms of the Non-Qualified Plan, including, but not limited to, SMCO's obligations under the Non-Qualified Plan, including the identify of the SCUAA employees who first learned of the Non-Qualified Plan.

16.     Identify the five persons most knowledgeable regarding the funding of the Non-Qualified Plan including, but not limited to, the promissory note referred to in the Complaint and life insurance policies on the lives of participants in the Non-Qualified Plan, and the communication of that information to NHC, SCUA, SCUAA, SCUA Holdings, or SMCO A.S.

6

Dated: New York, New York
      March 31, 2005

<div style="margin-left:45%">

_____
Jeffrey M. Eisender (Bar. No. CT 25177)
John M. Lundin (Bar No. phv0185)
**SCHLAM STONE & DOLAN**, LLP
26 Broadway, Suite 1900
New York, NY 10004
(212) 344-5400 (Telephone)
(212) 344-7677 (Facsimile)
*Attorneys for Siri Ostensen*

Sharon E. Jaffe (Bar. No. CT. 04623)
**LEVIN & GLASSER, PC**
P.O. Box 1098
Weston, CT 06883
(203) 221-3008 (Telephone)
(203)221-3010 (Facsimile)
*Attorneys for Siri Ostensen*

</div>

Exhibit 10

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

SCANDINAVIAN MARINE CLAIMS
OFFICE, INC.,

*Plaintiff,*

- *against* -

SIRI OSTENSEN,

*Defendant,*

- *against* -

SCANDINAVIAN MARINE CLAIMS
OFFICE, INC., SCANDINAVIAN
UNDERWRITERS AGENCY, SCUA
AMERICAS, INC., S.M.C.O., A.S., AND
NORWEGIAN HULL CLUB,

*Counterclaim and Third-Party Defendants.*

Civil Action No. 3:02CV678 (RNC)

### DEFENDANT'S FIRST
### INTERROGATORIES TO S.M.C.O., A.S.

Defendant Siri Ostensen in her individual capacity and as the executrix of the

estate of her husband, Tom Ostensen, by her undersigned counsel, requests, pursuant to Federal

Rules of Civil Procedure 26 and 33, that Third-Party Defendant S.M.C.O., A.S. answer the

following Interrogatories no later than May 2, 2005.

### DEFINITIONS

1.      The definitions applicable to discovery requests of Local Civil Rule 26(c)

of the United States District Court for the District of Connecticut are incorporated herein by

reference.

2.      "Complaint" means the Complaint filed in Civil Action No. 3:02CV678

(RNC) on May 22, 2003.

3.     "NHC" means Norwegian Hull Club and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of NHC or any of its affiliates.

4.     "Non-Qualified Plan" means the agreement dated June 13, 1995 between SMCO and Tom Ostensen.

5.     "SCUA" means Scandinavian Underwriters Agency and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUA or any of its affiliates.

6.     "SCUAA" means SCUA Americas, Inc. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUAA or any of its affiliates.

7.     "SCUA Holdings" means SCUA Holdings, B.V. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUA Holdings or any of its affiliates.

8.     "SMCO" means Scandinavian Marine Claims Office, Inc. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SMCO or any of its affiliates.

9.    "SMCO A.S." means SMCO A.S. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SMCO A.S. or any of its affiliates.

## INSTRUCTIONS

1.    The rules of construction of Local Civil Rule 26(d) of the United States District Court for the District of Connecticut are incorporated herein by reference.

2.    Answer each interrogatory separately and under oath.  If any answer is based upon information and belief rather than personal knowledge, such answer shall state that it is made on that basis.

3.    If you believe that any of these interrogatories cannot be answered in full, then answer to the fullest extent possible, specify each reason for your belief or your inability to answer the remainder of the interrogatory, and state whatever information or knowledge you have concerning the unanswered portion.

4.    In answering these interrogatories, furnish such information as is available to you regardless of whether it is not based on personal knowledge or records of you, your agents and representatives or others.

5.    No request shall be construed to create a limitation upon any other request.

6.    The term "any" shall be construed as necessary to bring within the scope of these requests all matters, communications or subject matter that might otherwise be construed to be outside the scope of these requests.

7.    If you decline to answer any interrogatory, in whole or in part, on the ground of any evidentiary privilege or discovery exclusion, (a) state the basis for assertion of the

3

privilege or exclusionary principle, and (b) give a summary statement of the date, author, recipient, custodian (if applicable) and subject matter of the communication in sufficient detail to permit the Court to reach a determination in the event of a motion to compel.

        8.     These interrogatories shall be construed as continuing in nature and your response thereto shall be supplemented if and as additional responsive materials become available.

        9.     Unless otherwise directed, the time period covered by these interrogatories is from January 1, 1990 to the present.

## INTERROGATORIES

        Subject to the foregoing definitions and instructions, Mrs. Ostensen requests that S.M.C.O., A.S. respond to the following interrogatories:

        1.     Identify all persons who have, or who have had, an ownership interest in S.M.C.O., A.S. any time from January 1, 1990 to the present including, but not limited to, the names and business addresses of all persons or entities having an ownership interest in S.M.C.O., A.S., when that interest was acquired (and, if applicable, divested) and the percentage ownership of each person or entity at the end of each calendar or fiscal year.

        2.     Identify S.M.C.O., A.S.'s ownership interest in NHC, SCUA, SCUAA, SCUA Holdings and SMCO any time from January 1, 1990 to the present including, but not limited to, when that interest was acquired (and, if applicable, divested) and the percentage ownership of S.M.C.O., A.S. in each entity at the end of each calendar or fiscal year.

        3.     Identify each address or location from which S.M.C.O., A.S. and each affiliate of S.M.C.O., A.S. has operated at any time from January 1, 1990 to the present.

4.    Identify the members of the board of directors or other similar governing body of S.M.C.O., A.S. at any time from January 1, 1990 to the present, including, but not limited to, each person's position.

5.    Identify the officers or managers of S.M.C.O., A.S. at any time from January 1, 1990 to the present, including, but not limited to, each person's position.

6.    Identify all accountants or auditors who have performed work for S.M.C.O., A.S. at any time from January 1, 1990 to the present.

7.    Identify all legal counsel who have provided legal advice to S.M.C.O., A.S. at any time from January 1, 1990 to the present.

8.    List all funds or other assets transferred between or among SMCO, on the one hand, and NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S., on the other, at any time from January 1, 1990 to the present.

9.    Identify the four persons most knowledgeable regarding the transfer of funds or other assets between or among SMCO, on the one hand, and NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S., on the other, at any time from January 1, 1990 to the present.

