UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------X

SCANDINAVIAN MARINE CLAIMS OFFICE,
INC.

                    Plaintiff,

       v.

SIRI OSTENSEN,

                   Defendant,

       v.

SCANDINAVIAN MARINE CLAIMS
OFFICE, INC., SCANDINAVIAN
UNDERWRITERS AGENCY, SCUA
AMERICAS, INC., S.M.C.O., A.S., AND
NORWEGIAN HULL CLUB,

      Counterclaim and Third-Party Defendants.

-------------------------------------------------------X

Civil Case No.
3:02 CV 678 (RNC)

**AFFIDAVIT OF DONALD J.
KENNEDY**

STATE OF NEW YORK    )
                        : ss.:
COUNTY OF NEW YORK  )

     Donald J. Kennedy, hereby swears, deposes and says:

     1.     I am a partner at Carter Ledyard & Milburn LLP, and together with Levett Rockwood, P.C. I am counsel to the plaintiff, Scandinavian Marine Claims Office, Inc. ("SMCO") and to certain of the Counterclaim Defendants. I submit this affidavit in support of SMCO's motion for clarification of this Court's Amended Scheduling Order

Relating to Case Management dated March 17, 2005 (Scheduling Order) (Ex. 1) or alternatively for a protective order.

Background

2.     SMCO moved to stay pending arbitration the claims of Tom Ostensen and Siri Ostensen against SMCO pursuant to the arbitration clause in SMCO's Non-Qualified Plan. The Court adopted Magistrate Judge Martinez's Recommended Ruling on Plaintiffs' Motion For a Stay Pending arbitration dated September 5, 2003 (Ex. 2) which stayed pending arbitration certain claims of Tom Ostensen and Siri Ostensen which were within the scope of the arbitration clause in the Non-Qualified Plan.

3.     There was a mediation before Magistrate Judge Martinez on March 3, 2005. Immediately after the mediation, which was not successful, there was a scheduling conference before Magistrate Judge Martinez.

4.     The Ostensens have not commenced arbitration proceedings against SMCO. Prior to the mediation on March 3, 2005, no discovery was taken.

5.     At the March 3, 2005 scheduling conference counsel for the defendants expressed the view that in the event they were successful with their veil piercing claim against the Counterclaim and Third Party Defendants (1) the Counterclaim and Third Party Defendants, including, but not limited to the Norwegian Hull Club (NHC), would be subject to arbitration and therefore (2) the veil piercing issue should be decided before proceeding with the arbitration.

6.      Since the veil piercing issue may be dispositive of the case as a practical matter, it was our understanding that it was agreed at the March 3, 2005 conference that the parties would proceed with limited discovery relating to veil piercing. Accordingly, at the conference on March 3, 2005 the court set a relatively short time to complete discovery i.e. September 30, 2005. The Scheduling Order does not reflect what we believe was the understanding of all present, and certainty our understanding, that discovery was to be limited to veil piercing. We submit that the Scheduling Order should be clarified to reflect that discovery at this stage of the case is limited to veil piercing discovery.

<u>Qualified Plan Discovery</u>

7.      Defendants/Third Party Plaintiffs Siri Ostensen in their Amended Affirmative Defenses, Setoff and Counterclaims dated November 7, 2002 have asserted certain claims arising out of the SMCO Qualified Plan which claims are not subject to arbitration and have not been stayed.

8.      Counsel for defendant/third party plaintiff, Siri Ostensen served subpoenas on The Benefit Practice and Oppenheimer Co.. A copy of the Notice of Subpoenas Duces Tecum dated May 16, 2005 is attached as Exhibit 3. In addition, Counsel for Defendant Third Party Plaintiff, Siri Ostensen served Defendants Second Request For Documents to Plaintiff and Third Party Defendants, a copy of which is attached as Exhibit 4.

9.      The Benefits Practice is an independent benefits consulting and actuarial firm hired to assist SMCO in complying with the law in calculating benefits under the

SMCO "Qualified Plan." Oppenheimer & Co. is an independent corporation that acted as custodian of the SMCO "Qualified Plan".

10.    The discovery sought by the subpoenas served on the Benefits Practice, Oppenheimer & Co. and the Defendant's Second Document Request served on Plaintiff and Third Party Defendants relates primarily to SMCO Qualified Pension Plan and other subjects not related to veil piercing.

11.    In an attempt to resolve the issue on non-veil piercing discovery, we discussed with counsel for Defendants postponing such, discovery which was agreeable in principle provided their discovery rights were not limited in any way. In view of the September 30, 2005 discovery deadline and the risk that this Court would not grant a motion to extend the discovery deadline past September 30, 2005 for non-veil piercing discovery, we were unable to conclude an agreement. Furthermore, in view of the wording of the Scheduling Order, counsel for the Defendants are of the view the Scheduling Order did not limit discovery to any particular issue. Accordingly, the assistance of the Court is needed.

12.    Since veil piercing discovery may be dispositive of this case as a practical matter, it is not productive to pursue other discovery until the veil piercing issue has been decided, and there is no prejudice to Defendants if the September 30, 2005 discovery deadline is for veil piercing discovery only.

<u>Conclusion</u>

13.    In view of the above, we respectfully request that this Court clarify the Scheduling Order to specifically provide (a) that discovery from Counterclaim and third party defendant is limited to veil piercing discovery and (b) the September 30, 2005 Discovery Deadline in this Court's Scheduling Order applies only to veil piercing discovery.  Alternatively, we request that the subpoenas served on the Benefits Practice of Oppenheimer & Co. and Defendant Second Document Request be stayed pending determination of the veil piercing issues.

Donald J. Kennedy

Sworn to before me this
26 th day of May, 2005

Notary Public

DEBORAH E. FERRARO
Notary Public, State of New York
No. 01FE4929665
Qualified in Suffolk County
Commission Expires May 2, 2006

1312256.1

5

## **CERTIFICATION**

This is to certify that a copy of the foregoing was sent via Fedex on this 26th day of May, 2005, to the following counsel of record and companies.

