

LEVETT ROCKWOOD
P.C.
Attorneys-at-Law

FILED
2005 JUN 21 P 4:19
DISTRICT COURT
HARTFORD, CT

MADELEINE F. GROSSMAN

May 11, 2005

*Via Facsimile*

The Honorable Donna F. Martinez
United States Magistrate Judge
United States District Court for the District of Connecticut
450 Main Street
Hartford, Connecticut 06103

Re: Scandinavian Marine Claims Office Inc. v. Ostensen, No. 3:02 CV 678 (RNC)

Dear Judge Martinez:

We write to provide your Honor with our additional comments and citations to relevant authorities discussed during the pre-motion conference held on May 10, 2005.

The plaintiff, Scandinavian Marine Claims Office, Inc. ("SMCO") intends to move for summary judgment for the default on two Mortgage Notes in the face amount of $305,000 plus interest. Although the Mortgage Notes provide by their terms that they were to be secured by a mortgage, they were not and Siri Ostensen sold her house for $1,864,000 (see attachment).

Siri Ostensen argues that SMCO should not be permitted to move for summary judgment because her counterclaims may setoff and exceed any damages awarded to SMCO. That argument is factually and legally incorrect.

During the pre-motion conference, we referred the Court to EMI Music Mktg. v. Avatar Records, Inc., 317 F. Supp. 2d 412 (S.D.N.Y. 2004) and John S. Pereira et al. v. Marshall S. Cohen, 267 B.R. 500 (S.D.N.Y. 2001). Collectively, these cases hold that: 1) a set-off or counterclaim that may ultimately serve to offset liability on plaintiff's claim(s), does not prevent entry of summary judgment in plaintiff's favor; and 2) a counterclaim based on a contract separate and distinct from a note -- even where related and where the note and other contract were "in essence a single transaction," or executed contemporaneously -- does not preclude summary judgment on the note itself.

The Clerk of the Court shall docket this letter and send copies of this endorsement to all counsel. The undersigned held a prefiling conference on May 10, 2005. The plaintiff may file its motion on or before September 30, 2005. So Ordered.
Donna F. Martinez
6/21/05

33 RIVERSIDE AVENUE
WESTPORT, CONNECTICUT 06880
TEL: (203) 222-0885
FAX: (203) 226-8025

The Pereira case is illustrative. In Pereira, a Chapter 7 trustee moved for summary judgment against a corporate debtor's former chief executive officer (the "CEO") to recover sums owing to the debtor on promissory notes. 267 B.R. at 503. The CEO, in turn, contended that he was entitled to an offset based on compensation due to him under certain prepetition employment agreements with the debtor. Id. at 504. In ruling that the CEO's offset claims did not bar summary judgment on the promissory notes, the court cited the well-settled rule that "[o]ffset claims do not bar summary judgment on promissory notes or other payment obligations, unless such obligations and the offset claims involve contractually 'dependent' promises." Id. at 507 (citations omitted). As the court found that the CEO's offset claims concerning his employment agreements with the debtor were unrelated to his indebtedness on the notes, it ruled that it could grant the trustee's summary judgment motion and did so. Id. at 507, 516.

Of note, the court also rejected the CEO's contentions in support of his request for relief under Rule 56(f). Id. at 516. Specifically, the CEO contended that he was opposing the trustee's summary judgment motion without having full access to all of the debtor's corporate books and records. Id. In rejecting that argument, the court stated that "[e]ven if [the CEO] 'obtained what [he] stated would be uncovered, the information would have been insufficient to defeat summary judgment." Id. (citations omitted).

In a later decision, Pereira v. Cogan, 275 B.R. 472 (S.D.N.Y. 2002) ("Pereira II"), the District Court granted a motion to enter judgment and stayed entry of the judgment on the condition that the judgment be paid into court.[1]

The cases cited by Siri Ostensen are clearly distinguishable and do not apply here. For example, the case of Valley Disposal, Inc. v. Central Vermont Solid Waste Mgmt. Dist., 113 F.3d 357 (2nd Cir. 1997) did not address whether plaintiff could seek summary judgment despite the pendency of a setoff claim, but rather whether a defendant could use a state court judgment that it had already obtained against the plaintiff as a setoff against a judgment for attorney's fees that plaintiff obtained against the defendant in a separate federal court action. Likewise, the other cases cited by Ostensen did not address whether plaintiff could seek summary judgment, but whether summary judgment was warranted on the merits. See RPJ Sportswear, Inc. v. Xylo Tex, Ltd., 681 F. Supp. 225 (S.D.N.Y. 1988) (denying defendant fabric supplier's motion for summary judgment to recover amounts allegedly owed for goods and patterns supplied to plaintiff clothing manufacturer, where there was a question of fact as to whether plaintiff revoked its acceptance of goods and patterns based on defendant's breach of exclusivity agreement); In re Colonial Realty Co., 208 B.R. 616, 619 (Bankr. D. Conn. 1997) (denying defendant trust company's motion for summary judgment with regard to its claim to set off the

---

[1] Thereafter, the District Court granted partial summary judgment in John S. Pereira, et al. v. Marshall S. Cogan, et al., 200 F. Supp. 2d 367 (S.D.N.Y. 2002) which was affirmed on appeal in John S. Pereira, et al. v. Marshall S. Cogan, 2002 U.S. App. Lexis 24123 (2nd Cir. 2002).

amount that debtor maintained on deposit with the trust company against the amount that the debtor owed to the trust company under a loan, where there was a question of fact as to whether trust company's setoff claim was estopped based on an alleged promise made by an agent of the trust company to the debtor that the trust company would refrain from setting off against the deposit).

