**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

SCANDINAVIAN MARINE CLAIMS
OFFICE, INC.,

*Plaintiff*,

- against -

SIRI OSTENSEN,

*Defendant*,

- against -

SCANDINAVIAN MARINE CLAIMS
OFFICE, INC., SCANDINAVIAN
UNDERWRITERS AGENCY, SCUA
AMERICAS, INC., S.M.C.O., A.S., AND
NORWEGIAN HULL CLUB,

*Counterclaim and Third-Party Defendants.*

Civil Action No. 3:02CV678 (RNC) (DFM)

June 24, 2005

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO COMPEL DISCOVERY RESPONSES**

Jeffrey M. Eilender (Bar. No. CT 25177)
John M. Lundin (Bar No. phv0185)
**SCHLAM STONE & DOLAN**, LLP
26 Broadway, Suite 1900
New York, NY 10004
(212) 344-5400 (Telephone)
(212) 344-7677 (Facsimile)
*Attorneys for Siri Ostensen*

Sharon E. Jaffe (Bar. No. CT. 04623)
**LEVIN & GLASSER, PC**
P.O. Box 1098
Weston, CT  06883
(203) 221-3008 (Telephone)
(203)221-3010 (Facsimile)
*Attorneys for Siri Ostensen*

## TABLE OF CONTENTS

Table of Authorities ......................................................................................................... ii

Preliminary Statement ........................................................................................................1

Factual and Procedural Background ...................................................................................4

Argument ...........................................................................................................................24

I.      LEGAL FRAMEWORK ........................................................................................24

II.     SMCO AND THE RELATED OTHER COMPANIES HAVE NO BASIS FOR
        REFUSING TO PROVIDE THE DISCOVERY MRS. OSTENSEN HAS
        SOUGHT .................................................................................................................25

        A.      NHC Must Provide Discovery Covering the Entire Relevant Period....................25

        B.      SMCO A.S. Must Respond to Mrs. Ostensen's Discovery Demands. ..................26

        C.      SMCO and the Related Other Companies Improperly Have Refused to
                Produce Relevant Discovery..................................................................................28

                1.  SMCO and the Related Other Companies Have No Good Faith Basis
                    for Their Refusal to Provide Discovery. ................................................28

                2.  SMCO and the Related Other Companies Have Failed Reasonably to
                    Search for and Produce Evidence. .........................................................31

        D.      SMCO and the Related Other Companies Have Refused to Obey the
                Court's Order Regarding the Location of Party Depositions...............................32

        E.      SMCO and the Related Other Companies Have Waived Their Objections. .........32

                1.  SMCO, SCUAA and NHC's Boilerplate Objections Are Waived..................32

                2.  SMCO A.S. and SCUAA Have Waived Their Objections by Failing to
                    Submit Any. .............................................................................................34

                3.  SMCO, SCUAA and NHC's Privilege Claims Are Waived. .........................34

Conclusion .........................................................................................................................34

<u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Anti-Monopoly v. Hasbro, Inc.*,
    No. 94 Civ. 2120 (LMM) (AJP), 1995 WL 649934 (S.D.N.Y. Nov. 3, 1995)..................31

*FG Hemisphere Associates, L.L.C. v. Republique du Congo*,
    No. 01 Civ. 8700 (SAS) (HBP), 2005 WL 54218 (S.D.N.Y. March 8, 2005) ..................31

*In re Priceline.com Inc. Securities Litigation*,
    No. 3:00CV01884 (DJS), 2005 WL 1366450 (D. Conn. June 7, 2005) .....................32, 33

*King-Hardy v. Bloomfield Board of Education*,
    No. 3:01CV979 (PCD), 2002 WL 32506294 (D. Conn. Dec. 8, 2002).......................32, 33

*Metropolitan Opera Association v. Local 100, Hotel Employees and Restaurant*
    *International Union*, 212 F.R.D. 178 (S.D.N.Y. 2003) ......................................................31

*Ruran v. Beth El Temple of West Hartford*,
    226 F.R.D. 165 (D. Conn. 2005)........................................................................................34

*Scott v. Arex, Inc.*,
    124 F.R.D. 39 (D. Conn. 1989)..........................................................................................28

*Sugarhill Records Ltd. v. Motown Records Corp.*, 105 F.R.D. 166 (S.D.N.Y. 1985)...................32

*Uniden America Corp. v. Ericsson, Inc.*, 181 F.R.D. 302 (M.D.N.C. 1998)...............................28

<u>RULES</u>

Federal Rule of Civil Procedure 26 ...............................................................24, 26, 29, 31

Federal Rule of Civil Procedure 33 .............................................................................26, 34

Federal Rule of Civil Procedure 34 .........................................................................25, 26, 34

Defendant Siri Ostensen ("Mrs. Ostensen"), in her individual capacity and as the executrix of the estate of her husband, Tom Ostensen, by her undersigned counsel, submits this memorandum of law, along with the Declaration of John M. Lundin, and the exhibits attached thereto, in support of her motion to compel Plaintiff/Third-Party Defendant Scandinavian Marine Claims Office, Inc. ("SMCO") and Third-Party Defendants SCUA Americas, Inc. ("SCUAA"), SMCO A.S., and Norwegian Hull Club ("NHC") (collectively, and without SMCO, the "Related Other Companies") fully to respond to Mrs. Ostensen's discovery demands, as discussed above, no later than July 15, 2005, including: (1) ordering NHC immediately to respond to Mrs. Ostensen's discovery demands for the entire relevant period; (2) ordering SMCO A.S. immediately to respond fully to Mrs. Ostensen's discovery demands; (3) ordering SMCO, SMCO A.S., SCUAA and NHC to provide the discovery listed in Section IIC.1. (*infra*); (4) ordering SMCO, SMCO A.S., SCUAA and NHC to conduct a search of all files within their possession, custody or control, including electronic files, which reasonably could be expected to contain evidence responsive to Mrs. Ostensen's discovery demands; (5) holding SMCO, SMCO A.S., SCUAA and NHC objections to the production of evidence, including on privilege grounds, to have been waived; and (6) ordering SMCO, SMCO A.S., SCUAA and NHC to make all of their employees or agents who are to be deposed available for deposition in Connecticut (or any other mutually convenient location agreed to counsel for all parties).

## Preliminary Statement

SMCO and the Related Other Companies have proved through their stonewalling in discovery that the facts are their enemy, and that the only way they can avoid liability in this action and the parties' related arbitration is to hide the truth regarding their conduct.

SMCO and the Related Other Companies have stonewalled discovery by almost every imaginable means. SMCO and the Related Other Companies know that the best witness

against them—Tom Ostensen—is dead.  Faced now by his widow, who is litigating her

counterclaims and defenses on both her own behalf and on behalf of her dead husband's estate,

SMCO and the Related Other Companies know that they now control almost all of the evidence

relating to this action.  Thus, their hope is obvious:  if they can run out the clock on the period set

for discovery by the Court, they might succeed in hiding the truth about their liability on Mrs.

Ostensen's counterclaims and the validity of her defenses to their claims against her and her

husband's estate.

      SMCO and the Related Other Companies repeatedly—and without legal basis—

have refused to provide relevant evidence in response to Mrs. Ostensen's discovery demands.

      **First**, it is obvious from the mere trickle of documents which they grudgingly

(and slowly) have produced that SMCO and the Related Other Companies have not conducted a

reasonable search for relevant, responsive evidence and, in particular, that they have made no

reasonable effort to search for documents in electronic form, including e-mail, in their

possession, custody or control.

      SMCO and the Related Other Companies' refusal fully to provide discovery goes

well beyond electronic documents however.  For example, they have not produced in discovery

the document they provided to the Court at the parties' March 3, 2005 settlement conference.

SMCO clearly thought that the document was vital enough to its case that it showed it to the

Court, yet it has refused to produce a copy of that document in discovery.  Nor have they

identified to Mrs. Ostensen the documents that they have withheld from production on privilege

grounds.

      **Second**, two parties, SMCO A.S. and NHC have arbitrarily refused to provide

discovery, either completely—SMCO A.S. has refused to provide **any** discovery—or

substantially—NHC has not provided any discovery dated prior to 2001, notwithstanding that the

vast majority of the relevant facts in this action took place prior to that date.

      **Third**, the Court already has before it a motion relating to SMCO and the Related

Other Companies' refusal to provide discovery regarding topics other than the liability of the

Related Other Companies' to Mrs. Ostensen under the Non-Qualified Plan.

      **Fourth**, SMCO and the Related Other Companies have refused to produce most

of the relevant evidence Mrs. Ostensen has sought in discovery, including evidence relating to

their business plans and management, their finances, the disposition of SMCO's business and

assets, the domination of SMCO by SMCO A.S. and NHC and the Non-Qualified Plan, as

described in Section IIC.1. (*infra*).

