# EXHIBIT 6

09/10/03 10:12 FAX 203 226 8025        LEVETT ROCKWOOD P.C.                    ☒002



UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SCANDINAVIAN MARINE CLAIMS         :
OFFICE INC.,                       :
                                   :
       Plaintiff,                  :
                                   :
   v.                              :   CASE NO.   3:02CV678(RNC)
                                   :
TOM OSTENSEN AND SIRI OSTENSEN,    :
                                   :
       Defendants.                 :

RECOMMENDED RULING ON PLAINTIFF'S MOTION
FOR STAY PENDING ARBITRATION

The plaintiff, Scandinavian Marine Claims Office, Inc. ("SMCO"), brought suit against the defendants, Tom Ostensen, its former president, and his wife, Siri Ostensen ("the Ostensens") for nonpayment of two promissory notes. The Ostensens subsequently filed a counterclaim against SMCO and three additional defendants. (Doc. #44.) Pending before the court is SMCO's motion to stay the defendants' counterclaims pending arbitration.[1] (Doc. #28.) For the reasons set forth below, the court recommends that the plaintiff's motion be GRANTED in part and DENIED in part.

I.   Factual Background

In January 1994, the Ostensens jointly executed a promissory mortgage note in the amount of $180,000 to the benefit of SMCO. (Compl. ¶9.) In October 1995, the Ostensens jointly executed a

---
[1] United States District Judge Robert N. Chatigny of the District Court for the District of Connecticut referred this motion to the undersigned. (Doc. #31.)

second promissory mortgage note in the amount of $125,000 to the benefit of SMCO. (Compl. ¶12.) In November 2000, pursuant to the provisions in the notes, SMCO made written demand for payment of both notes within 180 days. When the Ostensens failed to make payment, SMCO commenced this action. The Ostensens do not dispute that they executed the notes and have not paid them. (Doc. #18, Answer ¶¶9-13.)

The Ostensens filed a counterclaim against SMCO seeking, among other relief, a right to set-off monies otherwise owed. The Ostensens also joined three additional defendants in their counterclaim: SCUA Americas, Inc. ("SCUA"), SMCO A.S. and Norwegian Hull Club ("NHC").[2] The Ostensens allege that SCUA is the successor corporation to the now defunct SMCO and is SMCO's alter ego; SMCO A.S., a Norwegian corporation, owned and controlled SMCO and owns and controls SCUA; and NHC, also a Norwegian corporation, owned and operated SMCO and owns and operates SCUA and SMCO A.S. (Counterclaim ¶¶3-5.) The counterclaim alleges that Tom Ostensen, as a SMCO employee, and Siri Ostensen, as a participant and/or an intended beneficiary, are covered by a "qualified pension plan" covered under ERISA, 29 U.S.C. § 1001 et seq. They also are covered by a "non-qualified pension plan," which is a supplemental or wrap around benefit plan available only to certain senior

---

[2]The court granted the Ostensens' motion pursuant to Fed. R. Civ. P. 13(h) for "joinder of additional parties defendant to assert counterclaim" absent objection. (Doc. #33.)

2

management personnel. (Counterclaim ¶¶11-13.) The non-qualified pension plan is set forth in a written agreement between SMCO and Tom Ostensen dated June 13, 1995. See doc. #30, Ex. A. Paragraph 6.4 of the non-qualified pension plan contains an arbitration clause, which provides:

> Any disagreements between the Company and the Employee in regard to this Agreement shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect as of the date of filing of the arbitration.

The Ostensens allege that the non-qualified pension plan was funded by mortgage notes (including the notes of the Ostensens and other employees), insurance policies, and other sources. (Counterclaim ¶¶15, 18-20.) According to the Ostensens, one or more of the counterclaim defendants wrongfully cancelled the life insurance policies. (Counterclaim ¶21.)

The counterclaim alleges that the defendants closed the SMCO office and changed the company's name to SCUA. (Counterclaim ¶23.) SMCO, at the direction of NHC and SMCO A.S., improperly divested itself of all its assets, transferring them to the defendants to avoid paying debts, including the non-qualified pension plan. (Counterclaim ¶26.) SMCO, SMCO A.S. and NHC personnel then informed Tom Ostensen (and other employees) that because of SMCO's insolvency, benefits under the non-qualified pension plan might not be paid. (Counterclaim ¶27.) As to the qualified pension plan, SMCO, contrary to its earlier representations, would not credit Tom

