**EXHIBIT A**

6/13/95

## AGREEMENT

This AGREEMENT made as of the __13th__ day of __June__, 199__5__, by and between Scandinavian Marine Claims Office, Inc. a New York corporation (the "Company"), and Tom Ostensen, residing at __7 GILLIAM LANE, RIVERSIDE, CT 06878__, (the "Employee").

### WITNESSETH

WHEREAS, the Employee provides valuable services to the Company in the performance of his duties for the Company; and

WHEREAS, the Company is desirous of ensuring the continued employment of the Employee; and

WHEREAS, the Employee is desirous of maximizing the amount of retirement income and related death benefits payable to him or on his behalf, as a result of his service with the Company;

NOW THEREFORE, in consideration of the premises and mutual covenants contained herein, the parties agree as follows:

### ARTICLE I - GENERAL AND DEFINITIONS

1.1 The purpose of this Agreement is to provide for retirement and other related benefits to the Employee in addition to those he may accrue under the Pension Plan for Employees of Scandinavian Marine Claims Office, Inc. (the "Pension Plan") and the Scandinavian Marine Claims Office, Inc. Money Purchase Plan (the "Money Purchase Plan"). Such Plans shall hereinafter be referred to collectively as the "Plans".

1.2  All terms defined in either or both of the Plans shall have the same meanings when used herein unless expressly provided to the contrary herein, except that the determination of Final Average Compensation shall be made hereunder without regard to the limitation imposed under the Plans by Section 401(a)(17) of the Internal Revenue Code, and by treating the Employee as having Compensation in any Plan Year after 1993 equal to the greater of (i) his actual Compensation for such Plan Year, or (ii) his Compensation for 1993 Plan Year, increased by 5% per year, compounded annually up through the end of the Plan Year in question.

## ARTICLE II - RETIREMENT BENEFIT

2.1  If the Employee terminates employment on or after his Normal Retirement Date, the Company agrees to pay the Employee a monthly retirement benefit under this Agreement in an amount determined in accordance with Section 2.2, and payable at the time and in the manner provided in Section 2.3. The monthly retirement benefit payable in accordance with this Agreement shall be in addition to any amounts payable to the Employee under either or both of the Plans.

2.2  The amount of monthly retirement benefit referred in Section 2.1 shall be equal to 1/12 of the excess of (i) over (ii), where:

   (i)  is a dollar amount equal to 60% of the Employee's Final Average Compensation; and

   (ii) is either (A) the dollar amount of monthly retirement benefit determined under Section 4.2 of the Pension Plan (even though the form of payment under such plan is different from the form of payment described in Section 2.3), or (B) in the event benefits are payable to the Employee under the Money Purchase Plan but not under

the Pension Plan, the dollar amount which is the Actuarial Equivalent under the Pension Plan of the amount payable to the Employee under the Money Purchase Plan.

2.3 The retirement benefit described above shall be payable commencing with the first day of the month coinciding with or otherwise next following the date of the Employee's termination of employment, and shall continue until the last such payment made prior to the Employee's death. In the event the Employee dies after payment of such retirement benefit commences, but before 156 monthly payments are made to him, such payments shall continue to be made to the Employee's Beneficiary until the total number of monthly payments to the Employee and his Beneficiary total 156.

### ARTICLE III - EARLY RETIREMENT AND OTHER TERMINATION OF EMPLOYMENT

3.1 In the event that the Employee terminates employment before his Normal Retirement Date, he shall be entitled to a monthly retirement benefit equal to the amount provided by Section 2.2. Such retirement benefit shall be payable commencing on the Employee's Normal Retirement Date, in the manner described in Section 2.3.

3.2 Subject to Section 3.3, an Employee described in Section 3.1 may elect, in accordance with procedures established by the Committee, to begin receiving his retirement benefit on the first day of any month after the date of his termination of employment, but before his Normal Retirement Date.

3.3 In the event that an Employee's retirement benefit commences prior to his Normal Retirement Date in accordance with Section 3.2, the amount of such retirement benefit shall be an adjusted amount determined in accordance with this Section 3.3. Such adjusted amount shall be determined by first determining a reduced amount equal to

3

the Actuarial Equivalent of the retirement benefit payable at Normal Retirement Date in accordance with Section 3.1, provided, that if the Employee is at least age 60 at the time of his termination of employment, he shall be deemed to be 2 years older for purposes of the determination of such Actuarial Equivalent. The resulting amount of monthly retirement benefit shall then be increased by a dollar amount equal to the difference between (i) the dollar amount of actuarial reduction under the Pension Plan that would occur under Section 3.4(c) or 3.5(b) of such Plan if benefits were to commence thereunder as of the same date benefits commence under this Agreement, and (ii) the dollar amount of the actuarial reduction that would have occurred under (i) above if the Pension Plan contained the 2 year increase in age for Participants terminating employment after age 60 that is described in the preceding provisions of this Section 3.3.

