# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

SCANDINAVIAN MARINE CLAIMS
OFFICE, INC.,

*Plaintiff*,

- *against* -

SIRI OSTENSEN,

*Defendant*,

- *against* -

SCANDINAVIAN MARINE CLAIMS
OFFICE, INC., SCANDINAVIAN
UNDERWRITERS AGENCY, SCUA
AMERICAS, INC., S.M.C.O., A.S., AND
NORWEGIAN HULL CLUB,

*Counterclaim and Third-Party Defendants*.

Civil Action No. 3:02CV678 (RNC) (DFM)

August 22, 2005

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER

Jeffrey M. Eilender (Bar. No. CT 25177)
John M. Lundin (Bar No. phv0185)
**SCHLAM STONE & DOLAN**, LLP
26 Broadway, Suite 1900
New York, NY 10004
(212) 344-5400 (Telephone)
(212) 344-7677 (Facsimile)
*Attorneys for Siri Ostensen*

Sharon E. Jaffe (Bar. No. CT. 04623)
**LEVIN & GLASSER, PC**
P.O. Box 1098
Weston, CT 06883
(203) 221-3008 (Telephone)
(203)221-3010 (Facsimile)
*Attorneys for Siri Ostensen*

# TABLE OF CONTENTS

Table of Authorities ......................................................................................................... ii

Preliminary Statement ...................................................................................................... 1

Factual and Procedural Background ................................................................................ 3

Argument .......................................................................................................................... 9

I.     SMCO AND THE RELATED OTHER COMPANIES SHOULD BE ORDERED
       TO OBEY THE COURT'S PRIOR ORDER REGARDING THE LOCATION
       OF THE DEPOSITIONS OF PARTY-AFFILIATED WITNESSES ................................. 9

       A.     The Court Should Not Consider the Related Other Companies' Untimely
       Motion. ................................................................................................................... 9

       B.     The Court Properly Ruled That Depositions of Party-Affiliated Witnesses
       Should Take Place in Connecticut. .................................................................... 10

       C.     If SMCO A.S. Wants Mr. Aaslestad's Deposition to Take Place in Norway
       for His Convenience, it Should Bear the Cost of the Accommodation it Seeks ................ 13

       D.     Mrs. Ostensen Has Not Claimed that Non-Party Witnesses are Obliged to
       Appear for Deposition in Connecticut. ............................................................. 14

II.    SMCO A.S. SHOULD NOT BE EXCUSED FROM PROVIDING DISCOVERY ......... 14

       A.     SMCO A.S. Waived Its Objections by Failing to Submit Any. ........................... 14

       B.     SMCO A.S. Is Subject to the Jurisdiction of This Court. ................................... 15

Conclusion ..................................................................................................................... 18

## TABLE OF AUTHORITIES

CASES

Bowman v. Grolsche Bierbrouwerij B.V.,
    474 F. Supp. 725 (D. Conn. 1979).................................................................16

Chambers v. Principi,
    No. 00 CV 656 (SRU), 2004 WL 722249 (D. Conn. March 24, 2004)............................10

Combustion Engineering, Inc. v. NEI International Combustion,
    798 F. Supp. 100 (D. Conn. 1992)...............................................................16

Eutectic Corp. v. Curtis Noll Corp.,
    342 F. Supp. 761 (D. Conn. 1972)...............................................................17

Federal Deposit Insurance Co. v. La Antillana. S.A.,
    No. 88 Civ. 2670 (JFK), 1990 WL 155727 (Oct. 5, 1990 S.D.N.Y.)...............................11

Mallon v. Walt Disney World Co.,
    42 F. Supp. 2d 143 (D. Conn. 1998).............................................................16

Mill-Run Tours, Inc. v. Khashoggi,
    124 F.R.D. 547 (S.D.N.Y. 1989)................................................................11

Ruran v. Beth El Temple of West Hartford,
    226 F.R.D. 165 (D. Conn. 2005).................................................................15

Sugarhill Records Ltd. v. Motown Records Corp.,
    105 F.R.D. 166 (S.D.N.Y. 1985).............................................................10, 11

STATUTES RULES

Connecticut General Statutes § 33-929...........................................................15, 16

Federal Rule of Civil Procedure 33 .................................................................15

Federal Rule of Civil Procedure 34 .................................................................15

Local Civil Rule 7 .................................................................................10

Defendant Siri Ostensen ("Mrs. Ostensen"), in her individual capacity and as the executrix of the estate of her husband, Tom Ostensen, by her undersigned counsel, submits this memorandum of law, along with the Declaration of John M. Lundin, and the exhibits attached thereto ("Lundin Decl."), in opposition to the motion by Third-Party Defendants SCUA Americas, Inc. ("SCUAA"), SMCO A.S., Norwegian Hull Club ("NHC") (collectively, the "Related Other Companies") and certain non-parties for a protective order changing the location of certain depositions and staying discovery of SMCO A.S.

