# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SCANDINAVIAN MARINE CLAIMS OFFICE, INC.,<br><br>                                                  *Plaintiff*,<br><br>- *against* -<br><br>SIRI OSTENSEN,<br><br>                                                  *Defendant*,<br><br>- *against* -<br><br>SCANDINAVIAN MARINE CLAIMS OFFICE, INC., SCANDINAVIAN UNDERWRITERS AGENCY, SCUA AMERICAS, INC., S.M.C.O., A.S., AND NORWEGIAN HULL CLUB,<br><br>     *Counterclaim and Third-Party Defendants.* | Civil Action No. 3:02CV678 (RNC) (DFM)<br><br>August 15, 2005 |

**MEMORANDUM OF LAW IN OPPOSITION TO SMCO A.S.'S MOTION TO DISMISS**

Jeffrey M. Eilender (Bar. No. CT 25177)
John M. Lundin (Bar No. phv0185)
**SCHLAM STONE & DOLAN**, LLP
26 Broadway, Suite 1900
New York, NY 10004
(212) 344-5400 (Telephone)
(212) 344-7677 (Facsimile)
*Attorneys for Siri Ostensen*

Sharon E. Jaffe (Bar. No. CT. 04623)
**LEVIN & GLASSER, PC**
P.O. Box 1098
Weston, CT 06883
(203) 221-3008 (Telephone)
(203)221-3010 (Facsimile)
*Attorneys for Siri Ostensen*

## TABLE OF CONTENTS

Table of Authorities ................................................................................................................. ii

Preliminary Statement ............................................................................................................. 1

Factual and Procedural Background ....................................................................................... 2

Argument ................................................................................................................................. 9

I.     LEGAL FRAMEWORK ............................................................................................... 9

      A.     The Court Must Construe All Submissions in the Light Most Favorable to Mrs. Ostensen in Deciding Whether She Has Made a Prima Facie Showing that the Court has Personal Jurisdiction Over SMCO A.S. ........................................... 9

      B.     Jurisdiction Under the Connecticut Long-Arm Statute and the Due Process Clause ......................................................................................................................... 10

II.    SMCO A.S. ENTERED INTO CONTRACTS TO BE PERFORMED IN CONNECTICUT ............................................................................................................. 11

III.   SMCO A.S. ENGAGED IN TORTIOUS CONDUCT IN CONNECTICUT ................ 11

IV.   SMCO A.S.'S "VEIL PIERCING" ARGUMENT IGNORES MRS. OSTENSEN'S ALLEGATIONS ..................................................................................... 12

V.    SMCO A.S.'S ATTEMPT TO APPLY NORWEGIAN LAW TO THIS DISPUTE IS A RED HERRING ..................................................................................................... 12

Conclusion .............................................................................................................................. 13

# TABLE OF AUTHORITIES

## CASES

*Bowman v. Grolsche Bierbrouwerij B.V.*,
    474 F. Supp. 725 (D. Conn. 1979) ................................................................................ 11

*Combustion Engineering, Inc. v. NEI International Combustion*,
    798 F. Supp. 100 (D. Conn. 1992) ................................................................................ 11

*DiStefano v. Carozzi North American, Inc.*,
    286 F.3d 81 (2d Cir. 2001) ..................................................................................... 9, 10

*Eutectic Corp. v. Curtis Noll Corp.*,
    342 F. Supp. 761 (D. Conn. 1972) ................................................................................ 12

*Fletcher v. Atex, Inc.*,
    68 F.3d 1451 (2d Cir. 1995) ........................................................................................ 12

*Gerber Trade Finance, Inc. v. Davis, Sita & Co., P.A.*,
    128 F. Supp. 2d 86 (D. Conn. 2001) ........................................................................ 9, 10

*In re Carterhouse, Inc.*,
    94 B.R. 271 (Bankr. D. Conn. 1988) ............................................................................ 12

*Mallon v. Walt Disney World Co.*,
    42 F. Supp. 2d 143 (D. Conn. 1998) ............................................................................ 10

## STATUTES RULES

Connecticut General Statutes § 33-929 ............................................................................ 10, 11

Federal Rule of Civil Procedure 12 ...................................................................................... 1

