**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

SCANDINAVIAN MARINE CLAIMS
OFFICE, INC.,

*Plaintiff*,

- *against* -

SIRI OSTENSEN,

*Defendant*,

- *against* -

SCANDINAVIAN MARINE CLAIMS
OFFICE, INC., SCANDINAVIAN
UNDERWRITERS AGENCY, SCUA
AMERICAS, INC., S.M.C.O., A.S., AND
NORWEGIAN HULL CLUB,

*Counterclaim and Third-Party Defendants*.

Civil Action No. 3:02CV678 (RNC) (DFM)

October 13, 2005

**MEMORANDUM OF LAW IN OPPOSITION TO SCANDINAVIAN MARINE CLAIMS**
**OFFICE'S MOTION FOR SUMMARY JUDGMENT**

Jeffrey M. Eilender (Bar. No. CT 25177)
John M. Lundin (Bar No. phv0185)
**SCHLAM STONE & DOLAN, LLP**
26 Broadway
New York, NY 10004
(212) 344-5400 (Telephone)
(212) 344-7677 (Facsimile)
*Attorneys for Siri Ostensen*

Sharon E. Jaffe (Bar. No. CT. 04623)
**LEVIN & GLASSER, PC**
P.O. Box 1098
Weston, CT 06883
(203) 221-3008 (Telephone)
(203)221-3010 (Facsimile)
*Attorneys for Siri Ostensen*

## TABLE OF CONTENTS

Table of Authorities ...................................................................................................... iii

Preliminary Statement ......................................................................................................1

Factual and Procedural Background ..................................................................................4

Argument .........................................................................................................................16

I.      LEGAL FRAMEWORK ..................................................................................16

II.     SMCO IS NOT ENTITLED TO PAYMENT OF THE NOTES IN LIGHT OF
        ITS MUCH GREATER DEBT TO THE OSTENSENS ....................................16

        A.      Mrs. Ostensen Has a Right to Set-Off SMCO's Claims. .......................17

        B.      Mrs. Ostensen Has Multiple Claims Against SMCO, The Value of Which
                Dwarfs SMCO's Claim Against Mrs. Ostensen ....................................19

                1.  SMCO and the Related Other Companies Owe Mrs. Ostensen Over
                    $1.6 Million, Plus Attorneys' Fees, For Her Claims Relating to the Non-
                    Qualified Plan ...................................................................................19

                        (a.) Mrs. Ostensen's Claim ...........................................................19

                        (b.) Needed Discovery ...................................................................21

                2.  SMCO and the Related Other Companies Owe Mrs. Ostensen Over
                    $100,000, Plus Attorneys' Fees, For Her Claims Relating to the Qualified
                    Plan ...................................................................................................23

                        (a.) Mrs. Ostensen's Claim ...........................................................23

                        (b.) Needed Discovery ...................................................................23

                3.  SMCO Owes Mrs. Ostensen Approximately $40,000, Plus Attorneys'
                    Fees, For Unpaid Vacation Pay .........................................................25

                        (a.) Mrs. Ostensen's Claim ...........................................................25

                        (b.) Needed Discovery ...................................................................25

                4.  The Related Other Companies Are Liable to Mrs. Ostensen for
                    SMCO's Misconduct As Well As Their Own ....................................26

                        (a.) Needed Discovery ...................................................................27

III.     SMCO'S CLAIM CANNOT BE DECIDED BEFORE THERE HAS BEEN
         DISCOVERY....................................................................................................................27

Conclusion ..............................................................................................................................................29

## TABLE OF AUTHORITIES

### CASES

*Bigda v. Fischbach Corp.,*
    898 F. Supp. 1004 (S.D.N.Y. 1995)................................................................21

*The Conn. Bank & Trust Co. v. Dadi*,
    182 Conn. 530 (1980) ...............................................................................17

*Conn. Light and Power Co. v. DaSilva*,
    231 Conn. 441 (1994) ...............................................................................17

*Edrei v. Copenhagen Hadelsbank A/S,*
    No. 90 Civ. 1860 (CSH), 1991 WL 64201 (S.D.N.Y. Apr. 18, 1991) ...........................28

*EMI Music Marketing v. Avatar Records, Inc.,*
    317 F. Supp. 2d 412 (S.D.N.Y. 2004)......................................................18, 19

*Ginnet v. Computer Task Group, Inc.,*
    962 F.2d 1085 (2d Cir. 1992).......................................................................19

*Hellstrom v. U.S. Dep't of Veterans Affairs,*
    201 F.3d 94 (2d Cir. 2000).........................................................................28

*Howley v. Town of Stratford*,
    217 F.3d 141 (2d Cir. 2000).......................................................................16

*In re Colonial Realty Co.,*
    208 B.R. 616 (Bankr. D. Conn. 1997) .....................................................18, 28

*Lendino v. Trans Union Credit Info. Co.,*
    970 F.2d 1110 (2d Cir. 1992)......................................................................16

*Lyon v. Sammartino,*
    No. CV 95 57199, 1995 WL 317602 (Conn. Supr. Ct. May 12, 1995)..........................17

*Miller v. Wolpoff & Abramson, L.L.P.,*
    321 F.3d 292 (2d Cir. 2003)........................................................................28

*RPJ Sportswear, Inc. v. Xylo Tex, Ltd.,*
    681 F. Supp. 225 (S.D.N.Y. 1988)........................................................18, 28

*Schering Corp. v. Home Ins. Co.,*
    712 F.2d 4 (2d Cir. 1983) ....................................................................27, 28

*Valley Disposal Inc. v. Central Vermont Solid Waste Mgmt. Dist.,*
    113 F.3d 357 (2d Cir. 1997).......................................................................17

### STATUTES AND RULES

29 U.S.C. § 1132(g)(1) (2000)....................................................................21, 23

Connecticut General Statute § 31-72 ............................................................................25

Connecticut General Statute § 37-3a ............................................................................25

Connecticut General Statute § 42a-3-305 ....................................................................17

Connecticut General Statute § 42a-3-305(a)(2) ...........................................................17

Federal Rule of Civil Procedure 56 .............................................................................29

Defendant Siri Ostensen ("Mrs. Ostensen"), in her individual capacity and as the executrix of the estate of her husband, Tom Ostensen, by her undersigned counsel, submits this memorandum of law, along with the Declaration of John M. Lundin, and the exhibits attached thereto and her statement pursuant to Local Civil Rule 56(a)(2), in opposition to the motion by Plaintiff/Third-Party Defendant Scandinavian Marine Claims Office, Inc. ("SMCO") for summary judgment on its claims against Mrs. Ostensen and in support of her request pursuant to Federal Rule of Civil Procedure 56(f) that if SMCO's motion is not denied outright—as it should be—that any decision on that motion be stayed until Mrs. Ostensen has the opportunity to complete discovery and to resolve her claims against SMCO and the Counterclaim Defendants SCUA Americas, Inc. ("SCUAA"), SMCO A.S., and Norwegian Hull Club ("NHC") (collectively, and without SMCO, the "Related Other Companies").[1]

## PRELIMINARY STATEMENT

Without providing Mrs. Ostensen with the opportunity fully to take discovery, SMCO has moved for summary judgment on its claim that Mrs. Ostensen owes it money due under promissory notes (the "Notes") signed by Mrs. Ostensen and her late husband, Tom Ostensen.  However, Mrs. Ostensen does not deny that the Ostensens signed the Notes.  Indeed, the Ostensen's have stood ready to pay the Notes, **provided** only that SMCO and the Related Other Companies pay the Ostensens the much larger debt which they owe to the Ostensens.  Thus, this action—and SMCO's motion—is not about the payment of the Notes, it is about the refusal of SMCO and the Related Other Companies to pay the Ostensens what they are owed.

Knowing that Mrs. Ostensen is a widow of moderate financial means, SMCO and the Related Other Parties simply have refused to pay what they indisputably owe Mrs. Ostensen.

---

[1] The documents submitted in support of this opposition and the accompanying Local Rule 56(a)2 Statement are attached to the accompanying Declaration of John M. Lundin ("Lundin Decl.").

They have done this because they hope to use the expense of this litigation to force Mrs. Ostensen to compromise her significant claims—worth almost $2 million—in exchange for their ending the litigation and dropping their much, much smaller claim against her.

