UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SCANDINAVIAN MARINE CLAIMS OFFICE, INC.,<br><br>*Plaintiff*,<br><br>- against -<br><br>SIRI OSTENSEN,<br><br>*Defendant*,<br><br>- against -<br><br>SCANDINAVIAN MARINE CLAIMS OFFICE, INC., SCANDINAVIAN UNDERWRITERS AGENCY, SCUA AMERICAS, INC., S.M.C.O., A.S., AND NORWEGIAN HULL CLUB,<br><br>*Counterclaim and Third-Party Defendants.* | Civil Action No. 3:02CV678 (RNC) (DFM)<br><br>**LOCAL RULE 56(A)2 STATEMENT**<br><br>October 13, 2005 |

Pursuant to Local Rule 56(a)2, Defendant/Counterclaimant and Third-Party Plaintiff Siri Ostensen ("Mrs. Ostensen"), in her individual capacity and as the executrix of the estate of her husband, Tom Ostensen, by her undersigned counsel, submits this statement of material facts as to which there is a dispute.[1]

**SMCO's Claims**

        1.     Admitted.

        2.     Admitted.

        3.     Admitted.

        4.     Admitted.

        5.     Admitted.

---

[1] The documents referred to herein are attached to the accompanying Declaration of John M. Lundin ("Lundin Decl.").

6.  Admitted.

**Undisputed Issues of Material Fact Relevant to Mrs. Ostensen's Claim for Set-Off**

7.  Plaintiff/Third-Party Defendant Scandinavian Marine Claims Office, Inc. ("SMCO") "is a corporation organized under the laws of New York. (Complaint ¶ 1.)

8.  During the period relevant to this action, SMCO's head office of business was located in Stamford Connecticut. (Lundin Decl. Ex. 1, SMCO A.S. Board Meeting Minutes (May 23, 2000).)

9.  SMCO was part of a "worldwide network of" maritime insurance "claims agencies." (Lundin Decl. Ex. 2, NHC 2001 Annual Report at 10.)

10. Third-Party Defendant SMCO A.S. owned Plaintiff SMCO. (Lundin Decl. Ex. 3, Plaintiff Scandinavian Marine Claims Office, Inc.'s Response to Defendant Siri Ostensen's First Interrogatories ("SMCO Interrog. Resp."), Response No. 1.)

11. The majority owner of SMCO A.S. is Third-Party Defendant Norwegian Hull Club ("NHC"). (*Id.*)

12. NHC is a "mutual marine insurance" club. (Lundin Decl. Ex. 2, NHC 2001 Annual Report at 8).

13. NHC is the successor of Bergen Hull Club. (Lundin Decl. Ex. 3, SMCO Interrog. Resp., Response No. 1.)

14. In 2001, NHC changed its name to Norwegian Hull Club and merged with Unitas. (*Id.*)

15. Prior to 1991, Tom Ostensen was the President of Marine Defense Group, Ltd. ("MDG"). (Lundin Decl. Ex. 4, SMCO Board Meeting Minutes (September 5, 1990) at SM000021.)

2

16. SMCO and MDG merged operationally on September 5, 1990, "and legally as of" January 1, 1991. (*Id.* at SM000022.)

17. When SMCO and MDG merged, the Board appointed Tom Ostensen President "for the integrated company." (*Id.*)

18. During his employment with SMCO, Tom Ostensen was covered by an ERISA-qualified pension plan (the "Qualified Plan"). (Lundin Decl. Ex. 5, The Pension Plan for Employees of Scandinavian Marine Claims Office, Inc. as Amended and Restated Effective January 1, 2002; Lundin Decl. Ex. 6, The Pension Plan for Employees of Scandinavian Marine Claims Office, Inc. as Amended and Restated Effective as of January 1, 1989.)

19. Generally stated, under the Qualified Plan, at retirement age, Mr. Ostensen was eligible for a retirement benefit equal to 2 percent of his "Final Average Compensation" times his number of years of service. (Lundin Ex. 5, Qualified Plan § 2.2.)

