# EXHIBIT 5

# THE PENSION PLAN FOR EMPLOYEES

# OF SCANDINAVIAN MARINE CLAIMS OFFICE, INC.

## AS AMENDED AND RESTATED

## EFFECTIVE JANUARY 1, 2002

1080163.3

# THE PENSION PLAN FOR EMPLOYEES

## OF

## SCANDINAVIAN MARINE CLAIMS OFFICE, INC.

### Table of Contents

| ARTICLE | | PAGE |
|---|---|---|
| | Preamble | 1 |
| ARTICLE I | DEFINITIONS | 2 |
| ARTICLE II | PARTICIPATION | 11 |
| ARTICLE III | RETIREMENT AND OTHER TERMINATION OF EMPLOYMENT | 12 |
| ARTICLE IV | ACCRUED BENEFIT | 16 |
| ARTICLE V | METHOD OF PAYMENT | 19 |
| ARTICLE VI | MAXIMUM AMOUNT OF RETIREMENT BENEFIT | 29 |
| ARTICLE VII | DESIGNATION OF BENEFICIARIES | 30 |
| ARTICLE VIII | FUNDING AND CONTRIBUTIONS | 31 |
| ARTICLE IX | ADMINISTRATION OF THE PLAN | 33 |
| ARTICLE X | TERMINATION OF EMPLOYER PARTICIPATION | 39 |
| ARTICLE XI | AMENDMENT OR TERMINATION OF THE PLAN AND TRUST | 40 |
| ARTICLE XII | TOP HEAVY PROVISIONS | 46 |
| ARTICLE XIII | SPECIAL LIMITATIONS IMPOSED BY GOVERNMENT REGULATIONS | 52 |
| ARTICLE XIV | GENERAL LIMITATIONS AND PROVISIONS | 53 |
| APPENDIX A | | 58 |
| APPENDIX B | | 59 |

1080163.3

# PENSION PLAN FOR EMPLOYEES
## OF
## SCANDINAVIAN MARINE CLAIMS OFFICE, INC.

## AS AMENDED AND RESTATED EFFECTIVE JANUARY 1, 2002

## PREAMBLE

Scandinavian Marine Claims Office, Inc. (the "Company") established the Pension Plan for Employees of Scandinavian Marine Claims Office, Inc. (the "Plan") and its related trust (the "Trust") effective January 1, 1986, to provide retirement benefits and certain other benefits to eligible employees of the Company and participating affiliated companies. The Plan was amended, effective January 1, 1993, to create a so-called "floor offset" arrangement with the Scandinavian Marine Claims Office, Inc. Money Purchase Pension Plan (the "Money Purchase Plan") under which benefits accrued under this Plan will be offset by benefits accumulated under the Money Purchase Plan. The Plan is hereby amended and restated as of January 1, 2002. Amendments to the Plan incorporated into this restatement are effective as set forth in Appendix B.

The Plan, as so amended and restated, is intended to continue to qualify as a pension plan which meets the qualification and tax exemption requirements of Sections 401(a) and 501(a) of the Internal Revenue Code of 1986, as amended, and any other provisions of applicable law.

Unless otherwise expressly provided herein, or as may be required by applicable law, the rights of any person whose employment terminated or who retired before the effective date of this amendment and restatement, or the effective date of any particular provision, as provided above, shall be determined solely under the terms of the Plan as in effect on the date of his termination of employment or retirement, unless such person is thereafter reemployed and again becomes a Participant.

1080163.3

# ARTICLE I

## DEFINITIONS

When used herein the following terms shall have the following meanings:

1.1     "Accrued Benefit" means as of any date, the amount used to provide the Participant's Retirement Benefit. as determined in accordance with Article IV.

1.2     "Actuarial Equivalent" means. unless otherwise specified in the Plan. a benefit of equivalent value, determined by using a 82% annual interest rate pre and post retirement and the 1983 Male Group Annuity mortality table (83 GAM) set back two (2) years for males and females, post-retirement only; provided. however, that to determine whether the Actuarial Equivalent of a Participant's Retirement Benefit payable at age 65 in the form of a **Straight Life** Annuity exceeds $5,000, the following shall apply:

(a)     for distributions in Plan Years after 1999,

    (i)     the mortality assumption shall be the 1983 Group Annuity Mortality Table prescribed for purposes of Section 417(e)(3)(A)(ii)(I) of the Code, and

    (ii)     the interest rate shall be the greater of 82% or the annual **interest** rate on 30-year Treasury securities as specified in the Internal Revenue Bulletin for December of the year preceding the **calendar** year in which such distribution is made or commences; and

(b)     for distributions in Plan Years prior to 2000,

    (i)     the mortality assumption shall be the 83 GAM set back two (2) years for males and females, post-retirement only, and

    (ii)     the interest rate shall be the greater of 82% or

        (I)     the "applicable interest rate," if the amount (using such rate) is $25,000 or less; or

        (II)     120% of the "applicable interest rate." if the amount exceeds $25,000 (as determined under (i) above).

