married at the time such payment would otherwise commence, the consent of his Spouse or, if the Participant has died, his Surviving Spouse. For purposes of this Section 5.7, if the Actuarial Equivalent of a Participant's vested Retirement Benefit is zero, such Participant shall be deemed to have received a distribution of his vested Accrued Benefit.

5.8     Reemployment Following Retirement. Except as may be otherwise required in Section 5.8 and notwithstanding any other provisions of this Article V, if a Former Participant whose Retirement Benefit is in pay status again becomes an Employee, payment of his Retirement Benefit shall, to the extent permitted by applicable law, be suspended until his subsequent termination of employment or Retirement, at which time his Retirement Benefit shall be recomputed on the basis of his Service and other factors both before and after his reemployment, but shall be reduced by the Actuarial Equivalent of any benefit paid prior to his reemployment; provided; however, that his Retirement Benefit shall in no event be less than the Retirement Benefit payable prior to his reemployment. To the extent that the application of this Section 5.8 constitutes a suspension of benefits, such suspension shall be in accordance with ERISA, the Code and applicable law.

5.9     Direct Rollover. This Section 5.9 applies to distributions made on or after January 1, 1993. Solely to the extent required under applicable law and regulations, and notwithstanding any provision of the Plan to the contrary that would otherwise limit a Distributee's election under this Section 5.9, a Distributee may elect, at the time and in the manner prescribed by the Committee, to have any portion of an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the Distributee in a Direct Rollover.

For purposes, of this Section 5.9, the following terms shall have the following meanings:

1080163.3

(i)    Eligible Rollover Distribution:  Solely to the extent required under applicable law and regulations. an Eligible Rollover Distribution is any distribution of all or any portion of the balance to the credit of the Distributee, except that an Eligible Rollover Distribution does not include: any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's designated beneficiary, or for a specified period of ten years or more; any distribution to the extent such distribution is required under Section 401(a)(9) of the Code; and the portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities).

(ii)    Eligible Retirement Plan: An Eligible Retirement Plan is an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 408(b) of the Code, an annuity plan described in Section 403(a) of the Code, or a qualified trust described in Section 401(a) of the Code, that accepts the Distributee's Eligible Rollover Distribution.  However, in the case of an Eligible Rollover Distribution to a surviving spouse, an Eligible Retirement Plan is an individual retirement account or individual retirement annuity.  For purposes of this Section 5.9(ii). for distributions made after December 31, 2001, an Eligible Retirement Plan shall also mean an annuity contract described in Code Section 403(b) and an eligible plan under Code Section 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred to such plan from this Plan. This definition of Eligible Retirement Plan shall also apply in the case of a distribution to a

surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in Code Section 414(p).

(iii)    Distributee:  A Distributee includes an employee or former employee.  In addition, the employee's or former employee's spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in Section 414(p) of the Code, are Distributees with regard to the interest of the spouse or former spouse.

(iv)    Direct Rollover:  A Direct Rollover is a payment by the Plan to the Eligible Retirement Plan specified by the Distributee.

## ARTICLE VI

## MAXIMUM AMOUNT OF RETIREMENT BENEFIT

6.1    <u>Applicable Benefits</u>.  The provisions of this Article VI shall govern the benefits to which it is applicable notwithstanding any other provision of the Plan.  The benefits to which this Article VI is applicable are (i) any annuity payable to a Participant for life as part of a Qualified Joint and Survivor Annuity or as part of a Joint and Survivor Annuity elected by the Participant under Section 5.2 and having the effect of a qualified joint and survivor annuity within the meaning of Code Section 401(a)(11) (excluding in either case any survivor annuity payable to a Surviving Spouse thereunder), (ii) any Straight Life Annuity payable to a Participant under Section 5.1 or elected by a Participant under Section 5.2, (iii) any other optional form of benefit payment elected by a Participant (including both the annuity payable to the Participant and any other annuity or benefit payable thereunder), and any Children's Pension payable in accordance with Section 5.5.

1080163.3

6.2    Limitations on Benefits.  The benefits to which this Article VI is applicable may not exceed the limitations set forth in Code Section 415, which are incorporated by reference herein.  For these purposes, the "limitation year" means the Plan Year.  If prior to January 1, 2000, a Participant also participates in any defined contribution plan (as defined in Code Sections 414(i) and 415(k)) maintained by the Employer or any Affiliate, in the event that in any Plan Year the sum of the Participant's defined benefit fraction (as defined in Code Section 415(e)(2)) and the Participant's defined contribution fraction (as defined in Code Section 415(e)(3)) would otherwise exceed 1.0, then the benefit payable under this Plan shall be reduced so that the sum of such fractions in respect of that Participant will not exceed 1.0.  If the above reduction does not ensure that the limitation set forth in this Section 6.2 is not exceeded, then the annual additions (as defined in Code Section 415(c)(2)) to any defined contribution plan maintained by the Employer or any Affiliate in which the Participant participates, shall be reduced in accordance with the provisions of that plan, but only to the extent necessary to ensure that such limitation is not exceeded.  If a Participant also participates in another defined benefit plan (as defined in Code Sections 414(j) and 415(k)) maintained by the Employer or any Affiliate, in the event that in any Plan Year such Participant's aggregated accrued benefit under such plans exceeds the applicable limits under Code Section 415, the benefit payable under such other plan shall be reduced to the extent necessary to comply with such limits.