10.    List all assets and obligations of S.M.C.O., A.S., including real property, chattel, securities, or pledges.

11.    Identify all obligations of SMCO that have been assumed by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. at any time from January 1, 1990 to the present.

12.    Identify the four persons most knowledgeable regarding the assumption of SMCO's obligations by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. at any time from January 1, 1990 to the present.

5

13.     Identify all obligations of NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. that have been assumed by SMCO at any time from January 1, 1990 to the present.

14.     Identify the four persons most knowledgeable regarding the assumption of NHC, SCUA, SCUAA, SCUA Holdings and/or SMCO A.S.'s obligations by SMCO at any time from January 1, 1990 to the present.

15.     Identify when S.M.C.O., A.S. first learned of the existence and terms of the Non-Qualified Plan, including, but not limited to, SMCO's obligations under the Non-Qualified Plan, including the identify of the S.M.C.O., A.S. employees who first learned of the Non-Qualified Plan.

16.     Identify the five persons most knowledgeable regarding the funding of the Non-Qualified Plan including, but not limited to, the promissory note referred to in the Complaint and life insurance policies on the lives of participants in the Non-Qualified Plan, and the communication of that information to NHC, SCUA, SCUAA, SCUA Holdings, or SMCO A.S.

.

Exhibit 11

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

SCANDINAVIAN MARINE CLAIMS
OFFICE, INC.,

*Plaintiff,*

- *against* -

SIRI OSTENSEN,

*Defendant,*

- *against* -

SCANDINAVIAN MARINE CLAIMS
OFFICE, INC., SCANDINAVIAN
UNDERWRITERS AGENCY, SCUA
AMERICAS, INC., S.M.C.O., A.S., AND
NORWEGIAN HULL CLUB,

*Counterclaim and Third-Party Defendants.*

MARGARET KILLIP,

*Plaintiff,*

- *against* -

SCANDINAVIAN MARINE CLAIMS
OFFICE, INC., SCANDINAVIAN
UNDERWRITERS AGENCY, SCUA
AMERICAS, INC., SCUA HOLDINGS, B.V.,
AND NORWEGIAN HULL CLUB,

*Defendants and  Third-Party Plaintiffs,*

- *against* -

TOM OSTENSEN

*Third-Party Defendant.*

Civil Action No. 3:02CV678 (RNC)

**DEFENDANT'S FIRST
INTERROGATORIES TO NORWEGIAN
HULL CLUB**

Civil Action No. 3:02CV678 (RNC)

**DEFENDANT'S FIRST
INTERROGATORIES TO NORWEGIAN
HULL CLUB**

Defendant Siri Ostensen in her individual capacity and as the executrix of the estate of her husband, Tom Ostensen, by her undersigned counsel, requests, pursuant to Federal Rules of Civil Procedure 26 and 33, that Third-Party Defendant/Third-Party Plaintiff Norwegian Hull Club answer the following Interrogatories no later than May 2, 2005.

## DEFINITIONS

1.     The definitions applicable to discovery requests of Local Civil Rule 26(c) of the United States District Court for the District of Connecticut are incorporated herein by reference.

2.     "Complaint" means the Complaint filed in Civil Action No. 3:02CV678 (RNC) on May 22, 2003.

3.     "NHC" means Norwegian Hull Club and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of NHC or any of its affiliates.

4.     "Non-Qualified Plan" means the agreement dated June 13, 1995 between SMCO and Tom Ostensen.

5.     "SCUA" means Scandinavian Underwriters Agency and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUA or any of its affiliates.

6.     "SCUAA" means SCUA Americas, Inc. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or

2

any person or entity holding himself or itself out to be affiliated with or acting on behalf of
SCUAA or any of its affiliates.

       7.     "SCUA Holdings" means SCUA Holdings, B.V. and any agent,
subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder,
principal, or any person or entity holding himself or itself out to be affiliated with or acting on
behalf of SCUA Holdings or any of its affiliates.

       8.     "SMCO" means Scandinavian Marine Claims Office, Inc. and any agent,
subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder,
principal, or any person or entity holding himself or itself out to be affiliated with or acting on
behalf of SMCO or any of its affiliates.

       9.     "SMCO A.S." means SMCO A.S. and any agent, subsidiary, affiliate,
parent, employee, officer, director, attorney, representative, shareholder, principal, or any person
or entity holding himself or itself out to be affiliated with or acting on behalf of SMCO A.S. or
any of its affiliates.

### INSTRUCTIONS

       1.     The rules of construction of Local Civil Rule 26(d) of the United States
District Court for the District of Connecticut are incorporated herein by reference.

       2.     Answer each interrogatory separately and under oath. If any answer is
based upon information and belief rather than personal knowledge, such answer shall state that it
is made on that basis.

       3.     If you believe that any of these interrogatories cannot be answered in full,
then answer to the fullest extent possible, specify each reason for your belief or your inability to

answer the remainder of the interrogatory, and state whatever information or knowledge you have concerning the unanswered portion.

   4.  In answering these interrogatories, furnish such information as is available to you regardless of whether it is not based on personal knowledge or records of you, your agents and representatives or others.

   5.  No request shall be construed to create a limitation upon any other request.

   6.  The term "any" shall be construed as necessary to bring within the scope of these requests all matters, communications or subject matter that might otherwise be construed to be outside the scope of these requests.

   7.  If you decline to answer any interrogatory, in whole or in part, on the ground of any evidentiary privilege or discovery exclusion, (a) state the basis for assertion of the privilege or exclusionary principle, and (b) give a summary statement of the date, author, recipient, custodian (if applicable) and subject matter of the communication in sufficient detail to permit the Court to reach a determination in the event of a motion to compel.

   8.  These interrogatories shall be construed as continuing in nature and your response thereto shall be supplemented if and as additional responsive materials become available.

   9.  Unless otherwise directed, the time period covered by these interrogatories is from January 1, 1990 to the present.

## **INTERROGATORIES**

   Subject to the foregoing definitions and instructions, Mrs. Ostensen requests that NHC respond to the following interrogatories:

1.      Identify all persons who have, or who have had, an ownership interest in NHC any time from January 1, 1990 to the present including, but not limited to, the names and business addresses of all persons or entities having an ownership interest in NHC, when that interest was acquired (and, if applicable, divested) and the percentage ownership of each person or entity at the end of each calendar or fiscal year.

2.      Identify NHC's ownership interest in SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. any time from January 1, 1990 to the present including, but not limited to, when that interest was acquired (and, if applicable, divested) and the percentage ownership of NHC in each entity at the end of each calendar or fiscal year.

3.      Identify each address or location from which NHC and each affiliate of NHC has operated at any time from January 1, 1990 to the present.