Donald J. Kennedy, Esq.
Carter Ledyard & Milburn LLP
2 Wall Street
New York, New York  10005

Jeffrey M. Eilender, Esq.
Schlam Stone & Dolan
26 Broadway, 19th Floor
New York, New York  10004

Sharon E. Jaffe, Esq.
Levin & Glasser
P.O. Box 1098
Weston, CT  06883

Charles A. Stewart, III, Esq.
Stewart Occhipinti & Makow, LLP
1350 Broadway, Suite 2220
New York, New York  10018

The Benefits Practice
250 East Hartsdale Avenue
Suite 38
Hartsdale, New York  10530

Oppenheimer & Co.
200 Park Avenue
New York, New York  10166


/s/Madeleine F. Grossman
Madeleine F. Grossman

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
SCANDINAVIAN MARINE CLAIMS         :
OFFICE, INC.,                      :
                                   :
        Plaintiff,                 :
                                   :
        v.                         :    CASE NO.  3:02CV678(RNC)
                                   :
SIRI OSTENSEN,                     :
                                   :
        Defendant.                 :
```

<u>AMENDED SCHEDULING ORDER REGARDING CASE MANAGEMENT PLAN</u>

The following dates are hereby adopted as reasonable and appropriate to serve the purposes of Fed. R. Civ. P. 1:

**Discovery Deadline:** All discovery, including all discovery relating to expert witnesses, will be completed (not propounded) by **September 30, 2005.**

**Motions to Compel:** Any motion for an order compelling disclosure or discovery pursuant to Fed. R. Civ. P. 37(a) must be filed within 30 days after the due date of the response. Failure to file a timely motion in accordance with this scheduling order constitutes a waiver of the right to file a motion to compel.

**Joint Trial Memorandum:** A joint trial memorandum in the form described in the attached addendum will be filed on or before **January 3, 2006.** Counsel signing the memorandum must certify that it is the product of consultation between the lawyers who will be trying the case.

**Trial Ready List:** The case will be placed on the trial ready

list for **February 2006.**

**Dispositive Motions:**   No dispositive motion will be filed unless a prefiling conference is requested.   Any request for a prefiling conference must be submitted in the form of a letter to the court (with copies to all counsel of record or pro se parties) briefly describing the nature and basis of the proposed motion. Except in cases involving pro se parties, no request for a prefiling conference may be submitted unless the attorney making the request has conferred with other counsel of record and discussed the proposed motion in a good faith effort to clarify the issues, eliminate or reduce the area of controversy and arrive at a mutually satisfactory resolution. Cf. D. Conn. L. Civ. R. 37(2)(requiring counsel to confer before filing motions relating to discovery disputes).  Except in cases involving pro se parties, any request for a prefiling conference must include a statement that the attorney submitting the request has conferred with other counsel and must briefly describe the results of the conference. To be timely, any request for a prefiling conference regarding a motion for summary judgment must be submitted on or before **August 22, 2005.**   Failure to submit a timely request may result in a waiver of the right to file a summary judgment motion.   If a summary judgment motion is filed, the joint trial memorandum will be due 30 days after a ruling on the motion.

**Joint Status Reports of Counsel:**  A joint status report of

2

counsel will be submitted on or before **June 10, 2005.**  The report will address the matters listed in Fed. R. Civ. P. 16(c).  Joint status reports of counsel addressing those matters will be submitted every 90 days thereafter until the matter is resolved.

**Extensions of Time:**  All dates set forth in this order are firm and will be extended only for good cause.  The good cause standard requires a particularized showing that despite due diligence, the party seeking the extension could not comply with this order.  Because of the importance of the discovery deadline to the entire schedule, motions to extend the discovery deadline will be viewed with disfavor.  A motion to extend the discovery deadline will not be granted unless the movant shows that discovery was commenced promptly and pursued with due diligence in a good faith effort to comply with the deadline established by this order.

Counsel will provide their clients with a copy of this order.  It is so ordered.

Dated at Hartford, Connecticut this 17th day of March, 2005.


Donna F. Martinez
United States Magistrate Judge

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

<u>Addendum</u>

Case Name:    <u>Scandinavian Marine Claims Office, Inc. v. Ostensen</u>
Case No.:    3:02CV678(RNC)

1.    Pursuant to the pretrial schedule that has been established for this case, the case should be ready for trial by February 2006.  Counsel should inform their clients that the court intends to try the case at that time or as soon thereafter as possible.

2.    The pretrial schedule is intended to provide sufficient time to enable the parties to properly prepare the case for resolution by trial or settlement.  No deadline set forth in the pretrial schedule will be extended or stayed except by order of the court.  Motions for extension of time pursuant to Fed. R. Civ. P. 6(b) and Local Civil Rule 7(b) will not be granted except for good cause.  Any such motion must be filed in writing at least five days before the deadline in question.

3.    Before a party files a motion to dismiss, motion for summary judgment or motion for partial summary judgment, a prefiling conference will be held.  A party wishing to file such a motion will submit a letter to chambers requesting a conference no later than 45 days before the discovery deadline.  No such request will be granted unless the attorney making the request has conferred with other counsel beforehand.  At the prefiling

4

conference, consideration will be given to the timing and appropriateness of the motion, formulation and simplification of the issues encompassed by the motion, avoidance of unnecessary motion practice and other matters that might facilitate the just, speedy and inexpensive determination of the action. The conference may be conducted by telephone.

4.    On or before **January 6, 2006,** the parties will jointly prepare and file for approval by the Court a joint trial memorandum. Counsel signing the memorandum must certify that it is the product of consultation between the lawyers who will be trying the case. The memorandum will be in the form prescribed by the District Court's Standing Order Regarding Trial Memoranda in Civil Cases (see Local Rules of Civil Procedure), and must be certified that it is a joint product of consultation between the lawyers trying the case, with the following modifications:

a.    **Witnesses**: Set forth the name and address of each witness to be called at trial. Provide a brief summary of the anticipated testimony of each witness and an estimate of the probable duration of his or her testimony (e.g. less than one hour, two to three hours, one full day). For each expert witness, set forth the opinion to be expressed, a brief summary of the basis of the opinion and a list of the materials on which the witness intends to rely. If a party objects to all or any part of the anticipated testimony of any witness, lay or expert, the objection

5

must be stated in this section of the joint memorandum so that it can be addressed prior to trial.

  b.  **Exhibits**:  The parties will prepare the list of exhibits required by the Standing Order.  The list must specifically identify each exhibit by providing a brief description of the exhibit.  The exhibits will be listed in numerical order starting with Plaintiff's Exhibit 1 and Defendant's Exhibit 1.  If a party has an objection with regard to a designated exhibit, the objection must be stated in this section of the joint memorandum or it will be waived.  Each party will prepare an original set of exhibits, plus a duplicate copy for the Court and every other party, marked with exhibit tags provided by the Clerk.  The duplicate sets of exhibits must be submitted to the Court not later than the day before the final pretrial conference.  Counsel will retain the original set of exhibits for use at trial.

  c.  **Jury Instructions**:  In jury cases, the parties will meet and confer for the purpose of preparing and filing tailored jury instructions on the elements of the parties' claims and defenses.  The proposed instructions will be submitted as an attachment to the joint trial memorandum.  If the parties cannot agree as to the appropriateness of a particular instruction, each party must submit a proposed instruction supported by a brief explanation of its position, including citation to applicable authority.

d.  **Anticipated Evidentiary Problems**:  The parties will attach motions in limine with memoranda of law concerning any anticipated evidentiary problems.

e.  **Verdict Form**:  In jury cases the parties will submit as an exhibit to the joint trial memorandum a proposed verdict form suitable for submission to a jury.  The form may require the jury to return a special verdict with special findings as permitted by Fed. R. Civ. P. 49(a) or a general verdict with or without written interrogatories as permitted by Fed. R. Civ. P. 49(b).  If the parties are unable to agree as to the appropriateness of a proposed form, the objecting party must state the basis for the objection and provide an alternative proposal

**EXHIBIT 2**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SCANDINAVIAN MARINE CLAIMS      :
OFFICE INC.,                              :
                                          :
     Plaintiff,                         :
                                          :
     v.                                 :     CASE NO.   3:02CV678(RNC)
                                          :
TOM OSTENSEN AND SIRI OSTENSEN, :
                                          :
     Defendants.                        :

RECOMMENDED RULING ON PLAINTIFF'S MOTION
FOR STAY PENDING ARBITRATION

The plaintiff, Scandinavian Marine Claims Office, Inc.
("SMCO"), brought suit against the defendants, Tom Ostensen, its
former president, and his wife, Siri Ostensen ("the Ostensens") for
nonpayment of two promissory notes.  The Ostensens subsequently
filed a counterclaim against SMCO and three additional defendants.
(Doc. #44.)  Pending before the court is SMCO's motion to stay the
defendants' counterclaims pending arbitration.[1]  (Doc. #28.)  For
the reasons set forth below, the court recommends that the
plaintiff's motion be GRANTED in part and DENIED in part.

I.   Factual Background

In January 1994, the Ostensens jointly executed a promissory
mortgage note in the amount of $180,000 to the benefit of SMCO.
(Compl. ¶9.)  In October 1995, the Ostensens jointly executed a

---

[1]United States District Judge Robert N. Chatigny of the
District Court for the District of Connecticut referred this motion
to the undersigned.  (Doc. #31.)

Objection to the Magistrate Judge's recommended ruling is hereby approved and adopted.

September 29, 2003.  After review and

Robert N. Chatigny, U.S.D.J.

management personnel. (Counterclaim ¶¶11-13.) The non-qualified pension plan is set forth in a written agreement between SMCO and Tom Ostensen dated June 13, 1995. See doc. #30, Ex. A. Paragraph 6.4 of the non-qualified pension plan contains an arbitration clause, which provides:

> Any disagreements between the Company and the Employee in regard to this Agreement shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect as of the date of filing of the arbitration.

The Ostensens allege that the non-qualified pension plan was funded by mortgage notes (including the notes of the Ostensens and other employees), insurance policies, and other sources. (Counterclaim ¶¶15, 18-20.) According to the Ostensens, one or more of the counterclaim defendants wrongfully cancelled the life insurance policies. (Counterclaim ¶21.)

The counterclaim alleges that the defendants closed the SMCO office and changed the company's name to SCUA. (Counterclaim ¶23.) SMCO, at the direction of NHC and SMCO A.S., improperly divested itself of all its assets, transferring them to the defendants to avoid paying debts, including the non-qualified pension plan. (Counterclaim ¶26.) SMCO, SMCO A.S. and NHC personnel then informed Tom Ostensen (and other employees) that because of SMCO's insolvency, benefits under the non-qualified pension plan might not be paid. (Counterclaim ¶27.) As to the qualified pension plan, SMCO, contrary to its earlier representations, would not credit Tom

Ostensen's prior years of service with a predecessor company and would not use a previously agreed upon rate or multiplier to calculate his benefits. (Counterclaim ¶¶28-29.) The counterclaim alleges the following causes of action: ERISA (count 1); breach of the non-qualified pension plan (count 2); "detrimental reliance" in that the Ostensens relied on the defendants' promises to fund the pension plans (count 3); fraud (count 4); Connecticut Unfair Trade Practice Act ("CUTPA"), Conn. Act. Stat. § 42-110a et seq. (count 5); fraudulent transfer (count 6); tortious interference with Tom Ostensen's contractual relations as to SCUA, SMCO A.S. and NHC (count 7); liability of SCUA as a successor to SMCO (count 8); declaratory judgment as to the Ostensens' pension benefits (count 9); failure to pay wages in violation of Conn. Gen. Stat. § 31-72 (count 10); intentional infliction of emotional distress (count 11); operating an "insolvent company to the detriment of company's creditors and employees" (count 12); and "liability of SCUA, SMCO A.S. and NHC as alter egos of SMCO." (count 13).