Here, the terms of the Mortgage Notes SMCO seeks to enforce are straightforward. The Mortgage Notes contain unequivocal promises on the part of both Siri and Tom Ostensen to pay SMCO the sums of $180,000 and $125,000, plus interest at specified rates and intervals. The Mortgage Notes further provide that the entire principal will immediately become due and payable upon demand after six months notice in the event Tom Ostensen's employment from SMCO is terminated.

Significantly, neither of the two Mortgage Notes make any reference to the "Nonqualified Plan," nor do they provide for any other conditions to payment. There is no factual dispute that 1) the Ostensens were both signatories to the Mortgage Notes; 2) they received the principal sums thereunder; 3) Tom Ostensen's employment with SMCO was terminated; 4) SMCO demanded payment of the notes; and 5) the Ostensens failed to pay the amount due under either Mortgage Note upon demand. As Your Honor recognized in Your September 5, 2003 Recommended Ruling on SMCO's Motion for Stay Pending Arbitration, "[t]he Ostensens do not dispute they executed the notes and have not paid them." [Doc. #63] (adopted in full by Endorsement entered Sept. 30, 2003), at 2; see also Defendants' Answer, [Doc. #18] ¶¶ 9-13). Having admitted the above, none of the discovery Siri Ostensen seeks will affect the issue of liability.

Counsel for Siri Ostensen make the additional argument that her claims against SMCO cannot be decided until after the arbitration with SMCO and related companies. However, SMCO's claim for default on the two Mortgage Notes is before this Court and not subject to arbitration.

In essence, the only counterclaim asserted by Siri Ostensen against SMCO which has not been stayed is her claim for breach of the Qualified Plan, Amended Affirmative Defenses, Setoff and Counterclaim ¶¶ 28-33. Furthermore, to the extent Siri Ostensen "alleges emotional distress arising from SMCO's conduct with regard to his [her] non-qualified pension plan benefits, such a claim is within the scope of the arbitration" (Recommended Ruling on SMCO's Motion for Stay Pending Arbitration [Doc. #63] at 11). Finally, Siri Ostensen has not asserted that she was fraudulently induced to sign the Mortgage Notes as argued by her counsel and could not in good faith do so because she and Tom Ostensen admittedly received $305,000.

The Ostensens have not pursued their claims in arbitration for the past year and a half. To the extent Siri Ostensen's counterclaims appear to be closely related to the nonpayment of the Mortgage Notes -- which SMCO vigorously disputes -- the Court may exercise its discretion to stay enforcement of a judgment in SMCO's favor pursuant to Fed. R. Civ. P. 62(h) until resolution of the remaining counterclaims. However, the existence of these counterclaims should not prevent entry of final judgment as to SMCO's claims -- all of which revolve around the nonpayment of the Mortgage Notes. If any of Siri Ostensen's counterclaims are found meritorious, the set-off issue may be determined in the context of computing damages.

Accordingly, SMCO submits that a summary judgment motion is appropriate at this time.

Very truly yours,

Madeleine F. Grossman

MFG:cmd

cc: John M. Lundin, Esq.
Schlam Stone & Dolan LLP

Sharon E. Jaffe, Esq.
Levin & Glassner, P.C.

Donald J. Kennedy, Esq.
Carter Ledyard & Milburn LLP

BER 39-023

REAL ESTAT

# Property Trar

## DARIEN

*(Transactions recorded through May 5.)*

Kee Waydin Assoc LP sold to White Oak Shade LLC, property at 225 Brookside Rd. for $900,000.

Craig W. Knollman and Juley L. Hirst sold to Clarke D. and Lisa B. Adams, property at 27 Circle Rd. for $2,015,000.

Dorothy K. Somogyi and Dean K. Lindsay sold to Edward S. and Stacey S. Tiffany, property at 17 Cliff Ave. for $788,000.

Michael Roy and Kathleen Anne [illegible] sold to James Newmann and Sarah Brown, property at 94 Gardiner St. for $930,000.

Richard R. and Alexis M. Evanish sold to Allen L. and Barbara L. Under[illegible], property at 101 Holmes Ave. for $[illegible].

Kyle F. and Ellen S. Hubbard sold to Kristen D. and Heidi S. Davis, property at 134 Holmes Ave. for $688,000.

Courtney Campbell Moller sold to Scott W. and Aileen K. White, property at 22 Intervale Rd. for $785,000.

Richard M. and Robin Brown Woods sold to 174 Mans Field Ave LLC, property at 174 Mansfield Ave. for $2,850,000.