      **Fifth**, notwithstanding an unambiguous order from the Court that depositions of

the employees of the parties located outside the United States would be held in Connecticut,

counsel for SMCO and the Related Other Parties has informed us that they will not provide out-

of-state witnesses for deposition here.

      **Sixth**, SMCO and the Related Other Companies have made no more than a token

effort to resolve the discovery disputes discussed herein.  They have refused to respond

meaningfully to Mrs. Ostensen's many attempts to determine the basis for SMCO and the

Related Other Companies' refusal to provide discovery.  To be sure, they three times met and

conferred with counsel regarding the parties' disputes, but they have steadfastly refused—either

in those meetings, their objections to Mrs. Ostensen's discovery demands or in response to the

many letters sent to them regarding discovery—to provide any specific basis for their refusal.

Mrs. Ostensen is aware of no valid basis for SMCO and the Related Other Companies to refuse to provide the discovery sought by this motion.

Indeed, after being told a week in advance that this motion would be brought on this day if they did not provide the relevant evidence that Mrs. Ostensen has sought, SMCO and the Related Other Parties responded not with evidence, but only with a promise to send a letter—which was described over the telephone but has not yet been received—promising that SMCO and the Related Other Companies would produce more evidence in the future. This is too little, too late. SMCO and the Related Other Companies have had almost three months to respond to Mrs. Ostensen's discovery demands. After three months, Mrs. Ostensen needs relevant evidence, not more promises. Not having received the evidence she has demanded, she can tolerate no more delay, and thus seeks the Court's assistance.

The reason for SMCO and the Related Other Companies' refusal meaningfully to participate in discovery is plain. They have no interest in meeting their obligations under the Federal Rules of Civil Procedure to produce relevant evidence to Mrs. Ostensen. And they have no legal basis for their refusal meaningfully to do so. Rather, they are stonewalling, hoping to run out the clock on Mrs. Ostensen, because that is the **only** way they can defeat her claims and defenses against them.

Mrs. Ostensen respectfully requests that the Court put an end to this stonewalling.

### Factual and Procedural Background

SMCO claims that Mrs. Ostensen owes it money due under promissory notes (the "Notes") signed by Mrs. Ostensen and her late husband, Tom Ostensen. However, SMCO and the Related Other Companies owe Mrs. Ostensen a much greater debt.

4

**SMCO and the Related Other Companies**

SMCO was a wholly-owned subsidiary of Third-Party Defendant SMCO A.S. (Plaintiff Scandinavian Marine Claims Office, Inc.'s Response to Defendant Siri Ostensen's First Interrogatories ("SMCO's Interrog. Resp."), Response No. 1, Exhibit 1 to the Declaration of John M. Lundin ("Lundin Decl.").) From 1997 until 2000, SMCO A.S.'s board of directors acted as the board of directors of SMCO as well. (SMCO AS Board Meeting – Bergen, 2 April 1997, Lundin Decl. Ex. 2 ("The SMCO AS Board was elected under an extraordinary general meeting Friday, 14 February 1997 and is also to be elected in those companies who have hereto had their own boards.").) SMCO A.S. required SMCO to provide NHC and its other shareholders with services at rates that were too low to allow SMCO consistently to earn a profit.

The majority owner of SMCO, A.S. is Third-Party Defendant NHC. (Lundin Decl. Ex. 1, Response No. 1.) NHC is a "[m]utual hull insurance" club. (http://www.norclub.no ("NHC History"), Lundin Decl. Ex. 3.)

Prior to January 2001, SMCO, A.S.'s majority owners were Bergen Hull Club and Unitas. (Lundin Decl. Ex. 1, Response No. 1.) On January 2001, Bergen Hull Club changed its name to Norwegian Hull Club and merged with UNITAS. (NHC 2000 Annual Report at 6, Lundin Decl. Ex. 4; *see also* NHC History, Lundin Decl. Ex. 3 ("In 2001 Bergen Hull Club and UNITAS merged to create Norwegian Hull Club."); NHC Articles of Association, Lundin Decl. Ex. 5 (stating that NHC is an "amalgamation of," among other entities Bergen Hull Club ("Bergens Skibsassuranseforening – Gjensidig") and Unitas.) According to NHC's web site, "Norwegian Hull Club . . . carries forward the history of all the mutual hull clubs in Norway into a new century." (NHC History, Lundin Decl. Ex. 3.) "Norwegian Hull Club has the largest share of the Norwegian ocean hull market and it ranks amongst the largest pure marine underwriters in

5

the world." (*Id.*)

**The Non-Qualified Plan**

Mr. Ostensen (and Mrs. Ostensen, as his widow) were entitled to benefits under a non-qualified pension plan for senior executives of SMCO (the "Non-Qualified Plan"). SMCO A.S. and NHC, which dominated, SMCO, forced SMCO to renege on its promises to the Ostensens regarding the Non-Qualified Plan. The Related Other Companies' misconduct deprived Mrs. Ostensen of the significant benefits—total payments of well over $2 million between 2009 and 2022—to which she contractually is entitled under the plan, benefits that were the consideration for the Ostensen's execution of the Notes.

**The Dissolution of SMCO**

In 2001, SMCO, A.S. decided to: (1) close SMCO's headquarters, firing SMCO management; (2) form a new company, SCUA Americas, Inc., to take over the business of SMCO's Houston and Miami offices; and (3) sell SMCO's subsidiary, SMQI, Inc. (Minutes of the SMCO AS Board Meeting, dated May 23, 2000, Lundin Decl. Ex. 6.) Further, on June 21, 2001, the SMCO A.S. Board recommended "to the ultimate shareholders that they provide the capital necessary to liquidate" SMCO "based on **full payment** of **all** obligations **except** balances with **Mr. Ostensen**." (SMCO A.S. Board Meeting Minutes dated June 21, 2001, Lundin Decl. Ex. 7 (emphasis added).)

NHC reported in its 2001 Annual Report that $2 million "was written off" NHC's "2000 accounts as loss relating to the liquidation of SMCO" and that "estimated losses from the liquidation of SMCO" increased in 2001, "mostly due to an increase in estimated pension liabilities, in part due to lower USD interest rates and in part due to errors made in previous calculations of pension liabilities." (NHC 2001 Annual Report at 10, Lundin Decl. Ex. 8.) As a

6

result, NHC's "2001 accounts" were $1.6 million "to cover the increased liquidation cost. The

losses relating to SMCO" were "divided between the two shareholders of the company on a pro

rata basis, namely 2/3 and 1/3.) (*Id.*)

NHC's decision to assume SMCO's obligations under the Non-Qualified Plan

were made clear in its board meeting minutes. The minutes of the February 27, 2001 meeting of

NHC's board reflect that the board agreed in principle that SMCO would be liquidated, with

"unsecured creditors generally receive full settlement and that previous management employees

receive coverage under the Non Qualified pension plan not to exceed USD 750 000." (NHC

Board Meeting Minutes dated February 27, 2001 at NW000187, Lundin Decl. Ex. 9.) The board

recognized that this would result in NHC absorbing "an estimated total . . . of USD 3,25 mill."

(*Id.*)[1] This decision to assume SMCO's obligations, including those under the Non-Qualified

Plan, was reaffirmed in NHC's December 13, 2001, board meeting minutes, which stated:

> The Board authorizes Management to continue working with a
> managed liquidation of SMCO, Inc. based on total cost of
> liquidation being at least USD 600.000 lower than what it would
> cost to cover all claims 100%. Thus, reductions will have to be
> made in the settlement with certain creditors. This means that the
> total loss shall not exceed USD 4.8 mill compared to the estimated
> total loss presented to the Board on November 14, 2001. However,
> the loss may change as a result of changes of the premises,
> primarily interest rate levels and, as a consequence, the discount
> factor for **calculation of pension obligations**.

(NHC Board Meeting Minutes dated December 13, 2001 at NW000227, Lundin Decl. Ex. 10.)[2]

---

[1] The original text reads: "Styret diskuterte og stilte spørsmål til den fremlagte dokumentasjon vedrørende SMCO
Inc. Styret sluttet seg til det fremlagte forslag til prinsipper for avvikling av SMCO Inc. ved at uiskrede kreditorer
generelt får fullt oppgjør of at tidligere ledende ansatte får dekning under Non Qualified pensjonsordning som ikke
overstiger USD 750 000, hvilket gir en beregnet samlet underdekning på USD 3,25 mill."