3

Ostensen's prior years of service with a predecessor company and would not use a previously agreed upon rate or multiplier to calculate his benefits. (Counterclaim ¶¶28-29.) The counterclaim alleges the following causes of action: ERISA (count 1); breach of the non-qualified pension plan (count 2); "detrimental reliance" in that the Ostensens relied on the defendants' promises to fund the pension plans (count 3); fraud (count 4); Connecticut Unfair Trade Practice Act ("CUTPA"), Conn. Act. Stat. § 42-110a et seq. (count 5); fraudulent transfer (count 6); tortious interference with Tom Ostensen's contractual relations as to SCUA, SMCO A.S. and NHC (count 7); liability of SCUA as a successor to SMCO (count 8); declaratory judgment as to the Ostensens' pension benefits (count 9); failure to pay wages in violation of Conn. Gen. Stat. § 31-72 (count 10); intentional infliction of emotional distress (count 11); operating an "insolvent company to the detriment of company's creditors and employees" (count 12); and "liability of SCUA, SMCO A.S. and NHC as alter egos of SMCO." (count 13).[3]

II. Discussion

Relying on the arbitration clause contained in the non-qualified pension plan, the plaintiff SMCO moves for a stay pending

---

[3] SMCO, SCUA and NHC filed answers to the counterclaims. (Doc. ##55-57.) In an August 2003 joint status report, the parties indicated that the Ostensens agreed to dismiss their counterclaims against SMCO A.S. without prejudice. (Doc. #61.) The record does not reflect that such a motion has yet been filed.

4

09/10/03  10:13 FAX 203 226 8025      LEVETT ROCKWOOD P.C.                    ☑006

arbitration of the Ostensens' counterclaims.[1]  The plaintiff also seeks the attorneys' fees and costs incurred in making of its motion.

> On a motion to stay proceedings pending arbitration, a court:
>
> has essentially four tasks: first, it must determine whether the parties agreed to arbitrate . . . ; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable . . . and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration.

Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987)(citations omitted).  See also Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 75 (2d Cir. 1998) (same).

The plaintiff SMCO first argues that, in light of the arbitration agreement, the counterclaims against it concerning the non-qualified pension plan are subject to the mandatory stay provision in 9 U.S.C. § 3 of the Federal Arbitration Act.  The Ostensens respond that none of the counterclaims should be stayed because all the claims are interrelated.  The mortgage notes upon which the plaintiff SMCO is proceeding were intended to fund the non-qualified pension plan.  The amount of benefits under the non-qualified pension plan to which the Ostensens are entitled depends

---

[1] The plaintiff's motion for stay was filed before the court granted the Ostensens' motion for joinder of additional parties. However, the plaintiff addressed the impact of the additional parties and Ostensens' counterclaims in its reply brief (doc. #40) and during oral argument.

5

09/10/03 10:13 FAX 203 226 8025      LEVETT ROCKWOOD P.C.                              ☒007

on the proper calculation of the benefits under the qualified pension plan, which, according to the counterclaim, was not done. The defendants' argument is unavailing.

Section 3 of Title 9 of the United States Code provides "for a stay of proceedings where the court is satisfied that the issue before it is arbitrable under the agreement." Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 844 (2d Cir. 1987). Section 3 provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

A stay of claims under 9 U.S.C. § 3 is mandatory. Genesco, Inc., 815 F.2d at 844. "Courts must act to enforce arbitration agreements . . . even though arbitration may sometimes result in 'piecemeal resolution.'" American Shipping Line, Inc. v. Massan Shipping Industries, Inc., 885 F. Supp. 499, 501 (S.D.N.Y. 1995)(quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 (1983)). "The court may not refuse to grant a stay under section 3 based on considerations of judicial economy." Seguros Banvenez, S.A. v. S/S Oliver Drescher, 761 F.2d 855, 862 (2d Cir. 1985). Accordingly, under § 3, the court cannot

6

decline to stay claims that are "referable to arbitration."

To determine whether a dispute is within the scope of an agreement's arbitration clause and is therefore "referable to arbitration":

> a court should undertake a three-part inquiry. First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. . . . Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. . . . Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. . . . Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001) (citations and internal quotation marks omitted). "No fixed rules govern the determination of an arbitration clause's scope . . . . In the end, a court must determine whether, on the one hand, the language of the clause, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause, or if, on the other hand, arbitration was designed to play a more limited role in any future dispute." Id. at 225.

The clause at issue, requiring arbitration of "[a]ny disagreements between the Company and the Employee in regard to this Agreement shall be settled by arbitration," is broad. See

e.g., Specht v. Netscape Communications Corp., 306 F.3d 17, 35 (2d Cir. 2002) ("all disputes relating to this Agreement (excepting any dispute relating to intellectual property rights)" classified as broad); Louis Dreyfus Negoce S.A., 252 F.3d at 225 ("[a]ny dispute arising from the making, performance or termination of this Charter Party" be arbitrated was broad clause); Abram Landau Real Estate v. Bevona, 123 F.3d 69, 71 (2d Cir. 1997) ("all differences arising between the parties to this agreement as to interpretation, application or performance of any part of this agreement" was broad).