### ARTICLE IV - DEATH BEFORE BENEFIT COMMENCEMENT

4.1  In the event that the Employee dies while employed by the Company or after termination of his employment with the Company but before payment of his retirement benefit commences in accordance with Article III, a monthly death benefit shall be payable to his Beneficiary in accordance with this Article IV.

4.2  Except as otherwise provided in Section 4.3, the monthly death benefit shall commence on the Employee's Normal Retirement Date. In the case of an Employee who dies while employed by the Company, the amount of such monthly death benefit shall be equal to the monthly retirement benefit that would have been payable to the Employee had he terminated employment instead of died and had not elected to commence payment of his retirement benefit prior to his Normal Retirement Date. In the case of an Employee described in Article III, the monthly death benefit shall be equal to the monthly Retirement Benefit that would have been payable in accordance with Article III if the Employee had not elected to commence payment of such Retirement Benefit prior to his Normal Retirement Date.

4

4.3. The Company may in its sole discretion and in accordance with an election by the Beneficiary, commence payment of the monthly death benefit described in this Article IV as of the first day of any month after the Employee's death but before his Normal Retirement Date. In the event of such early commencement, the amount of monthly death benefit determined in accordance with the preceding provisions of this Article IV shall be reduced in the same manner as described in Section 3.3; provided, however, that the special treatment afforded to the Employee if he is over age 60 at his termination of employment shall not apply to the Employee if his termination of employment occurred before he reached age 60, even though his death occurred after the date he reached age 60.

4.4 The monthly death benefit described in this Article IV, shall be payable to the Beneficiary until 156 consecutive monthly payments have been made. If a Beneficiary dies before 156 monthly payments have been made, payments shall continue to a successor Beneficiary, or, if none, to the Employee's estate, until such time as 156 monthly payments have been made in total. After 156 such monthly payments have been made, no further death benefits shall be payable hereunder. Notwithstanding the foregoing, the Company may, in its sole discretion, pay a lump sum death benefit to the Beneficiary in lieu of any further death benefit payments under this Article IV. The amount of such lump sum payment shall be the Actuarial Equivalent of the monthly death benefits yet to be paid under this Article IV.

## ARTICLE V - FUNDING

5.1 The benefits provided by the Company under this Agreement shall be paid out of its general assets. The Company is under no obligation to set aside any assets to provide the benefits hereunder, nor to enter into any funding arrangements to provide the benefits under this Agreement.

5

5.2  Notwithstanding the provisions of Section 5.1, the Company may set aside such assets, create such reserves or establish such funding vehicles, including the purchase of life insurance, as it deems necessary for the provision of benefits under this Agreement. Any such assets, reserves or funding vehicles shall be the sole property of the Company, shall be subject to the claims of its general creditors and shall not establish any right of ownership in the Employee or any of his beneficiaries, successors or assigns.

## ARTICLE VI - MISCELLANEOUS

6.1  Nothing in this Agreement shall give the Employee the right to be retained in the employ of the Company or affect the right of the Company to dismiss the Employee.

6.2  Notwithstanding anything in this Agreement to the contrary, the Employee (and any Beneficiary) shall forfeit all right to any benefit under this Agreement if the Employee has committed any act which is adjudicated to be a felonious criminal act against the Company.

6.3  The Company shall have the right to request such information from the Employee and require the completion of such forms as it deems necessary from time to time to administer the terms of this Agreement.

6.4  Any disagreements between the Company and the Employee in regard to this Agreement shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect as of the date of filing of the arbitration.

6.5  All communications between the Company and the Employee which pertain to this Agreement shall be in writing and shall be deemed to have been duly given if delivered personally or by mail, with return receipt requested and acknowledged, at the receiving party's last known address.

6

6.6  This Agreement shall be governed by and construed and enforced in accordance with the local laws of the State of Connecticut applicable to agreements made to be performed entirely within such state without regard to its conflicts of laws provisions.

6.7  This Agreement is the entire Agreement between the Company and the Employee with respect to the subject matter hereof and shall be binding upon and inure to the benefit of the parties and their respective heirs and permitted successors and assigns.

6.8  This Agreement may not be altered, modified, changed or discharged except in writing signed by both parties. This Agreement may be executed in counterparts, and each such counterpart shall constitute an original and all such counterparts shall constitute one and the same instrument.

   IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth above.

_____
Tom Ostensen

SCANDINAVIAN MARINE
CLAIMS OFFICE, INC.

By _____

7