### Preliminary Statement

Plaintiff Scandinavian Marine Claims Office, Inc. ("SMCO") and the Related Other Companies are quite obviously aware of the fact that the principal witness against them— Tom Ostensen—is dead and that his widow is now forced to litigate against them alone and at a severe economic disadvantage. For example, SMCO and the Related Other Parties are exploiting Mr. Ostensen's death to maximum advantage by refusing to provide Mrs. Ostensen full discovery regarding her claims and defenses. They have moved to quash subpoenas issued on their counsel; moved severely to limit the scope of discovery—indeed, seeking to deny Mrs. Ostensen of discovery on the issues on which SMCO has moved for summary judgment; moved in the present motion to exempt SMCO A.S. from discovery; moved in the present motion to have the Court reconsider its decision to have the deposition of party-affiliated witnesses taken in Connecticut in order to impose additional litigation expenses on Mrs. Ostensen; and ignored Mrs. Ostensen's discovery demands, forcing Mrs. Ostensen to move to compel responses to them.

All of this stonewalling has slowed discovery to a crawl and has imposed significant litigation expenses on Mrs. Ostensen. The stonewalling must stop.

The present motion is as baseless as the prior ones Mrs. Ostensen has been forced

to oppose.

**First**, the Related Other Parties belatedly seek reconsideration of the Court's March 3, 2005 order, announced at the parties' mediation, that the depositions of party-affiliated witnesses would be taken in Connecticut. This belated attempt to impose additional costs on Mrs. Ostensen should be rejected.

All of the factors which the Court should consider in determining the proper location for the depositions of party-affiliated witnesses argue in favor of conducting them in the United States, as the Court already has ordered. The Related Other Companies, with net assets in excess of a quarter of a billion dollars, plainly are better positioned to bear the costs of sending witnesses to the United States than Mrs. Ostensen is to send counsel to Norway to conduct depositions. Indeed, it will be more convenient and likely less expensive for both parties to conduct the depositions in New York, where both parties' counsel have their offices and files, rather than for both parties to send personnel and materials to Norway for depositions. Finally, given all of the discovery disputes that have marred this proceeding, it is important that the depositions be held here, where the Court can supervise them, rather than a continent away.

**Second**, SMCO A.S. is a party to this action and has no valid reason for being exempt from discovery. Further, it is clear that SMCO A.S.'s motion to dismiss—the purported justification for its motion for protective order—is frivolous. Even the limited discovery Mrs. Ostensen has so far been able to obtain contains incontrovertible evidence of SMCO A.S.'s contacts with Connecticut, contacts much more than sufficient to warrant this Court's assertion of personal jurisdiction over SMCO A.S. SMCO A.S. entered into a contract to provide management services to SMCO—which had its principal place of business in Connecticut—for which SMCO paid SMCO A.S. SMCO A.S. also entered into other financial transactions with

SMCO. It appears to have made loans to SMCO; loans that it insisted be repaid even as it directed SMCO to renege on its obligations to provide the Ostensens pension benefits and to pay all of Mr. Ostensen's salary and benefits. In addition, it entered into contracts with Fleet Bank and SMCO in Connecticut in connection with a credit facility issued to SMCO by Fleet Bank. Each of those many contacts would be sufficient for the assertion of jurisdiction over SMCO A.S.; together, they make SMCO A.S.'s motion simply one more desperate attempt to prevent Mrs. Ostensen from discovering the truth regarding SMCO A.S.'s misconduct.

## Factual and Procedural Background

### SMCO A.S.

SMCO A.S. owned Plaintiff SMCO. (Plaintiff Scandinavian Marine Claims Office, Inc.'s Response to Defendant Siri Ostensen's First Interrogatories, Response No. 1, attached as Exhibit 1 to the Declaration of John M. Lundin dated August 15, 2005 ("Lundin Dismissal Decl.," Lundin Decl. Ex. 1. Mrs. Ostensen's Memorandum of Law in Opposition to SMCO A.S.'s Motion to Dismiss is attached as Exhibit 2 to the Lundin Decl.) However, in certain NHC and SMCO A.S. documents, SMCO A.S. is referred to as SCUA. (*See, e.g.*, SMCO A.S. Board Meeting Minutes dated September 9, 1999 at 1, Lundin Dismissal Decl. Ex. 2 ("SCUA should be adopted as a global brand name for all offices of the holding company.").) Mrs. Ostensen asserted counterclaims against both SMCO A.S. and SCUA. (Counterclaim, Lundin Dismissal Decl. Ex. 3.) SMCO A.S. was duly served, (Mem. Of Law in Sup. of SMCO A.S.'s Mot. to Dismiss ("SMCO A.S. Brief") at 3), and counsel for SMCO A.S. appeared in this action. (Docket Entry Nos. 46-47, Lundin Dismissal Decl. Ex. 4.)