Defendant Siri Ostensen ("Mrs. Ostensen"), in her individual capacity and as the executrix of the estate of her husband, Tom Ostensen, by her undersigned counsel, submits this memorandum of law, along with the Declaration of John M. Lundin ("Lundin Decl."), and the exhibits attached thereto, in opposition to the motion by Third-Party Defendant SMCO A.S. to dismiss the claims against it for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

## Preliminary Statement

Plaintiff/Third-Party Defendant Scandinavian Marine Claims Office, Inc. ("SMCO") sued Mrs. Ostensen, claiming that she owes it money due under promissory notes (the "Notes") signed by Mrs. Ostensen and her late husband, Tom Ostensen. However, because SMCO and the its affiliates, Third-Party Defendants SCUA Americas, Inc. ("SCUAA"), SMCO A.S., and Norwegian Hull Club ("NHC") (collectively, and without SMCO, the "Related Other Companies") owe Mrs. Ostensen a much greater debt, Mrs. Ostensen asserted claims against them. Now, Third-Party Defendant SMCO A.S. seeks to be dismissed from this action, claiming that this Court does not have personal jurisdiction over it.

SMCO A.S.'s motion must be denied because it is based on a misconception of the law. SMCO A.S. takes the position that a bare denial of Mrs. Ostensen's jurisdictional allegations is sufficient to support its motion to dismiss. However, this is not the law.

Because SMCO A.S. has refused to provide any of the discovery Mrs. Ostensen has sought from it, including the jurisdictional discovery she has sought, the Court must look to Mrs. Ostensen's pleadings and supporting declarations and submissions—taking them as true— to determine whether Mrs. Ostensen has made a *prima facie* showing of jurisdiction. SMCO A.S. has not even attempted to show that Mrs. Ostensen has not met this burden, and it cannot. Mrs. Ostensen has alleged that SMCO A.S. engaged in tortuous conduct directed toward the

Ostensens in Connecticut and that it so dominated and controlled SMCO that—for its own benefit and without regard to SMCO's legal obligations—it caused SMCO to renege on its contractual obligations to the Ostensens.

Even more, the limited discovery Mrs. Ostensen has so far been able to obtain contains incontrovertible evidence of SMCO A.S.'s contacts with Connecticut, contacts much more than sufficient to warrant this Court's assertion of personal jurisdiction over it. SMCO A.S. entered into a contract to provide management services to SMCO—which had its principal place of business in Connecticut—for which SMCO paid SMCO A.S. SMCO A.S. also entered into other financial transactions with SMCO. It appears to have made loans to SMCO; loans that it insisted be repaid even as it directed SMCO to renege on its obligations to provide the Ostensens pension benefits and to pay all of Mr. Ostensen's salary and benefits. In addition, it entered into contracts with Fleet Bank and SMCO in Connecticut in connection with a credit facility issued to SMCO by Fleet Bank.

### Factual and Procedural Background

**The Agreement to Dismiss SMCO A.S.**

SMCO A.S. owned Plaintiff SMCO. (Plaintiff Scandinavian Marine Claims Office, Inc.'s Response to Defendant Siri Ostensen's First Interrogatories, Response No. 1, Lundin Decl. Ex. 1.) However, in certain NHC and SMCO A.S. documents, SMCO A.S. is referred to as SCUA. (*See, e.g.*, SMCO A.S. Board Meeting Minutes dated September 9, 1999 at 1, Lundin Decl. Ex. 2 ("SCUA should be adopted as a global brand name for all offices of the holding company.").) Mrs. Ostensen asserted counterclaims against both SMCO A.S. and SCUA. (Counterclaim, Lundin Decl. Ex. 3.) SMCO A.S. was duly served, (Mem. Of Law in Sup. of SMCO A.S.'s Mot. to Dismiss ("SMCO A.S. Brief") at 3), and counsel for SMCO A.S.

2

appeared in this action. (Docket Entry Nos. 46-47, Lundin Decl. Ex. 4.)