SMCO's claims relating to the Notes are dwarfed by Mrs. Ostensen's claims against SMCO and the Related Other Companies. **First**, SMCO and the Related Other Companies owe Mrs. Ostensen over $1.6 million pursuant to a non-qualified pension plan (the "Non-Qualified Plan") which Tom Ostensen, her late husband, had with his former employer, SMCO. There is no serious dispute that Mrs. Ostensen is entitled to payments under the Non-Qualified Plan. It is clear from the few documents SMCO and the Related Other Companies have produced that they recognize the debt and their obligation to pay it; they simply refuse to do so in the hopes that the cost of litigation eventually will force Mrs. Ostensen to compromise her claim in order to end this action.

**Second**, SMCO and the Related Other Companies have refused to honor the terms of SMCO's ERISA-qualified pension plan (the "Qualified Plan") under which Mrs. Ostensen receives benefits. This underpayment has a total value of over $100,000.

**Third**, SMCO and the Related Other Companies have refused to pay Mrs. Ostensen over $20,000 in vacation pay that was owed, but never paid, to Mr. Ostensen. As with the Non-Qualified Plan, SMCO and the Related Other Companies recognize that they owe Mrs. Ostensen this money, they simply refuse to pay it.

The law is clear that because of Mrs. Ostensen's claim for set-off, which dwarfs SMCO's claim, SMCO's motion on its claim should not be decided now.

SMCO and the Related Other Companies likely realize the tenuousness of the current motion. Indeed, it is obvious that SMCO's insistence on bringing the present motion

2

before Mrs. Ostensen has had a chance to take discovery is merely sharp practice. SMCO and the Related Other Companies want the danger of the Court entering a judgment against Mrs. Ostensen for its claim under the Notes to intimidate Mrs. Ostensen into dropping her claims against them. SMCO and the Related Other Companies do not want anyone's claims decided on the merits, which is why they have stonewalled discovery, hamstringing Mrs. Ostensen's ability to respond to their claims.

The starkest evidence of SMCO and the Related Other Companies' bad faith is that they insisted in bringing this motion before the close of discovery, yet at the same time they have stonewalled discovery. Mrs. Ostensen already has had to move to compel discovery from SMCO and the Related Other Companies because they have refused to provide relevant evidence. Indeed, SMCO A.S. refuses to provide **any** discovery and NHC refuses to produce more than a handful of documents dated before 2001, even though most of the relevant events in this action occurred prior to that date. Worse, even though the Non-Qualified Plan—including the Related Other Companies' potential liability under that plan—is the central issue in this action, SMCO and the Related Other Companies have refused to provide discovery on it. Further, they still have not responded to Mrs. Ostensen's Second and Third Document Demands, even though those demands were served in May and July respectively and seek evidence that is material to Mrs. Ostensen's claims. Finally, Mrs. Ostensen has not had the opportunity to take depositions or third-party discovery. In fact—and in clear violation of Magistrate Judge Martinez's instructions— the Related Other Companies have refused to make any foreign party-employees available for deposition in Connecticut.

## FACTUAL BACKGROUND

### The Parties

SMCO "is a corporation organized under the laws of New York." (Complaint ¶ 1.) During the period relevant to this action, SMCO's head office was located in Stamford, Connecticut. (Lundin Decl. Ex. 1, SMCO A.S. Board Meeting Minutes (May 23, 2000) (recording decision to close down the head office functions of SMCO Inc. in Stamford, Connecticut).) SMCO was part of a "worldwide network of" maritime insurance "claims agencies." (Lundin Decl. Ex. 2, NHC 2001 Annual Report at 10.)

SMCO A.S. owned Plaintiff SMCO. (Lundin Decl. Ex. 3, Plaintiff Scandinavian Marine Claims Office, Inc.'s Response to Defendant Siri Ostensen's First Interrogatories ("SMCO Interrog. Resp."), Response No. 1.) The majority owner of SMCO A.S. is Third-Party Defendant NHC. (*Id*.) NHC is a "mutual marine insurance" club, (Lundin Decl. Ex. 2, NHC 2001 Annual Report at 8), and is the successor of Bergen Hull Club, which, in 2001, changed its name to Norwegian Hull Club and merged with Unitas. (Lundin Decl. Ex. 3, SMCO Interrog. Resp., Response No. 1.)

### Tom Ostensen's Employment By SMCO

Prior to 1991, Tom Ostensen was the President of Marine Defense Group, Ltd. ("MDG"). (Lundin Decl. Ex. 4, SMCO Board Meeting Minutes (September 5, 1990) at SM000021.) SMCO and MDG merged operationally on September 5, 1990, "and legally as of" January 1, 1991. (*Id.* at SM000022.) The Board appointed Tom Ostensen President "for the integrated company." (*Id.*)

4

**The Qualified Plan**

Generally stated, under the Qualified Plan, at retirement age, Mr. Ostensen was eligible for a retirement benefit equal to 2 percent of his "Final Average Compensation" times his number of years of service. (Lundin Ex. 5, Qualified Plan § 2.2.)[2] Mr. Ostensen's Final Average Compensation was "the average of his "Compensation"[3] for the 36 months "during which" his "annual Compensation" was "the highest." (*Id.* § 1.21.) However, in general, under the Qualified Plan, that amount was capped at $150,000. (*Id.* § 1.12.)

As part of the merger of SMCO and MDG, SMCO agreed that it would credit service with MDG in computing benefits under the Qualified Plan. (*See, e.g.*, Lundin Decl. Ex. 7, Fax from John Wiik of Bergen Hull Club to Tom Ostensen of MDG (August 29, 1990) (noting that "one time costs" of the acquisition of MDG by SMCO included "financing of pension fund to bring MDG employees up to the level which SMCO offers at the present (e.g. T. Ostensen/E. Gravdal) USD 40.000");[4] Lundin Decl. Ex. 5, Qualified Plan § 14.7 (authorizing Qualified Plan service credit for "any period of . . . prior employment by any organization".) Until this dispute arose between SMCO and the Ostensens, SMCO abided by its agreement to credit Mr. Ostensen and other former MDG employees with their years of service with MDG for purposes of the Qualified Plan. (*See, e.g.*, Lundin Decl. Ex. 8, Employee Information for Tom

---

[2] In this submission, we will refer to the Qualified Plan effective January 1, 2002. (Lundin Decl. Ex. 5, The Pension Plan for Employees of Scandinavian Marine Claims Office, Inc. as Amended and Restated Effective January 1, 2002.) The relevant provisions of the Qualified Plan which was in effect prior to the plan dated January 1, 2002 appear to be substantially similar. (Lundin Decl. Ex. 6, The Pension Plan for Employees of Scandinavian Marine Claims Office, Inc. as Amended and Restated Effective as of January 1, 1989.)

[3] Compensation was defined as "a Participant's salary or wages for each Plan Year paid or payable by the Employer, including any contributions made by an Employer on the Participant's behalf for such Plan Year which are excluded from the Participant's income by reason of" the I.R.C., "but excluding commissions, bonuses, incentive compensation, overtime pay, reimbursement of expenses, directors; fees, severance pay, and deferred compensation." (*Id.* §1.12.) Compensation was capped for purposes of the Qualified Plan, (*id.*), but not the Non-Qualified Plan.

[4] The original states: "Engangskostnader; a. Finansiering av 'pensionfund' for a bringe MDG ansatte opp pa det niva som SMCO I dag yter. (eks. T. Ostensen/E. Gravdal). USD 40.000,-")

Ostensen as of 1/01/2000 (showing hire date as 11/05/1984).)

On 15 October 1998, the Qualified Plan was amended to increase the percentage of a beneficiary's Final Average Compensation awarded for each year of service from 2.0 percent to 2.75 percent, but capped the number of years of service considered for pension purposes to 20.  (Lundin Decl. Ex. 9, Amendment dated October 15, 1998.)  This change had **no** effect on Mr. Ostensen or the other participants in SMCO's Non-Qualified Plan, because that plan already entitled them to receive the difference between their payments under the Qualified Plan and 60 percent of their Final Average Compensation.  (Lundin Decl. Ex. 10, Non-Qualified Plan § 2.2.).  Rather, the purpose of the change was to decrease the cost to SMCO of providing benefits under the Non-Qualified Plan.  (*See* Lundin Decl. Ex. 11, Report to the Board of Directors of SMCO at SM000613 ("The effect of any qualified plan benefit increase would be a reduction in the non-qualified plan cost . . . because of the corresponding decrease in the projected benefit values under the plan.").)