20. Mr. Ostensen's Final Average Compensation was "the average of his "Compensation" for the 36 months "during which" his "annual Compensation" was "the highest." (*Id.* § 1.21.)

21. As part of the merger of SMCO and MDG, SMCO agreed that it would credit service with MDG in computing benefits under the Qualified Plan. (Lundin Decl. Ex. 7, Fax from John Wiik of Bergen Hull Club to Tom Ostensen of MDG (August 29, 1990); Lundin Decl. Ex. 5, Qualified Plan § 14.7.)

22. Until this dispute arose between SMCO and the Ostensens, SMCO abided by its agreement to credit Mr. Ostensen and other former MDG employees with their years of service with MDG for purposes of the Qualified Plan. (Lundin Decl. Ex. 8, Employee Information for Tom Ostensen as of 1/01/2000.)

23. On 15 October 1998, the Qualified Plan was amended to increase the percentage of a beneficiary's Final Average Compensation awarded for each year of service from 2.0 percent to 2.75 percent, but capped the number of years of service considered for pension purposes to 20. (Lundin Decl. Ex. 9, Amendment dated October 15, 1998.)

24. This change had no effect on Mr. Ostensen or the other participants in SMCO's Non-Qualified Plan, because that plan already entitled them to receive the difference between their payments under the Qualified Plan and 60 percent of their Final Average Compensation. (Lundin Decl. Ex. 10, Non-Qualified Plan § 2.2.).

25. The purpose of the change was to decrease the cost to SMCO of providing benefits under the Non-Qualified Plan. (Lundin Decl. Ex. 11, Report to the Board of Directors of SMCO at SM000613 ("The effect of any qualified plan benefit increase would be a reduction in the non-qualified plan cost . . . because of the corresponding decrease in the projected benefit values under the plan.").)

26. After Mr. Ostensen left SMCO, NHC and SMCO A.S. caused SMCO to refuse to credit his MDG service for purposes of the Qualified Plan and refused to acknowledge the plan amendment awarding a 2.75 percent credit for each year served, significantly reducing the benefits available under that plan. (Lundin Decl. Ex. 12, Benefit Statement as of December 31, 2000 (showing hire date of 1/1/1991).)

27. After her husband's death, Mrs. Ostensen applied for surviving spouse benefits under the Qualified Plan. (Lundin Ex. 13, Letter from Siri Ostensen to SMCO Pension Plan Administrator (November 24, 2003).)

28. SMCO agreed to pay her $512.81 a month under the Qualified Plan, but refused to make any payments to her until she paid SMCO $22,456.20 which SMCO claimed

Mr. Ostensen owed SMCO. (Lundin Decl. Ex. 14, Letter from Richard Corwin of Trimar Defense Services to Siri Ostensen (May 27, 2004).)

29. Mrs. Ostensen paid SMCO the money it demanded. (Lundin Decl. Ex. 15, Letter from Siri Ostensen to Eric Soos of Oppenheimer & Co. (June 28, 2004).)

30. In or around August 2004, Mrs. Ostensen finally began to receive payments under the Qualified Plan.

31. On October 7, 1992, Tom Ostensen sent SMCO's board a "proposed plan design" prepared by SMCO's actuaries "for the amended plan for SMCO." (Lundin Decl. Ex. 16, Letter from Tom Ostensen of SMCO ("Ostensen") to Havar Poulsson, Jan Lunde and Knut Lund of the SMCO Board of Directors (October 7, 1992).)

32. SMCO's actuaries recommended certain modifications to the Qualified Plan and recommended the "[a]doption of a non-qualified deferred compensation program whose target is to provide a total benefit package equivalent to 60% of pay for certain select employees." (*Id.* at SM000134.)

33. At SMCO's October 19, 1992 Board meeting,

> The Chairman stated that one purpose of this meeting was to consider and discuss the adoption of an amendment to the pension plan of the Corporation. A report on the amendment had been presented in advance to the Board members prepared by Actuaries and Information Management Services, Inc.

(Lundin Decl. Ex. 17, SMCO Board Meeting Minutes of October 19, 1992 at SM000101.)