For purposes of this subsection (b). the "applicable interest rate" shall mean the interest rate or rates which would be used by the PBGC as of the first day of the Plan Year in which a distribution commences, for purposes of determining the present value of Participants' benefits under the Plan if the Plan had terminated on the date distribution commences with insufficient assets to provide benefits guaranteed by the PBGC on that date.

1.3    "Actuary" means the enrolled actuary (within the meaning of ERISA) engaged by the Committee.

1.4    "Affiliate" means any corporation which is included in a controlled group of corporations (within the meaning of Code Section 414(b)) which includes the Company, any trade or business (whether or not incorporated) which is under common control with the Company (within the meaning of Code Section 414(c)), any organization included in the same affiliated service group (within the meaning of Code Section 414(m)) as the Company and any other entity required to be aggregated with the Company pursuant to Code Section 414(o); except that for purposes of applying the provisions of Articles VI and XII with respect to the limitations on benefits, Code Section 415(h) shall apply.

1.5    "Applicable Law" whether capitalized or not, means the Code. ERISA and any other law which governs the Plan, and any regulations, rulings, or other administrative or judicial clarifications thereunder.

1.6    "Beneficiary" means any person or entity validly designated by a Participant pursuant to Article VII to receive the amount. if any, payable under the Plan upon his death, other than those provided under Section 5.5 relating to children's pensions.

1.7    "Board" means the Board of Directors of the Company or a duly authorized committee thereof.

1.8    "Break in Service" means a Plan Year during which an individual has not completed more than 500 Hours of Service, as determined by the Committee in accordance with applicable law. Solely for purposes of determining whether a Break in Service has occurred, an individual shall be credited with the Hours of Service which such individual would have completed but for a maternity or paternity absence, as determined by the Committee in accordance with this Section and applicable law; provided, however, that the total Hours of Service so credited shall not exceed 501 hours and that the individual timely provide the Committee with such information as it shall require. Hours of Service credited for a maternity or paternity absence shall be credited entirely (i) in the Plan Year in which the absence began if such Hours of Service are necessary to prevent a Break in Service in such Plan Year, or (ii) in the following Plan Year. For purposes of this Section, maternity or paternity absence shall mean an absence from work by reason of the individual's pregnancy, the birth of the individual's child or the placement of a child with the individual in connection with adoption of the child by such individual, or for purposes of caring for a child for the period immediately following such birth or placement.

1.9    "Code" means the Internal Revenue Code of 1986, as now in effect or as hereafter amended. All citations to sections of the Code are to such sections as they may from time to time be amended or renumbered.

1.10    "Committee" means the Administrative Committee provided for in Article IX. For purposes of ERISA, the members of the Committee shall be the named fiduciaries of the

Plan with respect to the matters for which they are hereby made responsible under the Plan, and the Committee shall be the administrator of the Plan.

    1.11   "Company" means Scandinavian Marine Claims Office, Inc., or any successor thereto.

    1.12   "Compensation" means a Participant's salary or wages for each Plan Year paid or payable by the Employer, including any contributions made by an Employer on the Participant's behalf for such Plan Year which are excluded from the Participant's income by reason of Code Section 125 or 401(k), and on and after January 1, 2001, Code Section 132(f)(4), but excluding commissions, bonuses, incentive compensation, overtime pay, reimbursement of expenses, directors' fees, severance pay, and deferred compensation. For purposes of any determination under this Plan, Compensation for any calendar year (including calendar years prior to the date of determination) shall exclude any amount in excess of the applicable dollar limit under Code Section 401(a)(17) ($200,000, as adjusted under Code Section 401(a)(17), if the date of determination is before January 1, 1994, and $150,000, as adjusted under Code Section 401(a)(17), if the date of determination is on or after January 1, 1994). For Plan Years prior to January 1, 1997, in determining the Compensation and applying the dollar limitation under Code Section 401(a)(17) for a highly compensated employee (as defined in Code Section 414(q)) who is either a 5% owner of the Employer or one of the 10 most highly compensated employees and is therefore subject to the family aggregation rules of Code Section 414(q)(6), the highly compensated employee's family unit shall be treated as a single employee with one Compensation. The term "family" shall include the highly compensated employee and any employee of the Employer or any Affiliate who is the highly compensated employee's spouse or any lineal descendants of the highly compensated employee who have not attained age 19

before the close of the Plan Year. If as a result of applying the family aggregation rules, the dollar limitation under Code Section 401(a)(17) is exceeded, then such limitation will be allocated among the members of the family unit in proportion to each such member's Compensation, as determined prior to the application of such limitation. On and after December 12, 1994, Compensation for Participants with re-employment rights under Code Section 414(u) shall be determined in accordance with Code Section 414(u)(7).

1.13    "Deferred Retirement Date" means the Participant's date of Retirement after his Normal Retirement Date, as provided in Section 3.2.

1.14    "Disability" means the Participant's inability to perform his customary duties with the Employer as would constitute disability for receiving disability benefits under the Federal Social Security Act and under any long term disability plan maintained by the Employer, as determined by the Committee in accordance with procedures uniformly applicable to all Participants.