## ARTICLE VII

## DESIGNATION OF BENEFICIARIES

7.1    Beneficiary Designation.  Each Participant shall file with the Committee a written designation of one or more persons as the Beneficiary who shall be entitled to receive the

1080163.3

30

amount, if any, payable under the Plan upon his death. Subject to the requirements of Article V, a Participant may from time to time revoke or change his Beneficiary designation without the consent of any prior Beneficiary by filing a new designation with the Committee. Notwithstanding the foregoing, if the Participant is married, his Spouse must consent in writing to the designation of a Beneficiary other than the Participant's Spouse (unless the Committee makes a written determination in accordance with applicable law that no such consent is required). The last such designation received by the Committee shall be controlling; provided, however, that no designation, or change or revocation thereof, shall be effective unless received by the Committee prior to the Participant's death, and in no event shall it be effective as of a date prior to such receipt.

7.2    <u>Lack of Designated Beneficiary</u>. If no valid Beneficiary designation is in effect at the time of a Participant's death, or if no validly designated Beneficiary survives the Participant or if each surviving validly designated Beneficiary is legally impaired or prohibited from taking, then the Participant's Beneficiary shall be his Surviving Spouse, if any, or if the Participant has no Surviving Spouse, then his estate. If the Committee is in doubt as to the right of any person to receive such amount, it may direct the Trustee to retain such amount, without liability for any interest thereon, until the rights thereto are determined, or the Committee may direct the Trustee to pay such amount into any court of appropriate jurisdiction and such payment shall be a complete discharge of the liability of the Plan and the Trust therefor.

## ARTICLE VIII

## FUNDING AND CONTRIBUTIONS

8.1    <u>Contributions</u>. Subject to the provisions of Articles X and XI, the Employer shall contribute to the Trust during each Plan Year in accordance with Code Section 412 (m), the

1080163.3

amounts recommended by the Actuary to the Committee as necessary to maintain the Plan on a sound actuarial basis, in accordance with ERISA and the Code. The Committee shall arrange for the establishment and maintenance by the Actuary, or in accordance with his recommendations, of such funding accounts as are required by ERISA.

8.2    Actuarial Valuation.  The Committee shall adopt and may change from time to time, in accordance with the provisions of ERISA and the Code, such actuarial assumptions and methods as are recommended by the Actuary for purposes of actuarial valuations of the Plan. , The Actuary shall make an annual actuarial valuation of the Plan and shall estimate the contributions required under Section 8.1 on the basis thereof.  At least once in each three-year period the Actuary shall make an actuarial study of the mortality, service and compensation experience of the Participants of the Plan and the investment experience of the Plan, including such calculations as may be necessary to determine whether the Plan is adequately funded, and shall report the results of its study to the Committee.  Prior to termination of the Plan, forfeitures of benefits arising from termination of employment, death or any other reason under the Plan shall not be applied to increase the benefits that any Participant would otherwise be entitled to receive under the Plan, but may be anticipated in estimating costs under the Plan and shall be applied to reduce the Employer's contributions under the Plan.

8.3    Trustee.  All monies, securities or other property received as contributions under the Plan shall be delivered to the Trustee under the Trust, to be managed, invested, reinvested and distributed in accordance with the Plan, the Trust and any agreement with an insurance company or other financial institution constituting a part of the Plan and Trust and the investment guidelines, if any, prescribed by the Committee and communicated to the Trustee.

1080163.3

8.4    Plan Expenses.  The expenses of administering the Plan, including (i) the fees and expenses of any employee and of the Trustee for the performance of their duties under the Trust, (ii) the expenses incurred by the members of the Committee in the performance of their duties under the Plan (including reasonable compensation for any legal counsel, certified public accountants, actuary and any agents and cost of services rendered in respect of the Plan) and (iii) all other proper charges and disbursements of the Trustee or the members of the Committee (including settlements of claims or legal actions approved by counsel to the Plan) are to be paid out of the Trust unless the Employer pays such expenses directly in such proportions as shall be determined by the Committee.  In estimating costs under the Plan, administrative costs may be anticipated.

8.5    Exclusive Benefit Rule.  Prior to the satisfaction of all liabilities with respect to Participants and their Beneficiaries, the assets of the Trust shall not inure to the benefit of any Employer and shall be held for the exclusive purpose of providing benefits to Participants and/or their Beneficiaries and for defraying the reasonable expenses of administering the Plan. Notwithstanding the foregoing, (i) any portion of an Employer's contribution which is made by virtue of a mistake of a fact shall be returned to the Employer within one year after the payment of the contribution; and (ii) each Employer's contribution is conditioned upon the deductibility of the contribution for federal income tax purposes under Code Section 404 and, to the extent any such contribution is disallowed as a deduction, such contribution (to the extent disallowed) shall be returned to the Employer within one year of the disallowance.

## ARTICLE IX

## ADMINISTRATION OF THE PLAN

9.1    The Committee.

1080163.3

33

(a)    The Plan shall be administered by a Committee which shall have general responsibility for the administration and interpretation of the Plan (including, but not limited to, complying with applicable reporting and disclosure requirements, establishing and maintaining Plan records, issuing instructions to the Trustee regarding the benefits that are to be paid from the Trust Fund to Participants and Beneficiaries and adopting amendments to the Plan as described in Section 11.1) and may exercise such other rights and powers as may be specifically granted to it herein or by the Board. The Committee shall engage the Actuary and such certified public accountants, who may be accountants for the Company, as it shall require or may deem advisable for purposes of the Plan.