4.      Identify the members of the board of directors or other similar governing body of NHC at any time from January 1, 1990 to the present, including, but not limited to, each person's position.

5.      Identify the officers or managers of NHC at any time from January 1, 1990 to the present, including, but not limited to, each person's position.

6.      Identify all accountants or auditors who have performed work for NHC at any time from January 1, 1990 to the present.

7.      Identify all legal counsel who have provided legal advice to NHC at any time from January 1, 1990 to the present.

8.      List all funds or other assets transferred between or among SMCO, on the one hand, and NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S., on the other, at any time from January 1, 1990 to the present.

5

9.   Identify the four persons most knowledgeable regarding the transfer of funds or other assets between or among SMCO, on the one hand, and NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S., on the other, at any time from January 1, 1990 to the present.

10.   List all assets and obligations of NHC, including real property, chattel, securities, or pledges.

11.   Identify all obligations of SMCO that have been assumed by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. at any time from January 1, 1990 to the present.

12.   Identify the four persons most knowledgeable regarding the assumption of SMCO's obligations by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. at any time from January 1, 1990 to the present.

13.   Identify all obligations of NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. that have been assumed by SMCO at any time from January 1, 1990 to the present.

14.   Identify the four persons most knowledgeable regarding the assumption of NHC, SCUA, SCUAA, SCUA Holdings and/or SMCO A.S.'s obligations by SMCO at any time from January 1, 1990 to the present.

15.   Identify when NHC first learned of the existence and terms of the Non-Qualified Plan, including, but not limited to, SMCO's obligations under the Non-Qualified Plan, including the identify of the NHC employees who first learned of the Non-Qualified Plan.

16.   Identify the five persons most knowledgeable regarding the funding of the Non-Qualified Plan including, but not limited to, the promissory note referred to in the Complaint and life insurance policies on the lives of participants in the Non-Qualified Plan, and the communication of that information to NHC, SCUA, SCUAA, SCUA Holdings, or SMCO A.S.

6

Exhibit 12

AO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

SCANDINAVIAN MARINE CLAIMS OFFICE, INC.
        *Plaintiff,*

v.

SIRI OSTENSEN,
        *Defendant,*

v.

SCANDINAVIAN MARINE CLAIMS OFFICE, INC.,
SCANDINAVIAN UNDERWRITERS AGENCY,
SCUA AMERICAS, INC., S.M.C.O., A.S.,
AND NORWEGIAN HULL CLUB,
        *Counterclaim and Third-Party Defendants.*

## SUBPOENA IN A CIVIL CASE

CASE NUMBER:  3:02CV678 (RNC)
United States District Court District of Connecticut

TO:    Donald J. Kennedy, Esq.
       Carter Ledyard & Milburn, LLP
       Two Wall Street
       New York, NY 10005

☐    YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a videotaped deposition in the above case.

| PLACE OF DEPOSITION Schlam Stone & Dolan LLP, 26 Broadway, New York, New York 10004 | DATE AND TIME 10:00 A.M. April 28, 2005 |
|---|---|

☐    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|

☐    YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| Attorneys for Defendant/Third Party Plaintiff Siri Ostensen | March 31, 2005 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER
John M. Lundin, Schlam Stone & Dolan LLP, 26 Broadway, New York, New York 10004 (212) 344-5400

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
           DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

### Rule 45, Federal Rules of Civil Procedure, Parts C & D

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a

person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, of commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Exhibit 13

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

SCANDINAVIAN MARINE CLAIMS OFFICE, INC.   **SUBPOENA IN A CIVIL CASE**
                    *Plaintiff,*

                       v.

SIRI OSTENSEN,                             CASE NUMBER:   3:02CV678 (RNC)
                    *Defendant,*           United States District Court District of Connecticut

                       v.

SCANDINAVIAN MARINE CLAIMS OFFICE, INC.,
SCANDINAVIAN UNDERWRITERS AGENCY,
SCUA AMERICAS, INC., S.M.C.O., A.S.,
AND NORWEGIAN HULL CLUB,
                    *Counterclaim and Third-Party Defendants.*

TO:    Carter Ledyard & Milburn, LLP
       Two Wall Street
       New York, NY 10005

☐    YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

☒    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a videotaped deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) in the above case. **See Schedule A hereto.**

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| Schlam Stone & Dolan LLP, 26 Broadway, New York, New York 10004 | 10:00 A.M. April 29, 2005 |

☒    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **See Schedule B hereto.**

| PLACE | DATE AND TIME |
| --- | --- |
| Schlam Stone & Dolan LLP, 26 Broadway, New York, New York 10004 | 10:00 A.M. April 22, 2005 |

☐    YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
| --- | --- |
| Attorneys for Defendant/Third Party Plaintiff Siri Ostensen | March 31, 2005 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER
John M. Lundin, Schlam Stone & Dolan LLP, 26 Broadway, New York, New York 10004 (212) 344-5400

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                       DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

## Rule 45, Federal Rules of Civil Procedure, Parts C & D

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a

person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, of commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## DEFINITIONS

1.      The definitions applicable to discovery requests of Local Civil Rule 26(c) of the United States District Court for the District of Connecticut are incorporated herein by reference.

2.      "Carter Ledyard" means Carter Ledyard & Milburn, LLP and any predecessor or affiliated law firms.

3.      "Complaint" means the Complaint filed in Civil Action No. 3:02CV678 (RNC) on May 22, 2003.

4.      "NHC" means Norwegian Hull Club and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of NHC or any of its affiliates.

5.      "Non-Qualified Plan" means the agreement dated June 13, 1995 between SMCO and Tom Ostensen.

6.      "SCUA" means Scandinavian Underwriters Agency and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUA or any of its affiliates.

7.      "SCUAA" means SCUA Americas, Inc. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUAA or any of its affiliates.

1

8.    "SCUA Holdings" means SCUA Holdings, B.V. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUA Holdings or any of its affiliates.

9.    "SMCO" means Scandinavian Marine Claims Office, Inc. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SMCO or any of its affiliates.

10.    "SMCO A.S." means SMCO A.S. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SMCO A.S. or any of its affiliates.

## DEPOSITION TOPICS

1.    The roles of NHC, SCUA, SCUAA, SCUA Holdings and/or SMCO A.S. in the ownership, finances and management of SMCO.

2.    Financial transactions between or among NHC, SCUA, SCUAA, SCUA Holdings, SMCO and/or SMCO A.S. including, but not limited to, the payment of debts, or the guarantee of debts, of one entity by one or more of the others and the transfer of money or assets between or among those entities.