II. Discussion

    Relying on the arbitration clause contained in the non-qualified pension plan, the plaintiff SMCO moves for a stay pending

_____

SMCO, SCUA and NHC filed answers to the counterclaims. (Doc. #58, 59.) In an August 2003 joint status report, the parties indicated that the Ostensens agreed to dismiss their counterclaims against SMCO A.S. without prejudice. (Doc. #61.) The record does not indicate that such a motion has yet been filed.

arbitration of the Ostensens' counterclaims.[4]  The plaintiff also seeks the attorneys' fees and costs incurred in making of its motion.

On a motion to stay proceedings pending arbitration, a court:

has essentially four tasks: first, it must determine whether the parties agreed to arbitrate . . . ; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable . . . and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration.

Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987)(citations omitted).  See also Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 75 (2d Cir. 1998) (same).

The plaintiff SMCO first argues that, in light of the arbitration agreement, the counterclaims against it concerning the non-qualified pension plan are subject to the mandatory stay provision in 9 U.S.C. § 3 of the Federal Arbitration Act.  The Ostensens respond that none of the counterclaims should be stayed because all the claims are interrelated.  The mortgage notes upon which the plaintiff SMCO is proceeding were intended to fund the non-qualified pension plan.  The amount of benefits under the non-qualified pension plan to which the Ostensens are entitled depends

---

[4] The plaintiff's motion for stay was filed before the court granted the Ostensens' motion for joinder of additional parties. However, the plaintiff addressed the impact of the additional parties and Ostensens' counterclaims in its reply brief (doc. #40) and during oral argument.

on the proper calculation of the benefits under the qualified pension plan, which, according to the counterclaim, was not done. The defendants' argument is unavailing.

Section 3 of Title 9 of the United States Code provides "for a stay of proceedings where the court is satisfied that the issue before it is arbitrable under the agreement." Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 844 (2d Cir. 1987). Section 3 provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

A stay of claims under 9 U.S.C. § 3 is mandatory. Genesco, Inc., 815 F.2d at 844. "Courts must act to enforce arbitration agreements . . . even though arbitration may sometimes result in 'piecemeal resolution.'" American Shipping Line, Inc. v. Massan Shipping Industries, Inc., 885 F. Supp. 499, 501 (S.D.N.Y. 1995)(quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 (1983)). "The court may not refuse to grant a stay under section 3 based on considerations of judicial economy." Sesguros Banvenez, S.A. v. S/S Oliver Drescher, 761 F.2d 855, 861 (2d Cir. 1985). Accordingly, under § 3, the court cannot

decline to stay claims that are "referable to arbitration."

To determine whether a dispute is within the scope of an agreement's arbitration clause and is therefore "referable to arbitration":

> a court should undertake a three-part inquiry. First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. . . . Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. . . . Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. . . . Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001) (citations and internal quotation marks omitted). "No fixed rules govern the determination of an arbitration clause's scope . . . . In the end, a court must determine whether, on the one hand, the language of the clause, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause, or if, on the other hand, arbitration was designed to play a more limited role in any future dispute." Id. at 225.

The clause at issue, requiring arbitration of "[a]ny disagreements between the Company and the Employee in regard to this Agreement shall be settled by arbitration," is broad. See

7

A.D., Specht v. Netscape Communications Corp., 306 F.3d 17, 35 (2d Cir. 2002) ("all disputes relating to this Agreement (excepting any dispute relating to intellectual property rights)" classified as broad); Louis Dreyfus Negoce S.A., 252 F.3d at 225 ("[a]ny dispute arising from the making, performance or termination of this Charter Party" be arbitrated was broad clause); Abram Landau Real Estate v. Bevona, 123 F.3d 69, 71 (2d Cir. 1997) ("all differences arising between the parties to this agreement as to interpretation, application or performance of any part of this agreement" was broad).

Having classified the arbitration clause, the court next considers whether the counterclaims asserted against SMCO are within the scope of the arbitration clause. "[T]he existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997)(internal quotation marks omitted). "[T]he issue sought to be arbitrated need not constitute a breach of the contract containing the arbitration clause" in order to fall within the scope of the arbitration clause. Mehler v. Terminix Intern. Co. L.P., 205 F.3d 44 (2d Cir. 2000). Rather, the court "focus[es] on the factual allegations in the complaint rather than the legal causes of action asserted. . . . If the allegations underlying the

claims 'touch matters' covered by the parties' [non-qualified pension plan], then those claims must be arbitrated, whatever the legal labels attached to them." Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 846 (2d Cir. 1987)(citation omitted). "If some claims are non-arbitrable, while others are arbitrable, then [the court] will sever those claims subject to arbitration from those adjudicable only in court. Indeed, there is no reason why, in a proper case, we cannot sever even a part of a claim, where that claim raises both arbitrable and non-arbitrable issues." Collins & Aikman Products Co. v. Building Systems, Inc., 58 F.3d 16, 20 (2d Cir. 1995).

The first counterclaim alleges that SMCO repudiated its obligations to Tom Ostensen under both the qualified and non-qualified plan in violation of ERISA. (Counterclaim ¶32.) SMCO allegedly manipu      the conduct of independent auditors in addition to the information and instructions it provided them in order to present a misleading statement of pension benefits to Tom Ostensen. (Counterclaim ¶33.) The court concludes that this cause of action, to the extent that it addresses the non-qualified pension plan, "touch[es] matters" within the parties' agreement. Accordingly, it is arbitrable and subject to a mandatory stay under § 3. The second counterclaim, alleging that SMCO breached the non-qualified pension plan, clearly is arbitrable. The third, fourth and fifth counterclaims for detrimental reliance, fraud and violation of CUTPA, assert claims based on representations made by