Leslie M. and Mark L. Mccarthy sold to Alexis and Richard Evanish, property at 154 Middlesex Rd. for $1,125,000.

Sirva Relocation LLC sold to Vikram Sawhney, property at 3 Plymouth Lane for $749,900.

John F. and Elizabeth Hill Knapp sold to Sirva Relocation LLC, property at 3 Plymouth Lane for $749,900.

Michael A. and Jennifer G. Pozzinelli sold to David W. and Juliana P. Abbot, property at 58 West Ave. for $879,000.

Linda D. Bravilo sold to Stephen M. and Frances A. Dorris, property at 221 West Ave. for $451,250.

## GREENWICH

*(Transactions recorded through May 4.)*

Richard P. and Pamela Lussaki sold to Ross T. and [illegible], property at [illegible] Brownhouse Rd. for $[illegible],000.

Juan Gastelu sold to Jeanne H. Oler, property at 51 Forest Ave. Unit 104 for $967,500.

Siri Dalsmses sold to John and Ellen Reid, property at 7 Gillans Lane for $1,864,000.

Lois Palazzolo sold to Juan Gastelu, property at 8 Hearsted Drive for $985,000.

John C. Powne sold to Rose M. France, property at 3 Putnam Hill Unit [illegible] for $380,000.

Claire A. Mathews sold to Marguerite R. Vaudan, property at 3 Putnam Park Unit 3 for $332,000.

Maura Brickman sold to Burnt R. and Francine Ehrlich, property at 836 Riversville Rd. for $3,995,000.

Martin and Valerie Davies sold to Paul and Sie Schultz, property at 8 Shelter Drive for $1,695,000.

Lucile Funke and Virginia F. Davis sold to Christine Bom and Carlos Bom Sopher, property at 40 W Elm St. Unit 3b for $475,000.

Andrew W. Regan and David W. Laughlin sold to 186 Old Mill Rd LLC, property at n/a for $1,600,000.

## NEW CANAAN

Dennis B. and Jacqueline R. Ross sold to Gerardo and Ann Marie Borea, property at 41 Bob Hill Lane for $900,000.

Stuart LHF LP sold to Robert C Sigg LLC and Fiona A Sigg LLC, property at 89 Elm St. for $650,000.

Stuart LHF LP sold to Robert C Sigg LLC and Fiona A Sigg LLC, property at 137 Elm St. for $695,000.

Stuart L H F LP sold to Robert C Sigg LLC and Fiona A Sigg LLC, property at 139 Elm St. for $[illegible],000.

James G. and Joyne C. Campbell sold to Matthew and Carrie Lynn Busch, property at 78 Heritage Hill Rd Unit D for $348,000.

Paul and Roberta A. Singhan sold to Courtney ?. Muller and Roger Bil Hefner, property at 39 Parish Rd. for $1,295,000.

Vincent J. and Virginia E. Vasta sold to Christopher and Jennifer Locvsa, property at 42 Pond View Lane, for $2,450,000.

Edna Steimach sold to Richard R. Roina, property at n/a for $975,000.

## NORWALK

*(Transactions recorded through May 10.)*

Greta T. Dunn sold to James T. Welshek, property at 10 3rd St. for $501,000.

Michael and Laurie Dobson sold to Susan Fusco, property at 77 Bluff Ave. Unit 65 for $29,000.

Dalton T. E
Zamiska sold t
Maguire, prope
$1,500,000.

Kerschner
Zachary and A
Dogwood Lan

Joseph A. O
and Jaime N. F
Genoa St. for $

Rebecca L. H
and Lisa Ok
Grumman Ave.

ST

*(Transactions r*

Michael an
Kathleen Tr
Bedford St. U

Mary
Chaghasbanla
Bedford St. Un

Jeffrey D. a
Binh Quach an
y at 2435 S
$572,000.

Jung Soon
Patricia C. P
Bedford St. Un

Andrew T.
Bortnowsky, p
Rd. Unit D20 (

Robert and L
Alexandra K
Browning Driv

Beth H. Fab
and Jennifer
Clearview Ave

James P. an

# Container Store corners a niche market ir

By Anusha Shrivastava
Associated Press

NEW YORK — The Container Store is a pack rat's dream, selling hundreds of boxes, bins, containers, racks, jars and shelves — basically, items that will help consumers store, package and organize.

The retailer, little known outside of the communities where its 30 stores are located, has followed last year opened a huge store in Manhattan, which, with its high rents, is one of the toughest places for retailers to turn a profit.

"When we opened our first store in Dallas, we joked that that was the worst place to open a store because people were not short on space," Chairman Garrett Boone said. "We've always wanted to come to New York be-

the first year. That's $10 million more than the best performing stores in Tyson's Corner, Va.; Houston; and White Plains, N.Y.; the company's branches are located in 16 metropolitan areas across the country.

Retail analysts are a little wary about the Manhattan store.

"While New York is a ready market for them, it is very costly to operate in Manhattan," says

handful of
few sizes,
variety of t
and many

The co
cheerfully
sections ac
house: clo
bath. Then
will appea
backpacks
crates. And