[2] The original text reads: "Styret gir administrasjonen fullmakt til å arbeide videre med styrt avvikling av SMCO
Inc. basert på total kostnad ved avviklingen minimum USD 600.00 lavere enn hva det vil koste å dekke alle krav
100%. Det må således foretas avkorting i oppgjør med enkelte kreditorer. I forhold til beregnet totalt tap fremlagt
for styret 14. november 2001 innebærer dette at totalt tap ikke skal overstige USD 4,8 mill. Tapet kan dog endres
som følge av endring i forutsetninger, i første rekke rentenivå og derved diskonteringsfactor for beregning av

**Discovery Sought by Mrs. Ostensen**

By a Report and Recommendation (the "Report") dated and filed on September 5, 2003, the Court interpreted the arbitration provision in Paragraph 6.4 of the Non-Qualified Plan broadly, requiring Mrs. Ostensen to arbitrate almost all of her counterclaims against SMCO. Further, because the Related Other Companies are liable for, among other things, SMCO's obligations under the Non-Qualified Plan under alter-ego or agency principles, they also should be parties to the arbitration.

Recognizing the need for discovery both on whether the Related Other Companies are subject to the arbitration provision of the Non-Qualified Plan and on Mrs. Ostensen's counterclaims, which are inextricably related to SMCO's claims against her, at the March 3, 2005 settlement conference the Court set a schedule for Mrs. Ostensen to have discovery related to her claims and defenses, including, in particular, to show that the Related Other Companies knew about, and are liable for SMCO's obligations under, the Non-Qualified Plan. Pursuant to that schedule, on March 31, 2005, Mrs. Ostensen served discovery demands on SMCO and the Related Other Companies, as well as subpoenas to third parties. (*See* Defendant's First Request for Documents to Plaintiff and Third-Party Defendants (the "Document Demand"), Lundin Decl. Ex. 11; Defendant's First Interrogatories to Scandinavian Marine Claims Office, Inc. (the "SMCO Interrog."), Lundin Decl. Ex. 12; Defendant's First Interrogatories to Scandinavian Underwriters Agency (the "SCUA Interrog."), Lundin Decl. Ex. 13; Defendant's First Interrogatories to SCUA Americas, Inc. (the "SCUAA Interrog."), Lundin Decl. Ex. 14; Defendant's First Interrogatories to SMCO, A.S. (the "SMCO A.S. Interrog."), Lundin Decl. Ex. 15; Defendant's First Interrogatories to Norwegian Hull Club (the "NHC Interrog."), Lundin

pensjonsforpliktelser."

Decl. Ex. 16; Subpoena in a Civil Case to Donald J. Kennedy, Esq. ("Kennedy Subpoena"),

Lundin Decl. Ex. 17; Subpoena in a Civil Case to Carter Ledyard & Milburn, LLP ("Carter

Ledyard Subpoena"), Lundin Decl. Ex. 18.)  On May 16, 2005, Mrs. Ostensen issued subpoenas

to The Benefit Practice and Oppenheimer & Co., and served a second document demand on

SMCO and the Related Other Companies.  (Subpoena in a Civil Case to The Benefits Practice

("Benefits Practice Subpoena"), Lundin Decl. Ex. 19; Subpoena in a Civil Case to Oppenheimer

& Co. ("Oppenheimer & Co. Subpoena"), Lundin Decl. Ex. 20; Defendant's Second Request for

Documents to Plaintiff and Third-Party Defendants ("Second Document Demand"), Lundin Decl.

Ex. 21.)

Discovery is set to close on September 30, 2005.  (Amended Scheduling Order

Regarding Case Management Plan at 1, Lundin Decl. Ex. 22.)

**SMCO and the Related Other Companies Have Stonewalled Discovery**

SMCO and the Related Other Companies have stonewalled discovery.  They have

dragged their feet in responding to Mrs. Ostensen's discovery demands.  Where they have

responded, their responses have been unjustifiably incomplete.

—     **The Parties Which Have Responded to Mrs. Ostensen's Discovery Demands,**
        **Clearly Have Not Done a Reasonable Search for Documents**

Only SMCO, NHC and SCUAA have responded to Mrs. Ostensen's discovery

demands.[3]  (SMCO's Interrog. Resp., Lundin Decl. Ex. 1; Plaintiff Scandinavian Marine Claims

Office, Inc.'s Response to Defendant Siri Ostensen's First Request for Documents, Lundin Decl.

Ex. 23; Norwegian Hull Club's Response to Defendant/Third-Party Plaintiff Siri Ostensen's First

Interrogatories to Norwegian Hull Club, Lundin Decl. Ex. 24; Norwegian Hull Club's Response

to Defendant/Third-Party Plaintiff Siri Ostensen's First Request for Documents, Lundin Decl.

9

Ex. 25; SCUA Americas, Inc.'s Response to Defendant/Third-Party Plaintiff Siri Ostensen's First

Interrogatories to SCUA Americas, Inc., Lundin Decl. Ex. 26.) While each entity has produced

some documents, it is obvious that they have not made a reasonable search for documents

responsive to those requests.

For example, SMCO and the Related Other Companies have produced no e-mails,

indicating that they have not searched for e-mail or other electronic files.[4] When this issue was

raised at the parties' meet and confer regarding discovery, counsel for SMCO and the Related

Other Companies insisted that Mrs. Ostensen provide them with a revised request which limited

the scope of the evidence searched for and, further, that she justify her need for such a search.

However, counsel for SMCO and the Related Other Companies refused to explain how Mrs.

Ostensen's current request was burdensome—making it difficult or impossible to craft a less

burdensome alternative—and refused to propose a search they considered reasonable.

SMCO and the Related Other Companies also have not produced privilege logs,

identifying the documents that they have withheld on privilege grounds. Counsel for SMCO and

the Related Other Companies promised to provide Mrs. Ostensen with privilege logs not later

than June 24, 2005, but failed to do so.

A particularly glaring example of SMCO's selective production is that it has not

produced in discovery the document it provided to the Court at the parties' March 3, 2005

settlement conference. SMCO clearly thought that the document was vital enough to its case that

it showed it to the Court, yet it has refused to produce a copy of that document in discovery.

Further examples of the selective search and production of documents by SMCO

---

[3] SCUAA has provided interrogatory responses, but no objections to Mrs. Ostensen's documents demands.
[4] SCUAA has not produced any e-mails, but it appears to have produced some documents that were printed from electronic files. However, it is not clear whether SCUAA actually undertook to search its electronic files.

10

and the Related Other Companies are provided below with respect to particular topics.

—    **NHC Refuses to Provide Discovery Regarding the Entire Relevant Time Period**

NHC has refused to produce any evidence dated prior to 2001, the year it began

operations under its current name, except that at the parties' meet and confer, counsel for SMCO

and the Related Other Parties agreed to produce (but has not yet produced) annual reports for

Norwegian Hull Club for 2000 and for Bergen Hull Club for 1999.  However, counsel for SMCO

and the Related Other Parties has declined to explain why the evidence Mrs. Ostensen has sought

from NHC was not relevant or why the production of that evidence would be unduly

burdensome.

—    **SMCO A.S. Refuses to Provide Discovery**

SMCO A.S. has refused to respond to any of Mrs. Ostensen's discovery demands.

In certain NHC and SMCO A.S. documents, SMCO A.S. is referred to as SCUA.

(*See, e.g.*, SMCO A.S. Board Meeting Minutes dated September 9, 1999 at 1, Lundin Decl.

Ex. 27 ("SCUA should be adopted as a global brand name for all offices of the holding

company.").)  Mrs. Ostensen asserted counterclaims against both SMCO A.S. and SCUA.

(Counterclaim, Lundin Decl. Ex. 28.)  Counsel for SMCO A.S., but not SCUA, appeared in this

action.[5]  (Docket Entry Nos. 46-47, Lundin Decl. Ex. 29.)

In August 2003, the parties agreed that Mrs. Ostensen would dismiss the entity

denominated SMCO A.S. without prejudice, provided that Mrs. Ostensen reserved the right later

to "add SMCO AS as a party *nunc pro tunc*."  (Joint Status Report dated August 1, 2003 ¶ 7,

Lundin Decl. Ex. 30.)  Such a dismissal never was filed; SCUA have never appeared in this

action.  Notwithstanding, relying on the parties' 2003 agreement, SMCO counsel has informed

---
[5] It is unclear from the files this firm obtained from predecessor counsel whether SCUA was served with Mrs.

11

us that SMCO's corporate parent, whether denominated as SMCO A.S. or SCUA, will not provide discovery in this action.

— **SMCO and the Related Other Companies Refuse to Provide Discovery on Topics Other Than the Related Other Companies' Liability Under the Non-Qualified Plan**

SMCO and the Related Other Companies have refused to respond to Mrs. Ostensen's discovery demands relating to topics other than the liability of the Related Other Companies for SMCO's obligations under the Non-Qualified Plan. (Motion for Clarification or Protective Order, Docket Entry Nos. 97-98, Lundin Decl. Ex. 29.) Astonishingly, at the same time that they have refused to provide discovery on any topic other than the liability of the Related Other Companies under the Non-Qualified Plan, they have informed the Court of their intention to seek summary judgment on their claim relating to the Notes, (Letter from Kennedy to the Court of 3/29/05, Lundin Decl. Ex. 31), notwithstanding that they refuse to provide discovery on their claim or Mrs. Ostensen's defenses to it.