Having classified the arbitration clause, the court next considers whether the counterclaims asserted against SMCO are within the scope of the arbitration clause. "[T]he existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997)(internal quotation marks omitted). "[T]he issue sought to be arbitrated need not constitute a breach of the contract containing the arbitration clause" in order to fall within the scope of the arbitration clause. Mehler v. Terminix Intern. Co. L.P., 205 F.3d 44 (2d Cir. 2000). Rather, the court "focus[es] on the factual allegations in the complaint rather than the legal causes of action asserted. . . . If the allegations underlying the

8

claims 'touch matters' covered by the parties' [non-qualified pension plan], then those claims must be arbitrated, whatever the legal labels attached to them." Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 846 (2d Cir. 1987)(citation omitted). "If some claims are non-arbitrable, while others are arbitrable, then [the court] will sever those claims subject to arbitration from those adjudicable only in court. Indeed, there is no reason why, in a proper case, we cannot sever even a part of a claim, where that claim raises both arbitrable and non-arbitrable issues." Collins & Aikman Products Co. v. Building Systems, Inc., 58 F.3d 16, 20 (2d Cir. 1995).

The first counterclaim alleges that SMCO repudiated its obligations to Tom Ostensen under both the qualified and non-qualified plan in violation of ERISA. (Counterclaim ¶32.) SMCO all.. manipulated the conduct of independent auditors in addition to the information and instructions it provided them in order to present a misleading statement of pension benefits to Tom Ostensen. (Counterclaim ¶33.) The court concludes that this cause of action, to the extent that it addresses the non-qualified pension plan, "touch[es] matters" within the parties' agreement. Accordingly, it is arbitrable and subject to a mandatory stay under § 3. The second counterclaim, alleging that SMCO breached the non-qualified pension plan, clearly is arbitrable. The third, fourth and fifth counterclaims for detrimental reliance, fraud and violation of CUTPA, assert claims based on representations made by

9

SMCO to Tom Ostensen regarding his pension benefits. To the extent that the statements regarded benefits under the non-qualified pension plan, they are within the scope of the arbitration clause. The sixth counterclaim, asserting fraudulent transfer, alleges that SMCO improperly transferred its assets to SCUA, SMCO A.S. and NHC in violation of the Uniform Fraudulent Transfer Act, Conn. Gen Stat. § 52-552a et seq. The counterclaim alleges that these conveyances were made so that the non-qualified pension plan would be underfunded, thereby depriving Tom Ostensen of his benefits under the non-qualified pension plan. (Counterclaim ¶57.) This claim is within the scope of the arbitration clause as it implicates the "parties' rights and obligations" under the non-qualified pension plan. Collins & Aikman Products Co. v. Building Systems, Inc., 58 F.3d 16, 23 (2d Cir. 1995). The ninth counterclaim seeks a declaratory judgment as to the Ostensens' rights under both the qualified and non-qualified pension plans. Insofar as this claim is directed to SMCO and the non-qualified pension plan, it is within the scope of the clause. The tenth counterclaim is a claim for unpaid wages pursuant to Conn. Gen. Stat. § 31-72. On its face, this claim does not appear to within the scope of the arbitration clause. However, to the extent that the Ostensens allege that the non-qualified pension benefits are wages within § 31-72, such a claim is within the clause. The eleventh counterclaim alleges that SMCO's "repudiation of pension benefits" constituted intentional infliction of emotional distress.

10

To the extent that the plaintiff alleges emotional distress arising from SMCO's conduct with regard to his non-qualified pension plan benefits, such a claim is within the scope of the arbitration clause.

The plaintiff next argues that the court should exercise its discretion to stay the non-arbitrable counterclaims against SMCO and the additional defendants, SCUA, SMCO A.S. and NHC.[5]

"[D]istrict courts, despite the inapplicability of the FAA, may stay a case pursuant to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." WorldCrisa Corp. v. Armstrong, 129 F.3d 71 (2d Cir. 1997) (internal quotation marks omitted). "Broad stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit." Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 856 (2d Cir. 1987). A stay may be appropriate where the arbitrable issues might be determinative of the issues remaining in the case. See Sierra Rutile Ltd. v. Katz, 937 F.2d 743, 749 (2d Cir. 1991). The party seeking the stay "bears the burden of demonstrating that such a stay is justified." WorldCrisa Corp, 129 F.3d at 76.

The plaintiff argues that a stay is warranted as to the non-arbitrable claims against SMCO because the claims "are of little

---

[5]Nonparties to the arbitration agreement are not entitled to a stay under 9 U.S.C. § 3. Citrus Marketing Bd. of Israel v. J. Lauritzen A/S, 943 F.2d 220, 224 (2d Cir. 1991).

11

merit" and "do not predominate." (Doc. #40, Pl's Reply Br. at 6-7.) The plaintiff also suggests that the Ostensens' contention that the non-qualified and qualified pension plan claims are inextricably linked, which SMCO does not concede, weighs in favor of a stay. (Doc. #40, Pl's Reply Br. at 7.)