In August 2003, the parties agreed that Mrs. Ostensen would dismiss the entity denominated SMCO A.S. **without** prejudice, provided that Mrs. Ostensen reserved the right later

3

to "add SMCO AS as a party *nunc pro tunc*." (Joint Status Report dated August 1, 2003 ¶ 7,
Lundin Dismissal Decl. Ex. 5 (emphasis added).) The dismissal was not filed; SCUA never
appeared in this action. Notwithstanding, relying on the parties' 2003 agreement, SMCO
counsel informed Mrs. Ostensen's counsel that neither SCUA nor SMCO A.S. would not
provide discovery in this action. SMCO A.S. subsequently moved to be dismissed from this
action for lack of personal jurisdiction.

In 2001, SMCO, A.S. decided to: (1) close SMCO's headquarters, firing SMCO
management; (2) form a new company, SCUA Americas, Inc., to take over the business of
SMCO's Houston and Miami offices; and (3) sell SMCO's subsidiary, SMQI, Inc. (Minutes of
the SMCO AS Board Meeting, dated May 23, 2000, Lundin Dismissal Decl. Ex. 6.) Further, on
June 21, 2001, the SMCO A.S. Board recommended "to the ultimate shareholders that they
provide the capital necessary to liquidate" SMCO "based on **full payment** of **all** obligations
**except** balances with **Mr. Ostensen**." (SMCO A.S. Board Meeting Minutes dated June 21,
2001, Lundin Dismissal Decl. Ex. 7 (emphasis added).) Indeed, even though SMCO made
provisions to fund its obligations under the Non-Qualified Plan through "mortgage notes
receivable from related parties . . . and certain life insurance policies," (SMCO Financial
Statements December 31, 1997 at SM001380, Lundin Dismissal Decl. Ex. 8), SMCO A.S.
instead directed SMCO management to liquidate those assets and use them to pay other
obligations—as directed by SMCO A.S.—but not SMCO's obligations to the Ostensens, (SMCO
A.S. Board Meeting Minutes dated June 21, 2001, Lundin Dismissal Decl. Ex. 7 at 3;
Counterclaim, Lundin Decl. Ex. 3 ¶¶ 18-22).

## NHC

The majority owner of SMCO, A.S. is Third-Party Defendant NHC. (Lundin Dismissal Decl. Ex. 1, Response No. 1.) NHC is a "[m]utual hull insurance" club. (http://www.norclub.no ("NHC History"), Lundin Decl. Ex. 3.)

Prior to January 2001, SMCO, A.S.'s majority owners were Bergen Hull Club and Unitas. (Lundin Decl. Ex. 1, Response No. 1.) On January 2001, Bergen Hull Club changed its name to Norwegian Hull Club and merged with UNITAS. (NHC 2000 Annual Report at 6, Lundin Decl. Ex. 4; *see also* NHC History, Lundin Decl. Ex. 3 ("In 2001 Bergen Hull Club and UNITAS merged to create Norwegian Hull Club."); NHC Articles of Association, Lundin Decl. Ex. 5 (stating that NHC is an "amalgamation of," among other entities Bergen Hull Club ("Bergens Skibsassuranseforening – Gjensidig") and Unitas.)

NHC reported in its 2001 Annual Report that $2 million "was written off" NHC's "2000 accounts as loss relating to the liquidation of SMCO" and that "estimated losses from the liquidation of SMCO" increased in 2001, "mostly due to an increase in estimated pension liabilities, in part due to lower USD interest rates and in part due to errors made in previous calculations of pension liabilities." (NHC 2001 Annual Report at 10, Lundin Decl. Ex. 6.) As a result, NHC's "2001 accounts" were $1.6 million "to cover the increased liquidation cost. The losses relating to SMCO" were "divided between the two shareholders of the company on a pro rata basis, namely 2/3 and 1/3.) (*Id.*)

NHC's decision to assume SMCO's obligations under the Non-Qualified Plan were made clear in its board meeting minutes. The minutes of the February 27, 2001 meeting of NHC's board reflect that the board agreed in principle that SMCO would be liquidated, with "unsecured creditors generally receive full settlement and that previous management employees

receive coverage under the Non Qualified pension plan not to exceed USD 750 000." (NHC

Board Meeting Minutes dated February 27, 2001 at NW000187, Lundin Decl. Ex. 7.)  The board

recognized that this would result in NHC absorbing "an estimated total . . . of USD 3,25 mill."