In August 2003, the parties agreed that Mrs. Ostensen would dismiss the entity denominated SMCO A.S. **without** prejudice, provided that Mrs. Ostensen reserved the right later to "add SMCO AS as a party *nunc pro tunc*." (Joint Status Report dated August 1, 2003 ¶ 7, Lundin Decl. Ex. 5 (emphasis added).) The dismissal was not filed; SCUA never appeared in this action. Notwithstanding, relying on the parties' 2003 agreement, SMCO counsel informed Mrs. Ostensen's counsel that neither SCUA nor SMCO A.S. would not provide discovery in this action. It was Mrs. Ostensen's insistence that SMCO's corporate parent, however denominated, participate in this action that led SMCO A.S. to move to be dismissed from this action approximately two years after having been served.

**SMCO A.S.'s Misconduct**

Mr. Ostensen (and Mrs. Ostensen, as his widow) were entitled to benefits under a non-qualified pension plan for senior executives of SMCO (the "Non-Qualified Plan"), as well as a qualified pension plan (the "Qualified Plan"). (Counterclaim ¶¶ 8-16, Lundin Decl. Ex. 3.) Mr. Ostensen continued his employment with SMCO, and did not take advantage of other employment and investment opportunities, in reliance on promises regarding the benefits he and Mrs. Ostensen would receive under those plans made to him by both the directors of SMCO and officers and the directors of SMCO A.S and NHC. (*Id.* ¶¶ 42, 46.)

NHC and SMCO A.S., which dominated SMCO, forced SMCO to renege on its promises to the Ostensens regarding the Non-Qualified Plan. (*Id.* ¶¶ 39, 63, 86-88.) Indeed, discovery has already showed that in 2001, SMCO, A.S. decided to: (1) close SMCO's headquarters, firing SMCO management; (2) form a new company, SCUA Americas, Inc., to take over the business of SMCO's Houston and Miami offices; and (3) sell SMCO's subsidiary,

3

SMQI, Inc. (Minutes of the SMCO AS Board Meeting, dated May 23, 2000, Lundin Decl. Ex. 6; Counterclaim, Lundin Decl. Ex. 3 ¶¶ 23-27.) Further, on June 21, 2001, the SMCO A.S. Board recommended "to the ultimate shareholders that they provide the capital necessary to liquidate" SMCO "based on **full payment** of **all** obligations **except** balances with **Mr. Ostensen**." (SMCO A.S. Board Meeting Minutes dated June 21, 2001 at 3, Lundin Decl. Ex. 7 (emphasis added).)

Further, even though SMCO made provisions to fund its obligations under the Non-Qualified Plan through "mortgage notes receivable from related parties . . . and certain life insurance policies," (SMCO Financial Statements December 31, 1997 at SM001380, Lundin Decl. Ex. 8), SMCO A.S. instead directed SMCO management to liquidate those assets and use them to pay other obligations—as directed by SMCO A.S.—but not SMCO's obligations to the Ostensens (SMCO A.S. Board Meeting Minutes dated June 21, 2001, Lundin Decl. Ex. 7 at 3; Counterclaim, Lundin Decl. Ex. 3 ¶¶ 18-22).

**Mrs. Ostensen's Claims Against SMCO A.S.**

Mrs. Ostensen, in her individual capacity and as the executrix of the estate of her husband, Tom Ostensen, asserted counterclaims against SMCO A.S. for detrimental reliance, (Counterclaim, Lundin Decl. Ex. 3 ¶ 42), fraud, (*id.* ¶ 46), fraudulent transfer, (*id.* ¶ 56), tortious interference with contract, (*id.* ¶ 62), withheld wages, (*id.* ¶ 72), and intentional infliction of emotional distress, (*id.* ¶ 76). Further, the Counterclaim alleges that SMCO A.S. is liable for SMCO's misconduct, including its breach of its contract to provide benefits to the Ostensen's under the Qualified and Unqualified Plans because SMCO A.S. and NHC so dominated and controlled SMCO that it was acting as a mere instrumentality of SMCO A.S. and NHC when it breached its obligations to the Ostensens. (*Id.* ¶ 86.)