After Mr. Ostensen left SMCO, NHC and SMCO A.S. caused SMCO to refuse to credit his MDG service for purposes of the Qualified Plan and refused to acknowledge the plan amendment awarding a 2.75 percent credit for each year served, significantly reducing the benefits available under that plan.  (*See. e.g.*, Lundin Decl. Ex. 12, Benefit Statement as of December 31, 2000 (showing hire date of 1/1/1991).)  Further, as discussed below, SMCO has refused to honor its obligations under the Non-Qualified Plan.

After her husband's death, Mrs. Ostensen applied for surviving spouse benefits under the Qualified Plan.  (Lundin Ex. 13, Letter from Siri Ostensen to SMCO Pension Plan Administrator (November 24, 2003).)  SMCO agreed to pay her $512.81 a month under the Qualified Plan, but refused to make any payments to her until she paid SMCO $22,456.20 which

SMCO claimed Mr. Ostensen owed SMCO.  (Lundin Decl. Ex. 14, Letter from Richard Corwin

of Trimar Defense Services to Siri Ostensen (May 27, 2004).)  Having no alternative, Mrs.

Ostensen paid SMCO the money it demanded.  (Lundin Decl. Ex. 15, Letter from Siri Ostensen

to Eric Soos of Oppenheimer & Co. (June 28, 2004).)  In or around August 2004, Mrs. Ostensen

finally began to receive payments under the Qualified Plan.

**The Notes and the Non-Qualified Plan**

On October 7, 1992, Tom Ostensen sent SMCO's board a "proposed plan design"

prepared by SMCO's actuaries "for the amended plan for SMCO."  (Lundin Decl. Ex. 16, Letter

from Tom Ostensen of SMCO ("Ostensen") to Havar Poulsson, Jan Lunde and Knut Lund of the

SMCO Board of Directors (October 7, 1992).)  SMCO's actuaries recommended certain

modifications to the Qualified Plan and recommended the "[a]doption of a non-qualified

deferred compensation program whose target is to provide a total benefit package equivalent to

60% of pay for certain select employees."  (*Id.* at SM000134.)  At SMCO's October 19, 1992

Board meeting,

> The Chairman stated that one purpose of this meeting was to
> consider and discuss the adoption of an amendment to the pension
> plan of the Corporation.  A report on the amendment had been
> presented in advance to the Board members prepared by Actuaries
> and Information Management Services, Inc.

(Lundin Decl. Ex. 17, SMCO Board Meeting Minutes of October 19, 1992 at SM000101.)

SMCO's board meeting minutes are ambiguous regarding its decision regarding

the Non-Qualified Plan.  However, any ambiguity regarding whether the SMCO Board had

resolved to adopt a non-qualified plan at the October 19, 1992 board meeting is removed by the

parties' subsequent conduct.  On September 19, 1994, Ostensen sent SMCO director Havar

Poulsson, a letter regarding Leif Chr. Husjord's retirement.  (Lundin Decl. Ex. 18, Letter from

Ostensen to Havar Poulsson, SMCO Director (September 19, 1994).)  Ostensen wrote:

> The SMCO pension plan provides for 50% of the average pay of an employee's last 36 month's salary provided that the employee has at least 25 years of service.  **At the Board Meeting in Virginia Beach on October 19, 1992, it was decided that the company would "provide a retirement benefit program of up to 60% of pay for certain selected employees under a non-qualified plan."**
>
> This decision applies to LCH.

(*Id.* at SM001734 (emphasis added).)  In the packet prepared by Ostensen for the November 8, 1995 SMCO board meeting he wrote:  "As far as Salaries and Social Expenses are concerned, Leif Chr. Husjord has retired, however, **we have commenced funding the non-qualified pension plan**."  (Lundin Decl. Ex. 19, Board meeting packet dated November 8, 1995 at SM000402 (emphasis added); *see also* Lundin Decl. Ex. 20, SMCO Board Meeting Minutes of November 8, 1995 at SM000395 (reflecting approval of SMCO budget presented by Ostensen which reflected "the inclusion of the funding of the non-qualified plan" which "was authorized at the fall board meeting in 1992.")

On June 13, 1995, Tom Ostensen executed an agreement memorializing SMCO's obligations to him under the Non-Qualified Plan.  (Lundin Decl. Ex. 10, Non-Qualified Plan (June 13, 1995).)  In general, under the Non-Qualified Plan, SMCO was obligated to pay Mr. Ostensen a monthly payment of "equal to 1/12 of the" difference between 60% of his "Final Average Compensation" and the amount to which he was entitled under the Qualified Plan.  (*Id.* § 2.2.)  Mrs. Ostensen has not been provided discovery of all of Mr. Ostensen's pay records, but it appears that Mr. Ostensen's Final Average Compensation was approximately $325,554. (Lundin Decl. ¶ 58, Exs. 21-23.)

From 1995, SMCO's financial statement reflected that SMCO had obligations

8

under the Non-Qualified Plan. (*See, e.g.*, Lundin Decl. Ex. 24, SMCO Financial Statements December 31, 1995 at SM001345; Lundin Decl. Ex. 25, SMCO Financial Statements December 31, 1996 at SM001368; Lundin Decl. Ex. 26, SMCO Financial Statements December 31, 1997 at SM001380; Lundin Decl. Ex. 27, SMCO Financial Statements December 31, 1998 at SM001392; Lundin Decl. Ex. 28, SMCO Financial Statements December 31, 1999 at SM001406; Lundin Decl. Ex. 29, SMCO Financial Statements for the Six Months Ended June 30, 2000 at SM001420.)

Further, from 1997 until 2000, when SMCO A.S. and NHC forced SMCO to renege on its obligations under the Non-Qualified Plan, SMCO's financial statements indicated that SMCO had identified specific assets—notes, including the Notes, and insurance policies—to be used to fund its obligations under the Non-Qualified Plan. (*See, e.g.*, Lundin Decl. Ex. 26, SMCO Financial Statements December 31, 1997 at SM001380 ("The funding of this plan is based on mortgage notes receivable from related parties . . . and certain life insurance policies, plus an additional funding as required from time to time as advised by Comprehensive Employee Plans."); Lundin Decl. Ex. 27, SMCO Financial Statements December 31, 1998 at SM001392 (same); Lundin Decl. Ex. 28, SMCO Financial Statements December 31, 1999 at SM001406, Ex. (same); Lundin Decl. Ex. 29, SMCO Financial Statements for the Six Months Ended June 30, 2000 at SM001420 (same); *see also* (Lundin Decl. Ex. 11, Report to the Board of Directors of SMCO at SM000601 ("In funding for this plan, we have assumed that the current outstanding employee mortgages which are valued at $894,644 will be assigned to fund the future obligations under this plan and that the income stream from the mortgages will be applied towards the cost of the plan.").) However, SMCO A.S. directed SMCO management to liquidate those assets and use them to pay other obligations—as directed by SMCO A.S.—but not SMCO's obligations to

9

the Ostensens.  (*See, e.g.*, Lundin Decl. Ex. 30; SMCO A.S. Board Meeting Minutes dated June

21, 2001; Lundin Decl. Ex. 31, SMCO Inc. Board Meeting Minutes of January 17, 2001.)

**The Dismantling of SMCO**

        In 2001, SMCO, A.S. decided to:  (1) close SMCO's headquarters, firing SMCO

management; (2) form a new company, SCUA Americas, Inc., to take over the business of

SMCO's Houston and Miami offices; and (3) sell SMCO's subsidiary, SMQI, Inc.  (Lundin

Decl. Ex. 1, Minutes of the SMCO AS Board Meeting, dated May 23, 2000.)  Further, on June

21, 2001, the SMCO A.S. Board recommended "to the ultimate shareholders that they provide

the capital necessary to liquidate" SMCO "based on **full payment** of **all** obligations **except**

balances with **Mr. Ostensen**."  (Lundin Decl. Ex. 30, SMCO A.S. Board Meeting Minutes dated

June 21, 2001 (emphasis added).)  When SMCO A.S. and NHC forced SMCO to dissolve, they

directed that the Notes and other assets that had been identified to pay SMCO's obligations

under the Non-Qualified Plan be used for other purposes.  (*See, e.g.*, Lundin Decl. Ex. 31,

SMCO Inc. Board Meeting Minutes of January 17, 2001 (discussing liquidation of SMCO assets

and obligations to creditors and former employees).)