34. On September 19, 1994, Ostensen sent SMCO director Havar Poulsson, a letter regarding Leif Chr. Husjord's retirement. (Lundin Decl. Ex. 18, Letter from Ostensen to Havar Poulsson, SMCO Director (September 19, 1994).)

35. In his September 19, 1994 letter, Ostensen wrote:

> The SMCO pension plan provides for 50% of the average pay of an employee's last 36 month's salary provided that the employee has at least 25 years of service. At the Board Meeting in Virginia Beach on October 19, 1992, it was decided that the company would "provide a retirement benefit program of up to 60% of pay for certain selected employees under a non-qualified plan."
>
> This decision applies to LCH.

(*Id.* at SM001734.)

36. In the packet prepared by Ostensen for the November 8, 1995 SMCO board meeting he wrote: "As far as Salaries and Social Expenses are concerned, Leif Chr. Husjord has retired, however, we have commenced funding the non-qualified pension plan." (Lundin Decl. Ex. 19, Board meeting packet dated November 8, 1995 at SM000402; *see also* Lundin Decl. Ex. 20, SMCO Board Meeting Minutes of November 8, 1995 at SM000395 (reflecting approval of SMCO budget presented by Ostensen which reflected "the inclusion of the funding of the non-qualified plan" which "was authorized at the fall board meeting in 1992.")

37. On June 13, 1995, Tom Ostensen executed an agreement memorializing SMCO's obligations to him under the Non-Qualified Plan. (Lundin Decl. Ex. 10, Non-Qualified Plan (June 13, 1995).)

38. In general, under the Non-Qualified Plan, SMCO was obligated to pay Mr. Ostensen a monthly payment of "equal to 1/12 of the" difference between 60% of his "Final Average Compensation" and the amount to which he was entitled under the Qualified Plan. (*Id.* § 2.2.)

39. Mr. Ostensen's Final Average Compensation was approximately $325,554. (Lundin Decl. ¶ [], Exs. 21-23.)

40. From 1995, SMCO's financial statement reflected that SMCO had obligations under the Non-Qualified Plan. (Lundin Decl. Ex. 24, SMCO Financial Statements

6

December 31, 1995 at SM001345; Lundin Decl. Ex. 25, SMCO Financial Statements December 31, 1996 at SM001368; Lundin Decl. Ex. 26, SMCO Financial Statements December 31, 1997 at SM001380; Lundin Decl. Ex. 27, SMCO Financial Statements December 31, 1998 at SM001392; Lundin Decl. Ex. 28, SMCO Financial Statements December 31, 1999 at SM001406; Lundin Decl. Ex. 29, SMCO Financial Statements for the Six Months Ended June 30, 2000 at SM001420.)

      41.    From 1997 until 2000, when SMCO A.S. and NHC forced SMCO to renege on its obligations under the Non-Qualified Plan, SMCO's financial statements indicated that SMCO had identified specific assets—notes, including the Notes, and insurance policies—to be used to fund its obligations under the Non-Qualified Plan. (Lundin Decl. Ex. 26, SMCO Financial Statements December 31, 1997 at SM001380 ("The funding of this plan is based on mortgage notes receivable from related parties . . . and certain life insurance policies, plus an additional funding as required from time to time as advised by Comprehensive Employee Plans."); Lundin Decl. Ex. 27, SMCO Financial Statements December 31, 1998 at SM001392 (same); Lundin Decl. Ex. 28, SMCO Financial Statements December 31, 1999 at SM001406, Ex. (same); Lundin Decl. Ex. 29, SMCO Financial Statements for the Six Months Ended June 30, 2000 at SM001420 (same); *see also* (Lundin Decl. Ex. 11, Report to the Board of Directors of SMCO at SM000601 ("In funding for this plan, we have assumed that the current outstanding employee mortgages which are valued at $894,644 will be assigned to fund the future obligations under this plan and that the income stream from the mortgages will be applied towards the cost of the plan.").