1.15    "Early Retirement Date" means the Participant's date of Retirement prior to his Normal Retirement Date, as provided in Section 3.4.

1.16    "Effective Date" of the amended and restated Plan means January 1, 2002.

1.17    "Employee" means any employee of the Employer, excluding any individual who (i) is a nonresident alien, (ii) is included in a unit of employees covered by a collective bargaining agreement which does not provide for his participation in the Plan, (iii) is an employee of an Affiliate which is not an Employer, (iv) is a Leased Employee, (v) serves only as a director of the Board, or (vi) renders service as an independent contractor or as an employee of an independent contractor.

1080163.3

6

1.18  "Employer" means the Company or any Affiliate which, with the consent of the Board, adopts the Plan and Trust by appropriate action and makes participation under the Plan available to its Employees in the manner and to the extent permitted by the Board.  Any Employer which adopts the Plan shall be deemed thereby to appoint the Company, the Committee and the Trustee its exclusive agents to exercise on its behalf all of the power and authority conferred by the Plan or by the Trust and shall make its allocable contributions to the Plan.  The authority of the Company, the Committee and the Trustee to act as such agents shall continue until the Plan is terminated as to such Employer and the relevant Trust assets have been distributed by the Trustee as provided in Article X.  Current Employers are listed on Appendix A.

1.19  "Employment Commencement Date" means the date on which an individual first performs an Hour of Service for the Employer or any Affiliate.

1.20  "ERISA" means the Employee Retirement Income Security Act of 1974, as now in effect or as hereafter amended.

1.21  "Final Average Compensation" means, as of any Plan Year, the average of a Participant's Compensation from the Employer for the 36 consecutive Months of Service (or total Months of Service if less than 36 months) during which the average of the Participant's annual Compensation is the highest.

1.22  "Former Participant" means a Participant who has terminated his employment, whether or not he has received a distribution of his Retirement Benefit.

1.23  "Hour of Service" means each hour for which an individual is directly or indirectly paid or entitled to payment by the Employer or any Affiliate for the performance of

Service (or is treated as performing Service under Section 1.37) including any back pay irrespective of mitigation of any damages.

1.24    "IRS" means the United States Internal Revenue Service.

1.25    "Leased Employee" means any person (other than an employee of the Employer) who pursuant to an agreement between the Employer and any other person (the "leasing organization") has performed services for the Employer (or for the Employer and any Affiliate) on a substantially full-time basis for a period of at least one year, and such services are performed under primary direction or control of the Employer.  Benefits provided for a Leased Employee by the leasing organization which are attributable to services performed for the Employer shall be treated as if provided by the Employer.

1.26    "NKP Pension" means the U.S. dollar equivalent of the Actuarial Equivalent of the pension that would have been payable under the NKP Plan, had it continued in effect, as determined by the Committee on the date of transfer of the assets and liabilities of the NKP Plan to the Plan.

1.27    "NKP Plan" means the Group Pension Insurance Plan of the Company underwritten by NORSK Kollektin Pensionskasse A/S, as in effect on December 31, 1985.

1.28    "Normal Retirement Age" means the date the Employer attains age 65.

1.29    "Normal Retirement Date" means the first day of the month coincident with or next following the Participant's Normal Retirement Age.

1.30    "Participant" means any Employee who participates in the Plan in accordance with Article II.

1.31    "PBGC" means the Pension Benefit Guaranty Corporation.

1080163.3

8

1.32    "Plan" means the Pension Plan for Employees of Scandinavian Marine Claims Office, Inc., as the same may be amended from time to time.

1.33    "Plan Year" means a twelve consecutive month period commencing on January 1st.

1.34    "Reemployment Commencement Date" means the first date that an Employee is credited with an Hour of Service following a Break in Service.

1.35    "Retirement" means, as applicable, a Participant's Normal, Early or Deferred Retirement.

1.36    "Retirement Benefit" means a benefit payable upon retirement or other termination of employment, as provided in Article III.

1.37    "Service" means employment (whether or not as an Employee) with the Employer or with any Affiliate.  To the extent and for the purpose determined by the Committee, under rules uniformly applicable to all Employees similarly situated and in accordance with applicable law (including Department of Labor Regulations Sections 2530.200b-2 (b) and (c)), periods of Service shall include (i) periods of vacation, (ii) periods of absence authorized by the Employer for sickness, temporary disability or personal reasons and (iii) if and to the extent required by the Military Selective Service Act as amended, or any other Federal law, service in the Armed Forces of the United States, and, on and after December 12, 1994, all periods of qualified military service in accordance with Code Section 414(u).

1.38    "Spouse" or "Surviving Spouse" means the individual to whom a Participant or Former Participant is legally married (as determined by the Committee) on the earliest of (i) the date on which payment of benefits commence under the Plan or (ii) the date of the Participant's death.

1080163.3

9

1.39    "Termination of Employment" or words of similar import, means the termination of an Employee's employment with an Employer or Affiliate under circumstances where he is no longer employed by an Employer or Affiliate. Transfer of employment from one Employer or Affiliate to another Employer or Affiliate shall not constitute a termination of employment.