(b)    The Committee shall periodically review the investment performance and methods of the Trustee and any other funding agency, including any insurance company, under the Plan and may appoint and remove or change the Trustee and any such funding agency. The Committee shall have the power to appoint or remove one or more investment managers and to delegate to such manager authority and discretion to manage (including the power to acquire and dispose of) the assets of the Plan, provided that (i) each manager with such authority and discretion shall be either a bank, an insurance company or a registered investment adviser under the Investment Advisers Act of 1940 and shall acknowledge in writing that it is a fiduciary with respect to the Plan and (ii) the Committee shall periodically review the investment performance and methods of each manager with such authority and discretion. The Committee shall determine any requirements and objectives of the Plan (including any interest rate or other actuarial assumptions) which may be pertinent to the investment of Plan assets and shall establish investment standards and policies incorporating such requirements and objectives and communicate the same to the Trustee (or other funding agencies under the Plan). If

1080163.3

34

annuities are to be purchased under the Plan. the Committee shall determine what contracts should be made available to terminated Participants or purchased by the Trust.

9.2   <u>Composition of the Committee</u>. The Committee shall consist of three or more members, each of whom shall be appointed by, shall remain in office at the will of. and may be removed, with or without cause, by the Board. Any member of the Committee may resign at any time. No member of the Committee shall be entitled to act on or decide any matter relating solely to himself or any of his rights or benefits under the Plan. The members of the Committee shall not receive any special compensation for serving in their capacities as members of the Committee but shall be reimbursed for any reasonable expenses incurred in connection therewith. Except as otherwise required by ERISA, no bond or other security need be required by the Committee or any member thereof in any jurisdiction. Any person may serve on the Committee and any member of the Committee, any sub-committee or agent to whom the Committee delegates any authority, and any other person or group of persons, may serve in more than one fiduciary capacity (including service both as a trustee and administrator) with respect to the Plan.

9.3   <u>Indemnity</u>. To the maximum extent permitted by law, no member of the Committee shall be personally liable by reason of any contract or other instrument executed by him or on his behalf in his capacity as a member of such Committee nor for any mistake of judgment made in good faith, and the Company shall indemnify and hold harmless, directly from its own assets (including the proceeds of any insurance policy the premiums of which are paid from the Company's own assets), each member of the Committee and each other officer, employee, or director of the Company to whom any duty or power relating to the administration or interpretation of the Plan or to the management and control of the assets of the Plan may be

1080163.3

delegated or allocated, against any cost or expense (including counsel fees) or liability (including any sum paid in settlement of a claim with the approval of the Company) arising out of any act or omission to act in connection with the Plan unless arising out of such person's own fraud or bad faith.

9.4    Services to the Plan.  The Committee may arrange for the engagement of such legal counsel, who may be counsel for the Company, and make use of such agents and clerical or other personnel as they each shall require, or may deem advisable for purposes of the Plan.  The Committee may rely upon the written opinion of such counsel and the Actuary and accountants engaged by the Committee and may delegate to any such agent or to any sub-committee or member of the Committee its authority to perform any act hereunder, including without limitation those matters involving the exercise of discretion, provided that such delegation shall be subject to revocation at any time at the discretion of the Committee.  The Committee shall report to the Board, at such times as shall be specified by the Board, with regard to the matters for which it is responsible under the Plan.

9.5    Action of the Committee.  The Committee shall elect or designate its own Chairman, establish its own procedures and the time and place for its meetings, and provide for the keeping of minutes of all meetings.  A majority of the members of a Committee shall constitute a quorum for the transaction of business at a meeting of the Committee.  Any action of the Committee may be taken upon the affirmative vote of a majority of the members of the Committee at a meeting or, at the direction of its Chairman, without a meeting by mail, telegraph or telephone, provided that all of the members of the Committee are informed by mail or telegraph of their right to vote on the proposal and of the outcome of the vote thereon.

1080163.3

9.6     Committee Records.  The Committee shall appoint an individual who shall cause to be kept full and accurate accounts of receipts and disbursements of the Plan, and shall cause to be deposited all funds of the Plan to the name and credit of the Plan, in such depositories as may be designated by the Committee.  Such individual shall cause to be disbursed the monies and funds of the Plan when so authorized by the Committee and shall generally perform such other duties as may be assigned to him from time to time by the Committee.  All demands for money of the Plan shall be signed by such officer or officers or such other person or persons as the Committee may from time to time designate in writing.

9.7     Claims Procedure.

(a)     All claims for benefits under the Plan shall be submitted to, and within a reasonable period of time, decided in writing by the Committee.  Written notice of the decision on each such claim shall be furnished reasonably promptly to the claimant.  If the claim is wholly or partially denied, written notice of the denial shall be furnished within 90 days after receipt of the claim; provided, however, that, if special circumstances require an extension of time for processing the claim, an additional 90 days from the end of the initial period shall be allowed for processing the claim, in which event the claimant shall be furnished with a written notice of the extension prior to the termination of the initial 90-day period indicating the special circumstances requiring an extension.  Such written notice shall set forth an explanation of the specific findings and conclusions on which such denial is based.

(b)     A claimant may review all pertinent documents and may request a review by the Committee of such a decision denying the claim.  Such a request shall be made in writing and filed with the Committee within 60 days after delivery to the claimant of written notice of the decision. Such written request for review shall contain all additional information which the

1080163.3

37

claimant wishes the Committee to consider. The Committee may hold any hearing or conduct any independent investigation which it deems necessary to render its decision. and the decision on review shall be made as soon as possible after the Committee's receipt of the request for review. Written notice of the decision on review shall be furnished to the claimant within 60 days after receipt by the Committee of a request for review, unless special circumstances require an extension of time for processing, in which event an additional 60 days shall be allowed for review and the claimant shall be so notified in writing. Such notice of denial shall include specific reasons for such decision. For all purposes under the Plan. such decisions on claims (where no review is requested) and decisions on review (where review is requested) shall be final, binding and conclusive on all interested persons as to any matter of fact or interpretation relating to the Plan.