3.    The involvement of NHC, SCUA, SCUAA, SCUA Holdings and/or SMCO A.S. in the provision of legal counsel or accounting services to SMCO including, but not limited to, the engagement of, and/or payment for, services received by SMCO by NHC, SCUA,

2

SCUAA, SCUA Holdings and/or SMCO A.S. or the joint use and/or payment for legal or accounting services by NHC, SCUA, SCUAA, SCUA Holdings, SMCO and/or SMCO A.S.

4.    SMCO's legal expenses from January 1, 1990 to the present including, but not limited to, the identity of the firm providing the legal work, the general subject matter of the work, the amount of each bill for legal work and the person or entity that paid each such bill.

5.    Potential or actual plans or discussions concerning the ceasing the expansion, acquisition, downsizing, termination or relocation of the operations of SMCO.

6.    The Non-Qualified Plan including, but not limited to, the communication of information regarding the Non-Qualified Plan to NHC, SCUA, SCUAA, SCUA Holdings and/or SMCO A.S.

7.    The funding of the Non-Qualified Plan including, but not limited to, the promissory note referred to in the Complaint and life insurance policies on the lives of participants in the Non-Qualified Plan, and the communication of information regarding funding for the Non-Qualified Plan to NHC, SCUA, SCUAA, SCUA Holdings and/or SMCO A.S.

8.    The ability of NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. to fulfill their obligations under the Non-Qualified Plan.

9.    Public or private statements or claims by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. that SMCO is or was an agent of one or more of NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S., including, but not limited to, the scope of such agency.

10.    The assumption by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. of SMCO's obligations.

## SCHEDULE B

## DEFINITIONS

1.       The definitions applicable to discovery requests of Local Civil Rule 26(c) of the United States District Court for the District of Connecticut are incorporated herein by reference.

2.       "Carter Ledyard" means Carter Ledyard & Milburn, LLP and any predecessor or affiliated law firms.

3.       "Complaint" means the Complaint filed in Civil Action No. 3:02CV678 (RNC) on May 22, 2003.

4.       "NHC" means Norwegian Hull Club and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of NHC or any of its affiliates.

5.       "Non-Qualified Plan" means the agreement dated June 13, 1995 between SMCO and Tom Ostensen.

6.       "SCUA" means Scandinavian Underwriters Agency and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUA or any of its affiliates.

7.       "SCUAA" means SCUA Americas, Inc. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUAA or any of its affiliates.

1

8.     "SCUA Holdings" means SCUA Holdings, B.V. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUA Holdings or any of its affiliates.

9.     "SMCO" means Scandinavian Marine Claims Office, Inc. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SMCO or any of its affiliates.

10.     "SMCO A.S." means SMCO A.S. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SMCO A.S. or any of its affiliates.

## INSTRUCTIONS

1.     The rules of construction of Local Civil Rule 26(d) of the United States District Court for the District of Connecticut are incorporated herein by reference.

2.     No request shall be construed to create a limitation upon any other request.

3.     Each document responsive to these requests is to be produced, along with any non-identical version thereof, including drafts.

4.     Except as discussed below with respect to audio and video files, documents stored on computers, magnetic tape or in a similar fashion shall, if possible, be printed and produced in printed form. If it is not possible to produce such documents in printed form, the documents should be produced on compact disk in a format that is readable and searchable using one of the Microsoft Office for Windows suite of programs. Such compact disk

2

shall be labeled with the name(s) of the file(s) being produced and the computer program by which they were created.

5.    Audio and video files shall be produced on compact disk or digital video disk. Such disk shall be labeled with the name(s) of the file(s) being produced and the computer program by which they were created.

6.    The term "any" shall be construed as necessary to bring within the scope of these requests all documents, communications or subject matter that might otherwise be construed to be outside the scope of these requests.

7.    In producing the documents requested herein, indicate the specific request(s) in response to which each document or group of documents is being produced.

8.    With respect to each document withheld on a claim of privilege, provide a statement setting forth the information required by Local Civil Rule 37(a)(1) of the United States District Court for the District of Connecticut.

9.    This document request shall be construed as continuing in nature and your response thereto shall be supplemented if and as additional responsive materials become available.

10.    Unless otherwise directed, the time period covered by these requests is from January 1, 1990 to the present.

### DOCUMENTS TO BE PRODUCED

1.    All documents relating to or concerning the selection of the members of the board of directors or other similar governing body, officers or managers of SMCO including, but not limited to, the role of NHC, SCUA, SCUAA, SCUA Holdings and SMCO A.S. in such selection.

3

2.      All documents relating to or concerning payments or guarantees of the debts of NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. or any of their employees, directors, or officers, including but not limited to their ability to issue or to honor such a guarantee.

3.      All documents relating to or concerning the payment or guarantee by NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. of the debt of any other entity or individual.

4.      All documents relating to or concerning the communications from the board of directors or other similar governing body, officers or managers of NHC, SCUA, SCUAA, SCUA Holdings and SMCO A.S. to Carter Ledyard or the board of directors or other similar governing body, officers or managers of SMCO regarding the business of SMCO.

5.      Documents sufficient to identify all legal counsel who have provided legal advice to NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. regarding any transaction, litigation or other proceeding involving SMCO at any time from January 1, 1990 to the present, including, but not limited to, the identification of the entities who sought, received and paid for such advice.

6.      Documents sufficient to all legal expenses for SMCO from January 1, 1990 to the present including, but not limited to, the identity of the firm providing the legal work, the general subject matter of the work, the date and amount of each bill for legal work and the person or entity that paid each such bill.

7.      All documents relating to or concerning any potential or actual plans or discussions concerning the ceasing the expansion, acquisition, downsizing, termination or relocation of the operations of SMCO.

4

8.     All documents relating to or concerning the Non-Qualified Plan that were communicated to Carter Ledyard, NHC, SCUA, SCUAA, SCUA Holdings, or SMCO A.S.

9.     All documents relating to or concerning the funding of the Non-Qualified Plan including, but not limited to, the promissory note referred to in the Complaint and life insurance policies on the lives of participants in the Non-Qualified Plan, that were communicated to NHC, SCUA, SCUAA, SCUA Holdings, or SMCO A.S.

10.     All documents relating to or concerning the ability of NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. to fulfill their obligations under the Non-Qualified Plan.

11.     All documents relating to or concerning public or private statements or claims by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. that SMCO is or was an agent of one or more of NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S., including, but not limited to, the scope of such agency.

12.     All documents relating to or concerning the assumption by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. of SMCO's obligations under the Non-Qualified Plan.

13.     All documents relating to or concerning the assumption by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. of SMCO's obligations other than the Non-Qualified Plan.