SMCO to Tom Ostensen regarding his pension benefits. To the extent that the statements regarded benefits under the non-qualified pension plan, they are within the scope of the arbitration clause. The sixth counterclaim, asserting fraudulent transfer, alleges that SMCO improperly transferred its assets to SCUA, SMCO A.S. and NHC in violation of the Uniform Fraudulent Transfer Act, Conn. Gen Stat. § 52-552a et seq. The counterclaim alleges that these conveyances were made so that the non-qualified pension plan would be underfunded, thereby depriving Tom Ostensen of his benefits under the non-qualified pension plan. (Counterclaim ¶57.) This claim is within the scope of the arbitration clause as it implicates the "parties' rights and obligations" under the non-qualified pension plan. Collins & Aikman Products Co. v. Building Systems, Inc., 58 F.3d 16, 23 (2d Cir. 1995). The ninth counterclaim seeks a declaratory judgment as to the Ostensens' rights under both the qualified and non-qualified pension plans. Insofar as this claim is directed to SMCO and the non-qualified pension plan, it is within the scope of the clause. The tenth counterclaim is a claim for unpaid wages pursuant to Conn. Gen. Stat. § 31-72. On its face, this claim does not appear to within the scope of the arbitration clause. However, to the extent that the Ostensens allege that the non-qualified pension benefits are wages within § 31-72, such a claim is within the clause. The eleventh counterclaim alleges that SMCO's "repudiation of pension benefits" resulted in the intentional infliction of emotional distress.

To the extent that the plaintiff alleges emotional distress arising from SMCO's conduct with regard to his non-qualified pension plan benefits, such a claim is within the scope of the arbitration clause.

The plaintiff next argues that the court should exercise its discretion to stay the non-arbitrable counterclaims against SMCO and the additional defendants, SCUA, SMCO A.S. and NHC.[5]

"[D]istrict courts, despite the inapplicability of the FAA, may stay a case pursuant to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." WorldCrisa Corp. v. Armstrong, 129 F.3d 71 (2d Cir. 1997) (internal quotation marks omitted). "Broad stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit." Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 856 (2d Cir. 1987). A stay may be appropriate where the arbitrable issues might be determinative of the issues remaining in the case. See Sierra Rutile Ltd. v. Katz, 937 F.2d 743, 749 (2d Cir. 1991). The party seeking the stay "bears the burden of demonstrating that such a stay is justified." WorldCrisa Corp, 129 F.3d at 76.

The plaintiff argues that a stay is warranted as to the non-arbitrable claims against SMCO because the claims "are of little

---

Nonparties to the arbitration agreement are not entitled to a stay under 9 U.S.C. § 3. Citrus Marketing Bd. of Israel v. J. Lauritzen A/S, 943 F.2d 220, 224 (2d Cir. 1991).

merit" and "do not predominate." (Doc. #40, Pl's Reply Br. at 6-7.) The plaintiff also suggests that the Ostensens' contention that the non-qualified and qualified pension plan claims are inextricably linked, which SMCO does not concede, weighs in favor of a stay. (Doc. #40, Pl's Reply Br. at 7.)

On the present record, the plaintiff SMCO has not sustained its burden of demonstrating that a stay is justified. The court, at this juncture, "cannot find that the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit." Circus Productions, Inc. v. Int'l Impresarios, Inc., No. 90 CIV 414, 1990 WL 55684, at *5 (S.D.N.Y. Apr. 26, 1990). The Ostensens' qualified pension plan counterclaims as to SMCO are sufficiently discrete to warrant the court to exercise its jurisdiction.

The plaintiff next argues that the counterclaims against SCUA, SMCO A.S. and NHC should be stayed because they are derivative of SMCO's liability and cite Harvey v. Joyce, 199 F.3d 790 (5th Cir. 2000) in support of their argument. The court is unpersuaded.

In Harvey, the plaintiff shareholders brought suit against Joyce, a record owner of stock, and CTC, a corporation. Although the plaintiffs and Joyce were parties to the arbitration agreement, CTC was not. The district court denied Joyce and CTC's motion to stay. On appeal, the Court of Appeals concluded that all claims asserted against Joyce were arbitrable pursuant to the arbitration agreement. The court further concluded that CTC, despite being

non-signatory, was entitled to a stay pending arbitration of the claims against Joyce under 9 U.S.C. § 3, because "a suit against CTC could have a critical impact in the Joyce arbitration. . . . If CTC were forced to try the case, the arbitration proceedings would be both redundant and meaningless; in effect, thwarting the federal policy in favor of arbitration. . . . Therefore, we fail to see how litigation could proceed as to CTC without adversely affecting Joyce's right to arbitrate." 199 F.3d at 795. The Fifth Circuit subsequently construed Harvey and observed that because of the "exceptional circumstances" presented in that case, "we diverged from our general rule requiring party status for the mandatory stay provision to apply, thereby creating tension in our case law." Adams v. Georgia Gulf Corp., 237 F.3d 538, 540 (5th Cir. 2001). The court clarified that the "concern" it had in Harvey "was not the impact on CTC but the right of the party to the arbitration to arbitrate meaningfully." 237 F.3d at 541.

Harvey does not compel the conclusion that the claims against the non-signatories should be stayed. Although SMCO argues that it is not efficient to litigate the liability of the additional corporate defendants without first determining SMCO's liability in the arbitration, it, unlike the defendant Joyce in Harvey, does not argue that its ability to arbitrate meaningfully will be affected if a stay is not granted.

The Ostensens argue that the plaintiff waived its right to arbitrate by "bringing action on only the promissory notes." (Doc.

13

#36, Pl's Opp'n at 8.)   They reason that the plaintiff, by "selecting just one part of a multipart employment agreement to sue upon and seeking only to stay the portion of the litigation that can result in a set-off or judgment against it," will cause the "arbitration to be conducted out of its logical sequence," prejudicing the defendants.   (Doc. #36, Pl's Opp'n at 9.)   The defendants offer no authority for this proposition.   The court is not persuaded that because all the claims in the case are not arbitrable and as a result, cannot be heard simultaneously in the same forum, the plaintiff is precluded from enforcing the parties' explicit agreement to resolve their dispute through arbitration and realizing the benefit of the bargain it sought in the parties' arbitration agreement.