The refusal of SMCO and the Related Other Companies to provide discovery relating to topics other than the liability of the Related Other Companies for SMCO's obligations under the Non-Qualified Plan is the subject of a pending motion before the Court.

— **SMCO, NHC and SCUAA Have Refused to Produce More Than A Fraction of the Responsive Documents in Their Possession**

SMCO, NHC and SCUAA are the only Third-Party Defendants which have responded to Mrs. Ostensen's discovery demands. (Lundin Decl. Exs. 1, 23-26.)[6] Their responses were incomplete, as discussed below.

**Business Plans and Management.** Mrs. Ostensen sought discovery regarding the business plans and management of SMCO and the Related Other Companies. This discovery

---

Ostensen's counterclaims.

is highly relevant to the question of the liability of the Related Other Companies for SMCO's obligations under the Non-Qualified Plan and to whether the Related Other Companies will be parties to the arbitration regarding Mrs. Ostensen's claims. In particular, the little discovery Mrs. Ostensen has obtained shows—and she believes that full discovery will conclusively establish— that SMCO A.S. and NHC dominated SMCO, controlling its finances, including setting its rates and restricting where it could do business for their own benefit rather than to allow SMCO to operate as a profitable, independent business.

The specific discovery Mrs. Ostensen sought was:

- Document Demand, Request No. 3: "All documents relating to or concerning the business plans or strategic planning for NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. at all times from January 1, 1990 to the present."

- Document Demand, Request No. 8: "All documents relating to or concerning the selection of the members of the board of directors or other similar governing body, officers or managers of SMCO including, but not limited to, the role of NHC, SCUA, SCUAA, SCUA Holdings and SMCO A.S. in such selection."

- Document Demand, Request No. 9: "The minutes of all meetings of the board of directors or other similar governing body of NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. from January 1, 1990 to the present."

SMCO, NHC and SCUAA have refused to provide any of the discovery sought above, except to produce board meeting minutes and, for NHC, annual reports.

It is improbable that neither NHC, SMCO nor SCUAA have **any** other documents responsive to Mrs. Ostensen's Request Nos. 3, 8 and 9. Indeed, they have not claimed that this is the case. Rather, they simply refused to provide full discovery, without justification or explanation except to claim, generally, that documents relating to the selection of board members are not relevant and that NHC's business plans are confidential (but refusing to enter into a protective order regarding confidentiality to protect those plans' confidentiality).

---

[6] Mrs. Ostensen has not received any objections to her document demands to SCUAA.

13

The relevant evidence that has been withheld from discovery includes:

- Business plans, including documents concerning NHC, SMCO A.S. and SMCO's plans regarding SMCO A.S.'s, SMCO's and SCUAA's management, organization, profitability, mission, fees, customer base, area of service and priority of services to NHC and SMCO A.S.'s other shareholders; and

- Evidence relating to or concerning the selection of board members, officers and managers of SMCO and the Related Other Companies showing NHC's domination of SMCO A.S., SMCO and SCUAA.

**Financial Documents and The Disposition of SMCO's Business and Assets.**

Mrs. Ostensen sought discovery regarding the finances of SMCO and the Related Other Companies and the disposition of SMCO's business and assets by SMCO A.S. and NHC. All of this evidence relevant to the issue of whether SMCO A.S. and NHC may be held liable for SMCO's obligations, including SMCO's obligations to Mr. Ostensen under the Non-Qualified Plan because they dominated and controlled SMCO's finances for their own benefit, including transferring SMCO's assets and business t SCUAA.

Mrs. Ostensen believes that discovery will establish that SMCO A.S. and NHC dominated SMCO and that SMCO A.S. and NHC acknowledged their liability for SMCO's obligations, including SMCO's obligations to Mr. Ostensen under the Non-Qualified Plan. The little discovery Mrs. Ostensen has been able to obtain shows that SMCO A.S. and NHC controlled SMCO's finances. They transferred SMCO's profitable business to new entities and then liquidated SMCO. However, NHC acknowledged—and recorded on its financial statements—its obligation to pay its share of SMCO's debts, including its pension obligations. Further, this discovery would establish that SMCO A.S. and NHC, not SMCO, made all the decisions regarding the disposition of SMCO's business and assets, which of SMCO's debts to pay and which—such as its debts to Mr. Ostensen—SMCO could not pay. Finally, discovery

14

will show that the principal source of SMCO's debts when it ceased operations was not financial

decisions made by SMCO, but rather decisions made by SMCO A.S. and NHC, including the

decision to spend hundreds of thousands—perhaps millions—of dollars in a fruitless search for

evidence of wrongdoing by Mr. Ostensen.

The specific discovery Mrs. Ostensen sought was:

- Document Demand, Request No. 10: "All documents relating to or concerning payments or guarantees of the debts of NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. or any of their employees, directors, or officers, including but not limited to their ability to issue or to honor such a guarantee."

- Document Demand, Request No. 11: "All documents relating to or concerning the payment or guarantee by NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. of the debt of any other entity or individual."

- Document Demand, Request No. 15: "All communications between NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. and any accountant or auditor engaged by any of them."

- Document Demand, Request No. 16: "All tax returns for NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. from January 1, 1990 to the present from January 1, 1990 to the present."

- Document Demand, Request No. 17: "All documents submitted by or on behalf of NHC, SCUA, SCUAA, SCUA Holdings, SMCO or SMCO A.S. to a lender or creditor (whether actual or prospective) pursuant to or as part of an application or request for a loan, credit or financing of any kind."

- Document Demand, Request No. 18: "All documents relating to or concerning the finances of SMCO from January 1, 1990 to the present."

- Document Demand, Request No. 19: "All communications relating to or concerning the capitalization or financial status of NHC, SCUA, SCUAA, SCUA Holdings, SMCO or SMCO A.S, including but not limited to their solvency or insolvency."

- SMCO Interrog., Interrog. No. 9: "List all assets and obligations of SMCO, including real property, chattel, securities, or pledges."

- SCUA Interrog., Interrog. No. 10: "List all assets and obligations of SCUA, including real property, chattel, securities, or pledges."

- SCUAA Interrog., Interrog. No. 10: "List all assets and obligations of SCUAA, including

15

real property, chattel, securities, or pledges."

- <u>SMCO A.S. Interrog., Interrog. No. 10</u>: "List all assets and obligations of SMCO A.S., including real property, chattel, securities, or pledges."

- <u>NHC Interrog., Interrog. No. 10</u>: "List all assets and obligations of NHC, including real property, chattel, securities, or pledges."

- <u>Document Demand, Request No. 20</u>: "All documents relating to or concerning the transfer of funds or other assets between or among NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. at any time from January 1, 1990 to the present, regardless of whether such transfer was carried out."

- <u>SMCO Interrog., Interrog. No. 7; SCUA Interrog., Interrog. No. 8; SCUAA Interrog., Interrog. No. 8; SMCO A.S. Interrog., Interrog. No. 8; NHC Interrog., Interrog. No. 8</u>: "List all funds or other assets transferred between or among SMCO, on the one hand, and NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S., on the other, at any time from January 1, 1990 to the present."

- <u>Document Demand, Request No. 21</u>: "Documents sufficient to identify every asset, including real property, chattel, securities, or pledges of NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S., or any of their affiliates."

- <u>Document Demand, Request No. 22</u>: "All bank statements, checks, drafts, wire transfer requests, vouchers, agreements, or other documents concerning the financial dealings between or among NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. at any time from January 1, 1990 to the present."

- <u>Document Demand, Request No. 26</u>: "All documents relating to or concerning any potential or actual plans or discussions concerning the ceasing the expansion, acquisition, downsizing, termination or relocation of the operations of SMCO."

- <u>Document Demand, Request No. 31</u>: "All documents relating to or concerning the assumption by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. of SMCO's obligations under the Non-Qualified Plan."

- <u>Document Demand, Request No. 32</u>: "All documents relating to or concerning the assumption by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. of SMCO's obligations other than the Non-Qualified Plan."