On the present record, the plaintiff SMCO has not sustained its burden of demonstrating that a stay is justified. The court, at this juncture, "cannot find that the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit." Circus Productions, Inc. v. Int'l Impresarios, Inc., No. 90 CIV 414, 1990 WL 55684, at *5 (S.D.N.Y. Apr. 26, 1990). The Ostensens' qualified pension plan counterclaims as to SMCO are sufficiently discrete to warrant the court to exercise its jurisdiction.

The plaintiff next argues that the counterclaims against SCUA, SMCO A.S. and NHC should be stayed because they are derivative of SMCO's liability and cite Harvey v. Joyce, 199 F.3d 790 (5th Cir. 2000) in support of their argument. The court is unpersuaded.

In Harvey, the plaintiff shareholders brought suit against Joyce, a record owner of stock, and CTC, a corporation. Although the plaintiffs and Joyce were parties to the arbitration agreement, CTC was not. The district court denied Joyce and CTC's motion to stay. On appeal, the Court of Appeals concluded that all claims asserted against Joyce were arbitrable pursuant to the arbitration agreement. The court further concluded that CTC, despite being

non-signatory, was entitled to a stay pending arbitration of the claims against Joyce under 9 U.S.C. § 3, because "a suit against CTC could have a critical impact in the Joyce arbitration. . . . If CTC were forced to try the case, the arbitration proceedings would be both redundant and meaningless; in effect, thwarting the federal policy in favor of arbitration. . . . Therefore, we fail to see how litigation could proceed as to CTC without adversely affecting Joyce's right to arbitrate." 199 F.3d at 795. The Fifth Circuit subsequently construed Harvey and observed that because of the "exceptional circumstances" presented in that case, "we diverged from our general rule requiring party status for the mandatory stay provision to apply, thereby creating tension in our case law." Adams v. Georgia Gulf Corp., 237 F.3d 538, 540 (5th Cir. 2001). The court clarified that the "concern" it had in Harvey "was not the impact on CTC but the right of the party to the arbitration to arbitrate meaningfully." 237 F.3d at 541.

Harvey does not compel the conclusion that the claims against the non-signatories should be stayed. Although SMCO argues that it is not efficient to litigate the liability of the additional corporate defendants without first determining SMCO's liability in the arbitration, it, unlike the defendant Joyce in Harvey, does not argue that its ability to arbitrate meaningfully will be affected if a stay is not granted.

The Ostensens argue that the plaintiff waived its right to arbitrate by "bringing action on only the promissory notes." (Doc.

13

#36, Pl's Opp'n at 8.) They reason that the plaintiff, by "selecting just one part of a multipart employment agreement to sue upon and seeking only to stay the portion of the litigation that can result in a set-off or judgment against it," will cause the "arbitration to be conducted out of its logical sequence," prejudicing the defendants. (Doc. #36, Pl's Opp'n at 9.) The defendants offer no authority for this proposition. The court is not persuaded that because all the claims in the case are not arbitrable and as a result, cannot be heard simultaneously in the same forum, the plaintiff is precluded from enforcing the parties' explicit agreement to resolve their dispute through arbitration and realizing the benefit of the bargain it sought in the parties' arbitration agreement.

As a final matter, the court considers the plaintiff's request for fees incurred in the filing of its motion. The court declines to award the plaintiff fees. See Amstar Corp. v. S.S. Union Australia, 445 F. Supp. 940 (S.D.N.Y. 1978)(denying defendant's application for costs incurred in making its motion to stay pending arbitration because opposition was not frivolous).

III. Conclusion

For these reasons, the court recommends that the plaintiffs's motion to stay pending arbitration (doc. #28) be GRANTED in part and DENIED in part. The court recommends that the plaintiff's motion for a mandatory stay pursuant to 9 U.S.C. § 3 be granted as to counterclaims 1-6, 9-11 against SMCO, as set forth in this

14

opinion. The court further recommends that the plaintiff's motion for a discretionary stay pursuant to the court's inherent power to manage its docket be denied as to the remaining counterclaims against SMCO and all the counterclaims against SCUA, SMCO A.S and NHC. As a final matter, the court recommends that the plaintiff's request for attorney fees be denied.

Either party may seek the district court's review of this recommendation. See 28 U.S.C. § 636(b)(written objections to proposed findings and recommendations must be filed within ten days after service of same); Fed. R. Civ. P. 6(a), 6(e) & 72; Rule 72 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Thomas v. Arn, 474 U.S. 140, 155 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992)(failure to file timely objections to Magistrate Judge's recommended ruling waives further review of the ruling).

Dated at Hartford, Connecticut this 5th day of September, 2003.

_____
Donna F. Martinez
United States Magistrate Judge

15