(*Id.*)[1]  This decision to assume SMCO's obligations, including those under the Non-Qualified

Plan, was reaffirmed in NHC's December 13, 2001, board meeting minutes, which stated:

> The Board authorizes Management to continue working with a
> managed liquidation of SMCO, Inc. based on total cost of
> liquidation being at least USD 600.000 lower than what it would
> cost to cover all claims 100%.  Thus, reductions will have to be
> made in the settlement with certain creditors.  This means that the
> total loss shall not exceed USD 4.8 mill compared to the estimated
> total loss presented to the Board on November 14, 2001.
> However, the loss may change as a result of changes of the
> premises, primarily interest rate levels and, as a consequence, the
> discount factor for **calculation of pension obligations**.

(NHC Board Meeting Minutes dated December 13, 2001 at NW000227, Lundin Decl. Ex. 8.)[2]

### Mrs. Ostensen's Claims

Mr. Ostensen (and Mrs. Ostensen, as his widow) were entitled to benefits under a

non-qualified pension plan for senior executives of SMCO (the "Non-Qualified Plan"), as well

as a qualified pension plan (the "Qualified Plan").  (Counterclaim ¶¶ 8-16, Lundin Dismissal

Decl. Ex. 3.)  Mr. Ostensen continued his employment with SMCO, and did not take advantage

of other employment and investment opportunities, in reliance on promises regarding the

benefits he and Mrs. Ostensen would receive under those plans made to him by both the

---

[1] The original text reads: "Styret diskuterte og stilte spørsmål til den fremlagte dokumentasjon vedrørende SMCO
Inc.  Styret sluttet seg til det fremlagte forslag til prinsipper for avvikling av SMCO Inc. ved at uiskrede kreditorer
generelt får fullt oppgjør of at tidligere ledende ansatte får dekning under Non Qualified pensjonsordning som ikke
overstiger USD 750 000, hvilket gir en beregnet samlet underdekning på USD 3,25 mill."

[2] The original text reads: "Styret gir administrasjonen fullmakt til å arbeide videre med styrt avvikling av SMCO
Inc. basert på total kostnad ved avviklingen minimum USD 600.00 lavere enn hva det vil koste à dekke alle krav
100%.  Det må således foretas avkorting i oppgjør med enkelte kreditorer.  I forhold til beregnet totalt tap fremlagt
for styret 14. november 2001 innebærer dette at totalt tap ikke skal overstige USD 4,8 mill.  Tapet kan dog endres
som følge av endring i forutsetninger, i første rekke rentenivå og derved diskonteringsfactor for beregning av
pensjonsforpliktelser."

directors of SMCO and officers and the directors of SMCO A.S and NHC. (*Id.* ¶¶ 42, 46.) NHC and SMCO A.S., which dominated SMCO, forced SMCO to renege on its promises to the Ostensens regarding the Non-Qualified Plan. (*Id.* ¶¶ 39, 63, 86-88.)

Mrs. Ostensen, in her individual capacity and as the executrix of the estate of her husband, Tom Ostensen, asserted counterclaims against the Related Other Companies for detrimental reliance, (*id.* ¶ 42), fraud, (*id.* ¶ 46), fraudulent transfer, (*id.* ¶ 56), tortious interference with contract, (*id.* ¶ 62), withheld wages, (*id.* ¶ 72), and intentional infliction of emotional distress, (*id.* ¶ 76). Further, the Counterclaim alleges that SMCO A.S. is liable for SMCO's misconduct, including its breach of its contract to provide benefits to the Ostensen's under the Qualified and Unqualified Plans because SMCO A.S. and NHC so dominated and controlled SMCO that it was acting as a mere instrumentality of SMCO A.S. and NHC when it breached its obligations to the Ostensens. (*Id.* ¶ 86.) The Related Other Companies' misconduct deprived Mrs. Ostensen of the significant benefits—total payments of well over $2 million between 2009 and 2022—to which she contractually is entitled under the plan, benefits that were the consideration for the Ostensen's execution of the Notes.

**Discovery Sought by Mrs. Ostensen**

By a Report and Recommendation (the "Report") dated and filed on September 5, 2003, the Court interpreted the arbitration provision in Paragraph 6.4 of the Non-Qualified Plan broadly, requiring Mrs. Ostensen to arbitrate almost all of her counterclaims against SMCO. Further, because the Related Other Companies are liable for, among other things, SMCO's obligations under the Non-Qualified Plan under alter-ego or agency principles, they also should be parties to the arbitration.