**SMCO A.S.'s Contacts With Connecticut**

-- **Contracts Performed in Connecticut**

In April 1997, SMCO and SMCO A.S. signed a "Management Agreement" pursuant to which SMCO, A.S. provided SMCO "Managerial support, consulting services and maintain[ed] board-to-board relationship to SMCO." (Management Agreement, Lundin Decl. Ex. 9.) The agreement provided that:

> SMCO A.S. is, under this agreement, obliged to render managerial support, consulting services, and maintain board-to-board relationship to SMCO Inc. SMCO A.S. shall charge an annual management fee for those services, based on the time and type of services delivered.
>
> SMCO Inc. shall keep SMCO A.S. management and board regularly informed of its plans and activities, and shall bring all major policy issues to the attention of the board secretariat.

(*Id.*) SMCO A.S. charged SMCO for the "managerial" and "consulting" services SMCO A.S. provided to SMCO. (*See, e.g.*, Letter from Haakon Lund, GSK, to Tom Ostensen, President of SMCO (December 31, 1997), Lundin Dec. Ex. 10 (reflecting a bill to SMCO of NOK 350,000 for SMCO A.S.'s "management fee", payments of NOK 200,000 and a balance due of NOK 150,000).)

It is pursuant to that agreement that SMCO A.S. took control of the management of SMCO, dominating it and making decisions and transferring assets for the benefit of SMCO A.S. and its owners, including NHC, rather than SMCO, and ignoring SMCO's obligations to the Ostensens. For example, Mrs. Ostensen has alleged, and the limited discovery she has obtained shows, that SMCO A.S. dominated SMCO and that when SMCO made decisions regarding the disposition of its assets—rendering it unable to pay its obligations to the Ostensen's under the Non-Qualified Plan—or decisions regarding the payments of its obligations to Mr. Ostensen—

5

such as those under the Non-Qualified and Qualified Plans or wages and vacation pay due to Mr. Ostensen—SMCO was acting as a mere instrumentality of SMCO A.S. (SMCO A.S. Board Meeting Minutes dated June 21, 2001 at 3, Lundin Decl. Ex. 7.) Indeed, from 1997 until 2000, SMCO A.S.'s board of directors acted as the board of directors of SMCO as well. (SMCO AS Board Meeting – Bergen, 2 April 1997 at 1, Lundin Decl. Ex. 11 ("The SMCO AS Board was elected under an extraordinary general meeting Friday, 14 February 1997 and is also to be elected in those companies who have hereto had their own boards.").) Mrs. Ostensen believes that discovery will show that SMCO A.S. required SMCO to provide NHC and its other shareholders with services at rates that were too low to allow SMCO consistently to earn a profit. (Lundin Decl. ¶ 6.) Further, its will show that NHC and SMCO A.S., which dominated SMCO, forced SMCO to renege on its promises to the Ostensens regarding the Non-Qualified Plan. (Counterclaim, Lundin Decl. Ex. 3 ¶¶ 39, 63, 86-88.)

In addition, SMCO A.S. made loans to SMCO—loans that, upon information and belief, SMCO A.S. insisted that SMCO repay rather than pay its obligations to the Ostensens. For example, at SMCO A.S.'s November 20, 1997 Board meeting minutes note that "it was agreed that TO should reevaluate the liquidity position of SMCO Inc. with respect to the outstanding loan from SMCO AS. If possible repayment should begin earlier than originally planned." (SMCO A.S. Board Meeting Minutes of November 20, 1997 at SM000588 – SM000589, Lundin Decl. Ex. 12.)

-- **Financial Transactions**

Not only did SMCO A.S. enter into contracts with SMCO which were preformed in Connecticut, it also entered in to contracts with financial institutions in Connecticut, which were preformed in Connecticut, to which SMCO was a third-party beneficiary. On December

6

21, 1993, SMCO A.S. issued a "Letter of Comfort" to Fleet Bank. (Letter from Jon Heimset of Wikborg, Rein & Co. to Tom Ostensen of SMCO (December 22, 1993), Lundin Decl. Ex. 13.) In the Letter of Comfort with respect to Fleet Bank's credit facility to SMCO, SMCO A.S. informed Fleet Bank:

> We do not intend to sell, subject to any lien or otherwise dispose of any of our interest in the Company, but should any change in such respect be contemplated we will give you notice thereof in sufficient time to enable you to make adequate alternative arrangements in respect to the Facility, and
>
> All claims which we may have against the Company shall be subordinated in all respects to any claims which Fleet Bank, N.A. may have against the Company.
>
> We have issued this letter as an inducement to you to extend the aforementioned Facility to USD 800,000, and we have full power and corporate and legal authority under Norwegian law to issue this letter.