        While SMCO has taken the public position that the Non-Qualified Plan was not

approved by SMCO's Board of Directors, the evidence produced in this action shows that (1)

SMCO's board approved the plan and (2) SMCO A.S. and NHC recognize that they are liable

for payments due under the plan.

        The minutes of the February 27, 2001 meeting of NHC's board reflect that the

board agreed in principle that SMCO would be liquidated, with "unsecured creditors generally

receiv[ing] full settlement and that previous management employees receive coverage under the

Non Qualified pension plan not to exceed USD 750 000."  (Lundin Decl. Ex. 32, NHC Board

Meeting Minutes dated February 27, 2001 at NW000187.)  The board recognized that this would result in NHC absorbing "an estimated total . . . of USD 3,25 mill."  (*Id.*)[5]  This decision to assume SMCO's obligations, including those under the Non-Qualified Plan, was reaffirmed in NHC's December 13, 2001, board meeting minutes, which stated:

> The Board authorizes Management to continue working with a managed liquidation of SMCO, Inc. based on total cost of liquidation being at least USD 600.000 lower than what it would cost to cover all claims 100%.  Thus, reductions will have to be made in the settlement with certain creditors.  This means that the total loss shall not exceed USD 4.8 mill compared to the estimated total loss presented to the Board on November 14, 2001. However, the loss may change as a result of changes of the premises, primarily interest rate levels and, as a consequence, the discount factor for **calculation of pension obligations**.

(Lundin Decl. Ex. 33, NHC Board Meeting Minutes dated December 13, 2001 at NW000227.)[6]

NHC reported in its 2001 Annual Report that $2 million "was written off" NHC's "2000 accounts as loss relating to the liquidation of SMCO" and that "estimated losses from the liquidation of SMCO" increased in 2001, "mostly due to an increase in estimated pension liabilities, in part due to lower USD interest rates and in part due to errors made in previous calculations of pension liabilities."  (Lundin Decl. Ex. 2, NHC 2001 Annual Report at 10.)  As a result, NHC's "2001 accounts" were debited $1.6 million "to cover the increased liquidation cost.  The losses relating to SMCO" were "divided between the two shareholders of the company on a pro rata basis, namely 2/3 and 1/3.  (*Id.*)

---

[5] The original text reads:  "Styret diskuterte og stilte spørsmål til den fremlagte dokumentasjon vedrørende SMCO Inc.  Styret sluttet seg til det fremlagte forslag til prinsipper for avvikling av SMCO Inc. ved at uiskrede kreditorer generelt får fullt oppgjør of at tidligere ledende ansatte får dekning under Non Qualified pensjonsordning som ikke overstiger USD 750 000, hvilket gir en beregnet samlet underdekning på USD 3,25 mill."

[6] The original text reads:  "Styret gir administrasjonen fullmakt til å arbeide videre med styrt avvikling av SMCO Inc. basert på total kostnad ved avviklingen minimum USD 600.00 lavere enn hva det vil koste à dekke alle krav 100%.  Det må sàledes foretas avkorting i oppgjer med enkelte kreditorer.  I forhold til beregnet totalt tap fremlagt for styret 14. november 2001 innebœrer dette at totalt tap ikke skal overstige USD 4,8 mill.  Tapet kan dog endres som felge av endring i forutsetninger, i fŕste rekke rentenivå og derved diskonteringsfactor for beregning av pensjonsforpliktelser."

**SMCO Refused to Pay Mr. Ostensen All of His Salary**

In addition to cheating the Ostensens out of pension benefits, SMCO A.S. and NHC caused SMCO to refuse to pay Mr. Ostensen approximately $20,000 for unused vacation days. There is no serious dispute over this issue: although SMCO and the Related Other Companies have stonewalled discovery on this issue, it is even now apparent that their liability is confirmed by their own internal documents. (*See, e.g.*, Lundin Decl. Ex. 34, E-mail from Erik Kappelin to Per Gustav Blom (January 12, 2001); Lundin Decl. Ex. 35, E-mail from Tom Midtun to Per Gustav Blom (February 5, 2001) (attaching spreadsheet regarding settlement indicating that SMCO owed Ostensen $444,005.03 for the nonqualified pension plan and $20,002.00 for other liabilities).)

## PROCEDURAL BACKGROUND

**Mrs. Ostensen's Claims**

The bad-faith conduct of SMCO and the Related Other Companies spawned a flurry of lawsuits involving former SMCO employees. This action is one of them.

SMCO claims that the Ostensens owes it money due under the Notes. However, SMCO and the Related Other Companies owe Mrs. Ostensen a much greater debt. Mrs. Ostensen, in her individual capacity and as the executrix of the estate of her husband, Tom Ostensen, asserted counterclaims against SMCO and the Related Other Companies as follows:

- SMCO violated ERISA, including 29 U.S.C. § 1140, which prohibited SMCO and the Related Other Companies by discriminating "against" Mr. and Mrs. Ostensen by depriving them of their benefits under the Qualified Plan and the Non-Qualified Plan. (Lundin Decl. Ex. 36, Counterclaim, First Cause of Action.)

- SMCO breached its contractual obligations to the Ostensens by failing to pay them benefits promised to them under the Non-Qualified Pension Plan. (*Id.* Second Cause of Action.)

- The Ostensens relied to their detriment on statements made by SMCO and the Related

Other Companies which induced them to execute the Notes to fund the Non-Qualified Pension Plan and induced Mr. Ostensen to remain in the employ of SMCO. (*Id.* Third Cause of Action.)

- SMCO and the Related Other Companies defrauded the Ostensens by making false representations to them, upon which they relied to their detriment, regarding the funding of, and the Ostensen's entitlement to, benefits under the SMCO's pension plans. (*Id.* Fourth Cause of Action.)

- SMCO and the Related Other Companies violated the Connecticut Unfair Trade Practices Act ("CUTPA") by making false and misleading statements to the Ostensen's, causing them financial injury. (*Id.* Fifth Cause of Action.)

- SMCO and the Related Other Companies engaged in a fraudulent transfer of SMCO's assets without fair consideration in violation of Conn. Gen. St. § 52-552a, rendering SMCO insolvent and unable to meet its obligations under the Non-Qualified Plan. (*Id.* Sixth Cause of Action.)

- SCUAA, SMCO A.S. and NHC tortiously interfered with the contractual relationship between SMCO and the Ostensens, improperly causing SMCO to breach those obligations. (*Id.* Seventh Cause of Action.)

- SCUAA and NHC are liable for SMCO's obligations as its successors. (*Id.* Eighth Cause of Action.)

- SMCO failed to pay Mr. Ostensen his full compensation in violation of Conn. Gen. St. § 31-72. (*Id.* Tenth Cause of Action.)

- SMCO and the Related Other Companies intentionally inflicted emotional distress on the Ostensens by the extreme and outrageous manner in which they repudiated their obligations to the Ostensen's, including their obligations under the Non-Qualified Plan. (*Id.* Eleventh Cause of Action.)

- SCMO and the Related Other Companies continued to operate SMCO after it became insolvent, hiding its insolvency from SMCO's creditors and employees, including Mr. Ostensen, injuring SMCO's creditors and Mr. Ostensen. (*Id.* Twelfth Cause of Action.)

- The Related Other Companies are liable to the Ostensens for SMCO's misconduct on theories of agency and alter ego. (*Id.* Thirteenth Cause of Action.)

The misconduct of SMCO and the Related Other Companies injured the Ostensens in many ways, including depriving them of significant benefits under the Qualified and Non-Qualified Plans, as well as unpaid wages. The present value of the Ostensen's damages exceeds $1.8 million.

13

**Mrs. Ostensen's Attempts to Obtain Discovery from SMCO and the Related Other Companies**

By a Report and Recommendation (the "Report") dated and filed on September 5, 2003, the Court interpreted the arbitration provision in Paragraph 6.4 of the Non-Qualified Plan broadly, requiring Mrs. Ostensen to arbitrate almost all of her counterclaims against SMCO. Further, because the Related Other Companies are liable for, among other things, SMCO's obligations under the Non-Qualified Plan under alter-ego or agency principles, they also should be parties to the arbitration.