      42.    SMCO A.S. directed SMCO management to liquidate those assets and use them to pay other obligations, but not SMCO's obligations to the Ostensens. (*See, e.g.,* Lundin

Decl. Ex. 30; SMCO A.S. Board Meeting Minutes dated June 21, 2001; Lundin Decl. Ex. 31, SMCO Inc. Board Meeting Minutes of January 17, 2001.)

43. In 2001, SMCO, A.S. decided to: (1) close SMCO's headquarters, firing SMCO management; (2) form a new company, SCUA Americas, Inc., to take over the business of SMCO's Houston and Miami offices; and (3) sell SMCO's subsidiary, SMQI, Inc. (Lundin Decl. Ex. 1, Minutes of the SMCO AS Board Meeting, dated May 23, 2000.)

44. On June 21, 2001, the SMCO A.S. Board recommended "to the ultimate shareholders that they provide the capital necessary to liquidate" SMCO "based on full payment of all obligations except balances with Mr. Ostensen." (Lundin Decl. Ex. 30, SMCO A.S. Board Meeting Minutes dated June 21, 2001.)

45. When SMCO A.S. and NHC forced SMCO to dissolve, they directed that the Notes and other assets that had been identified to pay SMCO's obligations under the Non-Qualified Plan be used for other purposes. (Lundin Decl. Ex. 31, SMCO Inc. Board Meeting Minutes of January 17, 2001 (discussing liquidation of SMCO assets and obligations to creditors and former employees).)

46. The minutes of the February 27, 2001 meeting of NHC's board reflect that the board agreed in principle that SMCO would be liquidated, with "unsecured creditors generally receive full settlement and that previous management employees receive coverage under the Non Qualified pension plan not to exceed USD 750 000." (Lundin Decl. Ex. 32, NHC Board Meeting Minutes dated February 27, 2001 at NW000187.)

47. The board recognized that this would result in NHC absorbing "an estimated total . . . of USD 3,25 mill." (*Id.*)

48. NHC reaffirmed its decision to assume SMCO's obligations, including

those under the Non-Qualified Plan, on December 13, 2001. (Lundin Decl. Ex. 33, NHC Board Meeting Minutes dated December 13, 2001 at NW000227.)

49.  NHC reported in its 2001 Annual Report that $2 million "was written off" NHC's "2000 accounts as loss relating to the liquidation of SMCO" and that "estimated losses from the liquidation of SMCO" increased in 2001, "mostly due to an increase in estimated pension liabilities, in part due to lower USD interest rates and in part due to errors made in previous calculations of pension liabilities." (Lundin Decl. Ex. 2, NHC 2001 Annual Report at 10.)

50.  NHC's "2001 accounts" were debited $1.6 million "to cover the increased liquidation cost. The losses relating to SMCO" were "divided between the two shareholders of the company on a pro rata basis, namely 2/3 and 1/3.) (*Id.*)

51.  SMCO owes, and has failed to pay, approximately $20,000 to Mr. Ostensen's estate for unused vacation days. (Lundin Decl. Ex. 34, E-mail from Erik Kappelin to Per Gustav Blom (January 12, 2001); Lundin Decl. Ex. 35, E-mail from Tom Midtun to Per Gustav Blom (February 5, 2001) (attaching spreadsheet regarding settlement indicating that SMCO owed Ostensen $444,005.03 for the nonqualified pension plan and $20,002.00 for other liabilities).)

Dated: New York, New York
      October 13, 2005

                                                                   /s/
Jeffrey M. Eilender (Bar. No. CT 25177)
John M. Lundin (Bar No. phv0185)
**SCHLAM STONE & DOLAN**, LLP
26 Broadway, Suite 1900
New York, NY 10004
(212) 344-5400 (Telephone)
(212) 344-7677 (Facsimile)
*Attorneys for Siri Ostensen*

Sharon E. Jaffe (Bar. No. CT. 04623)
**LEVIN & GLASSER, PC**
P.O. Box 1098
Weston, CT 06883
(203) 221-3008 (Telephone)
(203)221-3010 (Facsimile)
*Attorneys for Siri Ostensen*