1.40    "Trust" or "Trust Fund" means the trust established by the Company as a part of the Plan.

1.41    "Trust Agreement" means the agreement entered into between the Company and the Trustee to carry out the purposes of the Plan, as the same may be amended from time to time.

1.42    "Trustee" means the trustee or trustees of the Trust.

1.43    "Year of Service" means, except as provided herein, a Plan Year during which an individual completes at least 1,000 Hours of Service, as determined by the Committee in accordance with applicable law. Solely for purposes of determining whether an Employee meets the eligibility requirements of Section 2.1, he shall be credited with a Year of Service for the 12 consecutive month period commencing on his Employment Commencement Date (or Reemployment Commencement Date), or on the first day of any Plan Year thereafter, during which he completes at least 1,000 Hours of Service. Years of Service shall also be credited for any appropriate purpose under the Plan for service recognized for such purpose under the terms of the NKP Plan.

# ARTICLE II

# PARTICIPATION

2.1     Eligibility To Participate.

(a)     Each Employee who was a Participant of the Plan on December 31, 1988 shall continue to be a Participant. Each other Employee shall become a Participant of the Plan on the first January 1st or July 1st on or after January 1, 1989 on which he is at least age 21 and has completed at least one Year of Service.

(b)     An Employee who is eligible to participate in the Plan in accordance with (a) above shall complete and file the appropriate forms with the Committee.  Such forms shall include a Beneficiary designation and an agreement to be bound by all the terms and conditions of the Plan and Trust and any agreement with any other funding agency, including an insurance company, constituting a part of the Plan and Trust.

2.2     Resumption of Participation.  If a Former Participant again becomes an Employee following his Retirement or if any other Former Participant again becomes an Employee prior to incurring a Break in Service, he will again become a Participant on his Reemployment Commencement Date.  If a Former Participant (other than a Former Participant who retired) again becomes an Employee after he has incurred a Break in Service, he will again become a Participant only if he thereafter completes one Year of Service, in which case he will be treated as a Participant from his Reemployment Commencement Date.

2.3     Break in Service.  If a Participant who has no vested right to his Retirement Benefit incurs a Break in Service and if the number of his consecutive Breaks in Service equals or exceeds the greater of 5 or the aggregate number of his Years of Service prior to such Break in Service (excluding any Years of Service previously disregarded under the Break in Service

1080163.3

11

provisions of the Plan) then, in the event that he again becomes an Employee, his Years of Service prior to such Break in Service shall be disregarded and he shall be treated as a new Employee for all purposes of the Plan. In all other cases following a Break in Service, if the Former Participant again becomes an Employee, his Years of Service prior to such Break in Service shall be counted if the Participant completes a Year of Service following his Break in Service.

## ARTICLE III

## RETIREMENT AND OTHER TERMINATION OF EMPLOYMENT

3.1     Normal Retirement.

(a)     A Participant may retire on his Normal Retirement Date.  Notwithstanding any provision herein to the contrary, a Participant shall be 100% vested in his Retirement Benefit upon attaining his Normal Retirement Age.

(b)     A Participant who retires on his Normal Retirement Date shall be entitled to receive a Retirement Benefit, commencing on his Normal Retirement Date and payable in accordance with Article V, equal to his Accrued Benefit determined as of his Normal Retirement Date.  In no event shall a Participant's Retirement Benefit commencing on his Normal Retirement Date be less than the largest Retirement Benefit the Participant could have received if he had retired on any date which could have been his Early Retirement Date and elected to have his Retirement Benefit commence immediately (determined by applying the actual offset determined under Section 4.4 as of his Normal Retirement Date).

3.2     Deferred Retirement.

(a)     The Deferred Retirement Date of a Participant who remains employed beyond his Normal Retirement Date shall be the date on which he terminates his employment.

1080163.3

12

(b)     Subject to Section 5.5. a Participant who retires on a Deferred Retirement Date shall be entitled to receive a Retirement Benefit commencing on the first day of the month following his Deferred Retirement Date and payable in accordance with Article V. equal to the greater of (i) his Accrued Benefit determined as of his Deferred Retirement Date. or (ii) the Actuarial Equivalent of the Retirement Benefit that would have been payable to him at his Normal Retirement Date if he had retired in accordance with Section 3.1. In no event shall a Participant's Retirement Benefit commencing on his Deferred Retirement Date be less than the largest Retirement Benefit the Participant could have received, if he had retired on any date which could have been his Early or Normal Retirement Date and elected to have his Retirement Benefit commence immediately (determined by applying the actual offset determined under Section 4.4 as of his Deferred Retirement Date).

3.3     <u>Disability Before Retirement</u>.

(a)     A Participant who incurs a Disability before his Early Retirement Date and is receiving payments under a long-term disability program maintained by the Employer shall continue to be credited with Years of Service during such Disability (in the same manner as if he had continued in full time employment with the Employer) until the earlier of (i) the date such long-term disability payments cease. or (ii) his Normal Retirement Date. In addition. for purposes of determining the Accrued Benefit of a Participant described in the preceding sentence, such Participant shall be deemed to be receiving Compensation from the Employer during the period of his Disability for which Service is credited at the same rate that was in effect at the commencement of his Disability.