9.8     Communications.  Any notice, election, application, instruction, designation or other form of communication required to be given or submitted by any Participant, other Employee or Beneficiary shall be in such form as is prescribed from time to time by the Committee, sent by first class mail or delivered in person, and shall be deemed to be duly given only upon actual receipt thereof by the Committee. Any notice, statement, report and other communication from the Employer or the Committee to any Participant, other Employee or Beneficiary required or permitted by the Plan shall be deemed to have been duly given when delivered to such person or mailed by first class mail to such person at his address last appearing on the records of the Employer or the Committee. Each person entitled to receive a payment under the Plan shall file in accordance herewith his complete mailing address and each change therein. A check or communication mailed to any person at his address on file with the Employer or the Committee shall be deemed to have been received by such person for all

1080163.3

purposes of the Plan, and no employee or agent of the Employer or member of the Committee shall be obliged to search for or ascertain the location of any such person except as required by ERISA. If the Committee is in doubt as to whether payments are being received by the person entitled thereto, it may, by registered mail addressed to such person at his address last known to the Committee notify such person that all future payments will be withheld until such person submits to the Committee his proper mailing address and such other information as the Committee may reasonably request.

9.9    Information From Participant. Each Participant shall file with the Committee such pertinent information concerning himself and his Beneficiary, and each Beneficiary shall file with the Committee such information concerning himself, as the Committee may specify, and in such manner and form as the Committee may specify or provide, and no Participant or Beneficiary shall have the right or be entitled to any benefits or further benefits under the Plan unless such information is filed by him or on his behalf.

# ARTICLE X
## TERMINATION OF EMPLOYER PARTICIPATION

10.1    Right of Termination. Any Employer may terminate its participation in the Plan by giving the Committee prior written notice specifying a termination date which shall be the last day of a month at least 60 days subsequent to the date such notice is received by the Committee. The Committee may terminate any Employer's participation in the Plan, as of any termination date specified by the Committee, for the failure of the Employer to make proper contributions or to comply with any other provision of the Plan and shall terminate an Employer's participation upon complete and final discontinuance of the Employer's contributions.

1080163.3

10.2    <u>Rights of Participants on Termination</u>.  To the maximum extent permitted by ERISA, the rights of Participants no longer employed by the Employer and Former Participants and their Beneficiaries and Surviving Spouses shall be unaffected by a termination of the Plan as to any Employer. Subject to the provisions of Section 11.3, the benefits provided under the Plan with respect to each Participant in service with such Employer as of the termination date will be paid or forfeited in accordance with the Plan as if such termination had not occurred, except that the Committee may direct the Trustee to segregate such portion of the assets of the Trust (the "Distributable Reserve") as the Actuary shall determine to be properly allocable in accordance with ERISA to the active employees of such Employer and direct the Trustee to apply the Distributable Reserve for the benefit of the Participants employed by the Employer as of the termination date in such manner as the Committee shall determine including, without limitation, payment to such Participants in cash lump sums or the purchase of immediate or deferred annuities, a transfer to a successor employee benefit plan which is qualified under Code Section 401(a), or any combination thereof; provided, however, that in the event of any transfer of assets to a successor employee benefit plan, the provisions of Section 11.7 will apply.  Any such payments or transfers of the Distributable Reserve shall constitute a complete discharge of all liabilities under the Plan with respect to such Employer's participation in the plan and any Participant then employed by such Employer. To the maximum extent permitted by ERISA, the termination of the Plan as to any Employer shall not in any way affect any other Employer's participation in the Plan.


# ARTICLE XI

# AMENDMENT OR TERMINATION OF THE PLAN AND TRUST

1080163.3

11.1    Right of Amendment or Termination.

(a)    Subject to (b) and (c) below, the Board reserves the right at any time to amend, suspend or terminate the Plan, any contributions thereunder, the Trust or any contract issued by an insurance carrier forming a part of the Plan, in whole or in part and for any reason and without the consent of any Employer, Participant, Beneficiary or Surviving Spouse; provided, however, that the Committee may adopt amendments which do not materially affect the cost of the Plan and which may be necessary or appropriate to facilitate the administration, management or interpretation of the Plan or to conform the Plan thereto, to qualify or maintain the Plan and Trust as a plan and trust meeting the requirements of Code Sections 401(a) and 501(a) or any other provision of applicable law (including ERISA), and may exercise such additional powers and authority as may be granted by the Board from time to time.  Each Employer by its adoption of the Plan shall be deemed to have delegated this authority to the Board and the Committee.

(b)    No amendment or modification shall be made which would retroactively impair any rights to any benefit under the Plan which any Participant, Beneficiary or Surviving Spouse would otherwise have had at the date of such amendment by reason of the contributions theretofore made, except to such extent as may be necessary or appropriate to qualify or maintain the Plan and Trust as a plan and trust meeting the requirements of Code Sections 401(a) and 501(a) or any other provision of applicable law (including ERISA), or make it possible for any part of the funds of the Plan (other than such part as is required to pay taxes, if any, and administrative expenses as provided in Section 8.4) to be used for or diverted to any purposes other than for the exclusive benefit of Participants and their Beneficiaries and Surviving Spouses prior to the satisfaction of all liabilities with respect thereto.

1080163.3

(c)    Any amendment, modification, suspension or termination of any provisions of the Plan may be made retroactively if necessary or appropriate to qualify or maintain the Plan and Trust as a plan and trust meeting the requirements of Code Sections 401(a) and 501(a) or any other provision of, applicable law (including ERISA).

11.2    Notice.    Notice of any amendment, modification, suspension or termination of the Plan shall be given by the Board or the Committee, whichever adopts the amendment, to the other and to the Trustee and all Employers and, where and to the extent required by law, to Participants and other interested parties.