5

Exhibit 14

16/12 '02 15:01 FAX 55559555          NHC BERGEN                                    ☒002

**MINUTES** of a Meeting of the Board of Directors of **Scandinavian Marine Claims Office, Inc.** held on Monday 4 November 2001 at 10.00 a.m. at the offices of Norwegian Hull Club, Bergen, Norway.

Present:          **Mr. Per Gustav Blom, Chairman**
                  **Mr. Kjetil Eivindstad,**
                  **Mr. Karstein J. Espelid**

### Formalities.

Per Gustav Blom took the Chair and agreed to act as Secretary to the Meeting.

**1.      Minutes from Meeting on 31 August 2001.**

The Minutes from the Meeting held on 31 August 2001 were approved and signed.

**2.      Estimated cash-flow to terminate excluding pension liabilities.**

Per Gustav Blom commented on the estimated cash-flow that had been distributed before the Meeting. The forecast shows net payables of USD 122,083 of which USD 14,780 is owed to PK Nayyar, and about USD 107,000 relates to office equipment leased on behalf of SMQI, Inc.

The estimated cash-flow was noted.

**3.      Completion of sale of SMQI, Inc.**

The Chairman noted that the sale of SMQI, Inc. is still not closed. It was verbally agreed that SMCO, Inc. would have an assignment of SMQI's claims against Tom Østensen, Rob Jones and Tim Dickensheet but this was not included in the Stock Purchase Agreement. This agreement also contains other clauses that have not been complied with.

REDACTED

The Chairman was asked to check who is now the legal owner of the shares.

**4.      SMQI lease agreements.**

Per Gustav Blom referred to the various lease agreements that have been entered into by the Company on behalf of SMQI, Inc. SMQI / Hudson will not pay the leases for photocopiers and other equipment. Total cost of terminating these leases are USD 107,500. Erik Kappelin is negotiating with the lessors in order to reduce the termination payment.

The information was duly noted.

2

### 5.    Defined Benefit Pension Plan.

The documentation presented to the Meeting was discussed. The estimate from The Benefit Practice shows an unfunded liability for the Plan as of 1 January 2002 of USD 605,000 based on pension benefits accruing by 2.75 % of compensation per year of service. The actuaries have found that the accrual clause in the plan was amended on 15 October 1998 by Tom Østensen. At this time the accrual rate was increased from 2.0 % per year for a maximum period of 25 years to 2.75 % per year for a maximum period of 20 years. After extensive checks in the files both of the Company and former Directors, no evidence has been found that the Board of Directors approved this amendment.

If 2.0 % accrual rate is used, the estimated liabilities under the Defined Benefit Pension Plan as of 1 January 2002 is reduced by at least USD 280,000. The plan participants will, however, retain any such reduction as a claim against the Company itself.

The Chairman was asked to check with Mr. Arne Selvik whether he had approved any such amendment verbally. If the amendment has not been approved, the notice of termination to participants will have to be based on 2.0 % accrual and the reason for the reduction in estimated benefits will have to be explained to participants. The plan participants, who have previously received notices of benefits based on 2.75 % accrual, can be expected to claim the difference from the Company. The ultimate shareholders will have to decide whether to fund payment of such claims.

If claims for the difference in benefits between 2 % and 2.75 % are received, Tom Østensen shall be notified that he will be held responsible for this loss. Company shall reserve its right to offset its claim for compensation for such loss against benefits owed to Tom Østensen under the Non Qualified Pension Plan.

### 6.    Non Qualified Pension Plan. Letter from Leif Chr. Husjord.

The Chairman referred to the documentation that was distributed prior to the Meeting and explained how the estimated total liability of USD 1,059,230 as of 1 January was calculated.

As for the Defined Benefit Pension Plan, the ultimate shareholders would have to decide whether to fund the liability under the Non Qualified Pension Plan.

**Redacted**

3

### 8.    Assets under the Defined Benefit and Money Purchase Pensions Plans.

The Board noted the assets under the Defined Benefit Pension Plan, which amounted to USD 4,790,321 as of 30 September 2001.

The funds are presently invested in fixed income securities with duration of 2.5 – 2.75 years. In light of the recent sharp fall in USD interest rates, and the consequent risk of reversal and capital losses before the fund is liquidated, the Directors

RESOLVED that the Defined Benefit Pensions Plan assets be invested in interest bearing securities with very short duration, in order to keep interest rate risk at a very low level.

### 9.    Estimated cash needed to liquidate the Company and estimated total loss to shareholders.

The documentation presented to the Meeting was thoroughly discussed. The Directors noted that the estimated cash injection needed to liquidate the Company was USD 1.68 mill. and that the calculated total negative equity of the Company was USD 5.39 mill.

### 10.    Engagement of The Benefit Practice. Statements and proposal for termination to pension plan participants.

The letter from The Benefit Practice to Carter, Ledyard & Milburn dated 15 October 2001 was discussed. The Board was in favour of using The Benefit Practice for terminating the pensions plans and would advise Carter, Ledyard & Milburn of this.

The Board also noted that based on the time schedule presented, termination of the pension plans would be concluded by the end of the 2nd quarter of 2002 at the earliest.

### 11.    Actions to be taken – To-Do-List.

Carter. Ledyard & Milburn and The Benefit Practice would be asked to start the termination process regarding the pensions plans. The Benefit Practice will be asked to invite offers from life assurance companies for annuities to relating to the Defined Benefit Pensions Plan.

The Chairman will also pursue finalisation of the sale of SMQI, Inc.

### 12.    Any other business.

In connection with payments of pensions to Ms. Molvig and Ms. Jonsson by the ultimate shareholders, it was agreed that the Company should write to the ladies and ask for personal information such as address, bank account and date of birth.

Exhibit 15

MINUTES of a Meeting of the Board of Directors of **Scandinavian Marine Claims Office, Inc.** held on Friday 6 September 2002 at 10.00 a.m. as a telephone conference.

Participating:        Mr. Per Gustav Blom, Chairman
                      Mr. Kjetil Eivindstad
                      Mr. Karstein J. Espelid

**Formalities.**

Per Gustav Blom took the Chair and agreed to act as Secretary to the Meeting.

**1.       Minutes from Meeting on 2 June 2002.**

The Minutes from the Meeting held on 2 June 2002 were approved.

**2.       Refund of 2000 contribution to the Qualified Pension Plan.**

E-mails from Don Kennedy dated 20 August 2002 and from Lloyd Katz of The Benefit Practice dated 4 September 2002 were tabled.