As a final matter, the court considers the plaintiff's request for fees incurred in the filing of its motion.   The court declines to award the plaintiff fees.   See Amstar Corp. v. S.S. Union Australia, 445 F. Supp. 940 (S.D.N.Y. 1978)(denying defendant's application for costs incurred in making its motion to stay pending arbitration because opposition was not frivolous).

III. Conclusion

For these reasons, the court recommends that the plaintiffs's motion to stay pending arbitration (doc. #28) be GRANTED in part and DENIED in part.   The court recommends that the plaintiff's motion for a mandatory stay pursuant to 9 U.S.C. § 3 be granted as to the claims against AMCO, as set forth in this

18

opinion. The court further recommends that the plaintiff's motion for a discretionary stay pursuant to the court's inherent power to manage its docket be denied as to the remaining counterclaims against SMCO and all the counterclaims against SCUA, SMCO A.S and NHC. As a final matter, the court recommends that the plaintiff's request for attorney fees be denied.

Either party may seek the district court's review of this recommendation. See 28 U.S.C. § 636(b)(written objections to proposed findings and recommendations must be filed within ten days after service of same); Fed. R. Civ. P. 6(a), 6(e) & 72; Rule 72 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Thomas v. Arn, 474 U.S. 140, 155 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992)(failure to file timely objections to Magistrate Judge's recommended ruling waives further review of the ruling).

Dated at Hartford, Connecticut this 5th day of September, 2003.

Donna F. Martinez
United States Magistrate Judge

**EXHIBIT 3**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

SCANDINAVIAN MARINE CLAIMS
OFFICE, INC.,

                                           *Plaintiff,*

            - *against* -

SIRI OSTENSEN,

                                           *Defendant,*

            - *against* -

SCANDINAVIAN MARINE CLAIMS
OFFICE, INC., SCANDINAVIAN
UNDERWRITERS AGENCY, SCUA
AMERICAS, INC., S.M.C.O., A.S., AND
NORWEGIAN HULL CLUB,

   *Counterclaim and Third-Party Defendants.*

Civil Action No. 3:02CV678 (RNC)

NOTICE OF SUBPOENAS DUCES TECUM

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 45, Defendant Siri Ostensen in her individual capacity and as the executrix of the estate of her husband, Tom Ostensen, by her undersigned counsel, will serve the attached subpoenas duces tecum on non-parties The Benefit Practice, 250 East Hartsdale Avenue, Suite 38, Hartsdale, New York 10530 and Oppenheimer & Co., 200 Park Avenue, New York, New York 10166. The documents are to be produced at 10:00 A.M. on June 3, 2005, at Schlam Stone & Dolan LLP, 26 Broadway, 19th Floor, New York, New York 10004.

Dated: New York, New York
        May 16, 2005

Jeffrey M. Eisender (Bar No. CT 25177)
John M. Lundin (Bar No. phv0185)
SCHLAM STONE & DOLAN, LLP
26 Broadway, Suite 1900
New York, NY 10004
(212) 344-5400 (Telephone)
(212) 344-7677 (Facsimile)
*Attorneys for Siri Ostensen*

Sharon E. Jaffe (Bar. No. CT. 04623)
LEVIN & GLASSER, PC
P.O. Box 1098
Weston, CT  06883
(203) 221-3008 (Telephone)
(203)221-3010 (Facsimile)
*Attorneys for Siri Ostensen*

TO:

Donald J. Kennedy, Esq.
Carter Ledyard & Milburn, LLP
2 Wall Street
New York, NY  10005

Madeleine F. Grossman, Esq.
Dorit S. Heimer, Esq.
Levett Rockwood, P.C.
33 Riverside Avenue
Post Office Box 5116
Westport, Ct  06880

Charles A. Stewart, III Esq.
Stewart Occhipinti & Makow, LLP
1350 Broadway
Suite 2200
New York, N.Y.  10018

# SCHLAM STONE & DOLAN LLP

PETER R. SCHLAM
HARVEY M. STONE
RICHARD H. DOLAN
JAMES C. SHERWOOD
THOMAS A. KISSANE
BENNETTE D. KRAMER
JOHN J.D. McFERRIN-CLANCY
JEFFREY M. EILENDER

26 BROADWAY
NEW YORK, N.Y. 10004
———
(212) 344-5400
TELECOPIER: (212) 344-7677
www.schlamstone.com

JOHN M. LUNDIN
ELIZABETH PRICKETT-MORGAN
LEAH M. CAMPBELL

May 18, 2005

**BY FED-EX**

Donald J. Kennedy, Esq.
Carter Ledyard & Milburn LLP
2 Wall Street
New York, NY 10005

Re:     *Scandinavian Marine Claims Office Inc. v. Siri Ostensen*, 3:02 CV 678 (RNC)

Dear Mr. Kennedy,

        We have learned that the Schedule A attached to both subpoenas served on "The Benefit Practice" and "Oppenheimer & Co", were missing from the correspondence we sent to some parties. Please find enclosed in this correspondence the document "Schedule A". "Schedule A" is same for both subpoenas. I apologize in advance for any inconveniences.

Very Truly Yours,

Alexander M. Kim
Paralegal

CC:

Madeleine F. Grossman, Esq.
Dorit S. Heimer, Esq.
Levett Rockwood, P.C.
33 Riverside Avenue
Post Office Box 5116
Westport, Ct 06880

Charles A. Stewart, III Esq.
Stewart Occhipinti & Makow, LLP
1350 Broadway
Suite 2200
New York, N.Y. 10018

Oppenheimer & Co.
200 Park Avenue
New York, New York 10166

The Benefit Practice
250 East Hartsdale Ave., Suite 38
Hartsdale, New York 10530

Sharon E. Jaffe
Levin & Glasser, PC
3 Ledgebrook Court
Weston, CT 06883

## SCHEDULE A

## DEFINITIONS

1.    The definitions applicable to discovery requests of Local Civil Rule 26(c) of the United States District Court for the District of Connecticut are incorporated herein by reference.

2.    "Complaint" means the Complaint filed in Civil Action No. 3:02CV678 (RNC) on May 22, 2003.

3.    "NHC" means Norwegian Hull Club and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of NHC or any of its affiliates.

4.    "Non-Qualified Plan" means the agreement dated June 13, 1995 between SMCO and Tom Ostensen.

5.    "Notes" means the promissory notes referred to in the Complaint.

6.    "Qualified Pension Plan" means the Pension Plan for Employees of Scandinavian Marine Claims Office, Inc. of which Mrs. Ostensen is a beneficiary.

7.    "SCUA" means Scandinavian Underwriters Agency and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUA or any of its affiliates.

8.    "SCUAA" means SCUA Americas, Inc. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or

any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUAA or any of its affiliates.

       9.    "SCUA Holdings" means SCUA Holdings, B.V. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUA Holdings or any of its affiliates.

       10.    "SMCO" means Scandinavian Marine Claims Office, Inc. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SMCO or any of its affiliates.

       11.    "SMCO A.S." means SMCO A.S. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SMCO A.S. or any of its affiliates.