SMCO, NHC and SCUAA have refused to provide any of the discovery sought

above, except to produce financial statements, tax returns for SMCO and some documents

relating to loans made to SMCO A.S., SMCO and SCUAA.  Notwithstanding the production of

16

those documents, most of the evidence sought by Mrs. Ostensen relating to financial issues relevant to this action has been withheld.  Indeed, they have refused to provide any documents in response to Mrs. Ostensen's Request No. 31, which seeks evidence regarding the assumption of SMCO's obligations under the Non-Qualified Plan, notwithstanding that this request, more than any other, is focused on the precise issue the Court must decide before the arbitration between SMCO and Mrs. Ostensen begins.  Again, SMCO and the Related Other Companies have not claimed that they do not possess the evidence Mrs. Ostensen seeks, they just refuse to produce it, claiming, generally, that it is not relevant and that it would be too burdensome to produce the evidence Mrs. Ostensen seeks.

The relevant evidence that has been withheld from discovery includes:

- Evidence relating to or concerning the establishment of SMCO's and SUCAA's rates;

- Evidence relating to or concerning the expectations of NHC and SMCO A.S regarding SMCO's and SCUAA's profitability and the payment of dividends;

- Evidence relating to or concerning the expansion, acquisition, downsizing, termination or relocation of the operations of SMCO, SMQI or SCUAA;

- Evidence identifying SMCO A.S.'s, SMCO's and SCUAA's assets and obligations and the transfer of assets and obligations between and among SMCO, SMQI, SCUAA, SMCO A.S. and NHC, particularly in the final years of SMCO's operations;

- Evidence relating to or concerning NHC's decision to assume some or all of SMCO's obligations, except its obligations to the Ostensens, including all documents relating to or concerning every obligation of SMCO paid, directly or indirectly, by a Related Other Company and the distribution of each of SMCO's assets;

- Evidence concerning SMCO A.S's decision to pay some or all of the obligations of SMCO, except for its obligations to the Ostensens;

- Evidence relating to or concerning the sale of SMQI;

- Evidence relating to or concerning the disposition of SMCO's business and existing customers, including the transfer of SMCO's business to SCUAA and/or SMQI;

- Evidence relating to or concerning expenses incurred by SMCO or SCUAA for the travel,

entertainment or other support or services to the NHC or SMCO A.S. board of directors or management;

- Evidence relating to or concerning the liquidation of SMCO, including all liquidation expenses, including the expenses for accountants, auditors, legal counsel or other consultants; and

- Evidence relating to or concerning communications with SMCO and the Related Other Companies' accountants, auditors or other consultants regarding the topics listed above, including all such documents provided to such accountants, auditors or other consultants.

**The Domination of SMCO by SMCO A.S. and NHC.**  Mrs. Ostensen sought discovery regarding the domination of SMCO by SMCO A.S. and NHC.  This discovery is of central relevance to the issues of whether SMCO A.S. and NHC may be held liable for SMCO's obligations, including SMCO's obligations to Mr. Ostensen under the Non-Qualified Plan.  The record is clear that SMCO A.S. dominated SMCO—indeed, for the last years of its existence as a going concern, SMCO did not even have its own board; rather, it was managed by SMCO A.S.'s board.  Further, it is clear that SMCO A.S. was not an independent entity, but rather was controlled by, and existed merely to carry out the wishes of, its ultimate shareholders, including NHC.  And because SMCO was dominated by, and acted as a mere agent or instrumentality of, SMCO A.S. and NHC, SMCO A.S. and NHC are liable for SMCO's obligations.

The specific discovery Mrs. Ostensen sought was:

- Document Demand, Request No. 12:  "All documents relating to or concerning the communications from the board of directors or other similar governing body, officers or managers of NHC, SCUA, SCUAA, SCUA Holdings and SMCO A.S. to the board of directors or other similar governing body, officers or managers of SMCO regarding the business of SMCO."

- Document Demand, Request No. 15:  "All communications between NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. and any accountant or auditor engaged by any of them."

- Document Demand, Request No. 23:  "Documents sufficient to identify all legal counsel who have provided legal advice to NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. regarding any transaction, litigation or other proceeding involving SMCO at

18

any time from January 1, 1990 to the present, including, but not limited to, the identification of the entities who sought, received and paid for such advice."

- <u>Document Demand, Request No. 24</u>: "Documents sufficient to all legal expenses for SMCO from January 1, 1990 to the present including, but not limited to, the identity of the firm providing the legal work, the general subject matter of the work, the date and amount of each bill for legal work and the person or entity that paid each such bill."

- <u>Document Demand, Request No. 25</u>: "All documents relating to or concerning any transactions between or among NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. or any affiliates of those entities, including but not limited to agreements, contracts, invoices, bills, purchase orders and/or work orders, estimates, bank statements, wire transfer requests, vouchers, checks, drafts, promissory notes, loans, security agreements, liens, and attachments at any time from January 1, 1990 to the present."

- <u>Document Demand, Request No. 30</u>: "All documents relating to or concerning public or private statements or claims by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. that SMCO is or was an agent of one or more of NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S., including, but not limited to, the scope of such agency."

SMCO, NHC and SCUAA have refused to provide any of the discovery sought above, except to produce board meeting minutes, NHC annual reports, certain loan documents and interrogatory responses identifying counsel. However, they have fallen far short of providing all evidence responsive to those requests.

The relevant evidence that has been withheld from discovery includes:

- Evidence relating to or concerning communications from the board of directors or management of NHC or SMCO A.S. to the board of directors or management of SMCO or SCUAA regarding the business of SMCO or SCUAA, other than board meeting minutes;

- Evidence relating to or concerning public or private statements or claims by NHC or SMCO A.S. that SMCO or SCUAA is or was their agent; and

- Evidence sufficient to identify all auditors, accountants or legal counsel who have provided legal advice to NHC, SMCO A.S. SMCO or SCUAA regarding any transaction, litigation or other proceeding involving SMCO or SCUAA including, but not limited to, the identification of the entities who sought, received and paid for such advice, the identity of the firm providing the legal work, the general subject matter of the work, the date and amount of each bill for legal work and the person or entity that paid each such bill, where counsel simultaneously represented more than one party.

19

**The Non-Qualified Plan.**  Mrs. Ostensen sought discovery regarding the Non-

Qualified Plan, including the acknowledgement of SMCO and the Related Other Companies of

their obligations under that plan.  Such evidence goes to the primary issue in this phase of

discovery—the liability of SMCO and the Related Other Companies to pay Mrs. Ostensen the

monies she is due under the Non-Qualified Plan.

The specific discovery Mrs. Ostensen sought was:

- Document Demand, Request No. 27:  "All documents relating to or concerning the Non-Qualified Plan that were communicated to NHC, SCUA, SCUAA, SCUA Holdings, or SMCO A.S."

- Document Demand, Request No. 28:  "All documents relating to or concerning the funding of the Non-Qualified Plan including, but not limited to, the promissory note referred to in the Complaint and life insurance policies on the lives of participants in the Non-Qualified Plan, that were communicated to NHC, SCUA, SCUAA, SCUA Holdings, or SMCO A.S."

- Document Demand, Request No. 29:  "All documents relating to or concerning the ability of NHC, SCUA, SCUAA, SCUA Holdings, SMCO and SMCO A.S. to fulfill their obligations under the Non-Qualified Plan."

- SMCO Interrog., Interrog. No. 15:  "Identify when NHC, SCUA, SCUAA, SCUA Holdings and SMCO A.S. first learned of the existence and terms of the Non-Qualified Plan, including, but not limited to, SMCO's obligations under the Non-Qualified Plan, including the identify of the NHC, SCUA, SCUAA, SCUA Holdings and SMCO A.S. employees who first learned of the Non-Qualified Plan."

- SMCO A.S. Interrog., Interrog. No. 15:  "Identify when SMCO A.S. first learned of the existence and terms of the Non-Qualified Plan, including, but not limited to, SMCO's obligations under the Non-Qualified Plan, including the identify of the SMCO A.S. employees who first learned of the Non-Qualified Plan."

- NHC Interrog., Interrog. No. 15:  "Identify when NHC first learned of the existence and terms of the Non-Qualified Plan, including, but not limited to, SMCO's obligations under the Non-Qualified Plan, including the identify of the NHC employees who first learned of the Non-Qualified Plan."

NHC has refused to provide any of the discovery sought above, except to produce

board meeting minutes, financial statements and annual reports.  Further, SMCO, SMCO A.S.

20

and NHC all claim, disingenuously, to be unaware of when SMCO A.S. and NHC became aware

of the Non-Qualified Plan.

The relevant evidence that has been withheld from discovery includes:

- Evidence relating to or concerning the funding of the Non-Qualified Plan;

- Evidence relating to or concerning communications to SMCO A.S. and NHC regarding the Non-Qualified Plan;

- Evidence concerning SMCO A.S.'s and NHC's knowledge of the Non-Qualified Plan and SMCO's and their obligations under it and

- Evidence concerning SMCO A.S.'s and NHC's acceptance of SMCO's obligations under the Non-Qualified Plan.