Recognizing the need for discovery both on whether the Related Other

Companies are subject to the arbitration provision of the Non-Qualified Plan and on Mrs. Ostensen's counterclaims, which are inextricably related to SMCO's claims against her, at the March 3, 2005 settlement conference the Court set a schedule for Mrs. Ostensen to have discovery related to her claims and defenses, including, in particular, to show that the Related Other Companies knew about, and are liable for SMCO's obligations under, the Non-Qualified Plan. Pursuant to that schedule, Mrs. Ostensen has served discovery demands on SMCO and the Related Other Companies, as well as subpoenas to third parties.

One of the issues brought up by the court at the March 3, 2005 settlement conference was the location of depositions. (Lundin Decl. ¶ 9.) Counsel for SMCO and the Related Other Companies stated that many of the witnesses lived in Norway, and that their depositions should be conducted there. (*Id.*) However, recognizing the financial burden that would impose on Mrs. Ostensen, the Court ordered that depositions of all party-affiliated witnesses would take place in Connecticut. (*Id.*)

## SMCO and the Related Other Companies Have Stonewalled Discovery

SMCO and the Related Other Companies have stonewalled discovery. Mrs. Ostensen served subpoenas on counsel for SMCO and the Related Other Companies; they moved to quash them. (*See* Docket Nos. 88 – 89, Lundin Dismissal Decl. Ex. 4.) Mrs. Ostensen sought discovery regarding all of the parties' claims and defenses in this action; they moved to limit discovery to one issue, (*see id.* Docket Nos. 97 – 98), and refused to provide full discovery even on that issue, forcing Mrs. Ostensen to move to compel responses to her discovery demands, (*see id.* Docket Nos. 110 – 111).[3] Mrs. Ostensen sought jurisdictional discovery from SMCO A.S. in

---

[3] Two of the issues Mrs. Ostensen raised in her Motion to Compel are the issues raised by the Related Other Companies here: the refusal of the Related Other Companies to produce party-affiliated witnesses for deposition in the United States and SMCO A.S.'s refusal to provide discovery. The parties have agreed that those issues will be decided in connection with this motion. For that reason, those issues are withdrawn from Mrs. Ostensen's pending

response to its motion to dismiss; they have moved to stay such discovery, depriving Mrs.

Ostensen of the facts necessary conclusively to establish the Court's jurisdiction over SMCO

A.S. (*Id.* Docket Nos. 131 – 33.) And finally, notwithstanding clear direction from the Court to

the contrary, they have refused to produce party-affiliated witnesses in Connecticut for

deposition. (*Id.*)[4]

## Argument

## I.    SMCO AND THE RELATED OTHER COMPANIES SHOULD BE ORDERED TO OBEY THE COURT'S PRIOR ORDER REGARDING THE LOCATION OF THE DEPOSITIONS OF PARTY-AFFILIATED WITNESSES

### A.    The Court Should Not Consider the Related Other Companies' Untimely Motion.

The Court should not consider the Related Other Companies' request to change

the location of the depositions of party-affiliated witnesses to Norway because it is nothing more

than an attempt to avoid the Related Other Companies' failure timely to move for

reconsideration of the Court's March 3, 2005 order that those depositions were to be held in

Connecticut.

The Related Other Companies do not deny that at the March 3, 2005 mediation,

the Court stated that depositions of party-affiliated witnesses located outside the United States

would be held in Connecticut. Rather, they claim with lawyerly circumlocution that the Court

"did not make any ruling as to the location of the depositions to be noticed in the future, as no

motion was pending, no briefs were submitted and there was no oral argument." (Related Other

Companies' Memo. Of Law in Sup. Of Mot. for Prot. Order ("Moving Brief") at 1.) Of course,

the Related Other Companies do not explain why the Court's orders have no effect unless they

---

Motion to Compel.
[4] SCUAA has agreed to produce its witness for deposition in New York City. Thus, the only issue for decision here is the location of the depositions of party-affiliated witnesses from NHC and SMCO A.S.

are preceded by a formal motion, briefs and argument.  And of course, they cannot, because that is not the law.

Under Local Civil Rule 7(c), a motion for reconsideration must be served and filed within ten days of the issuance of the order.  If the Related Other Companies felt that they were prejudiced by the lack of briefing, they could have moved for reconsideration of the Court's order.  However, they chose not to do so.  Belatedly, they have realized that they can gain a tactical advantage over Mrs. Ostensen by imposing on her the costs of conducting depositions overseas and for that reason now attempt to seek reconsideration of the Court's decision under the guise of a motion for protective order.  However, the Related Other Companies' motion for protective order was not filed until August 2, 2005, almost five months after the Court issued its order regarding the location of depositions.  Even if the Related Other Companies' motion had merit—which it does not—it should be denied as untimely. *See, e.g.*, *Chambers v. Principi*, No. 00 CV 656 (SRU), 2004 WL 722249, at *1 (D. Conn. March 24, 2004) (denying as untimely a motion for reconsideration of an oral ruling that was not made within ten days of that ruling).