(*Id.*) The Fleet Bank credit facility was contingent upon SMCO A.S. issuing the letter of comfort. (Letter Agreement (November 12, 1993) at SM000836, Ex. 14.)

On September 21, 1994, Fleet Bank issued SMCO an $800,000 credit facility. (Letter Agreement (September 21, 1994), Ex. 15.) The credit facility once again was issued "subject to" a Letter of Comfort" from SMCO A.S. (*Id.* at SM000974.) On February 6, 1995, SMCO A.S. issued a "Letter of Comfort" to Fleet Bank. (Letter from John Wiik of SMCO A.S. to Robert Jones of SMCO (February 7, 1995), Ex. 16.) In the Letter of Comfort with respect to Fleet Bank's credit facility to SMCO, SMCO A.S. again informed Fleet Bank:

> We do not intend to sell, subject to any lien or otherwise dispose of any of our interest in the Company, but should any change in such respect be contemplated we will give you notice thereof in sufficient time to enable you to make adequate alternative arrangements in respect to the Facility, and
>
> All claims which we may have against the Company shall be subordinated in all respects to any claims which Fleet Bank, N.A.

7

> may have against the Company.
>
> We have issued this letter as an inducement to you to extend the aforementioned Facility to USD 800,000, and we have full power and corporate and legal authority under Norwegian law to issue this letter.

(*Id.* at SM000971.)

On April 19, 1995, Fleet Bank asked SMCO for a new letter for comfort from SMCO A.S. (Letter from Cassandra Polhemus of Fleet Bank to Robert Jones of SMCO (April 16, 1995), Lundin Decl. Ex. 17.) On April 25, 1995, Fleet Bank issued a line of credit to SMCO, SMCO Services and SMQI. (Letter Agreement (April 25, 1995), Lundin Decl. Ex. 18.) The line of credit noted that SMCO A.S. "agrees to provide a Letter of Comfort to include all Co-Borrowers." (*Id.* at SM000920.) On July 3, 1995, SMCO A.S. issued a "Letter of Comfort" to Fleet Bank. (Letter from John Wiik of SMCO A.S. to Robert Jones of SMCO (July 3, 1995), Lundin Decl. Ex. 19.) In the Letter of Comfort with respect to Fleet Bank's credit facility to SMCO, SMCO A.S. once again informed Fleet Bank:

> We do not intend to sell, subject to any lien or otherwise dispose of any of our interest in the Company, but should any change in such respect be contemplated we will give you notice thereof in sufficient time to enable you to make adequate alternative arrangements in respect to the Facility, and
>
> All claims which we may have against the Company shall be subordinated in all respects to any claims which Fleet Bank, N.A. may have against the Company.
>
> We have issued this letter as an inducement to you to extend the aforementioned Facility to USD 800,000, and we have full power and corporate and legal authority under Norwegian law to issue this letter.

(*Id.* at SM000812.)

Yet again, on April 30, 1998, Fleet Bank issued a line of credit to SMCO, SMCO Services and SMQI. (Letter Agreement (April 30, 1998), Ex. 20.) The line of credit noted that

8

SMCO A.S. "agrees to provide a Letter of Comfort to include all Co-Borrowers." (*Id.* at SM001029.)

**SMCO A.S. Refuses to Provide Discovery**

Mrs. Ostensen has served three document demands upon SMCO A.S. (*See* Defendant's First Request for Documents to Plaintiff and Third-Party Defendants, Lundin Decl. Ex. 21; Defendant's Second Request for Documents to Plaintiff and Third-Party Defendants, Lundin Decl. Ex. 22; Defendant's Third Request for Documents to Plaintiff and Third-Party Defendants (the "Third Request"), Lundin Decl. Ex. 23.) SMCO A.S. has refused to respond to those demands.[1] Indeed, SMCO and the Related Other Companies have **all** ignored the Third Request, which sought discovery related specifically to the issue of whether the Court has personal jurisdiction over SMCO A.S.