Recognizing the need for discovery both on whether the Related Other Companies are subject to the arbitration provision of the Non-Qualified Plan and on Mrs. Ostensen's counterclaims, which are inextricably related to SMCO's claims against her, at the March 3, 2005 settlement conference the Court set a schedule for Mrs. Ostensen to have discovery related to her claims and defenses, including, in particular, to show that the Related Other Companies knew about, and are liable for SMCO's obligations under, the Non-Qualified Plan. Pursuant to that schedule, on March 31, 2005, Mrs. Ostensen served discovery demands on SMCO and the Related Other Companies, as well as subpoenas to third parties. (*See* Lundin Decl. Ex. 37, Defendant's First Request for Documents to Plaintiff and Third-Party Defendants; Lundin Decl. Ex. 38, Defendant's First Interrogatories to Scandinavian Marine Claims Office, Inc.; Lundin Decl. Ex. 39, Defendant's First Interrogatories to Scandinavian Underwriters Agency; Lundin Decl. Ex. 40, Defendant's First Interrogatories to SCUA Americas, Inc.; Lundin Decl. Ex. 41, Defendant's First Interrogatories to SMCO, A.S.; Lundin Decl. Ex. 42, Defendant's First Interrogatories to Norwegian Hull Club; Lundin Decl. Ex. 43, Subpoena in a Civil Case to Donald J. Kennedy, Esq.; Lundin Decl. Ex. 44, Subpoena in a Civil Case to Carter Ledyard & Milburn, LLP.) On May 16, 2005, Mrs. Ostensen issued subpoenas to The Benefit

14

Practice and Oppenheimer & Co., and served a second document demand on SMCO and the Related Other Companies.  (Lundin Decl. Ex. 45, Subpoena in a Civil Case to The Benefits Practice; Lundin Decl. Ex. 46, Subpoena in a Civil Case to Oppenheimer & Co.; Lundin Decl. Ex. 47, Defendant's Second Request for Documents to Plaintiff and Third-Party Defendants.)  On July 5, 2005, Mrs. Ostensen served a third document demand on SMCO and the Related Other Companies.  (Lundin Decl. Ex. 48, Defendant's Third Request for Documents to Plaintiff and Third-Party Defendants.)

SMCO and the Related Other Companies have stonewalled discovery.  Mrs. Ostensen served subpoenas on counsel for SMCO and the Related Other Companies; they moved to quash them.  (*See* Lundin Decl. Ex. 49, Docket Nos. 88 – 89.)  Mrs. Ostensen sought discovery regarding all of the parties' claims and defenses in this action; they moved to limit discovery to one issue, (*see id.* Docket Nos. 97 – 98), and refused to provide full discovery even on that issue, forcing Mrs. Ostensen to move to compel responses to her discovery demands, (*see id.* Docket Nos. 110 – 111).[7]  Mrs. Ostensen served her second and third document demands in May and July of 2005; finally, last week, SMCO and the Related Other Companies agreed to provide responses and objections to those demands—but of course made no promise actually to produce documents.  (Lundin Decl. Ex. 50, Letter from Mark Zancolli of Carter Ledyard to John Lundin and Schlam Stone & Dolan (October 3, 2005).)

Mrs. Ostensen sought jurisdictional discovery from SMCO A.S. in response to its motion to dismiss; they have moved to stay such discovery, depriving Mrs. Ostensen of the facts necessary conclusively to establish the Court's jurisdiction over SMCO A.S.  (*Id.* Docket Nos.

---

[7] Two of the issues Mrs. Ostensen raised in her Motion to Compel are the issues raised by the Related Other Companies here: the refusal of the Related Other Companies to produce party-affiliated witnesses for deposition in the United States and SMCO A.S.'s refusal to provide discovery.  The parties have agreed that those issues will be decided in connection with this motion.  For that reason, those issues are withdrawn from Mrs. Ostensen's pending

131 – 33.)  And finally, notwithstanding clear direction from the Court to the contrary, they have refused to produce party-affiliated witnesses in Connecticut for deposition.  (*Id.*)[8]

## ARGUMENT

## I.     LEGAL FRAMEWORK OF SUMMARY JUDGMENT

In deciding SMCO's "motion for summary judgment," the Court must "resolve all ambiguities, and . . . credit all factual inferences that could rationally be drawn, in favor of" Mrs. Ostensen.  *Howley v. Town of Stratford*, 217 F.3d 141, 150-51 (2d Cir. 2000).  The Court must deny SMCO's motion if there is "**any** evidence in the record from **any** source from which a reasonable inference could be drawn in favor of" Mrs. Ostensen."  *Id.* at 151 (emphasis added).  Indeed, "not only must there be no genuine issue as to the evidentiary facts, but there must be no controversy regarding the inferences to be drawn from them."  *Lendino v. Trans Union Credit Info. Co.*, 970 F.2d 1110, 1113 (2d Cir. 1992).

## II.     SMCO IS NOT ENTITLED TO PAYMENT OF THE NOTES IN LIGHT OF ITS MUCH GREATER DEBT TO THE OSTENSENS

The Ostensens never denied that they signed the Notes.  Indeed, Mrs. Ostensen agrees that when SMCO and the Related Other Companies finally pay her the much larger debt which they owe to her, that debt should be reduced by whatever amount Mrs. Ostensen owes under the Notes.  Thus, this action has never been about the ultimate payment of the Notes, it has been about the refusal of SMCO and the Related Other Companies to pay Mrs. Ostensen the monies they unquestionably owe her.

---

Motion to Compel.
[8] SCUAA has agreed to produce its witness for deposition in New York City.  Thus, the only issue for decision here is the location of the depositions of party-affiliated witnesses from NHC and SMCO A.S.

### A.     Mrs. Ostensen Has a Right to Set-Off SMCO's Claims.

As SMCO admits, under Connecticut law, SMCO is **not entitled to payment** on the Notes if Mrs. Ostensen "prove[s] a defense or recoupment."  (SMCO Memo of Law at 4, citing *The Conn. Bank & Trust Co. v. Dadi*, 182 Conn. 530, 531 (1980).)  Under Connecticut General Statute Section 42a-3-305, Mrs. Ostensen is entitled to all defenses to the Notes which "would be available if" SMCO "were enforcing a right to payment under a simple contract." *Conn. Light and Power Co. v. DaSilva*, 231 Conn. 441, 451 (1994); *see also* Conn. Gen. Stat. § 42a-3-305(a)(2) ("[T]he right to enforce the obligations of a party to pay an instrument is subject to . . . a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract.").  This includes the defense of set-off.  *See Lyon v. Sammartino*, No. CV 95 57199, 1995 WL 317602, at *2 (Conn. Supr. Ct. May 12, 1995) ("[S]ince a set-off claim is an allowable defense to a claim of damages in a contract action, it is an allowable claim against the enforcement of" a mortgage "note.").

By seeking judgment on the Notes when it owes Mrs. Ostensen over a million dollars more than it claims under the Notes, SMCO seeks the "absurdity of making" Mrs. Ostensen "pay" SMCO "when" SMCO "owes" Mrs. Ostensen.  *Valley Disposal Inc. v. Central Vermont Solid Waste Mgmt. Dist.*, 113 F.3d 357, 362 (2d Cir. 1997).  Specifically, SMCO asks the Court to grant it summary judgment on its claim regarding the Notes but to ignore Mrs. Ostensen's claim for set-off based both on her claims directly against SMCO and her claims against its affiliates—the Related Other Companies.  The law avoids the "absurdity" SMCO seeks by prohibiting summary judgment where there are facts in dispute regarding a claim for set-off—whether directly or as a counterclaim.  *See, e.g.*, *RPJ Sportswear, Inc. v. Xylo Tex, Ltd.*, 681 F. Supp. 225, 228 (S.D.N.Y. 1988) (summary judgment cannot be granted where a

counterclaim is "inextricably interwoven with the underlying cause of action" if there are issues

of fact regarding those claims); *In re Colonial Realty Co.*, 208 B.R. 616, 619 (Bankr. D. Conn.

1997) (denying summary judgment where there was an issue of fact regarding a claim for set-

off).

Mrs. Ostensen's payment of the Notes is without question "inextricably

interwoven" with SMCO and the Related Other Companies' payment of their obligations to her.