(b)     If a Participant reaches his Normal Retirement Date while on Disability, or recovers from his Disability prior to his Normal Retirement Date, and does not return to the

employ of an Employer or Affiliate immediately upon his recovery, he shall be treated under the Plan as if he had terminated employment or retired as of the earlier of his Normal Retirement Date or the date of such recovery, and his right to benefits, if any, shall be determined under the provisions of this Article III, taking into account the Service credited to him and the Compensation deemed to have been paid to him during the period of his Disability, as provided in (a) above.

(c)     The Committee shall establish such procedures as it deems necessary to evaluate the continued Disability of any Participant, and the cooperation of a Participant with such procedures, including the supplying of any medical information and the submission to medical examination, shall be a condition to the treatment afforded to such Participant under this Section 3.3.

3.4     Early Retirement.

(a)     A Participant who (i) has completed at least 10 Years of Service and has attained age 60, or (ii) has completed at least 3 Years of Service and has attained age 63, may retire on an Early Retirement Date which is the first day of any month prior to his Normal Retirement Date.

(b)     A Participant who retires on an Early Retirement Date shall be entitled to receive a Retirement Benefit, commencing on his Normal Retirement Date and payable in accordance with Article V, equal to his Accrued Benefit determined as of his Early Retirement Date (subject to the provisions of Section 4.4(b)). In no event shall such Retirement Benefit be less than the largest Retirement Benefit the Participant could have received if he had retired on any earlier date which could have been his Early Retirement Date and elected to have his Retirement Benefit commence immediately (determined by applying the actual offset

1080163.3

14

determined under Section 4.4 as of the date on which his Retirement Benefit actually commences).

      (c)    A Participant who retires on an Early Retirement Date may elect, in accordance with procedures established by the committee, to begin receiving payment of his Retirement Benefit on the first day of any month on or after his Early Retirement Date, but not later than his Normal Retirement Date.  The amount of such Retirement Benefit shall be equal to the Retirement Benefit that would be payable at Normal Retirement Date in accordance with Section 3.4(b) above (subject to the provisions of Section 4.4(b)), reduced to its Actuarial Equivalent to reflect commencement prior to the Participant's Normal Retirement Date.  Such an election may be revoked in accordance with procedures established by the Committee.

     3.5    <u>Other Termination of Employment</u>.

      (a)    A Former Participant whose termination of employment occurs prior to his Early Retirement Date, but after completing at least 3 Years of Service (disregarding any such Years of Service credited prior to the Participant's 18th birthday), shall receive a Retirement Benefit, commencing on his Normal Retirement Date (unless he makes an election under (b) below) and payable in accordance with Article V, equal to his Accrued Benefit determined as of the date of his termination of employment (subject to the provisions of Section 4.4(b)).

      (b)    A Former Participant described in (a) above may elect, in accordance with procedures established by the Committee, to have his Retirement Benefit commence on the first day of any month following the later of (i) his termination of employment, and (ii) his attainment of age 60, but prior to his Normal Retirement Date. Such Benefit shall be equal to the Retirement Benefit that would have been payable at Normal Retirement Date (subject to the provisions of

1080163.3

15

Section 4.4(b), reduced to its Actuarial Equivalent to reflect commencement prior to Normal Retirement Date.

3.6     Required Consent.  Notwithstanding any other provision of the Plan to the contrary, to the extent required by applicable law, if the Actuarial Equivalent of the Retirement Benefit of a Participant who retires prior to his Normal Retirement Date is in excess of $5,000, no benefit shall be paid prior to the Participant's Normal Retirement Date without his written consent and, if the Participant is married on the date payment would otherwise commence, the written consent of his Spouse.

## ARTICLE IV
## ACCRUED BENEFIT

4.1     Accrued Benefit.  A Participant's Accrued Benefit as of any date of determination shall be the greater of the annual amounts determined under Sections 4.2 and 4.3 below, reduced, but not below zero, by the amount described in Section 4.4.

4.2     Accrued Benefit Formula.  The annual amount of Accrued Benefit determined under the Section 4.2 for a Participant as of any date of determination is equal to (a) multiplied by (b), where:

(a)     is 2% (1-2/3%, if the date of determination is prior to January 1, 1992) of the Participant's Final Average Compensation; and

(b)     is the Participant's Years of Service as of the date of determination (including fractions thereof for the Plan Year in which the Participant's termination of employment occurs), not in excess of 25 (30, if the date of determination is prior to January 1, 1992).

1080163.3

16

4.3    <u>Minimum Accrued Benefit</u>.  The annual amount of Accrued Benefit determined under this Section 4.3 as of any date of determination is the greatest of:

(i)    the annual amount of the Participant's accrued benefit under the plan formula in effect immediately prior to January 1, 1989, determined as if the Participant had terminated his employment as of December 31, 1988;

(ii)    with respect to a Participant whose Compensation for any calendar year prior to January 1, 1989 would exceed $200,000, but for the application of Code Section 401(a)(17), the annual amount of Accrued Benefit that would be determined under Section 4.2 or Section 4.3(i) if the Participant has terminated his employment as of December 31, 1988;

(iii)    with respect to a Participant whose Compensation for any calendar year prior to January 1, 1994 would exceed $150,000, but for the application of Code Section 401(a)(17), the greatest of annual amount of Accrued Benefit that would be determined under Section 4.2, 4.3(i) or 4.3(ii), if the Participant had terminated his employment as of December 31, 1993; or

(iv)    the amount of his NKP Pension.