11.3    Plan Termination.

(a)    Upon termination of the Plan, no amount shall thereafter be payable under the Plan to or in respect of any Participant except as provided in this Article XI, and to the maximum extent permitted by ERISA, transfers or distributions of the assets of the Plan as provided in this Article XI shall constitute a complete discharge of all liabilities under the Plan. The Committee shall remain in existence and all of the provisions of the Plan which in the opinion of the Committee are necessary for the execution of the Plan and the distribution or transfer of the assets of the Plan shall remain in force.  All determinations and notifications referred to in this Article XI shall be in form and substance satisfactory to counsel for the Plan.

(b)    If the termination of the Plan does not constitute a plan termination for purposes of Title IV of ERISA, the assets of the Plan shall be applied for the benefit of Participants, Former Participants, Beneficiaries and Surviving Spouses in such manner as the Committee shall determine; provided, however, that in the event of any transfer of assets a successor employee benefit plan the provisions of Section 11.7 will apply.

11.4    Distribution on Termination.

1080163.3

42

(a)     If the termination of the Plan constitutes a plan termination for purposes of Title IV of ERISA, then the rights of all Participants to their Retirement Benefits accrued to the date of such termination shall thereupon be nonforfeitable, but only to the extent that such Retirement Benefits have then been funded by contributions made prior to such termination and that funds are available to provide such Retirement Benefits upon the allocations hereinafter provided this Section 11.4.

(b)     Upon the lapse of the period within which the PBGC may object, and assuming no such objection has occurred, the assets of the Plan which remain after reservation of an amount sufficient to pay all expenses of final administration shall be allocated, to the extent sufficient, in the following order of priority:

(i)     To provide for the benefits payable under Article V to or in respect of Participants who retired or died, who could have retired, or who, having terminated employment, either began receiving payments of such benefits or could have begun receiving such payments if they had not elected to defer commencement of such payments, at least three years prior to the termination date, determined in each case on the basis of the provisions of the Plan at any time during the five-year period ending on the termination date when such benefits were or would have been the lowest and without regard to any increases in such benefits which accrued less then three years prior to the termination date; then

(ii)     To provide all other benefits under the Plan which are guaranteed by the PBGC under Title IV of ERISA, or which would be guaranteed if ERISA Sections 4022(b)(5) and 4022(b)(6) were not applicable, but which have not been allocated under (i) above; then

(iii)     To provide all other benefits which had become nonforfeitable under the Plan prior to the termination date but which have not been allocated under (i) or (ii) above; then

1080163.3

43

(iv)    To provide all other benefits which had accrued under the Plan prior to the termination date but which have not been allocated under (i), (ii) or (iii) above; then

(v)    Any surplus assets of the Plan remaining after the payment of all expenses of final administration and after the satisfaction of all liabilities accrued to the termination date with respect to Participants, Former Participants and their Beneficiaries and Surviving Spouses shall, upon receipt of the IRS approval therefor, revert to the Company, provided, that subject to and in accordance with Section 4980(d) of the Code, the Board of Directors may direct that 25 percent of the maximum amount which the Employer could otherwise receive as an employer reversion pursuant to this clause less the amount equal to the present value of aggregate increase in the accrued benefits under the Plan of any Participant, former Participant, Surviving Spouse or Beneficiary pursuant to a Plan amendment adopted during the 60-day period ending on the date of termination of the Plan and taking effect immediately on the termination date (in accordance with Section 4980 (d) (2) (B) (ii) of the Code), be directly transferred to a qualified replacement plan as defined in Section 4980(d) of the Code, prior to any amount reverting to the Employer.

(c)    The foregoing allocations shall be made by the committee in accordance with the determination of the Actuary pursuant to applicable law. If the balance remaining for allocation under any of the foregoing provisions is insufficient to provide in full the allocations under such provision, allocations to individuals under such provision shall be reduced pro rata (except that, under (iii) only, such balance shall first be allocated to provide the benefits described therein determined on the basis of the provisions of the Plan which were in effect at the beginning of the 5-year period ending on the termination date and then, if the balance remaining for allocation is sufficient, to provide the benefits described therein which result

1080163.3

44

from each successive amendment to the Plan during such 5-year period until the first such amendment as to which such balance is insufficient before reducing such allocation pro rata and no allocations shall be made under subsequent provisions. The assets of the Plan allocated in accordance with (i), (ii), (iii) and (iv) above shall be distributed in such manner as the Committee shall determine, including without limitation, cash lump sum payments, cash installments, the purchase of immediate or deferred annuities or any combination of the foregoing as the PBGC and the IRS may approve.

11.5    <u>Insufficient Assets</u>. Notwithstanding the provisions of Section 11.4, if the PBGC notifies the Committee that it is unable to determine whether the assets of the Plan are sufficient (or that such assets are insufficient) to discharge when due all obligations thereunder with respect to benefits which are guaranteed by the PBGC under Title IV of ERISA, the assets of the Plan shall be allocated and distributed only as a court having competent jurisdiction of the Plan or Trust or a trustee appointed by such court shall direct or permit.

11.6    <u>Partial Termination</u>. In the event that a partial termination (within the meaning of ERISA) of the Plan has occurred then (i) the rights of all Participants affected thereby to their Accrued Benefits accrued to the date of such partial termination shall thereupon be nonforfeitable, but only to the extent that such Accrued Benefits have then been funded by such portion of the assets of the Trust as are determined to be properly allocable to such Participants and that such portion of assets is available to provide such Retirement Benefits upon the allocations provided in Section 11.4, and (ii) the provisions of the Plan which, in the opinion of the Committee, are necessary for the execution of the Plan and the allocation and distribution of the assets of the Plan shall apply. If a partial termination of the Plan has occurred as to any Employer, then to the maximum extent permitted by ERISA, only the Employer as to which the

1080163.3

45

partial termination of the Plan has occurred shall be liable to the PBGC for any insufficiency of assets.