The Chairman elaborated on the issue. In September 2001, a contribution of USD 115,755 was made to the Company's Qualified Pension Plan. The contribution was made to cover an estimated deficit of plan assets compared to liabilities based on calculations made by the former actuary, Mr. Sweeney of Comprehensive Consulting Group. After a new actuary was appointed, it was discovered that the multiplier used for calculating benefits was too high. The multiplier had been increased without proper authorisation. Based on the lower multiplier which has been approved, The Benefit Practice has estimated that the value of the assets at the end of 2000 was slightly in excess of liabilities, and consequently that the proper contribution for 2000 was $ 0.

Section 8.5 of the Pension Plan states that the plan sponsor may withdraw any contribution that was made to the plan on the basis of a "mistake of fact" within one year of the date that contribution was made. Section 14.2 of the Master Retirement Trust Agreement relating to the Qualified Pension Plan further states both the Company (i.e the Board of Directors) and the Administration Committee may instruct the Trustee to refund the Company contributions made by a mistake of fact.

After careful consideration, the Board therefore

**RESOLVED** to instruct the Trustee of the Pension Plan for Employees of Scandinavian Marine Claims Office, Inc. to refund USD 115,755 to the Company.

**6.       Any other business.**

There were no further business and the proceedings therefore concluded.

_Per Gustav Blom_
Per Gustav Blom
(Chairman)

_Kjetil Eivindstad_                                      _Karstein J. Espelid_
Kjetil Eivindstad                                        Karstein J. Espelid

SM 000798

16/12 '02 15:03 FAX 55559555          NHC BERGEN                                              ☑005

4

There were no further business and the proceedings therefore concluded.

Per Gustav Blom

(Chairman)

Kjetil Eivindstad

Karstein J. Espelid

SM 000799

Exhibit 16

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------X

SCANDINAVIAN MARINE CLAIMS OFFICE,　:
INC.　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Plaintiff,　　　　　　:
　　　　　　v.　　　　　　　　　　　　　　:　Civil Case No.
　　　　　　　　　　　　　　　　　　　　　:　3:02 CV 678 (RNC)
SIRI OSTENSEN,　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Defendant,　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:　Magistrate Judge Donna F. Martinez
　　　　　　v.　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
SCANDINAVIAN MARINE CLAIMS　　　　　　:
OFFICE, INC., SCANDINAVIAN　　　　　　　:
UNDERWRITERS AGENCY, SCUA　　　　　　　:
AMERICAS, INC., S.M.C.O., A.S., AND　　　　:
NORWEGIAN HULL CLUB,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　　　Counterclaim and Third-Party Defendants.　:

-------------------------------------------------------X

### PLAINTIFF SCANDINAVIAN MARINE CLAIMS OFFICE, INC.'S RESPONSE TO DEFENDANT SIRI OSTENSEN'S FIRST REQUEST FOR DOCUMENTS

Plaintiff Scandinavian Marine Claims Office, Inc. ("SMCO"), by its attorneys

Carter Ledyard & Milburn LLP and Levett Rockwood P.C., responds as follows to

Defendant Siri Ostensen's First Request for Documents.

### GENERAL OBJECTIONS

1.　　　SMCO reserves all objections at any hearing or trial or on any motion to

the use or admissibility of any information, material or documents identified or disclosed.

1306727.1

The identification or disclosure of any documents does not constitute an admission by SMCO that such documents are relevant to the action or admissible in evidence.

2.    Inadvertent reliance on or disclosure of any documents subject to the attorney-client privilege, prepared in anticipation of litigation or for trial, or otherwise protected or immune from discovery shall not constitute a waiver of any privilege or of any other ground for objecting to discovery of such documents or their subject matter, or of SMCO's rights to object to the use of such documents during this or any later proceeding.

3.    SMCO reserves the right to modify, supplement or amend any response hereto.

4.    The Document Requests, as recorded herein, have been quoted in substantially the same form as found in Defendant's First Request For Documents To Plaintiff And Third-Party Defendants, dated March 31, 2005.

5.    SMCO objects to the Document Requests to the extent that they seek to impose obligations on SMCO beyond those imposed under the Federal Rules of Civil Procedure and the Local Rules.

6.    SMCO objects to the Document Requests to the extent that Third-Party Defendant Tom Ostensen improperly took various documents with him when his employment was terminated.

7.    SMCO objects to the Document Requests to the extent that they are specifically directed to other entities, and SMCO is only producing documents responsive to Document Requests directed to SMCO.

1306727.1

2

## SPECIFIC OBJECTIONS

1.      SMCO objects to this Document Request to the extent it is unduly burdensome, oppressive and/or harassing, taking into account the needs of the case and the issues presented, and/or seeks documents that are obtainable from some other source that is more convenient, less burdensome or less expensive.

2.      SMCO objects to this Document Request on the ground that it seeks documents that are not relevant to the subject matter of this litigation or reasonably calculated to lead to the discovery of admissible evidence.

3.      SMCO objects to this Document Request on the ground that it is overly broad.

4.      SMCO objects to this Document Request on the ground that it is unduly vague, ambiguous and unanswerable as propounded.

5.      SMCO objects to this Document Request on the ground that it seeks the discovery of trade secrets or other confidential, sensitive or proprietary information, and SMCO will not respond to this Document Request unless and until an appropriate confidentiality order is agreed to by the parties and approved by the Court.

6.      SMCO objects to this Document Request to the extent the discovery sought is unreasonably cumulative or duplicative.

7.      SMCO objects to this Document Request on the ground that the information requested is more appropriately discovered through depositions.

8.      SMCO objects to this Document Request on the ground that it seeks documents that are protected from discovery by the attorney-client privilege, the work product doctrine and/or other applicable privilege.

## RESPONSES TO DOCUMENT REQUESTS

1.  <u>Request No. 1</u>:  Documents sufficient to show the organization of NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. at all times from January 1, 1990 to the present, including, but not limited to, organization charts for each entity.

    <u>Response to Request No. 1</u>:  Specific Objection Nos. 1-4 and 7.  Subject to the foregoing objections and without waiver thereof, see SMCO's Certificate of Incorporation and Organization Chart, copies of which are contained in SMCO's document production (Bates Nos. SM 1 to SM 12).

2.  <u>Request No. 2</u>:  Documents sufficient to show the ownership of NHC, SCUA, SCUAA, SCUA Holdings and SMCO A.S. including, but not limited to, the names of all persons or entities having an ownership interest in those parties at any time from January 1, 1990 to the present, when that interest was acquired and the percentage ownership of each entity at the end of each calendar or fiscal year.

    <u>Response to Request No. 2</u>:  Specific Objection Nos. 1-4 and 7.  Subject to the foregoing objections and without waiver thereof, SMCO does not have documents to show ownership of NHC, SCUA, SCUAA, SCUA Holdings or SMCO AS. See SMCO's Response to Interrogatory No. 1 of Defendant's First Interrogatories to SMCO.