## INSTRUCTIONS

       1.    The rules of construction of Local Civil Rule 26(d) of the United States District Court for the District of Connecticut are incorporated herein by reference.

       2.    No request shall be construed to create a limitation upon any other request.

       3.    Each document responsive to these requests is to be produced, along with any non-identical version thereof, including drafts.

       4.    Except as discussed below with respect to audio and video files, documents stored on computers, magnetic tape or in a similar fashion shall, if possible, be printed and produced in printed form. If it is not possible to produce such documents in printed

2

form, the documents should be produced on compact disk in a format that is readable and searchable using one of the Microsoft Office for Windows suite of programs. Such compact disk shall be labeled with the name(s) of the file(s) being produced and the computer program by which they were created.

5.      Audio and video files shall be produced on compact disk or digital video disk. Such disk shall be labeled with the name(s) of the file(s) being produced and the computer program by which they were created.

6.      The term "any" shall be construed as necessary to bring within the scope of these requests all documents, communications or subject matter that might otherwise be construed to be outside the scope of these requests.

7.      In producing the documents requested herein, indicate the specific request(s) in response to which each document or group of documents is being produced.

8.      With respect to each document withheld on a claim of privilege, provide a statement setting forth the information required by Local Civil Rule 37(a)(1) of the United States District Court for the District of Connecticut.

9.      This document request shall be construed as continuing in nature and your response thereto shall be supplemented if and as additional responsive materials become available.

10.      Unless otherwise directed, the time period covered by these requests is from January 1, 1990 to the present.

## DOCUMENTS TO BE PRODUCED

1.      All documents relating to or concerning the Qualified Pension Plan.

2.     All documents relating to or concerning payments made to Siri Ostensen pursuant to the Qualified Pension Plan, including, but not limited to, the computation of such payments.

3.     All documents relating to or concerning the Notes including, but not limited to, all documents computing or estimating obligations due under the Notes and payments received by SMCO relating to the Notes (whether directly or as part of the settlement of claims relating to the Notes or the Non-Qualified Plan).

4.     All documents relating to or concerning the Non-Qualified Plan, including, but not limited to, all documents computing or estimating obligations due to any recipient under the plan and payments made to any recipient under the plan (whether directly or as part of the settlement of claims relating to the Notes or the plan).

5.     All documents relating to or concerning the salary and benefits, including vacation pay and reimbursable expenses, received by Tom Ostensen from SMCO during the period 1995 to the end of his employment, including, but not limited to, any severance pay.

6.     All documents relating to or concerning any of investigation of Tom Ostensen conducted by or on behalf of NHC, SCUA, SCUAA, SCUA Holdings, SMCO or SMCO A.S including, but not limited to, the investigation by Arthur Andersen.

7.     All documents relating to or concerning any of investigation regarding, or evaluation of, the Non-Qualified Plan conducted by or on behalf of NHC, SCUA, SCUAA, SCUA Holdings, SMCO or SMCO A.S including, but not limited to, the investigation by Arthur Andersen.

# EXHIBIT 4

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

SCANDINAVIAN MARINE CLAIMS
OFFICE, INC.,

$\qquad$ *Plaintiff,*

- *against* -

SIRI OSTENSEN,

$\qquad$ *Defendant,*

- *against* -

SCANDINAVIAN MARINE CLAIMS
OFFICE, INC., SCANDINAVIAN
UNDERWRITERS AGENCY, SCUA
AMERICAS, INC., S.M.C.O., A.S., AND
NORWEGIAN HULL CLUB,

$\qquad$ *Counterclaim and Third-Party Defendants.*

MARGARET KILLIP,

$\qquad$ *Plaintiff,*

- *against* -

SCANDINAVIAN MARINE CLAIMS
OFFICE, INC., SCANDINAVIAN
UNDERWRITERS AGENCY, SCUA
AMERICAS, INC., SCUA HOLDINGS, B.V.,
AND NORWEGIAN HULL CLUB,

$\qquad$ *Defendants and Third-Party Plaintiffs,*

- *against* -

TOM OSTENSEN

$\qquad$ *Third-Party Defendant.*

Civil Action No. 3:02CV678 (RNC)

**DEFENDANT'S SECOND REQUEST FOR
DOCUMENTS TO PLAINTIFF AND
THIRD-PARTY DEFENDANTS**

Civil Action No. 3:02CV678 (RNC)

**THIRD-PARTY DEFENDANT'S SECOND
REQUEST FOR DOCUMENTS TO
DEFENDANTS AND THIRD-PARTY
PLAINTIFFS**

Defendant Siri Ostensen in her individual capacity and as the executrix of the estate of her husband, Tom Ostensen, by her undersigned counsel, request, pursuant to Federal Rules of Civil Procedure 26 and 34, that Scandinavian Marine Claims Office, Inc., Scandinavian Underwriters Agency, SCUA Americas, Inc., SMCO., A.S., SCUA Holdings, B.V. and Norwegian Hull Club, produce the following documents at the offices of Mrs. Ostensen's counsel, Schlam Stone & Dolan LLP, 26 Broadway, 19th Floor, New York, New York 10004 no later than June 20, 2005.

## DEFINITIONS

1.    The definitions applicable to discovery requests of Local Civil Rule 26(c) of the United States District Court for the District of Connecticut are incorporated herein by reference.

2.    "Complaint" means the Complaint filed in Civil Action No. 3:02CV678 (RNC) on May 22, 2003.

3.    "NHC" means Norwegian Hull Club and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of NHC or any of its affiliates.

4.    "Non-Qualified Plan" means the agreement dated June 13, 1995 between SMCO and Tom Ostensen.

5.    "Notes" means the promissory notes referred to in the Complaint.

6.    "Qualified Pension Plan" means the Pension Plan for Employees of Scandinavian Marine Claims Office, Inc. of which Mrs. Ostensen is a beneficiary.

7.    "SCUA" means Scandinavian Underwriters Agency and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUA or any of its affiliates.

8.    "SCUAA" means SCUA Americas, Inc. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUAA or any of its affiliates.

9.    "SCUA Holdings" means SCUA Holdings, B.V. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SCUA Holdings or any of its affiliates.

10.    "SMCO" means Scandinavian Marine Claims Office, Inc. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SMCO or any of its affiliates.

11.    "SMCO A.S." means SMCO A.S. and any agent, subsidiary, affiliate, parent, employee, officer, director, attorney, representative, shareholder, principal, or any person or entity holding himself or itself out to be affiliated with or acting on behalf of SMCO A.S. or any of its affiliates.