—     **SMCO and the Related Other Companies Have Announced Their Intention to Ignore the Court's Instructions Regarding the Location of Party Depositions**

At the March 3, 2005 mediation in this action, the parties and the court briefly

discussed the plan for discovery in this action.  In response to SMCO counsel's suggestion that

Mrs. Ostensen would have to travel to Norway to depose most of his clients, the Court ruled that

all party depositions would be taken in Connecticut.  However, counsel for SMCO and the

Related Other Companies have informed us that they will refuse to present foreign witnesses in

the United States, and rather that Mrs. Ostensen will have to notice and take their depositions in

Europe.

**The Parties Have Been Unable to Resolve Their Disputes Regarding Discovery**

SMCO and the Related Other Companies have stonewalled Mrs. Ostensen's

efforts to negotiate a resolution to their disputes over the scope of discovery.  They have largely

ignored Mrs. Ostensen's efforts to seek a compromise that would allow discovery to go forward.

Mrs. Ostensen sent counsel for SMCO and the Related Other Parties a number of

letters during April, May and June 2005 regarding discovery in an attempt to identify and seek a

reasonable resolution of the parties' disputes regarding the scope of discovery. (*See* Letter from Lundin to Kennedy of 4/18/05, Lundin Decl. Ex. 32; Letter from Lundin to Kennedy of 4/20/05, Lundin Decl. Ex. 33; Letter from Lundin to Kennedy of 5/11/05, Lundin Decl. Ex. 34; Letter from Lundin to Kennedy of 5/18/05, Lundin Decl. Ex. 35; Letter from Lundin to Kennedy of 6/6/05, Lundin Decl. Ex. 36; Letter from Lundin to Kennedy of 6/6/05, Lundin Decl. Ex. 37; Letter from Lundin to Kennedy of 6/21/05, Lundin Decl. Ex. 38.) Except for their confirmation that Mrs. Ostensen's time to make this motion was tolled during the time the parties attempted to resolve their disputes, (Letter from Zancolli to Lundin of 5/24/05, Lundin Decl. Ex. 39), SMCO and the Related Other Companies ignored those letters.

Mrs. Ostensen asked counsel for SMCO and the Related Other Companies to meet and confer regarding discovery. However, on June 13, 2005 and June 16, 2005, when the parties conferred regarding their discovery disputes, SMCO and the Related Other Companies would neither agree to produce more than a pittance of additional evidence, provide a detailed, reasonable basis for their refusal to produce additional evidence, nor propose any compromise responses to Mrs. Ostensen's discovery demands.

At the end of the parties' June 16, 2005 meet and confer, counsel for SMCO and the Related Other Companies asked for another week to consider whether they would provide any of the discovery Mrs. Ostensen had demanded. The parties agreed to meet and confer by telephone one last time on June 24, 2005. However, Mrs. Ostensen's counsel made clear that Mrs. Ostensen could accept no more delay, and that she would move to compel the discovery of all evidence that was not produced by June 24, 2005.

On June 24, 2005, SMCO and the Related Other Companies provided no additional discovery to Mrs. Ostensen, not even the few documents that they had agreed to

produce the prior week. Rather, counsel for SMCO and the Related Other Companies merely

read the text of a letter they claimed they planned to send (but as of the time this motion was

signed, still had not sent) to Mrs. Ostensen's counsel that reasserted some objections and offered

to produce some additional documents in the future.

   The refusal of SMCO and the Related Other Companies to engage in the

resolution of the parties' discovery disputes—indeed, their refusal to respond to Mrs. Ostensen's

letters or otherwise state specific positions regarding discovery until after this motion was

served—appears to have been nothing more than a ploy to delay discovery, interfering with Mrs.

Ostensen's ability to complete discovery prior to the discovery cut-off date in this action.

   For example, Mrs. Ostensen proposed that the parties engage in a "two-tiered"

approach to discovery, under which SMCO and the Related Other Companies "initially would

produce documents that—in" their "view—would reasonably respond to Mrs. Ostensen's

requests to which" they "did not object *in toto*, notwithstanding that those documents will not

respond to all of Mrs. Ostensen's requests as written," but that SMCO and the Related Other

Companies would "specify the topics on which" they "were producing documents so that" Mrs.

Ostensen "could assess, after having reviewed" their "production, whether it was necessary to

press for full compliance with Mrs. Ostensen's document demands." (Letter from Lundin to

Kennedy of 4/18/05, Lundin Decl. Ex. 32.) SMCO and the Related Other Companies accepted

that offer, but in the end their acceptance appears to have been nothing more than a ploy to delay

discovery. SMCO and the Related Other Companies refuse to provide any clear and specific

basis for their refusal to produce documents. Further, they have refused to consider or make

counterproposals to Mrs. Ostensen's offers to limit the scope of discovery that they claimed was

overbroad. Indeed, there never was any second tier of discovery from SMCO and the Related

23

Other Companies, beyond the promise of the **future** production of evidence. Instead, there was nothing but delay.

**Argument**

## I.    LEGAL FRAMEWORK

SMCO and the Related Other Companies cannot avoid their discovery obligations to Mrs. Ostensen because, as shown above, Mrs. Ostensen seeks evidence which is highly "relevant to the claim[s] or defense[s] of" the parties. Fed. R. Civ. P. 26(b)(1). Indeed, as shown below, there is "good cause" to order the production of the evidence Mrs. Ostensen seeks, even if the Court were to find—as plainly is the case and as SMCO and the Related Other Parties have not credibly disputed—that the discovery is "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

SMCO and the Related Other Companies are quite obviously aware of the fact that the principal witness against them—Tom Ostensen—is dead. Thus, the person to whom SMCO and the Related Other Companies made representations (and threats), and the person with the greatest knowledge of SMCO A.S.'s and NHC's domination of SMCO is unavailable to testify to the facts that formed that basis of the counterclaim in this action.

SMCO and the Related Other Parties are exploiting Mr. Ostensen's death to maximum advantage by refusing to provide Mrs. Ostensen full discovery regarding her claims and defenses. Stonewalling discovery is never permissible, but where—as here—the parties from whom discovery is being sought are the sole remaining source of relevant evidence, there must be a presumption in favor of ordering the holders of that evidence to provide discovery.

24

## II.    SMCO AND THE RELATED OTHER COMPANIES HAVE NO BASIS FOR REFUSING TO PROVIDE THE DISCOVERY MRS. OSTENSEN HAS SOUGHT

SMCO and the Related Other Companies have no good-faith basis for refusing to provide all of the discovery Mrs. Ostensen has sought from them.  For that reason, they should be compelled immediately to provide such discovery.

### A.    NHC Must Provide Discovery Covering the Entire Relevant Period.

NHC has refused to produce any evidence created before 2001, the date that it began operating under its current name.[7]  Such refusal is without any good-faith basis.

NHC was formed in 2001 when Bergen Hull Club changed its name to NHC and merged with Unitas.  (Lundin Decl. Exs. 1, 3-5.)  Bergen Hull Club and Unitas were, collectively, the majority owners of SMCO A.S. prior to their merger, just as NHC is its majority owner now.  (*Id.*)

NHC does not—because it cannot—deny that it has responsive evidence in its possession, custody or control.  It simply refuses to produce it.  Such a refusal is without legal basis; indeed, NHC has failed, despite several requests by Mrs. Ostensen, to provide her with any specific legal basis for its refusal to provide her with relevant evidence.

The law is clear that a party must produce non-privileged evidence within its "possession, custody or control."  Fed. R. Civ. P. 34(a).  Here, NHC does not deny that it has responsive evidence in its possession, custody or control; it merely refuses to produce it.  It is no excuse that two of SMCO's ultimate shareholders—Unitas and Bergen Hull Club—changed their names in 2001, Bergen Hull Club by changing its name to NHC and Unitas by merging with NHC.  NHC cannot avoid producing the responsive documents from Bergen Hull Club's and

---

[7] NHC agreed to produce a few publicly-available documents dated prior to 2001, but as of the time this motion was signed, they have not followed-through on that promise.

Unitas' files that now are in NHC's files simply because Bergen Hull Club changed its name and Unitas merged with NHC.  If the documents are in NHC's "possession, custody or control," it must produce them, regardless of the name of the entity that created them.

Finally, the little discovery NHC has provided shows why NHC has so steadfastly avoided providing discovery.  NHC has acknowledged that it is responsible for SMCO's debts, **including those under the Non-Qualified Plan**.

In its 2001 Annual Report, NHC reported it had booked losses on **it own books** related to SMCO's debts, including debts related to SMCO's "pension liabilities."  (Lundin Decl. Ex. 8 at 10.)  Notwithstanding its obvious recognition that it was responsible for the debts of SMCO, NHC and SMCO A.S. paid "**all** obligations" of SMCO "**except** balances with **Mr. Ostensen**." (Lundin Decl. Ex. 4 (emphasis added).)  NHC's board meeting minutes confirm its recognition of those obligations.  (Lundin Decl. Exs. 9-10.)