### B.     The Court Properly Ruled That Depositions of Party-Affiliated Witnesses Should Take Place in Connecticut.

Even if the Court were to reconsider its prior order regarding the location of depositions of party-affiliated witnesses—which it should not—it should continue to adhere to it.

It is part of the Court's inherent power to manage discovery to set the location of party depositions. *See Sugarhill Records Ltd. v. Motown Records Corp.*, 105 F.R.D. 166, 171 (S.D.N.Y. 1985) ("The location of the deposition is in" the Court's "discretion.").  The Related Other Companies cite a handful of cases—some over half a century old and none less than fifteen years old—for the proposition that defendants must be deposed where they reside and that

10

Court did not have the authority to order depositions to be taken in Connecticut rather than Norway. That is not the law.

There are decisions referring to a presumption that defendants shall be deposed where they reside. *See, e.g., Sugarhill Records*, 105 F.R.D. at 171; *Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 550 (S.D.N.Y. 1989). However, the modern cases make clear that this "presumption appears to be merely a decision rule that facilitates determination when other relevant factors do not favor one side or the other." *Mill-Run Tours*, 124 F.R.D. at 550. Further, because this presumption is based on the "concept that it is plaintiffs who bring the lawsuit and who decide the first choice as to the forum," while "defendants . . . are not before the court by choice," "the presumption is weakest" where, as here, "this factual premise is attenuated." *Id.*

Any presumption in favor of deposing defendants where they reside does not apply here. It was the Related Other Companies' affiliate, SMCO, that initiated this action and that chose this forum. The Related Other Companies are in this action **only** because of their relationship to SMCO, including that SMCO A.S. and NHC—the parties seeking to avoid discovery here—dominated SMCO and caused it to refuse to honor its obligations to the Ostensens. Having caused the events that gave rise to Mrs. Ostensen's counterclaims in the forum SMCO chose, the Related Other Companies have little ground to complain that they now are being asked to participate in discovery here.

The factors the Court should—and clearly did—consider in deciding the location of party depositions are cost, convenience and litigation efficiency. *Id.* at 551; *see also Fed. Deposit Ins. Co. v. La Antillana. S.A.*, No. 88 Civ. 2670 (JFK), 1990 WL 155727, at *3-4 (Oct. 5, 1990 S.D.N.Y.) (adopting the *Mill-Run* Tours factors and relied upon by the Related Other Companies); *Sugarhill Records*, 105 F.R.D. at 171 ("Corporate defendants are frequently

deposed in places other than the location of the principal place of business, especially in the forum, for the convenience of all parties and in the general interests of judicial economy"). All of those factors argue for conducting the depositions of all party-affiliated witnesses in Connecticut.

**First**, the Related Other Companies, which are all related to a large international insurance business, clearly are better positioned to bear the cost of sending party-affiliated witnesses to Connecticut than Mrs. Ostensen is to pay counsel to travel to Norway to conduct depositions. Indeed, NHC alone has net assets of over $250 million. (NHC 2004 Annual Report at 18 (http://www.norclub.no/Archive/Internet/AnnualReport/AnnualReport2004.pdf).) In fact, the best evidence that the Related Other Companies oppose depositions in Connecticut for tactical reasons only is that it likely will cost the Related Other Companies **more** to conduct depositions in Norway than it will cost to conduct the depositions in New York or Connecticut. Not only would Mrs. Ostensen have to bear the cost of sending counsel to Norway, the Related Other Companies themselves would have to bear the cost of sending one of more of their New York lawyers to Norway each time one of their witnesses was deposed, both to prepare the witness and to defend him or her.

**Second**, conducting depositions in Connecticut (or New York, where lead counsel for each of the parties is located) would be vastly more convenient for counsel. Lead counsel for the parties are both located in New York City—indeed, their offices are only a few blocks apart—yet the Related Other Companies claim to want to have counsel travel to another continent to conduct depositions. This is a particular concern for Mrs. Ostensen's counsel, because unlike the large firm which represents the Related Other Companies, Mrs. Ostensen's counsel does not have dozens of lawyers who could conduct the depositions at issue here.

Further, it obviously is not that difficult for Messrs. Wiik and Blom to travel to the United States; they both did so for the one-day mediation session in March of this year.

**Third**, litigation efficiency clearly would be enhanced by conducting depositions in the United States. Documents have been produced here and counsel and their files are located here. Further, given the number of discovery disputes that already have slowed discovery to a crawl, there are certain to be disputes at depositions which will require resolution by the Court— resolution that will be difficult or impossible to obtain when the depositions are being conducted thousands of miles, and six hours time difference, away.