## Argument

**I.    LEGAL FRAMEWORK**

    **A.    The Court Must Construe All Submissions in the Light Most Favorable to Mrs. Ostensen in Deciding Whether She Has Made a *Prima Facie* Showing that the Court has Personal Jurisdiction Over SMCO A.S.**

SMCO A.S. has refused to provide any discovery in this action, including jurisdictional discovery. For that reason, in determining SMCO A.S.'s motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the Court must construe Mrs. Ostensen's pleadings, declarations and supporting materials "in the light most favorable to" her, "and with all doubts resolved in" her "favor." *Gerber Trade Fin., Inc. v. Davis, Sita & Co., P.A.*, 128 F. Supp. 2d 86, 89 (D. Conn. 2001); *see also DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (holding that when a court must "rel[y] on pleadings and affidavits, . . . the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction

9

over the defendant" and that the court must "construe the pleadings and affidavits in the light most favorable to" the plaintiff, resolving all doubts in" her "favor."); *Mallon v. Walt Disney World Co.*, 42 F. Supp. 2d 143, 144 (D. Conn. 1998) ("For purposes of" a "Rule 12(b)(2) motion, plaintiff's averments of jurisdictional facts are accepted as true and all factual disputes are resolved in her favor.") (citations omitted). To prevail against SMCO A.S.'s motion. Mrs. Ostensen need only make a *prima facie* showing of the existence of jurisdiction. *Gerber Trade Fin., Inc.*, 128 F. Supp. 2d at 90; *DiStefano*, 286 F.3d at 84.

B. **Jurisdiction Under the Connecticut Long-Arm Statute and the Due Process Clause.**

As shown below, SMCO A.S. is subject to the personal jurisdiction of this Court both under the Connecticut long-arm statute and the Due Process Clause.

SMCO A.S. is subject to personal jurisdiction under Conn. Gen. Stat. § 33-929 because Mrs. Ostensen's claims against it are based on contracts made and performed in Connecticut, Conn. Gen. Stat. § 33-929(f)(1), and "tortuous conduct in this state," Conn. Gen. Stat. § 33-929(f)(4), as discussed below.

As discussed below, SMCO A.S. is subject to jurisdiction under the Due Process Clause because it has sufficient "minimum contacts" with Connecticut because it "purposefully directed" its "activities at residents of Connecticut and the litigation has resulted from . . . injuries that arise out of or relate to those activities," *Mallon*, 42 F. Supp. 2d at 145, because all of the conduct discussed below relates to SMCO's involvement in the management of SMCO, including causing SMCO to breach its contractual obligations to the Ostensens, and SMCO A.S.'s tortious conduct toward the Ostensens. For the same reason, it would be consistent with "fair play and substantial justice" to subject SMCO A.S. to the jurisdiction of this Court. *Id.*

---

[1] SMCO A.S. has refused even to submit objections to those demands. (Lundin Decl. ¶ 7.)

10

II. **SMCO A.S. ENTERED INTO CONTRACTS TO BE PERFORMED IN CONNECTICUT**

SMCO A.S. is subject to jurisdiction under Conn. Gen. Stat. § 33-929(f)(1) because it was a party to contracts made and performed in Connecticut that are related to Mrs. Ostensen's claims in this action. Indeed, SMCO A.S. attached one such contract to the papers it submitted in support of its motion to dismiss—the agreement under which it provided management services to SMCO. (Lundin Decl. Exs. 9 – 10.) Further, SMCO A.S. was a party to agreements with SMCO and Fleet Bank regarding the provision of a line of credit to SMCO in Connecticut. (Lundin Decl. Exs. 13 – 20.) Finally, SMCO A.S. loaned SMCO money in Connecticut. (Lundin Decl. Ex. 12.) Each of those actions, which required performance by SMCO in Connecticut, is sufficient to subject SMCO A.S. to the jurisdiction of this Court. *See, e.g., Combustion Eng'g, Inc. v. NEI Int'l* Combustion, 798 F. Supp. 100, 104 (D. Conn. 1992) (it is sufficient to confer jurisdiction under Connecticut's long arm statute that the plaintiff had to perform a contract to which the defendant was party in Connecticut); *Bowman v. Grolsche Bierbrouwerij B.V.*, 474 F. Supp. 725, 732 (D. Conn. 1979) (same).