SMCO identified the Notes as one of the assets it was going to use to pay the Ostensens money

it unquestionably owed them under the Non-Qualified Plan. It acknowledged both its

obligations under the Non-Qualified Plan and its intention to pay those obligations using the

Notes, among other things, in its financial statements. (Lundin Decl. Exs. 24-30.) When SMCO

A.S. and NHC forced SMCO to dissolve, they directed that the Notes and other assets that had

been identified to pay SMCO's obligations under the Non-Qualified Plan be used for other

purposes, (Lundin Decl. Exs. 30-31), and that SMCO be liquidated "based on **full payment** of

**all** obligations **except** balances with **Mr. Ostensen**." (Lundin Decl. Ex. 30 (emphasis added).)

*EMI Music Marketing v. Avatar Records, Inc.*, 317 F. Supp. 2d 412 (S.D.N.Y.

2004), upon which SMCO relies, supports Mrs. Ostensen's view that summary judgment is

inappropriate now. In *EMI*, the court granted summary judgment on plaintiff's claim for an

account stated "on the record before it" after finding "no evidence of fraud, mistake, or equitable

considerations." *EMI*, 317 F. Supp. 2d at 419. Further, notwithstanding its findings, the *EMI*

court **stayed enforcement** of the judgment pending a resolution of the defendant's counterclaim

for breach of contract, which the court deemed sufficiently separate from plaintiff's account

stated claim. Indeed, the court noted that certification of final judgment on any one claim would

have been "**inappropriate**" if the claims were "inextricably interrelated," as they are here. *Id.* at

424 (citing *Ginnet v. Computer Task Group, Inc.*, 962 F.2d 1085, 1096 (2d Cir. 1992)).

**B.** **Mrs. Ostensen Has Multiple Claims Against SMCO, The Value of Which Dwarfs SMCO's Claim Against Mrs. Ostensen.**

Mrs. Ostensen has multiple meritorious claims against SMCO, the judgments for which will more than offset any claim SMCO may have against Mrs. Ostensen under the Notes. As discussed above, Mrs. Ostensen has thirteen causes of action against one or more of the Counterclaim/Third-Party Defendants. However, a discussion of only a few of those causes of action is necessary to demonstrate the magnitude of Mrs. Ostensen's claims against SMCO and the Related Other Companies—claims totalling over $1.8 million regarding which there is little factual dispute.

**1.** **SMCO and the Related Other Companies Owe Mrs. Ostensen Over $1.6 Million, Plus Attorneys' Fees, For Her Claims Relating to the Non-Qualified Plan.**

**(a.)** **Mrs. Ostensen's Claim.**

The Non-Qualified Plan was approved by SMCO's Board of Directors on October 19, 1992. (Lundin Decl. Ex. 17.) In 1994, SMCO's Board of Directors approved the first payments—to Leif Chr. Husjord—to be made under the Non-Qualified Plan. (Lundin Decl. Ex. 18.) On June 13, 1995, Tom Ostensen signed an Agreement entitling him to payments under the Non-Qualified Plan. (Lundin Decl. Ex. 10.) SMCO eventually identified specific assets to be used to fund the Non-Qualified Plan—life insurance policies on Non-Qualified Plan beneficiaries and the proceeds from promissory notes—including the Notes—signed by those beneficiaries. (Lundin Decl. Exs. 24-30.)

Generally, under the Non-Qualified Plan, Mr. Ostensen would have been entitled to a lifelong yearly income starting at age 65 equal to 60% of his average compensation during his most highly compensated 36 months, minus any amounts he received from the Qualified

19

Plan. (Lundin Decl. Ex. 10.) Mr. Ostensen's W-2 from his most highly compensated three years of employment show that his average annual compensation was approximately $325,554. (Lundin Decl. Exs. 21-23.) Thus, Mr. Ostensen's payment under the Non-Qualified Plan would have been approximately $195,332 a year for life, beginning at age 65, minus his entitlement under the Qualified Plan.

However, because of Mr. Ostensen's death, the situation is quite different. As discussed above, Mrs. Ostensen is now receiving payments under the Qualified Plan of approximately $513 a month (approximately $6,156 a year). Her entitlement to payments under the Non-Qualified Plan remains essentially the same as it did before Mr. Ostensen's death: beginning in April 2009—the month after Mr. Ostensen would have turned 65—Mrs. Ostensen is entitled to receive approximately $16,278 a month for 156 months ($195,332 a year for 13 years), less the approximately $513 a month that she receives from the SMCO qualified plan. The total payments, net of the Qualified Plan offset, to which Mrs. Ostensen thus is entitled under the Non-Qualified Plan are $15,765 a month for 156 months beginning in April 2009, or a total of approximately $2,459,323. Assuming a prevailing interest rate of 4% per annum, the present value of the monies to which Mrs. Ostensen is entitled—and of which SMCO and the Related Other Companies have deprived her—is approximately $1,665,423. (Lundin Decl. ¶¶ 57-61.)

Further, because the Non-Qualified Plan is a pension plan covered by ERISA's enforcement provisions, *see Bigda v. Fischbach Corp.*, 898 F. Supp. 1004, 1015 (S.D.N.Y. 1995) ("It is clear that the provisions of the administration and enforcement section of ERISA apply to top hat plans."), Mrs. Ostensen may be entitled to recover from SMCO and the Related Other Companies her costs and attorneys' fees. *See* 29 U.S.C. § 1132(g)(1) (2000).

**(b.)Needed Discovery.**

SMCO and the Related Other Companies have denied Mrs. Ostensen relevant discovery regarding her claims under or relating to the Qualified and Non-Qualified Plan. As discussed above, Mrs. Ostensen has served extensive discovery demands on SMCO, the Related Other Companies and third parties. (Lundin Decl. Exs. 37-50.) However, discovery has been stonewalled:

- SMCO and the Related Other Companies have refused to provide Mrs. Ostensen discovery regarding the Non-Qualified Plan (other than what they have produced in response to other of her document demands). (Lundin Decl. Ex. 51, Memorandum of Law in Opposition to Mrs. Ostensen's Motion to Compel at 2 (indicating the refusal of SMCO and the Related Other Companies to provide discovery regarding the Non-Qualified Plan).) Mrs. Ostensen has moved to compel that discovery. (Lundin Decl. Ex. 49, Docket No. 110-11.)

- SMCO A.S. has refused to respond to any of Mrs. Ostensen's documents demands with respect to any facts material to Mrs. Ostensen's claims. Mrs. Ostensen has moved to compel that discovery. (*Id.*)

- NHC has, with limited exceptions, refused to provide any discovery relating to periods prior to 2001—the periods principally at issue in this action—with respect to any facts material to Mrs. Ostensen's claims. (Lundin Decl. Ex. 51 at 4.) Mrs. Ostensen has moved to compel that discovery. . (Lundin Decl. Ex. 49, Docket No. 110-11.)

- Mrs. Ostensen has sought discovery regarding the Qualified Plan (necessary to determine the amount of the Qualified Plan payment which should be deducted from her overall entitlement to 60 percent of Mr. Ostensen's Final Average Compensation). (Lundin Decl. Ex. 47.) SMCO and the Related Other Companies have not yet responded to those demands, notwithstanding that they were served in May 2005. (Lundin Decl. Ex. 50.)

- Mrs. Ostensen sought discovery regarding the "salary and benefits, including vacation pay and reimbursable expenses" received by Mr. Ostensen (necessary to determine the Mr. Ostensen's Final Average Compensation, and thus Mrs. Ostensen's entitlement under the Non-Qualified Plan). (Lundin Decl. Ex. 47.) SMCO and the Related Other Companies have not yet responded to those demands, notwithstanding that they were served in May 2005. (Lundin Decl. Ex. 50.)

- Mrs. Ostensen sought discovery regarding investigations conducted on behalf of SMCO or the Related Other Companies regarding Mr. Ostensen or the Non-Qualified Plan, including the investigation conducted by Arthur Andersen (necessary to obtain

21

evidence of SMCO and the Related Other Companies' knowledge of, and acceptance of, their obligations to the Ostensens under the Non-Qualified Plan). (Lundin Decl. Ex. 47.) SMCO and the Related Other Companies have not yet responded to those demands, notwithstanding that they were served in May 2005. (Lundin Decl. Ex. 50.)