4.4    <u>Money Purchase Plan Offset</u>.

(a)    Subject to (b) below, the annual amount of Accrued Benefit determined under Section 4.1 as of any date (before the reduction provided by this Section 4.4) shall be reduced (but not below zero) by the amount of Accrued Benefit that would result from the Actuarial Equivalent of the Participant's Account under the Scandinavian Marine Claims Office, Inc. Money Purchase Pension Plan as of such date, taking into account any contributions to which such Participant is entitled as of such date under such plan, but which have not yet been made.  For purposes of the preceding sentence, in the event that the date of determination of a

Participant's Accrued Benefit occurs after the Participant's Account under the referenced money purchase pension plan has been paid or commenced to be paid, the Actuarial Equivalent of the Participant's Account shall be based on the value of the Participant's Account as of the date such payments were paid or commenced.

(b)     In the event that the date of determination of a Participant's Accrued Benefit, as specified in Article III, is prior to the date such Retirement Benefit is to commence, the offset under this Section 4.4 will be determined in accordance with (a) above by using the value of the Participant's Account under the referenced money purchase pension plan as of the date such Retirement Benefit is to commence. Nothing in this Section 4.4(b) shall affect the determinations under Sections 4.2 and 4.3.

4.5     <u>Break in Service</u>.  If a Former Participant who incurs a Break in Service is reemployed and is treated as a new Employee pursuant to Section 2.3, then, on his subsequent Retirement or termination of employment, his Accrued Benefit shall be based only upon his Service subsequent to his Reemployment Commencement Date.  In all other cases following a Break in Service, a Participant's Accrued Benefit shall be based on all of his Service (provided this does not decrease his Accrued Benefit), reduced by the Actuarial Equivalent of any payments to him before his Reemployment Commencement Date.

4.6     <u>Nonduplication of Benefits</u>.  The Accrued Benefit of a Participant shall be reduced by the Actuarial Equivalent of any benefit provided for the Participant under any defined benefit plan which is qualified under Code Section 401(a), to the extent such benefit is attributable to service credited under such other plan for which benefits are provided under this Plan.

1080163.3

18

## ARTICLE V

## METHOD OF PAYMENT

5.1    Normal Form of Benefits.

(a)    Unmarried Participant. The Retirement Benefit to which an unmarried Participant is entitled under the Plan shall, except as otherwise provided in this Article V, be payable in the form of a Straight Life Annuity as defined in Section 5.2 (a) (i).

(b)    Married Participant. The Retirement Benefit to which a married Participant is entitled under the Plan shall, except as otherwise provided in this Article V, be payable in the form of a Qualified Joint and Survivor Annuity. Such Retirement Benefit shall not be subject to any actuarial reduction or equivalency because it is payable in a different form than the Retirement Benefit described in Section 5.1(a). A "Qualified Joint and Survivor Annuity" means an annuity for the life of the Participant, ending with the payment due for the month in which the Participant dies, and, if the Participant dies leaving a Surviving Spouse, an annuity for the life of such Surviving Spouse equal to 50% of the annuity payable for the life of the Participant, commencing on the first day of the month following the date of the Participant's death and ending with the payment due for the month in which such Surviving Spouse dies. A married Participant may elect, in accordance with Section 5.4, to have his Retirement Benefit paid in one of the forms provided in Section 5.2, in lieu of the Qualified Joint and Survivor Annuity.

5.2    Optional Forms of Benefit.

(a)    Subject to Sections 5.6 and 5.7, in lieu of the form of Retirement Benefit described in Section 5.1, a Participant may elect to receive his Retirement Benefit in any of the optional forms of benefit described below; provided, however, that the Retirement Benefit under

1080163.3

19

such optional forms shall be the Actuarial Equivalent of the Retirement Benefit described in Section 5.1(a) (if the Participant is unmarried) or 5.1(b) (if the Participant is married).

(i)  Straight Life Annuity.  An annuity for the Participant's life, payable in 12 equal monthly installments per year, ending with the payment due for the month in which the Participant dies.

(ii)  Joint and Survivor Annuity.  An adjusted annuity for the Participant's life, payable in 12 equal monthly installments per year, and, after his death, a survivor annuity in the same or a lesser amount of such adjusted annuity payable to his Beneficiary for life.

(iii)  Certain and Life Annuity.  An annuity for the Participant's life, payable in 12 equal monthly installments per year, with a guarantee that if the Participant dies before receiving a specified number of monthly payments (60, 120, 180 or 240), the Beneficiary shall continue to receive monthly payments until the total number of monthly payments made to the Participant and his Beneficiary equals the guaranteed number of monthly payments.