11.7    Successor Plan.  No transfer of the Plan's assets and liabilities to a successor employee benefit plan (whether by merger or consolidation with such successor plan or otherwise) shall be made unless each Participant would, if either the Plan or such successor plan then terminated, receive a benefit immediately after such transfer which (after taking account of any distributions or payments to them as part of the same transaction) is equal to or greater than the benefit he would have been entitled to receive immediately before such transfer if the Plan had then been terminated.  The Committee may also request appropriate indemnification from the employer or employers maintaining such successor plan before making such a transfer.


# ARTICLE XII

# TOP HEAVY PROVISIONS


12.1    Top Heavy Plan.

(a)    The Plan will be considered a Top Heavy Plan for any Plan Year if it is determined to be a Top Heavy Plan as of the last day of the preceding Plan Year.  For purposes of determining whether the Plan is a Top Heavy Plan, uniform actuarial assumptions which reflect reasonable mortality experience and a reasonable interest rate shall be used.  The present value of a Participant's Accrued Benefit shall be determined as of the last valuation date used for computing Plan costs for minimum funding purposes which occurs within the Plan Year in which the determination is being made (the "Determination Date"), and shall

1080163.3

include amounts distributed to or on behalf of the Participant within the four preceding Plan Years.

(b)    Notwithstanding any other provisions in the Plan, the provisions of this Article XII shall apply and supersede all other provisions in the Plan during each Plan Year with respect to which the Plan is determined to be a Top Heavy Plan.

12.2    <u>Definitions</u>.  For purposes of this Article XII and as otherwise used in the Plan, the following terms shall have the meanings set forth below:

(a)    "<u>Required Aggregation Group</u>" means (i) the group composed of each qualified plan maintained by the Employer or any Affiliate in which at least one Key Employee participates or participated in the Plan Year containing the Determination Date or any of the four preceding Plan Years, regardless of whether the plan has been terminated, and (ii) any other qualified plan maintained by the Employer or any Affiliate which enables a plan described in clause (i) during the period tested to meet the requirements of Code Section 401(a)(4) or 410.

(b)    "<u>Permissive Aggregation Group</u>" means Required Aggregation Group plus any other qualified plan or plans maintained by the Employer or any Affiliate which, when considered as a group, would continue to satisfy the requirements of Code Sections 401(a)(4) and 410.

(c)    "<u>Key Employee</u>" means any employee or former employee (and the beneficiaries of such employee) of the Employer who at any time during the Plan Year containing the Determination Date and the four preceding Plan Years was (i) an officer of the Employer whose annual compensation from the Employer exceeds 50% of the dollar limitation in effect under Code Section 415(b)(1)(A), (ii) an owner (or considered an owner under Code Section 318) of one of the 10 largest interests in the Employer and whose annual compensation

from the Employer exceeds 100% of the dollar limitation in effect under Code Section 415(c)(1)(A), (iii) a 5% owner of the Employer, or (iv) a 1% owner of the Employer whose annual compensation from the Employer is more than $150,000. For the purpose of determining who are Key Employees, "annual compensation" means compensation as defined in Code Section 415(c)(3), but including amounts contributed by the Employer pursuant to a salary reduction agreement which are excludable from the employer's gross income under Code Sections 125, 402 (e) (3) , 402 (h) or 403 (b), and on and after January 1, 2001, Code Section 132(f)(4).

(d)    "Top Heavy Plan" shall mean a "Top Heavy Plan" as defined in Section 416(g) of the Code and the regulations thereunder.  Solely for the purpose of determining if the Plan, or any other plan included in a Required Aggregation Group or Permissive Aggregation Group of which the Plan is a part, is Top Heavy, the Accrued Benefit of a Member, other than a key employee, shall be determined under (a) the method, if any, that uniformly applies for accrual purposes under all plans maintained by the Company or an Affiliate, or (b) if there is no such method, as if such benefit accrued not more rapidly than slowest accrual rate permitted under the fractional rule of Section 411(b)(1)(C) of the Code.

12.3    Effect of Top Heavy Status on Vesting.

(a)    If the Plan is a Top Heavy Plan with respect to any Plan Year, the nonforfeitable percentage of the Accrued Benefit of each Participant who is credited with at least one Hour of Service on or after the date the Plan becomes Top Heavy shall not be less than the amount determined in accordance with the following vesting schedule:

| Years of<br>Vesting Service | Nonforfeitable<br>Interest |
|---|---|
| Less than 3 years | 0% |

1080163.3

3 years or more                                        100%

(b)     In the event the vesting provided under Section 3.5 is amended, or changed on account of the Plan becoming or ceasing to be a Top Heavy Plan, any Participant who has completed at least three Years of Vesting Service may irrevocably elect to have the amount of his nonforfeitable right to his Retirement Benefit computed under the Plan without regard to such amendment or change in accordance with procedures established by the Committee. The election period shall begin on the date such amendment is adopted or the date such change is effective, and shall end no earlier than the latest of the following dates:

(i)     The date which is 60 days after the day such amendment is adopted; or

(ii)    The date which is 60 days after the day such amendment or change becomes effective; or

(iii)   The date which is 60 days after the day the Participant is given written notice of such amendment or change by the Committee.