3.  <u>Request No. 3</u>:  All documents relating to or concerning the business plans or strategic planning for NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. at all times from January 1, 1990 to the present.

    <u>Response to Request No. 3</u>:  Specific Objection Nos. 1-5 and 7.  Subject to the foregoing objections and without waiver thereof, see minutes of meetings of board of directors of SMCO, a copy of which is contained in SMCO's document production (Bates Nos. SM 14 to SM 799).

4.  <u>Request No. 4</u>:  All documents relating to or concerning the ownership of SMCO including, but not limited to, the names of all persons or entities having an ownership interest in SMCO at any time from January 1, 1990 to the present, when that interest was acquired and the percentage ownership of each entity at the end of each calendar or fiscal year.

    <u>Response to Request No. 4</u>:  Specific Objection Nos. 1-4 and 7.  Subject to the foregoing objections and without waiver thereof, see SMCO's Response to Interrogatory No. 1 of Defendant's First Interrogatories to SMCO.

5.  <u>Request No. 5</u>:  Documents sufficient to identify each address or location from which NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. and each

1306727.1

4

affiliate of those entities has operated at any time from January 1, 1990 to the present.

Response to Request No. 5: Specific Objection Nos. 1-4 and 7. Subject to the foregoing objections and without waiver thereof, see SMCO's Response to Interrogatory No. 2 of Defendant's First Interrogatories to SMCO.

6.  Request No. 6: Documents sufficient to identify the members of the board of directors or other similar governing body of NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. at any time from January 1, 1990 to the present, including, but not limited to, each person's position.

    Response to Request No. 6: Specific Objection Nos. 1-4 and 7. Subject to the foregoing objections and without waiver thereof, see minutes of meetings of board of directors of SMCO, a copy of which is contained in SMCO's document production (Bates Nos. SM 14 to SM 799).

7.  Request No. 7: Documents sufficient to identify the officers or managers of NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. at any time from January 1, 1990 to the present, including, but not limited to, each person's position.

    Response to Request No. 7: Specific Objection Nos. 1-4 and 7. Subject to the foregoing objections and without waiver thereof, see minutes of meetings of board of directors of SMCO, a copy of which is contained in SMCO's document production (Bates Nos. SM 14 to SM 799) and Management Agreement, a copy of which is contained in SMCO's document production (Bates No. SM 13).

8.  Request No. 8: All documents relating to or concerning the selection of the members of the board of directors or other similar governing body, officers or managers of SMCO including, but not limited to, the role of NHC, SCUA, SCUAA, SCUA Holding and SMCO A.S. in such selection.

    Response to Request No. 8: Specific Objection Nos. 1-4 and 7. Subject to the foregoing objections and without waiver thereof, see minutes of meetings of board of directors of SMCO, a copy of which is contained in SMCO's document production (Bates Nos. SM 14 to SM 799).

9.  The minutes of all meetings of the board of directors or other similar governing body of NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. from January 1, 1990 to the present.

    Response to Request No. 9: Specific Objection Nos. 1-4 and 8. Subject to the foregoing objections and without waiver thereof, see minutes of meetings of board of directors of SMCO, a copy of which is contained in SMCO's document production (Bates Nos. SM 14 to SM 799).

1306727.1

10.    Request No. 10:  All documents relating to or concerning payments or guarantees of the debts of NHC, SCUA, SCUAA, SCUA Holdings , SMCO and SMCO A.S. or any or their employees, directors, or officers, including but not limited to their ability to issue or to honor such a guarantee.

Response to Request No 10: Specific Objection Nos. 1-4.  Subject to the foregoing objections and without waiver thereof, see the following documents, copies of which are contained in SMCO's document production:

| | |
|---|---|
| Skuld Loan: $500,000 January, 1993 | Documents SM 800 to SM 810. |
| Fleet Line of Credit: $800,000 December, 1993 and April 1995 | Documents SM 811 to SM 1032. |
| Capital Contribution: $400,000 1997 | Documents SM 1033 to SM 1074. |
| "Liquidity Loan": $250,000 December, 1999 | Documents SM 1075 to SM 1104. |
| "Bridging Facility": $200,000 March, 2000: | Documents SM 1105 to SM 1134. |
| DNB Overdraft Facility: $1,000,000 May, 2000 | Documents SM 1135 to SM 1194. |

11.    Request No. 11:  All documents relating to or concerning the payment or guarantee by NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. of the debt of any other entity or individual.

Response to Request No. 11: Specific Objection Nos. 1-4.  See Document SM 1195 to SM 1196 and Response to Request No. 10.

12.    Request No. 12:  All documents relating to or concerning the communications from the board of directors or other similar governing body, officers or managers of NHC, SCUA, SCUAA, SCUA Holdings and SMCO A.S. to the board of directors or other similar governing body, officers or managers of SMCO regarding the business of SMCO.

Response to Request No. 12: Specific Objection Nos. 1-4 and No. 7. Subject to the foregoing objections and without waiver thereof, see SMCO's minutes, a copy of which is contained in SMCO's document production (Bates Nos. SM 14 to SM 799).

13.    Request No. 13:  All financial statements, whether audited or unaudited, of NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. from January 1, 1990.

Response to Request No. 13: Specific Objection Nos. 1-4. Subject to the foregoing objections and without waiver thereof, see financial statements, copies of which are contained in SMCO's document production (Bates Nos. SM 1239 to SM 1454).

14.    Request No. 14:  Documents sufficient to identify all accountants or auditors who have performed work for NHC, SCUA, SCUAA, SCUA holdings, SMCO and SMCO A.S. at any time from January 1, 1990 to the present.

Response to Request No. 14: Specific Objection Nos. 1-4 and 7. Subject to the foregoing objections and without waiver thereof, see SMCO's document production (Bates Nos. SM 1239 to SM 1454 and SM 1197 to SM 1138). See SMCO Response to Interrogatory No. 5 of Defendants First Interrogatories to SMCO.

15.    Request No. 15:  All communications between NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. and any accountant or auditor engaged by any of them.

Response to Request No. 15: Specific Objection Nos. 1-4 and 7.

16.    Request No. 16:  All tax returns for NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. from January 1, 1990 to the present.

Response to Request No. 16: Specific Objection Nos. 1-4. Subject to the foregoing objections and without waiver thereof, see SMCO's tax returns from 1998 to 2001, copies of which are contained in SMCO's document production (Bates Nos. SM 1455 to SM 1727).

17.    Request No. 17:  All documents submitted by or on behalf of NHC, SCUA, SCUAA, SCUA Holdings, SMCO or SMCO A.S. to a lender or creditor (whether

actual or prospective) pursuant to or as part of an application or request for a loan, credit or financing of any kind.