## INSTRUCTIONS

1.    The rules of construction of Local Civil Rule 26(d) of the United States District Court for the District of Connecticut are incorporated herein by reference.

3

2.    No request shall be construed to create a limitation upon any other request.

3.    Each document responsive to these requests is to be produced, along with any non-identical version thereof, including drafts.

4.    Except as discussed below with respect to audio and video files, documents stored on computers, magnetic tape or in a similar fashion shall, if possible, be printed and produced in printed form.  If it is not possible to produce such documents in printed form, the documents should be produced on compact disk in a format that is readable and searchable using one of the Microsoft Office for Windows suite of programs.  Such compact disk shall be labeled with the name(s) of the file(s) being produced and the computer program by which they were created.

5.    Audio and video files shall be produced on compact disk or digital video disk.  Such disk shall be labeled with the name(s) of the file(s) being produced and the computer program by which they were created.

6.    The term "any" shall be construed as necessary to bring within the scope of these requests all documents, communications or subject matter that might otherwise be construed to be outside the scope of these requests.

7.    In producing the documents requested herein, indicate the specific request(s) in response to which each document or group of documents is being produced.

8.    With respect to each document withheld on a claim of privilege, provide a statement setting forth the information required by Local Civil Rule 37(a)(1) of the United States District Court for the District of Connecticut.

4

9.     This document request shall be construed as continuing in nature and your response thereto shall be supplemented if and as additional responsive materials become available.

10.     Unless otherwise directed, the time period covered by these requests is from January 1, 1990 to the present.

## DOCUMENTS TO BE PRODUCED

Subject to the foregoing definitions and instructions, Mrs. Ostensen requests the following documents:

1.     All documents relating to or concerning the Qualified Pension Plan.

2.     All documents relating to or concerning the Notes including, but not limited to, all documents computing or estimating obligations due under the Notes and payments received by SMCO relating to the Notes (whether directly or as part of the settlement of claims relating to the Notes or the Non-Qualified Plan).

3.     All documents relating to or concerning the Non-Qualified Plan, including, but not limited to, all documents computing or estimating obligations due to any recipient under the plan and payments made to any recipient under the plan (whether directly or as part of the settlement of claims relating to the Notes or the plan).

4.     All documents relating to or concerning the salary and benefits, including vacation pay and reimbursable expenses, received by Tom Ostensen from SMCO during the period 1995 to the end of his employment, including, but not limited to, any severance pay.

5.     All documents relating to or concerning SMCO's sale of SMQI, Inc. including, but not limited to, any valuations of SMQI, Inc.

5

6.    All documents relating to or concerning the transfer of SMCO's business, employees, assets or other things of value to SUCA Americas, Inc. including, but not limited to, any valuations of that business or assets.

7.    All documents relating to or concerning the transfer of SMCO's business, employees, assets or other things of value to SMQI, Inc. including, but not limited to, any valuations of that business or assets.

8.    All documents relating to or concerning the transfer of SMCO's business, employees, assets or other things of value to any entity other than SUCA Americas, Inc. or SMQI, Inc. including, but not limited to, any valuations of that business or assets.

9.    Documents sufficient to show all payments made by or on behalf or SMCO to any person or entity during the period January 1, 2000 to the present.

10.    All documents relating to or concerning the decision to pay certain debts of SMCO, but not to pay SMCO's obligations to Tom Ostensen under the Non-Qualified Plan.

11.    All documents relating to or concerning any of investigation of Tom Ostensen conducted by or on behalf of NHC, SCUA, SCUAA, SCUA Holdings, SMCO or SMCO A.S including, but not limited to, the investigation by Arthur Andersen.

12.    All documents relating to or concerning any of investigation regarding, or evaluation of, the Non-Qualified Plan conducted by or on behalf of NHC, SCUA, SCUAA, SCUA Holdings, SMCO or SMCO A.S including, but not limited to, the investigation by Arthur Andersen.

13.    All documents relating to or concerning the setting of SMCO's rates for its services including, but not limited to, the involvement of NHC, SCUA, SCUAA, SCUA Holdings, or SMCO A.S in the setting of such rates.

14.    All documents provided to SMCO's auditors or accountants during the period 1997 to the present.

15.    All documents relating to or concerning communications between NHC, SCUA, SCUAA, SCUA Holdings, SMCO or SMCO A.S. on the one hand and Tom Ostensen or Siri Ostensen on the other hand concerning the Qualified Pension Plan or the Non-Qualified Plan.

16.    All documents relating to or concerning communications between NHC, SCUA, SCUAA, SCUA Holdings, SMCO or SMCO A.S. on the one hand and Tom Ostensen or Siri Ostensen on the other hand concerning the Notes.

17.    All documents relating to or concerning communications between NHC, SCUA, SCUAA, SCUA Holdings, SMCO or SMCO A.S. on the one hand and Tom Ostensen on the other hand concerning Tom Ostensen's employment by SMCO including, but not limited to, his recruitment, retention and termination.

Dated: New York, New York
      May 16, 2005

                               Jeffrey M. Eilender (Bar. No. CT 25177)
                               John M. Lundin (Bar No. phv0185)
                               **SCHLAM STONE & DOLAN**, LLP
                               26 Broadway, Suite 1900
                               New York, NY 10004
                               (212) 344-5400 (Telephone)
                               (212) 344-7677 (Facsimile)
                               *Attorneys for Siri Ostensen*

                               Sharon E. Jaffe (Bar. No. CT. 04623)
                               **LEVIN & GLASSER, PC**
                               P.O. Box 1098
                               Weston, CT  06883
                               (203) 221-3008 (Telephone)
                               (203)221-3010 (Facsimile)
                               *Attorneys for Siri Ostensen*