Proof of NHC's acknowledgment of its obligations to Mr. Ostensen, and its refusal to honor them, is fatal to NHC's cause.  That is why it refuses to provide anything other than token discovery, in violation of Federal Rules of Civil Procedure 26, 33 and 34.

For the foregoing reasons, NHC should be ordered immediately to respond to Mrs. Ostensen's discovery demands for the entire relevant period.

**B.    SMCO A.S. Must Respond to Mrs. Ostensen's Discovery Demands.**

Notwithstanding that it was SMCO's corporate parent—indeed, its board of directors served as SMCO's board of directors for much of the relevant time period—SMCO has refused to respond to any of Mrs. Ostensen's discovery demands.

SMCO A.S.'s excuse for this refusal is that earlier in this action, Mrs. Ostensen agreed to dismiss SMCO A.S. without prejudice.  This excuse fails for several reasons.

26

**First**, there is no dispute regarding the fact that SMCO A.S. was not dismissed from this action. No stipulation of dismissal was ever signed by the parties, much less submitted to the Court. Thus, the fact is that SMCO A.S. is a party and must provide discovery.

**Second**, SMCO and the Related Other Parties are engaging in sharp practice by attempting to avoid discovery from SMCO's corporate parent. Mrs. Ostensen asserted counterclaims against a number of parties, including SMCO A.S. and SCUA. NHC refers to SMCO A.S. as SCUA. (*See, e.g.*, Lundin Decl. Ex. 27.) Now, however, SMCO counsel has informed us that neither SMCO A.S. or SCUA will provide discovery in this action.

There may be a debate over the name by which SMCO's corporate parent properly is denominated, but there is no question that Mrs. Ostensen has asserted claims against it, and seeks discovery from it. SMCO and the Related Other Companies could not seriously have thought otherwise.

**Third**, SMCO and the Related Other Companies cannot plausibly claim that they have been prejudiced by the fact that Mrs. Ostensen seeks discovery from SMCO's corporate parent, however denominated. Mrs. Ostensen's agreement to dismiss SMCO A.S. included the reservation of her right later to "add SMCO AS as a party *nunc pro tunc*." (Lundin Decl. Ex. 30 ¶ 7.) In effect, all that Mrs. Ostensen has done is exercise the rights she explicitly reserved.

Further, SMCO and the Other Related Companies obviously knew that SMCO A.S. had not been dismissed from this action. Indeed, it is plain from Mrs. Ostensen's counterclaims that she had asserted claims against SMCO's corporate parent, which controlled and dominated it on behalf of SMCO's ultimate shareholders, including NHC. Thus, they can claim no surprise or that they have taken any action based on a reasonable belief that SMCO's

corporate parent was not the subject of Mrs. Ostensen's claims.

**Fourth**, because Mrs. Ostensen agreed to dismiss her claims against SMCO A.S. without prejudice, the only possible goal of the refusal of SMCO A.S. to provide discovery is delay and the imposition of additional expense on Mrs. Ostensen, because, as discussed above, all she retains the right to "add SMCO AS as a party *nunc pro tunc*." (*Id.*)

**Fifth**, even if SMCO A.S. were not a party to this action—and it is—Mrs. Ostensen still is entitled to production of evidence in its possession, custody or control in response to her discovery demands to SMCO A.S.'s parent, NHC. Because SMCO A.S. is NHC's subsidiary, and is wholly dominated by it, all evidence in SMCO A.S.'s possession, custody or control is within NHC's control, and thus must be produced by it. *See Scott v. Arex, Inc.*, 124 F.R.D. 39, 41 (D. Conn. 1989) ("A party controls documents that it has the right, authority, or ability to obtain upon demand."); *Uniden Am. Corp. v. Ericsson, Inc.*, 181 F.R.D. 302, 305-306 (M.D.N.C. 1998) (ordering parent to produce documents in the possession of its subsidiary, which it controlled).

For the foregoing reasons, SMCO A.S. should be ordered immediately to respond fully to Mrs. Ostensen's discovery demands.

C.    **SMCO and the Related Other Companies Improperly Have Refused to Produce Relevant Discovery.**

    1.   **SMCO and the Related Other Companies Have No Good Faith Basis for Their Refusal to Provide Discovery.**

As discussed at pages 12-21 (*supra*), SMCO and the Related Other Companies have refused to produce a vast array of relevant evidence regarding their business plans and management, their finances, the disposition of SMCO's business and assets, the domination of

28

SMCO by SMCO A.S. and NHC and the Non-Qualified Plan.[8]  For the reasons discussed above,

all of the evidence sought by Mrs. Ostensen is highly relevant to the parties' claims and defenses

in this action, and in particular to the issue of whether the Related Other Companies may be

made parties to the upcoming arbitration between Mrs. Ostensen and SMCO relating to the Non-

Qualified Plan.  Thus, SMCO and the Related Other Companies must produce it.  *See* Fed. R.

Civ. P. 26(b)(1).

SMCO and the Related Other Companies have provided no good-faith basis for

withholding this evidence.  There is none.

For the foregoing reasons, SMCO and the Related Other Parties should be ordered

immediately to respond fully to Mrs. Ostensen's discovery demands, and in particular to provide.

- Business plans, including documents concerning NHC, SMCO A.S. and SMCO's plans regarding SMCO A.S.'s, SMCO's and SCUAA's management, organization, profitability, mission, fees, customer base, area of service and priority of services to NHC and SMCO A.S.'s other shareholders; and

- Evidence relating to or concerning the selection of board members, officers and managers of SMCO and the Related Other Companies showing NHC's domination of SMCO A.S., SMCO and SCUAA.

- Evidence relating to or concerning the establishment of SMCO's and SCUAA's rates;

- Evidence relating to or concerning the expectations of NHC and SMCO A.S regarding SMCO's and SCUAA's profitability and the payment of dividends;

- Evidence relating to or concerning the expansion, acquisition, downsizing, termination or relocation of the operations of SMCO, SMQI or SCUAA;

- Evidence identifying SMCO A.S.'s, SMCO's and SCUAA's assets and obligations and the transfer of assets and obligations between and among SMCO, SMQI, SCUAA, SMCO A.S. and NHC, particularly in the final years of SMCO's operations;

---

[8] On June 24, 2005, counsel for SMCO and the Related Other Companies informed Mrs. Ostensen's counsel that they intended to send a letter that clarified and/or re-asserted some of SMCO and the Related Other Companies' objections, but that also agreed to produce some categories of documents in the future.  As of the time this motion was signed, Mrs. Ostensen's counsel has not received that letter.  Nor have we received any of the promised evidence.  To the extent SMCO and the Related Other Companies produce evidence sought by this motion during its pendency, Mrs. Ostensen's counsel will so inform the Court.

- Evidence relating to or concerning NHC's decision to assume some or all of SMCO's obligations, except its obligations to the Ostensens, including all documents relating to or concerning every obligation of SMCO paid, directly or indirectly, by a Related Other Company and the distribution of each of SMCO's assets;

- Evidence concerning SMCO A.S.'s decision to pay some or all of the obligations of SMCO, except for its obligations to the Ostensens;

- Evidence relating to or concerning the sale of SMQI;

- Evidence relating to or concerning the disposition of SMCO's business and existing customers, including the transfer of SMCO's business to SCUAA and/or SMQI;

- Evidence relating to or concerning expenses incurred by SMCO or SCUAA for the travel, entertainment or other support or services to the NHC or SMCO A.S. board of directors or management;

- Evidence relating to or concerning the liquidation of SMCO, including all liquidation expenses, including the expenses for accountants, auditors, legal counsel or other consultants; and

- Evidence relating to or concerning communications with SMCO and the Related Other Companies' accountants, auditors or other consultants regarding the topics listed above, including all such documents provided to such accountants, auditors or other consultants.

- Evidence relating to or concerning communications from the board of directors or management of NHC or SMCO A.S. to the board of directors or management of SMCO or SCUAA regarding the business of SMCO or SCUAA, other than board meeting minutes;

- Evidence relating to or concerning public or private statements or claims by NHC or SMCO A.S. that SMCO or SCUAA is or was their agent; and

- Evidence sufficient to identify all auditors, accountants or legal counsel who have provided legal advice to NHC, SMCO A.S. SMCO or SCUAA regarding any transaction, litigation or other proceeding involving SMCO or SCUAA including, but not limited to, the identification of the entities who sought, received and paid for such advice, the identity of the firm providing the legal work, the general subject matter of the work, the date and amount of each bill for legal work and the person or entity that paid each such bill, where counsel simultaneously represented more than one party.