### C.   If SMCO A.S. Wants Mr. Aaslestad's Deposition to Take Place in Norway for His Convenience, it Should Bear the Cost of the Accommodation it Seeks.

According to SMCO A.S.'s counsel, SMCO A.S.'s Chairman, Torleiv Aaslestad, has a medical condition which prevents him from traveling from Norway to the United States. (Moving Brief at 3.) Assuming that this is true (we have not been provided with an affidavit from Mr. Aaslestad or his physician explaining his inability to travel), this does not lead where the Related Other Companies seek to go. If the Related Other Companies want an accommodation made for a witness's convenience, they should pay for it, rather than seek to impose the cost of their convenience on Mrs. Ostensen. If it truly is impossible for Mr. Aaslestad to travel, Mrs. Ostensen is prepared to depose him by videoconference or telephone during business hours in New York at the Related Other Companies' expense.[5] If the Related Other Companies believe that it is important that the deposition take place in person, they should be prepared to pay all of Mrs. Ostensen's counsel's travel expenses.

---

[5] Mrs. Ostensen is prepared to propose conducting Mr. Aaslestad's deposition by videoconference or telephone as an accommodation to his claimed health needs. Based on counsel's past experience with such depositions, they are significantly inferior to depositions conducted in person and Mrs. Ostensen's offer to conduct this one deposition by telephone or videoconference as an accommodation to a witness's health needs should not be taken as an offer substantially to prejudice her rights by taking all foreign depositions by telephone or videoconference, even if the

13

**D.    Mrs. Ostensen Has Not Claimed that Non-Party Witnesses are Obliged to Appear for Deposition in Connecticut.**

Having no basis in law for the disputed issues that they have raised, the Related Other Companies have decided also to raise an issue that is not in dispute in support of their argument that foreign party depositions should be conducted in Norway. As is obvious from the fact that their depositions were noticed rather than made the subject of Rule 45 subpoenas, Mrs. Ostensen was under the impression that Arne Selvik and Jan Lunde continued to be associated with the Related Other Companies. We are now informed that they are not. Thus, the Court's ruling regarding the location of party-affiliated witnesses does not apply to those witnesses and, if they are to be deposed at all, Mrs. Ostensen must serve them with Rule 45 subpoenas and make arrangements with **their** counsel regarding the location of depositions. Thus, the Selvik and Lunde depositions have nothing to do with the location of the depositions of party-affiliated witnesses.

**II.    SMCO A.S. SHOULD NOT BE EXCUSED FROM PROVIDING DISCOVERY**

SMCO A.S.'s refusal to provide discovery has everything to do with hiding the truth of its misconduct toward the Ostensens, and nothing to do with this Court's jurisdiction over it. Notwithstanding that it was SMCO's corporate parent—indeed, its board of directors served as SMCO's board of directors for much of the relevant time period—SMCO A.S. refused to respond to any of Mrs. Ostensen's discovery demands even before it moved to dismiss. SMCO A.S. should not be allowed to evade its discovery obligations.

**A.    SMCO A.S. Waived Its Objections by Failing to Submit Any.**

The Court does not even have to reach the merits of SMCO A.S.'s motion because it is untimely. SMCO A.S. did not make this motion until almost three months after it

---

Related Other Companies agree to bear all the considerable costs of such depositions.

was served with discovery demands by Mrs. Ostensen, and over two months after Mrs.

Ostensen's counsel made it clear to SMCO A.S. counsel that Mrs. Ostensen expected SMCO

A.S. to participate in this action, as the parties' agreement provided. SMCO A.S. waived its

objections to Mrs. Ostensen's discovery demands by failing timely to object to them or to move

for a protective order. *See* Fed. R. Civ. P. 33(b)(4), 34(b). Further, because SMCO A.S. has not

submitted a privilege log, it has waived all privilege claims. *See Ruran v. Beth El Temple of*

*West Hartford*, 226 F.R.D. 165, 169 (D. Conn. 2005) (the failure to produce a privilege log

waives all privilege claims).

### B. SMCO A.S. Is Subject to the Jurisdiction of This Court.

Even if the Court were to consider SMCO A.S.'s motion for a protective order, it

should be denied because SMCO A.S. plainly is subject to the personal jurisdiction of the Court

and has presented no reason why it should be exempt from discovery. **First**, there is no dispute

regarding the fact that SMCO A.S. was not dismissed from this action. No stipulation of

dismissal was ever signed by the parties, much less submitted to the Court. Thus, SMCO A.S. is

a party and must provide discovery.

**Second**, even by the standard SMCO A.S. sets for itself, Mrs. Ostensen is entitled

to discovery from SMCO A.S. because Mrs. Ostensen unquestionably has established a *prima*

facie showing that SMCO A.S. is subject to the personal jurisdiction of this Court. Mrs.