III. **SMCO A.S. ENGAGED IN TORTIOUS CONDUCT IN CONNECTICUT**

SMCO A.S. also engaged in tortious conduct in Connecticut that is the subject of Mrs. Ostensen's claims in this action. SMCO A.S. made false statements to the Ostensen's regarding the benefits they would receive under the Qualified and Un-Qualified Plans in order to induce Mr. Ostensen to merge his company, Marine Defense Group, with SMCO and to continue his employment with SMCO. (Counterclaim, Lundin Decl. Ex. 3 ¶¶ 8-16, 42, 46.) Further, SMCO A.S. tortiously interfered with the Ostensen's rights under the Qualified and Un-Qualified Plans, as well as interfering with Mr. Ostensen's right to receive wages and vacation pay, by causing SMCO to refuse to fulfill its obligations to the Ostensens. (Counterclaim,

11

Lundin Decl. Ex. 3 ¶¶ 39, 63, 86-88.) The location of this conduct is Connecticut, where SMCO employed Mr. Ostensen, and where SMCO and the Ostensen's both were located when SMCO breached its obligations to them. *See, e.g., Eutectic Corp. v. Curtis Noll Corp.*, 342 F. Supp. 761, 764 (D. Conn. 1972).

IV. **SMCO A.S.'S "VEIL PIERCING" ARGUMENT IGNORES MRS. OSTENSEN'S ALLEGATIONS**

SMCO A.S. devotes several pages arguing that the Court does not have personal jurisdiction of SMCO A.S. merely because SMCO A.S. owned all of the shares of SMCO's stock. (SMCO A.S. Brief at 9-11.) But of course Mrs. Ostensen has never claimed this as a basis for the Court's assertion of jurisdiction over SMCO A.S. Rather, she has alleged misconduct by SMCO A.S. itself, as well as improper domination of SMCO by SMCO A.S. resulting in SMCO's breach of its obligations to the Ostensens at SMCO A.S.'s direction and as its agent, and for SMCO A.S.'s benefit. (*See* Factual and Procedural Background *supra*.)

V. **SMCO A.S.'S ATTEMPT TO APPLY NORWEGIAN LAW TO THIS DISPUTE IS A RED HERRING**

In an attempt to obfuscate something that is very simple, SMCO A.S. argues that it cannot be held liable for its acts of domination of SMCO because "Norwegian law does not recognize a doctrine of piercing the corporate veil." (SMCO A.S. Brief at 11.) The question here is not whether SMCO A.S., as the shareholder of a **Norwegian** corporation, can be held liable under a veil piercing theory for the acts of that Norwegian corporation. Rather, the question here is the liability of the shareholder of SMCO—a New York corporation. That, of course, is a question of New York law, not Norwegian law. *See, e.g., In re Carterhouse, Inc.*, 94 B.R. 271, 276 (Bankr. D. Conn. 1988) ("federal courts look to the law of the state of incorporation to determine whether to pierce a corporation's veil"); *see also Fletcher v. Atex,*

12

*Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (noting that under New York choice of law principles, "the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders"). SMCO A.S. cannot avoid its obligations under New York law as the shareholder of a New York corporation simply because it is a Norwegian entity.

## Conclusion

For the reasons set forth above, Mrs. Ostensen respectfully requests that the Court deny SMCO A.S.'s motion to dismiss.

Dated: New York, New York
August 15, 2005

_____
Jeffrey M. Eilender (Bar. No. CT 25177)
John M. Lundin (Bar No. phv0185)
**SCHLAM STONE & DOLAN**, LLP
26 Broadway, Suite 1900
New York, NY 10004
(212) 344-5400 (Telephone)
(212) 344-7677 (Facsimile)
*Attorneys for Siri Ostensen*

Sharon E. Jaffe (Bar. No. CT. 04623)
**LEVIN & GLASSER, PC**
P.O. Box 1098
Weston, CT 06883
(203) 221-3008 (Telephone)
(203) 221-3010 (Facsimile)
*Attorneys for Siri Ostensen*