- Mrs. Ostensen has sought discovery of all documents provided to SMCO's auditors or accountants during the period 1997 to the present (necessary to establish the reasons SMCO changed the computation of the Ostensen's benefits under the Qualified Plan and the Non-Qualified Plan, to establish SMCO's acceptance of its obligations under the Non-Qualified Plan and that it had set aside assets to ensure that it could make all payments due under the plan, and to establish that SMCO intended the Notes and certain insurance policies to be used to pay obligations under the Non-Qualified Plan). (Lundin Decl. Ex. 47.) SMCO and the Related Other Companies have not yet responded to those demands, notwithstanding that they were served in May 2005. (Lundin Decl. Ex. 50.)

- Mrs. Ostensen has sought discovery of all communications between the Ostensens and SMCO and the Related Other Companies regarding the Non-Qualified Plan (necessary to establish SMCO's acknowledgement of its obligations thereunder). (Lundin Decl. Ex. 47.) SMCO and the Related Other Companies have not yet responded to those demands, notwithstanding that they were served in May 2005. (Lundin Decl. Ex. 50.)

- Mrs. Ostensen has sought discovery regarding the Notes (necessary to establish that the Notes were intended to fund the payments due to the Ostensen's under the Non-Qualified Plan). (Lundin Decl. Ex. 47.) SMCO and the Related Other Companies have not yet responded to those demands, notwithstanding that they were served in May 2005. (Lundin Decl. Ex. 50.)

- Mrs. Ostensen has served a document subpoena on the Benefits Practice, which advised SMCO on its pension plans, to obtain evidence regarding the Non-Qualified Plan, including SMCO and the Related Other Companies' decision to refuse to make payments under the plan. (Lundin Decl. Ex. 45.) The Benefits Practice still has not responded to that subpoena. (Lundin Decl. ¶ 69.)

- Mrs. Ostensen has not had the opportunity to take any depositions in this action. The Related Other Companies have refused to produce their party-employee witnesses for deposition in the United States, as the Court previously had ordered. (Lundin Decl. ¶ 70 and Ex. 49 Docket Nos. 110-11.) Mrs. Ostensen has moved to compel their appearance. (*Id.*) SMCO has offered Erik Kappelin, an SMCO employee for deposition, but there is no point in taking that deposition until SMCO and the Related Other Companies provide all document discovery, and SMCO refused to agree that it would allow Mrs. Ostensen to re-depose him if—in her estimation—she needed to question him regarding documents produced after his deposition. (Lundin Decl. ¶ 70.)

### 2.  **SMCO and the Related Other Companies Owe Mrs. Ostensen Over $100,000, Plus Attorneys' Fees, For Her Claims Relating to the Qualified Plan.**

#### (a.) **Mrs. Ostensen's Claim.**

As her husband's widow, Mrs. Ostensen is entitled to receive benefits under the Qualified Plan.  (Lundin Decl. Ex. 5, § 5.3.)  In computing her entitlement under the Qualified Plan, SMCO has refused to credit Mrs. Ostensen for her husband's years of service with Marine Defense Group, as SMCO has agreed when the two entities merged in 1991.  (Lundin Decl. Ex. 12.)  Further, SMCO is using a multiplier of 2 percent per year of service rather than the 2.75 percent provided in the Qualified Plan during the time Mr. Ostensen was employed by SMCO.  (*Id.*)  Thus, she is receiving monthly payments under the Qualified Plan which are significantly lower than those to which she is entitled.

Mrs. Ostensen has been denied discovery regarding the Qualified Plan, but her damages are approximately $101,550.[9]  (Lundin Decl. ¶¶ 54-56.)  Further, Mrs. Ostensen is also entitled to attorneys' fees on her claim.  29 U.S.C. § 1132(g)(1).

#### (b.) **Needed Discovery.**

SMCO and the Related Other Companies have denied Mrs. Ostensen relevant discovery regarding her claims under or relating to the Qualified Plan.  As discussed above, Mrs. Ostensen has served extensive discovery demands on SMCO, the Related Other Companies and third parties.  (Lundin Decl. Exs. 37-50.)  However, discovery has been stonewalled:

- SMCO A.S. has refused to respond to any of Mrs. Ostensen's documents demands with respect to any facts material to Mrs. Ostensen's claims.  Mrs. Ostensen has moved to compel that discovery.  (Lundin Decl. Ex. 49, Docket No. 110-11.)

- NHC has, with limited exceptions, refused to provide any discovery relating to periods prior to 2001—the periods principally at issue in this action—with respect to

---

[9] Of course, any recovery by Mrs. Ostensen under the Qualified Plan would reduce her recover under the Non-Qualified Plan.  However, Mrs. Ostensen's claims under the Qualified Plan are not subject to arbitration.

any facts material to Mrs. Ostensen's claims.  (Lundin Decl. Ex. 51 at 4.)  Mrs. Ostensen has moved to compel that discovery.  (Lundin Decl. Ex. 49, Docket No. 110-11.)

- Mrs. Ostensen has sought discovery regarding the Qualified Plan.  (Lundin Decl. Ex. 47.)  SMCO and the Related Other Companies have not yet responded to those demands, notwithstanding that they were served in May 2005.  (Lundin Decl. Ex. 50.)

- Mrs. Ostensen sought discovery regarding the "salary and benefits, including vacation pay and reimbursable expenses" received by Mr. Ostensen (necessary to determine the Mr. Ostensen's Final Average Compensation, and thus Mrs. Ostensen's entitlement under the Qualified Plan).  (Lundin Decl. Ex. 47.)  SMCO and the Related Other Companies have not yet responded to those demands, notwithstanding that they were served in May 2005.  (Lundin Decl. Ex. 50.)

- Mrs. Ostensen has sought discovery of all documents provided to SMCO's auditors or accountants during the period 1997 to the present (necessary to establish the reasons SMCO changed the computation of the Ostensens' benefits under the Qualified Plan).  (Lundin Decl. Ex. 47.)  SMCO and the Related Other Companies have not yet responded to those demands, notwithstanding that they were served in May 2005.  (Lundin Decl. Ex. 50.)

- Mrs. Ostensen has served a document subpoena on the Benefits Practice, which advised SMCO on its pension plans, to establish the reasons SMCO changed the computation of the Ostensens' benefits under the Qualified Plan.  (Lundin Decl. Ex. 45.)  The Benefits Practice still has not responded to that subpoena.  (Lundin Decl. ¶ 69.)

- Mrs. Ostensen has served a document subpoena on Oppenheimer & Co., which administered the Qualified Plan, to establish the reasons SMCO changed the computation of the Ostensens' benefits under the Qualified Plan.  (Lundin Decl. Ex. 46.)  Oppenheimer & Co. still has not responded to that subpoena.  (Lundin Decl. ¶ 69.)

- Mrs. Ostensen has not had the opportunity to take any depositions in this action.  The Related Other Companies have refused to produce their party-employee witnesses for deposition in the United States, as the Court previously had ordered.  (Lundin Decl. ¶ 70 and Ex. 49 Docket No. 110-11.)  Mrs. Ostensen has moved to compel their appearance.  (*Id.*)  SMCO has offered Erik Kappelin, an SMCO employee for deposition, but there is no point in taking that deposition until SMCO and the Related Other Companies provide all document discovery, and SMCO refused to agree that it would allow Mrs. Ostensen to re-depose him if—in her estimation—she needed to question him regarding documents produced after his deposition.  (Lundin Decl. ¶ 70.)

**3. SMCO Owes Mrs. Ostensen Approximately $40,000, Plus Attorneys' Fees, For Unpaid Vacation Pay.**

**(a.) Mrs. Ostensen's Claim.**

As shown above, when Mr. Ostensen left SMCO's employ, he was owed approximately $20,202 in unpaid vacation pay. (*See, e.g.*, Lundin Decl. Exs. 34-35.) SMCO and the Related Other Companies recognize that they owe this money, (*see, e.g.*, *id.*); they simply refuse to pay it. SMCO thus owes Mr. Ostensen's estate $65,071, which represents his unpaid vacation pay, doubled, Conn. Gen. Stat. § 31-72, plus pre-judgment interest at the statutory rate of 10 percent, Conn. Gen. Stat. § 37-3a, *id.* The estate is also entitled to its attorneys' fees on its claim. *Id.*

**(b.) Needed Discovery.**

SMCO and the Related Other Companies have denied Mrs. Ostensen relevant discovery regarding her claims under or relating to the Qualified Plan. As discussed above, Mrs. Ostensen has served extensive discovery demands on SMCO, the Related Other Companies and third parties. (Lundin Decl. Exs. 37-50.) However, discovery has been stonewalled:

- SMCO A.S. has refused to respond to any of Mrs. Ostensen's documents demands with respect to any facts material to Mrs. Ostensen's claims. Mrs. Ostensen has moved to compel that discovery. (Lundin Decl. Ex. 49, Docket No. 110-11.)