(b)  If the Beneficiary under any of the optional forms described above is not the Participant's Spouse, such optional form shall only be permitted if the Actuarial Equivalent of the benefits allocated to such Beneficiary is less than 50% of the Actuarial Equivalent of the Straight Life Annuity which the Participant could otherwise have received.

(c)  If a Participant elects to receive his Retirement Benefit in the form of a Joint and Survivor Annuity and his joint annuitant dies before the Participant's benefit payments have commenced, then the Participant's election under this Section 5.2 shall be null and void and the Participant shall be entitled to receive the benefit he would have received if no election had been made under this Section 5.2.

1080163.3

20

(d)     If a Participant elects to receive his Retirement Benefit in the form of a Joint and Survivor Annuity and dies before payment of his benefit has commenced, then his joint annuitant shall not be entitled to receive any benefit under the Joint and Survivor Annuity; provided, however, that if the Participant dies while in active service after his Normal Retirement Date without leaving a Surviving Spouse, payment of his benefit under the Joint and Survivor Annuity shall be deemed to have commenced on the date of his death.

5.3     Preretirement Survivor Annuity.

(a)     Subject to Section 5.7, a Preretirement Survivor Annuity shall be paid to the Surviving Spouse of a Participant or Former Participant who dies after earning a nonforfeitable right to his Accrued Benefit in accordance with Article III, but before payment of his Retirement Benefit has commenced. A "Preretirement Survivor Annuity" means a life annuity to the Participant's Surviving Spouse, if any, payable in 12 equal monthly installments per year, equal to 50% of the reduced annuity which would have been payable for the life of the Participant under the circumstances described in (b) or (c) under the terms of Section 5.2(a)(ii) if the Participant were unmarried and had elected the Joint and Survivor Annuity option with a 50% continuation and had designated his surviving spouse as his Beneficiary. Notwithstanding the foregoing, if a Participant who is otherwise described in the preceding provisions of this Section 5.3(a) married his spouse prior to attaining age 60, provisions of Section 5.3(d) shall apply.

(b)     In the case of a Participant or Former Participant who dies on or after the first date which could have been his Early Retirement Date but before payment of his Retirement Benefit has commenced, the Preretirement Survivor Annuity shall be based on the Joint and Survivor Annuity which would have been payable if the Participant had retired on the day

1080163.3

21

before his date of death, was unmarried, and had elected a Joint and Survivor Annuity Option with a 50% continuation commencing on the first day of the month coincident with or following the date of his death.

(c)     In the case of a Participant or Former Participant who dies before the first date which could have been his Early Retirement Date, the Preretirement Survivor Annuity shall be based on the Joint and Survivor Annuity which would have been payable if the Participant had terminated employment on the day before his date of death (or in the case of a Former Participant, the date of his termination of employment), was unmarried, survived until the first date which would have been his Early Retirement Date, immediately began receiving payments under a Joint and Survivor Annuity Option with a 50% continuation and died on the day following such Early Retirement Date.

(d)     If a Participant described in Section 5.3(a) married his spouse prior to attaining age 60, the Preretirement Survivor Annuity shall be determined in the manner described in (a), (b) and (c) above, but assuming instead, that the Participant was in fact, married at the time of his death and the provisions of Section 5.1(b) applied to the payment of his Retirement Benefit instead of those of Section 5.2(a)(ii).

(e)     Payment of a Preretirement Survivor Annuity shall commence on the first day of the month following the later of (i) the first month in which the Participant could have retired on an Early Retirement Date or (ii) the month in which the Participant dies; provided, however, to the extent required by applicable law, it shall not commence to be paid prior to the date which was or would have been the Participant's Normal Retirement Date (had the Participant lived) without the written consent of the Participant's Surviving Spouse. In the absence of consent, payment of the Preretirement Survivor Annuity shall not be made until the

1080163.3

22

earlier of (i) the first day of the month following receipt of the required consent by the Committee or (ii) the date which would have been the Participant's Normal Retirement Date.

5.4    Waiver of Qualified Joint and Survivor Annuity.  The Committee shall furnish or cause to be furnished to each married Participant, an explanation of the Qualified Joint and Survivor Annuity not less than 30 days and not more than 90 days prior to the Participant's annuity starting date under procedures established by the Committee in accordance with applicable law.  A Participant or Former Participant may, with the written consent of his Spouse (unless the Committee makes a written determination in accordance with applicable law that no such consent is required), elect in writing to receive his Retirement Benefit in one of the optional forms described in Section 5.2 in lieu of a Qualified Joint and Survivor Annuity.  Any such election in accordance with this Section 5.4 must be made within a period of time no less than 30 days and no more than 90 days prior to his annuity starting date; provided, however, that if the Committee notifies the Participant before or after his annuity starting date that he has the right to a 30 day period in which to consider his election, and if the Participant elects (with the written consent of his Spouse, if any) to commence distribution more than seven days after such notice is given, such election shall be effective.  Any election made pursuant to this Section 5.4 may be revoked by a Participant without spousal consent at any time up to the annuity starting date, or if later, until the expiration of the seven day period described in the immediately preceding sentence.  For purposes of this Section  5.4, a Participant's "annuity starting date" means (i) the first day of the first period for which an amount is payable as an annuity or (ii) in the case of a benefit not payable as an annuity, the first day on which all events have occurred which entitle the Participant to such benefit.