12.4    Effect of Top Heavy Status on Accrued Benefit.

(a)     Subject to the provisions of Section 12.5, if the Plan is a Top Heavy Plan at any point in time, the Accrued Benefit for each Participant who has completed a one-year Period of Service and who is a non-Key Employee shall not, at such point, be less than such Participant's average compensation, multiplied by the lesser of (i) 2% multiplied by the Participant's Years of Service or (ii) 20%. For purposes of the preceding sentence, a Participant's Years of Service shall not include any Years of Service credited with respect to a Plan Year during which the Plan was not a Top Heavy Plan.

(b)     For purposes of this Section 12.4, "average compensation" shall mean the average of a Participant's compensation for the period of five consecutive years (or his actual

1080163.3

number of consecutive years if less than five) during which the Participant had the greatest aggregate compensation.

(c)    For each Plan Year beginning before January 1, 2000 that the Plan is a Top Heavy Plan, 1.0 shall be substituted for 1.25 as the multiplicand of the dollar limitation in determining the denominator of the defined benefit plan fraction and of the defined contribution plan fraction for purposes of Code Section 415(e).

(d)    If, after substituting 90% for 60% wherever the latter appears in Code Section 416(g), the Plan is determined not to be a Top Heavy Plan, the provisions of (c) above shall not be applicable if the Accrued Benefit for each Participant who is a non-Key Employee is determined in accordance with (a) above, substituting "3%" for "2%" in (a) above and increasing "20%" in (a) above by 1% for each Plan Year described in the last sentence therein, but not beyond "30%".

12.5    <u>Nonduplication of Benefits</u>.  The Committee shall, to the maximum extent permitted by the Code and in accordance abate the minimum benefit provisions of Section 12.4 by first taking into account the contributions made under any other plans maintained by the Employer which are qualified under Code Section 401(a) to prevent duplication of minimum benefits.

12.6    <u>Modification of Top Heavy Rules</u>.  Effective for Plan Years beginning on and after January 1, 2002, this Section 11.7 shall apply for purposes of determining whether the Plan is a Top Heavy Plan under Code Section 416(g) for Plan Years beginning after December 31, 2001, and whether the Plan satisfies the minimum benefits requirements of Code Section 416(c) for such years.

1080163.3

(a)     The definition of "Key Employee" in Section 12.2(d) shall not apply. "Key Employee" for purposes of this Section 12.6 means any Employee or former Employee (including any deceased Employee) who at any time during the Plan Year that includes the Determination Date was (i) an officer of the Employer having annual compensation greater than $130,000 (as adjusted under Code Section 416(i)(1) for Plan Years beginning after December 31, 2002), (ii) a 5% owner of the Employer, or (iii) a 1% owner of the Employer having annual compensation of more than $150,000. For this purpose, annual compensation means compensation within the meaning of Code Section 415(c). The determination of who is a Key Employee will be made in accordance with Code Section 416(i)(l) and the applicable regulations and other guidance of general applicability issued thereunder.

(b)     The present value of the accrued benefit of an Employee as of the Determination Date shall be increased by the distributions made with respect to the Employee under the Plan and any plan aggregated with the Plan under Code Section 416(g)(2) during the 1-year period ending on the Determination Date. The preceding sentence, shall also apply to distributions under a terminated plan which, had it not been terminated, would have been aggregated with the Plan under Code Section 416(g)(2)(A)(i). In the case of a distribution made for a reason other than separation from service, death, or disability, this provision shall be applied by substituting "5-year period" for "1-year period."

(c)     The accrued benefit of any individual who has not performed services for the Employer during the 1-year period ending on the Determination Date shall not be taken into account.

(d)     For purposes of satisfying the minimum benefit requirements of Code Section 416(c)(l) and Plan Section 12.4, in determining Years of Service with the Employer, any

Service with the Employer shall be disregarded to the extent that such service occurs during a Plan Year when the Plan benefits (within the meaning of Code Section 410(b)) no Key Employee or former Key Employee.

# ARTICLE XIII

## SPECIAL LIMITATIONS IMPOSED BY GOVERNMENT REGULATIONS

13.1    Application.  In order to qualify the Plan and the Trust as a qualified plan and trust under the Code the benefits to be provided to certain Participants will be subject to the limitations set forth in this Article XIII.

13.2    Restriction of Benefits.

(a)    In the event of the termination of the Plan, the benefits of any highly compensated employee (and any highly compensated former employee), as defined in Section 414(q) of the Code and the regulations thereunder, shall be limited to a benefit that is nondiscriminatory under Section 401(a)(4) of the Code.

(b)    The annual payments to a Restricted Employee (as defined below) may not exceed an amount equal to the payments that would be made on behalf of such Restricted Employee under a single life annuity that is the Actuarial Equivalent of the sum of the Restricted Employee's Accrued Benefit and his other benefits under the Plan. However, the restriction described in the foregoing sentence shall not apply if:

(i)    after payment to a Restricted Employee of all Benefits (as defined below), the value of the assets of the Plan equals or exceeds 110% of the value of current liabilities (as defined in Section 412(1)(7) of the Code) under the Plan; or

(ii)     the value of the Benefits for a Restricted Employee is less than 1% of the value of current liabilities (as defined in Section 412(1)(7) of the Code) under the Plan: or

(iii)    the value of the Benefits for Restricted Employee does not exceed $5.000.

(c)     For purposes of this Section 13.2, a "Restricted Employee" means a Participant who is a highly compensated employee or highly compensated former employee of the Employer (as defined in Section 414(q) of the Code and the regulations thereunder).  In any year, the total number of individuals who are subject to the restrictions described in this Section 13.2 shall be limited to a group of not less than 25 highly compensated employees and highly compensated former employees and the employees included in the group shall be determined on the basis of such employees with the greatest compensation.