Response to Request No. 17: Specific Objection Nos. 1-4. Subject to the foregoing objections and without waiver thereof, see SMCO's Response to Document Request No. 10 and SM 1728 to SM 1729.

18.  Request No. 18: All documents relating to or concerning the finances of SMCO from January 1, 1990 to the present.

Response to Request No. 18: Specific Objection Nos. 1-4. Subject to the foregoing objections and without waiver thereof, see SMCO's Response to Document Request Nos. 10, 13 and 16.

19.  Request No. 19: All communications relating to or concerning the capitalization or financial status of NHC, SCUA, SCUAA, SCUA Holdings, SMCO or SMCO A.S., including but not limited to their solvency or insolvency.

Response to Request 19: Specific Objection Nos. 1-4. Subject to the foregoing objections and without waiver thereof, see SMCO's Response to Document Request Nos. 9, 10, 13 and 16 and SM 1730.

20.  Request No. 20: All documents relating to or concerning the transfer of funds or other assets between or among NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. at any time from January 1, 1990 to the present, regardless of whether such transfer was carried out.

Response to Request No. 20: Specific Objection Nos. 1-4. Subject to the foregoing objections and without waiver thereof, see SMCO's Response to Document Request Nos. 9, 10, 13 and 16.

21.  Request No. 21: Documents sufficient to identify every asset, including real property, chattel, securities, or pledges of NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S., or any of their affiliates.

Response to Request No. 21: Specific Objection Nos. 1-4. Subject to the foregoing objections and without waiver thereof, see SMCO's Response to Document Request Nos. 9, 10, 13 and 16.

22.  Request No. 22: All bank statements, checks, drafts, wire transfer requests, vouchers, agreements, or other documents concerning the financial dealings between or among NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. at any time from January 1, 1990 to the present.

Response to Request No. 22: Specific Objection Nos. 1-4. Subject to the foregoing objections and without waiver thereof, see SMCO's Response to Document Request Nos. 9, 10, 13 and 16.

23.     Request No. 23:  Documents sufficient to identify all legal counsel who have
        provided legal advice to NHC, SCUA, SCUAA, SCUA Holdings, SMCO and
        SMCO A.S. regarding any transaction, litigation or other proceeding involving
        SMCO at any time from January 1, 1990 to the present, including, but not limited
        to, the identification of the entities who sought, received and paid for such advice.

        Response to Request No. 23:  Specific Objection Nos. 1-4 and 8.  Subject to the
        foregoing objections and without waiver thereof, see SMCO's Response to
        Interrogatory No. 6 of Defendant's First Interrogatories to SMCO.

24.     Request No. 24:  Documents sufficient to all legal expenses for SMCO from
        January 1, 1990 to the present including, but not limited to, the identity of the firm
        providing the legal work, the general subject matter of the work, the date and
        amount of each bill for legal work and the person or entity that paid each such
        bill.

        Response to Request No. 24:  Specific Objection Nos. 1-4 and 8.

25.     Request No. 25:  All documents relating to or concerning any transaction between
        or among NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. or
        any affiliates of those entities, including but not limited to agreements, contracts,
        invoices, bills, purchase orders and/or work orders, estimates, bank statements,
        wire transfer requests, vouchers, checks, drafts, promissory notes, loans, security
        agreements, liens, and attachments at any time from January 1, 1990 to the
        present.

        Response to Request No. 25:  Specific Objection Nos. 1-4.  Subject to the
        foregoing objections and without waiver thereof, see SMCO's Response to
        Document Request Nos. 9, 10, 13, and 16.

26.     Request No. 26: All documents relating to or concerning any potential or actual
        plans or discussions concerning the ceasing the expansion, acquisition,
        downsizing, termination or relocation of the operations of SMCO.

        Response to Request No. 26:  Specific Objection Nos. 1-4 and 7.  Subject to the
        foregoing objections and without waiver thereof, see SMCO's Response to
        Document Request No. 9.

27.     Request No. 27: All documents relating to or concerning the Non-Qualified Plan
        that were communicated to NHC, SCUA, SCUAA, SCUA Holdings, or SMCO
        A.S.

        Response to Request No. 27:  Specific Objection No. 1.  See documents SM 1731
        to SM 1789.

28.    <u>Request No. 28</u>:  All documents relating to or concerning the funding of the Non-Qualified Plan including, but not limited to, the promissory note referred to in the Complaint and life insurance polices on the lives of participants in the Non-Qualified Plan, that were communicated to NHC, SCUA, SCUAA, SCUA Holdings, or SMCO A.S.

<u>Response to Request No. 28</u>:  See Documents SM 1790 to SM 1822.

29.    <u>Request No. 29</u>:  All documents relating to or concerning the ability of NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. to fulfill their obligations under the Non-Qualified Plan.

<u>Response to Request No. 29</u>:  Specific Objection Nos. 1-4.  Subject to the foregoing objections and without waiver thereof, see SMCO's Response to Document Request Nos. 9, 10, 13 and 16.

30.    <u>Request No. 30</u>:  All documents relating to or concerning public or private statements or claims by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. that SMCO is or was an agent of one or more of NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S., including, but not limited to, the scope of such agency.

<u>Response to Request No. 30</u>:  Specific Objection Nos. 1-4.  Subject to the foregoing objections and without waiver thereof, see Document SM 1823.

31.    <u>Request No. 31</u>:  All documents relating to or concerning the assumption by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. of SMCO's obligations under the Non-Qualified Plan.

<u>Response to Request No. 31</u>:  Specific Objection Nos. 1 to 5 and 7.

32.    <u>Request No. 32</u>:  All documents relating to or concerning the assumption by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. of SMCO's obligations other than the Non-Qualified Plan.

<u>Response to Request No. 32</u>:  Specific Objection Nos. 1 to 4.  Subject to the foregoing objections and without waiver thereof, see SMCO's Response to Request No. 9.

Dated: May 4, 2005

CARTER LEDYARD & MILBURN LLP

By:

Donald J. Kennedy
Federal Bar No. ct23620
2 Wall Street
New York, New York  10005
Telephone:  (212) 732-3200
Facsimile:  (212) 732-3232

Madeleine F. Grossman
Federal Bar No. ct05987
Dorit S. Heimer
Federal Bar No. ct01219
LEVETT ROCKWOOD P.C.
33 Riverside Avenue
Post Office Box 5116
Westport, Connecticut  06880
Telephone: (203) 222-0885
Facsimile: (203) 226-8025

Attorneys for Scandinavian Marine Claims Office, Inc.

1306727.1

11