- Evidence relating to or concerning the funding of the Non-Qualified Plan;

- Evidence relating to or concerning communications to SMCO A.S. and NHC regarding the Non-Qualified Plan;

- Evidence concerning SMCO A.S.'s and NHC's knowledge of the Non-Qualified Plan and

SMCO's and their obligations under it and

- Evidence concerning SMCO A.S.'s and NHC's acceptance of SMCO's obligations under the Non-Qualified Plan.

### 2. SMCO and the Related Other Companies Have Failed Reasonably to Search for and Produce Evidence.

SMCO and the Related Other Companies were required to conduct a reasonable search of all files in their possession, custody or control, including electronic files. *See* Fed. R. Civ. P. 26; *Metro. Opera Ass'n v. Local 100, Hotel Employees and Rest. Int'l Union*, 212 F.R.D. 178, 221-222 (S.D.N.Y. 2003) (sanctioning counsel for failure to ensure that a reasonable search was conducted for evidence responsive to opponent's discovery demands); *FG Hemisphere Assocs., L.L.C. v. Republique du Congo*, No. 01 Civ. 8700 (SAS) (HBP), 2005 WL 54218, at * 4 (S.D.N.Y. March 8, 2005) ("documents stored on electronic media are 'documents' for the purposes of Rule 34"); *Anti-Monopoly v. Hasbro, Inc.*, No. 94 Civ. 2120 (LMM) (AJP), 1995 WL 649934, at *1 (S.D.N.Y. Nov. 3, 1995) ("today it is black letter law that computerized data is discoverable if relevant". It is apparent, however, that no such search was conducted. SMCO and the Related Other Companies have not searched for e-mail or other electronic files. Rather, without explaining how such a search would be burdensome or unreasonable, they simply have refused to conduct any search until Mrs. Ostensen unilaterally limits her demands to something that SMCO and the Related Other Companies decide is more to their liking. This obviously is improper.

For that reason, SMCO and the Related Other Companies should be ordered to conduct a search of all files within their possession, custody or control, including electronic files, which reasonably could be expected to contain evidence responsive to Mrs. Ostensen's discovery demands, and immediately to produce all additional responsive, non-privileged evidence located

as a result of that search.

    **D.**    **SMCO and the Related Other Companies Have Refused to Obey the Court's Order Regarding the Location of Party Depositions.**

At the March 3, 2005 mediation, the Court ordered that depositions of the employees of the parties located outside the United States would be held in Connecticut. Counsel for SMCO and the Related Other Parties has informed us that they will not provide foreign witnesses for deposition here. Such refusal is patently improper.

It is within the Court's inherent power to manage discovery to set the location of party depositions. *See Sugarhill Records Ltd. v. Motown Records Corp.*, 105 F.R.D. 166, 171 (S.D.N.Y. 1985) ("The location of the deposition is in" the Court's "discretion."). SMCO and the Related Other Companies have provided no basis for their refusal to obey the Court's order. There is none.

For that reason, SMCO and the Related Other Companies should be ordered to make all employees of parties who are to be deposed available for deposition in Connecticut (or any other mutually convenient location agreed to counsel for **all** parties).

    **E.**    **SMCO and the Related Other Companies Have Waived Their Objections.**

    **1.**    **SMCO, SCUAA and NHC's Boilerplate Objections Are Waived.**

SMCO, SCUAA and NHC have waived their objections to Mrs. Ostensen's discovery demands because they provided Mrs. Ostensen only with vague, boilerplate objections. *See In re Priceline.com Inc. Sec. Litig.*, No. 3:00CV01884 (DJS), 2005 WL 1366450, at *2-3 (D. Conn. June 7, 2005) ("[G]eneric, non-specific objections, intoning the same boilerplate language, are inconsistent with both the letter and spirit of the Federal Rules of Civil Procedure."); *see also King-Hardy v. Bloomfield Bd. Of Educ.*, No. 3:01CV979 (PCD), 2002 WL

32506294, at *4-5 (D. Conn. Dec. 8, 2002) (same).

SMCO, SCUAA and NHC each provided their discovery responses in the same format: general objections, a list of boilerplate objections, and responses that, in addition to providing (in a few cases) substantive responses, recited only the objection number for the boilerplate objections adopted for that response. For example, SMCO's **entire** response to Mrs. Ostensen's document request number 31, which sought "All documents relating to or concerning the assumption by NHC, SCUA, SCUAA, SCUA Holdings or SMCO A.S. of SMCO's obligations under the Non-Qualified Plan," was "Specific Objection Nos. 1 to 5 and 7." (Lundin Decl. Ex. 23.) Such a response provides not hint as to why Mrs. Ostensen's request was "burdensome, oppressive and/or harassing," (Objection No. 1), sought "documents that are not relevant to the subject matter of this litigation or reasonably calculated to lead to the discovery of admissible evidence, (Objection No. 2), was "overly broad," (Objection No. 3), was "vague, ambiguous and unanswerable as propounded," (Objection No. 4), sought privileged information, (Objection No. 5), or sought information "more appropriately discovered through depositions," (Objection No. 7). (*Id.*) Nor, in the parties' meet and confer, was SMCO willing to explain its objections.

No doubt SMCO and the Related Other Companies will, in their opposition to this motion, provide the Court with a litany of explanations for their objections. However, that is—as a matter of law—too little, too late. As *In re Priceline.com Inc. Sec. Litig.* and *King-Hardy* show, the failure to present real, specific objections waives those objections, and justifiably so. Were the rule otherwise, parties resisting discovery could—as SMCO and the Related Other Companies have sought to do here—turn discovery into a shell game, with the focus on delay and obfuscation rather than the production of evidence.

## 2.  SMCO A.S. and SCUAA Have Waived Their Objections by Failing to Submit Any.

SMCO A.S. and SCUAA have waived their objections by failing to provide any objections at all, except that SCUAA submitted responses and objections to Mrs. Ostensen's interrogatories to it.  *See* Fed. R. Civ. P. 33(b)(4), 34(b).

### 3.  SMCO, SCUAA and NHC's Privilege Claims Are Waived.

Despite Mrs. Ostensen's request that they provide her with a privilege log, SMCO, SCUAA and NHC have failed to identify the documents that they have withheld from discovery on privilege or work product grounds.[9]  The refusal to provide a privilege log constitutes a waiver of all privilege claims.  *See Ruran v. Beth El Temple of West Hartford*, 226 F.R.D. 165, 169 (D. Conn. 2005) (the failure to produce a privilege log waives all privilege claims).  For that reason, Mrs. Ostensen requests that SMCO, SCUAA and NHC be ordered immediately to produce all documents that they have withheld form production on privilege or work product grounds.

## Conclusion

For the reasons set forth above, Mrs. Ostensen respectfully requests that the Court order SMCO, SMCO A.S., SCUAA and NHC fully to respond to Mrs. Ostensen's discovery demands, as discussed above, no later than July 15, 2005, including: (1) ordering NHC immediately to respond to Mrs. Ostensen's discovery demands for the entire relevant period; (2) ordering SMCO A.S. immediately to respond fully to Mrs. Ostensen's discovery demands; (3) ordering SMCO, SMCO A.S., SCUAA and NHC to provide the discovery listed in Section IIC.1. (*supra*); (4) ordering SMCO, SMCO A.S., SCUAA and NHC to conduct a search of all files

---

[9] After several requests, SMCO and the Related Other Companies agreed to provide Mrs. Ostensen with privilege logs no later than June 24, 2005.  However, that date has come and Mrs. Ostensen has not received the promised

34

within their possession, custody or control, including electronic files, which reasonably could be

expected to contain evidence responsive to Mrs. Ostensen's discovery demands; (5) holding

SMCO, SMCO A.S., SCUAA and NHC objections to the production of evidence, including on

privilege grounds, to have been waived; and (6) ordering SMCO, SMCO A.S., SCUAA and

NHC to make all of their employees or agents who are to be deposed available for deposition in

Connecticut (or any other mutually convenient location agreed to counsel for all parties).


Dated: New York, New York
      June 24, 2005

 

                    Jeffrey M. Eilender (Bar. No. CT 25177)
                    John M. Lundin (Bar No. phv0185)
                    **SCHLAM STONE & DOLAN**, LLP
                    26 Broadway, Suite 1900
                    New York, NY 10004
                    (212) 344-5400 (Telephone)
                    (212) 344-7677 (Facsimile)
                    *Attorneys for Siri Ostensen*

                    Sharon E. Jaffe (Bar. No. CT. 04623)
                    **LEVIN & GLASSER, PC**
                    P.O. Box 1098
                    Weston, CT  06883
                    (203) 221-3008 (Telephone)
                    (203)221-3010 (Facsimile)
                    *Attorneys for Siri Ostensen*

privilege logs.