Ostensen has attached for the Court's convenience her papers submitted in opposition to SMCO

A.S.'s motion to dismiss and adopts and incorporates them by reference herein. (Lundin

Decl. Exs. 1 – 2.) They show:

SMCO A.S. is subject to personal jurisdiction under Conn. Gen. Stat. § 33-929

because Mrs. Ostensen's claims against it are based on contracts made and performed in

Connecticut, Conn. Gen. Stat. § 33-929(f)(1), and "tortuous conduct in this state," Conn. Gen.

Stat. § 33-929(f)(4). Further, SMCO A.S. is subject to jurisdiction under the Due Process Clause

because it has sufficient "minimum contacts" with Connecticut because it "purposefully

directed" its "activities at residents of Connecticut and the litigation has resulted from . . .

injuries that arise out of or relate to those activities," *Mallon v. Walt Disney World Co.*, 42

F. Supp. 2d 143, 145 (D. Conn. 1998), because all of the conduct discussed below relates to

SMCO's involvement in the management of SMCO, including causing SMCO to breach its

contractual obligations to the Ostensens, and SMCO A.S.'s tortious conduct toward the

Ostensens. For the same reason, it would be consistent with "fair play and substantial justice" to

subject SMCO A.S. to the jurisdiction of this Court. *Id.*

      SMCO A.S. is subject to jurisdiction under Conn. Gen. Stat. § 33-929(f)(1)

because it was a party to contracts made and performed in Connecticut that are related to Mrs.

Ostensen's claims in this action. Indeed, SMCO A.S. attached one such contract to the papers it

submitted in support of its motion to dismiss—the agreement under which it provided

management services to SMCO. (Lundin Dismissal Decl. Exs. 9 – 10.) Further, SMCO A.S.

was a party to agreements with SMCO and Fleet Bank regarding the provision of a line of credit

to SMCO in Connecticut. (Lundin Dismissal Decl. Exs. 13 – 20.) Finally, SMCO A.S. loaned

SMCO money in Connecticut. (Lundin Dismissal Decl. Ex. 12.) Each of those actions, which

required performance by SMCO in Connecticut, is sufficient to subject SMCO A.S. to the

jurisdiction of this Court. *See, e.g.*, *Combustion Eng'g, Inc. v. NEI Int'l* Combustion, 798

F. Supp. 100, 104 (D. Conn. 1992) (it is sufficient to confer jurisdiction under Connecticut's

long arm statute that the plaintiff had to perform a contract to which the defendant was party in

Connecticut); *Bowman v. Grolsche Bierbrouwerij B.V.*, 474 F. Supp. 725, 732 (D. Conn. 1979)

16

(same).

SMCO A.S. also engaged in tortious conduct in Connecticut that is the subject of Mrs. Ostensen's claims in this action. SMCO A.S. made false statements to the Ostensen's regarding the benefits they would receive under the Qualified and Un-Qualified Plans in order to induce Mr. Ostensen to merge his company, Marine Defense Group, with SMCO and to continue his employment with SMCO. (Counterclaim, Lundin Dismissal Decl. Ex. 3 ¶¶ 8-16, 42, 46.) Further, SMCO A.S. tortiously interfered with the Ostensen's rights under the Qualified and Un-Qualified Plans, as well as interfering with Mr. Ostensen's right to receive wages and vacation pay, by causing SMCO to refuse to fulfill its obligations to the Ostensens. (*Id.* ¶¶ 39, 63, 86-88.) The location of this conduct is Connecticut, where SMCO employed Mr. Ostensen, and where SMCO and the Ostensen's both were located when SMCO breached its obligations to them. *See, e.g., Eutectic Corp. v. Curtis Noll Corp.*, 342 F. Supp. 761, 764 (D. Conn. 1972).

## Conclusion

For the reasons set forth above, Mrs. Ostensen respectfully requests that the Court deny the Related Other Companies' motion for protective order and instead compel their immediate response to Mrs. Ostensen's discovery demands to SMCO A.S. and compliance with the Court's prior order regarding the location of depositions of party-affiliated witnesses.

Dated: New York, New York
      August 22, 2005

Jeffrey M. Eilender (Bar. No. CT 25177)
John M. Lundin (Bar No. phv0185)
**SCHLAM STONE & DOLAN**, LLP
26 Broadway, Suite 1900
New York, NY 10004
(212) 344-5400 (Telephone)
(212) 344-7677 (Facsimile)
*Attorneys for Siri Ostensen*

Sharon E. Jaffe (Bar. No. CT. 04623)
**LEVIN & GLASSER, PC**
P.O. Box 1098
Weston, CT 06883
(203) 221-3008 (Telephone)
(203)221-3010 (Facsimile)
*Attorneys for Siri Ostensen*

18