- NHC has, with limited exceptions, refused to provide any discovery relating to periods prior to 2001—the periods principally at issue in this action—with respect to any facts material to Mrs. Ostensen's claims. (Lundin Decl. Ex. 51 at 4.) Mrs. Ostensen has moved to compel that discovery. (Lundin Decl. Ex. 49, Docket No. 110-11.)

- Mrs. Ostensen sought discovery regarding the "salary and benefits, including vacation pay and reimbursable expenses" received by Mr. Ostensen (necessary to establish the amount Mr. Ostensen was underpaid). (Lundin Decl. Ex. 47.) SMCO and the Related Other Companies have not yet responded to those demands, notwithstanding that they were served in May 2005. (Lundin Decl. Ex. 50.)

- Mrs. Ostensen has sought discovery of all documents provided to SMCO's auditors or accountants during the period 1997 to the present (necessary to establish the

25

amount Mr. Ostensen was underpaid). (Lundin Decl. Ex. 47.) SMCO and the Related Other Companies have not yet responded to those demands, notwithstanding that they were served in May 2005. (Lundin Decl. Ex. 50.)

- Mrs. Ostensen has not had the opportunity to take any depositions in this action. The Related Other Companies have refused to produce their party-employee witnesses for deposition in the United States, as the Court previously had ordered. (Lundin Decl. ¶ 70 and Ex. 49 Docket No. 110-11.) Mrs. Ostensen has moved to compel their appearance. (*Id.*) SMCO has offered Erik Kappelin, an SMCO employee for deposition, but there is no point in taking that deposition until SMCO and the Related Other Companies provide all document discovery, and SMCO refused to agree that it would allow Mrs. Ostensen to re-depose him if—in her estimation—she needed to question him regarding documents produced after his deposition. (Lundin Decl. ¶ 70.)

### 4.  <u>The Related Other Companies Are Liable to Mrs. Ostensen for SMCO's Misconduct As Well As Their Own.</u>

As shown above, the Related Other Companies caused SMCO to renege on its obligations under the Qualified Plan, Non-Qualified Plan and to pay Mr. Ostensen all of his wages, including vacation pay. For that reason, she has asserted claims against them as well as against SMCO. Further, in light of the Court's decision that any of Mrs. Ostensen's claims relating to the Non-Qualified Plan must be arbitrated—even against the Related Other Companies—a significant issue during discovery is whether they will be compelled to participate in Mrs. Ostensen's arbitration against SMCO. SMCO's claims regarding the Notes cannot be decided until that discovery is complete and the liability of the Related Other Companies to Mrs. Ostensen, including their obligation to indemnify her for any claim SMCO may have against her, is decided.

### (a.) <u>Needed Discovery.</u>

SMCO and the Related Other Companies have denied Mrs. Ostensen relevant discovery regarding the liability of the Related Other Companies to Mrs. Ostensen. As discussed above, Mrs. Ostensen has served extensive discovery demands on SMCO, the Related Other Companies and third parties. (Lundin Decl. Exs. 37-50.) However, discovery has been

stonewalled:

- SMCO A.S. has refused to respond to any of Mrs. Ostensen's documents demands with respect to any facts material to Mrs. Ostensen's claims.  Mrs. Ostensen has moved to compel that discovery.  (Lundin Decl. Ex. 49 Docket No. 110-11.)

- NHC has, with limited exceptions, refused to provide any discovery relating to periods prior to 2001—the periods principally at issue in this action—with respect to any facts material to Mrs. Ostensen's claims.  (Lundin Decl. Ex. 51 at 4.)  Mrs. Ostensen has moved to compel that discovery.  (Lundin Decl. Ex. 49, Docket No. 110-11.)

- SMCO and the Related Other Companies have promised to provide discovery regarding the payments SMCO made (and chose, at the direction of SMCO A.S. and NHC, not to make) in the final years of its existence, but have not yet produced such discovery.  (Lundin Decl. Ex. 51 at 5.)

- Mrs. Ostensen has not had the opportunity to take any depositions in this action.  The Related Other Companies have refused to produce their party-employee witnesses for deposition in the United States, as the Court previously had ordered.  (Lundin Decl. ¶ 70 and Ex. 49 Docket No. 110-11.)  Mrs. Ostensen has moved to compel their appearance.  (*Id.*)  SMCO has offered Erik Kappelin, an SMCO employee for deposition, but there is no point in taking that deposition until SMCO and the Related Other Companies provide all document discovery, and SMCO refused to agree that it would allow Mrs. Ostensen to re-depose him if—in her estimation—she needed to question him regarding documents produced after his deposition.  (Lundin Decl. ¶ 70.)

## III.    SMCO'S CLAIM CANNOT BE DECIDED BEFORE THERE HAS BEEN DISCOVERY

"[S]ummary judgment should not be granted" where—as here—"the party opposing judgment timely seeks discovery of potentially favorable information."  *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 10 (2d Cir. 1983); *see also Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303-04 (2d Cir. 2003) ("Only in the **rarest of cases** may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."); *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) ("The nonmoving party must have had the opportunity to discover information that is essential to" her "opposition to the motion for summary judgment.").  Summary judgment is particularly inappropriate

where—as here—discovery is needed to establish a counterclaim that is **directly related** to one of the plaintiff's claims. *See In re Colonial Realty Co.*, 208 B.R. at 619 (denying summary judgment where there was an issue of fact regarding a claim for set-off); *Edrei v. Copenhagen Hadelsbank A/S*, No. 90 Civ. 1860 (CSH), 1991 WL 64201, at *12 (S.D.N.Y. Apr. 18, 1991) ("The issue of fraud pervades the question of the enforcement of the guaranty and thus precludes summary judgment."); *RPJ Sportswear, Inc.*, 681 F. Supp. at 228 ("When a counterclaim is 'inextricably interwoven' with the underlying cause of action summary judgment cannot be granted.").

Here, as discussed above, SMCO has denied Mrs. Ostensen the opportunity to obtain evidence that the Federal Rules of Civil Procedure guarantee her. Yet SMCO wants the Court to hear its motion now, before discovery has been conducted, because it knows that discovery will supply Mrs. Ostensen with proof of her claims. To allow such a procedure would contravene the overwhelming weight of authority, and would violate the Second Circuit's admonition that "[t]he nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment. The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." *Miller*, 321 F.3d at 304 (citations and quotations omitted).

Pursuant to Federal Rule of Civil Procedure 56(f), SMCO's motion should not be decided until discovery is complete and Mrs. Ostensen's claims against it have been decided. The discovery regarding the material facts at issue are discussed above with respect to each of Mrs. Ostensen's claims, along with the steps Mrs. Ostensen has taken to obtain that discovery.

## **CONCLUSION**

For the reasons set forth above, Mrs. Ostensen respectfully requests that the Court

28

deny SMCO's motion for summary judgment or, in the alternative, stay decision of that motion

pursuant to Federal Rule of Civil Procedure 56(f) until Mrs. Ostensen has had an opportunity to

take relevant discovery and respond more fully to SMCO's motion and to resolve her claims

against SMCO and the Related Other Companies.

Dated: New York, New York
        October 13, 2005

Jeffrey M. Eilender (Bar. No. CT 25177)
John M. Lundin (Bar No. phv0185)
**SCHLAM STONE & DOLAN**, LLP
26 Broadway, Suite 1900
New York, NY 10004
(212) 344-5400 (Telephone)
(212) 344-7677 (Facsimile)
*Attorneys for Siri Ostensen*

Sharon E. Jaffe (Bar. No. CT. 04623)
**LEVIN & GLASSER, PC**
P.O. Box 1098
Weston, CT 06883
(203) 221-3008 (Telephone)
(203)221-3010 (Facsimile)
*Attorneys for Siri Ostensen*