5.5    Children's Pension.

1080163.3

23

(a)     Upon the death of a Participant whose Surviving Spouse is entitled to a Preretirement Survivor Annuity in accordance with Section 5.3, or whose Surviving Spouse would be entitled to such a benefit if the Participant had been married on his date of death, a pension shall be payable to each child of the Participant who has not attained age 18 as of the Participant's date of death. Such pension shall be payable from the first day of the month in which the Participant's death occurred up to and including the month in which the child attains age 18; provided, however, that a child who has become totally and lastingly disabled before attaining age 18 shall receive such a pension so long as the disability lasts. In no event shall the children's pension be payable beyond the month following the month in which the child's death occurred.

(b)     The children's pension shall be equal to (i) in the case of one child, 40% of the Preretirement Survivor Annuity under Section 5.3, and (ii) in the case of each additional child, 20% of the Preretirement Survivor Annuity under Section 5.3. The children's pension shall be apportioned equally among all the children entitled thereto. Notwithstanding the foregoing, in no event shall the payments made under this Section, when added to the payments under Section 5.3, exceed the applicable limitations of Article VI.

(c)     Notwithstanding any other provision of the Plan to the contrary, effective February 7, 2002, the children's pension provided in this Section 5.5 shall cease to be available under the Plan.

5.6     Limitation on Distributions.

(a)     Notwithstanding any other provision of the Plan and subject to Section 14.5, unless otherwise provided by law any benefit payable to a Participant shall commence (in accordance with Code Section 401(a)(9)) no later than the April 1st of the calendar year

1080163.3

24

following the calendar year in which such Participant attains age 70½ (the "required beginning date"). If not paid in a single sum payment, such benefits shall be paid, in accordance with applicable law, (i) over the life of the Participant, (ii) over the life of the Participant and a designated Beneficiary, (iii) over a period not extending beyond the life expectancy of the Participant, or (iv) over a period not extending beyond the joint life expectancies of the Participant and a designated Beneficiary. The minimum distribution required for the Participant's first distribution calendar year must be made on or before the Participant's required beginning date. The minimum distribution for each other calendar year, including the minimum distribution for the year in which the Participant's required beginning date occurs, must be made on or before December 31st of the distribution calendar year. Life expectancies for purposes of this Section 5.6 shall be recalculated annually in accordance with applicable law. With respect to distributions under the Plan made in calendar years beginning on or after January 1, 2002, the Plan will apply the minimum distribution requirements of Code Section 401(a)(9) in accordance with the Treasury regulations under Code Section 401(a)(9) that were proposed January 2001, notwithstanding any provision of the Plan to the contrary.

(b)    If distribution of a Participant's benefit has commenced prior to a Participant's death, and such Participant dies before his entire benefit is distributed to him, distribution of the remaining portion of the Participant's benefit to his Beneficiary shall be made at least as rapidly as under the method of distribution in effect as of the date of the Participant's death.

(c)    If a Participant dies before distribution of his benefit has commenced, distributions to his Beneficiary shall be made on or before December 31st of the calendar year which contains the fifth anniversary of the date of such Participant's death; provided, however, at

1080163.3

25

the Beneficiary's irrevocable election, duly filed with the Committee before the applicable commencement date set forth in the following sentence, any distribution to a Beneficiary may be made over a period not extending beyond the life expectancy of the Beneficiary. Such distribution shall commence no later than the December 31st of the calendar year immediately following the calendar year in which the Participant dies or, in the event such Beneficiary is the Participant's Surviving Spouse, on or before December 31st of the calendar year in which such Participant would have attained age 70½, if later (or, in either case, on any later date prescribed by applicable law). If such Participant's Surviving Spouse dies after the Participant, but before distributions to such Surviving Spouse commence, this subsection (c) shall be applied to require payment of any further benefits as if such Surviving Spouse were the Participant.

(d)    Pursuant to applicable law, any benefit paid to a child shall be treated as if paid to a Participant's Surviving Spouse if such amount will become payable to such Surviving Spouse on the child's attaining majority, or other designated event permitted by applicable law.

(e)    Notwithstanding the foregoing and subject to Plan Section 14.5, unless the Participant elects a later date, payment of benefits under the Plan shall commence no later than the 60th day after the latest of the last day of the Plan Year in which the Participant (i) attains his Normal Retirement Date, (ii) attains his 10th anniversary of Plan participation or (iii) terminates his employment.

5.7    <u>Cash Outs</u>.  Notwithstanding any other provisions of the Plan and in accordance with applicable law, payment of any vested Retirement Benefit with an Actuarial Equivalent value of $5,000 or less shall be made immediately in a single sum payment in full settlement of the Plan's liability therefor; provided, however, that no such single sum payment shall be made after benefits have commenced without the consent of the Participant and, if the Participant is

1080163.3

26