(d)     For purposes of this Section 13.2, the "Benefits" includes loans in excess of the amounts set forth in Section 72(p)(2)(A) of the Code, any periodic income, any withdrawal values payable to a living Employee, and any death benefits not provided for by insurance on the Restricted Employee's life.

13.3     For periods prior to January 1, 1994, the provisions of Treas. Reg. Sec. 1.401-4(c) shall apply in lieu of the provisions of Section 13.2.


# ARTICLE XIV

# GENERAL LIMITATIONS AND PROVISIONS

14.1     <u>Rights of Employer</u>.  Nothing contained in the Plan shall give any employee the right to be retained in the employment of the Company, Employer or any Affiliate or affect the right of any such employer to dismiss any employee. The adoption and maintenance of the

Plan shall not constitute a contract between an Employer and any employee or consideration for, or an inducement to or condition of, the employment of any employee.

14.2    Trust as Source of Benefits.  Any and all rights or benefits accruing to any persons under the Plan shall be subject to the terms of the Trust Agreement which the Company shall enter into with the Trustee.  The Trust shall be the sole source of benefits under the Plan and, except as otherwise required by ERISA, the Employer and the Committee assume no liability or responsibility for payment of such benefits, and each Participant, Surviving Spouse, Beneficiary or other person who shall claim the right to any payment under the Plan shall be entitled to look only to the Trust for such payment and shall not have any right, claim or demand therefor against the Employer, or the Committee or any member thereof or any employee or director of the Employer.

14.3    Incompetent Payee.  If the Committee shall find that any person to whom any amount is payable under the Plan is found by a court of competent jurisdiction unable to care for his affairs because of illness or accident, or is a minor, or has died, then any payment due him or his estate (unless a prior claim therefor has been made by a duly appointed legal representative) may, if the Committee so elects, be paid to his Spouse, a child, a relative, an institution maintaining or having custody of such person, or any other person deemed by the Committee to be a proper recipient on behalf of such person otherwise entitled to payment.  Any such payment shall be a complete discharge of the liability of the Plan and the Trust therefor.

14.4    Lost Payee.  If the Committee cannot ascertain the whereabouts of any person to whom a payment is due under the Plan, including an alternate payee under a Qualified Domestic Relations Order as provided in Section 14.4, and if, after 3 years from the date such payment is due, a notice of such payment due is mailed to the last known address of such

person, as shown on the records of the Committee or the Employer, and within 3 months after such mailing such person has not made written claim therefor, the Committee, if it so elects, after receiving advice from counsel to the Plan, may direct that such payment and all remaining payments otherwise due to such person be cancelled on the records of the Plan and the amount thereof applied to reduce the contributions of the Employer, and upon such cancellation, the Plan and the Trust shall have no further liability therefor, except that, in the event such person later notifies the Committee of his whereabouts and requests the payment or payments due to him under the Plan, the amount so applied shall be paid to him as provided in Article V.

14.5    Nonalienation of Benefits.

(a)    Except insofar as may otherwise be required by law or pursuant to the terms of a Qualified Domestic Relations Order, no amount payable at any time under the Plan and the Trust shall be subject in any manner to alienation by anticipation, sale, transfer, assignment, bankruptcy, pledge, attachment, charge or encumbrance of any kind nor in any manner be subject to the debts or liabilities of any person and any attempt to so alienate or subject any such amount, whether presently or thereafter payable, shall be void.  If any person shall attempt to, or shall, alienate, sell, transfer, assign, pledge, attach, charge or otherwise encumber any amount payable under the Plan and Trust, or any part thereof, or if by reason of his bankruptcy or other event happening at any such time such amount would be made subject to his debts or liabilities or would otherwise not be enjoyed by him, then the Committee may, in accordance with procedures applied in a uniform and nondiscriminatory manner, direct that such amount be withheld and that the same or any part thereof be paid or applied to or for the benefit of such person, his Spouse, children or other dependents, or any of them, in such manner and

1080163.3

55

proportion as the Committee may deem proper. For purposes of the Plan. a "Qualified Domestic Relations Order" means any judgment. decree. or order (including approval of a property settlement agreement) which has been determined by the Committee in accordance with procedures established under the Plan. to constitute a qualified domestic relations order within the meaning of Code Section 414(p)(1).

(b)    Notwithstanding (a) above, the Accrued Benefit of a Participant shall be offset to the extent of and pursuant to any order or requirement described in Section 206(d)(4) , of ERISA.

14.6    <u>Insurance Contracts</u>.  If the payment of any benefit under the Plan is provided for by a contract with an insurance company. the payment of such benefit shall be subject to all the provisions of such contract.

14.7    <u>Credit for Prior Service</u>.  Upon such terms and conditions as the Committee may approve. and subject to any required IRS approval, benefits may be provided under the Plan to a Participant with respect to any period of his prior employment by any organization, and such benefits (and any Service credited with respect to such period of employment) may be provided for, in whole or in part, by funds transferred. directly or indirectly (including a rollover from an individual retirement account or an individual retirement annuity as described in Code Section 408) to the Trust from a defined benefit plan of such organization which qualified under Code Section 401(a).

14.8    <u>Gender</u>.  Whenever used in the Plan. the masculine gender includes the feminine.

14.9    <u>Captions</u>.  The captions preceding the Sections of the Plan have been inserted solely as a matter of convenience and in no way define or limit the scope or intent of any provisions of the Plan.

1080163.3

14.10   <u>Governing Law</u>. The Plan and all rights thereunder shall be governed by and construed in accordance with ERISA and the laws of the State of New York.

IN WITNESS WHEREOF, this amended and restated Plan has been executed this day of                            , 2002

SCANDINAVIAN MARINE
CLAIMS OFFICE, INC.

ATTEST:

By: _____

Title: _____

1080163.3

57