# EXHIBIT 6

11/22/94

THE PENSION PLAN FOR EMPLOYEES

OF

SCANDINAVIAN MARINE CLAIMS OFFICE, INC.


AS AMENDED AND RESTATED

EFFECTIVE AS OF JANUARY 1, 1989

THE PENSION PLAN FOR EMPLOYEES

OF

SCANDINAVIAN MARINE CLAIMS OFFICE, INC.

TABLE OF CONTENTS

**ARTICLE**                                                                 **PAGE**

        Preamble.....................................  1

I       Definitions.................................  3

II      Participation...............................  12

III    Retirement and other Termination
        of Employment.......................  14

IV     Accrued Benefit.............................  18

V      Method of Payment...........................  21

VI     Maximum Amount of Retirement Benefit........  31

VII    Designation of Beneficiaries................  33

VIII   Funding and Contributions...................  34

IX     Administration of the Plan..................  37

X      Termination of Employer Participation.......  43

XI     Amendment of Termination of the
        Plan and Trust......................  45

XII    Top Heavy Provisions........................  52

XIII   Special Limitations Imposed by
        Government Regulations..............  57

XIV    General Limitations and Provisions..........  59

PENSION PLAN FOR EMPLOYEES

OF

SCANDINAVIAN MARINE CLAIMS OFFICE, INC.

AS AMENDED AND RESTATED EFFECTIVE JANUARY 1, 1989

PREAMBLE

Scandinavian Marine Claims Office, Inc. (the "Company") established the Pension Plan for Employees of Scandinavian Marine Claims Office, Inc. (the "Plan") and its related trust (the "Trust) effective January 1, 1986, to provide retirement benefits and certain other benefits to eligible employees of the Company and participating affiliated companies.

The Plan and Trust, as established, have been amended from time to time thereafter. The Plan, as set forth herein, constitutes an amendment and restatement of the Plan effective as of January 1, 1989, except as certain other effective dates may be specified herein with respect to specific provisions or as may be required under applicable law.

This amendment and restatement further reflects the amendment of the Plan, effective January 1, 1993, to create a so-called "floor offset" arrangement with the Scandinavian Marine Claims Office, Inc. Money Purchase Pension Plan (the "Money Purchase Plan") under which benefits accrued under this Plan will be offset by benefits accumulated under the Money Purchase Plan. The Plan, as so amended and restated, is also intended to reflect all changes required to be incorporated in the Plan as of the end of the remedial amendment period specified in Code Section 401(b) as it applies to the Tax Reform Act of 1986 and certain other specified legislation enacted subsequent thereto, as well as all other changes adopted by the Company prior to the actual adoption of this amendment and restatement. This amendment and

1

restatement is further intended to reflect, ratify and confirm the administrative practices of the Employers and the Committee in operating the Plan in accordance with the purposes of applicable law during the period with respect to which retroactive effect is given pursuant to the remedial amendment period referred to in the preceding sentence.  Notwithstanding the foregoing, nothing in this amendment and restatement shall be deemed inconsistent with any action taken by the Committee or Company at any time on or after January 1, 1989, but prior to the adoption of this amendment and restatement, which was taken in accordance with the terms of the Plan as then in effect or in a good faith attempt to administer the Plan in accordance with applicable law.

The Plan, as so amended and restated, is intended to continue to qualify as a pension plan which meets the qualification and tax exemption requirements of Sections 401(a) and 501(a) of the Internal Revenue Code of 1986, as amended, and any other provisions of applicable law.

Unless otherwise expressly provided herein, or as may be required by applicable law, the rights of any person whose employment terminated or who retired before the effective date of this amendment and restatement, or the effective date of any particular provision, as provided above, shall be determined solely under the terms of the Plan as in effect on the date of his termination of employment or retirement, unless such person is thereafter reemployed and again becomes a Participant.

ARTICLE I

DEFINITIONS


When used herein the following terms shall have the following meanings:


1.1    **"Accrued Benefit"** means as of any date, the amount used to provide the Participant's Retirement Benefit, as determined in accordance with Article IV.


1.2    **"Actuarial Equivalent"** means, unless otherwise specified in the Plan, a benefit of equivalent value, determined by using a 7-1/2% annual interest rate (8% on and after January 1, 1992) and the UP84 mortality table (set back three years for males and females); provided, however, that the interest rate used to determine whether the Actuarial Equivalent of a Participant's Retirement Benefit payable at age 65 in the form of a Straight Life Annuity exceeds $3,500 shall not be greater than:


(i)    the applicable interest rate, if the amount (using such rate) is $25,000 or less; or

(ii)   120% of the applicable interest rate, if the amount exceeds $25,000 (as determined under (i) above).


The "applicable interest rate" shall mean the interest rate or rates which would be used by the PBGC as of the first day of the Plan Year in which a distribution commences, for purposes of determining the present value of Participants' benefits under the Plan if the Plan had terminated on the date distribution commences with insufficient assets to provide benefits guaranteed by the PBGC on that date.

3

1.3     **"Actuary"** means the enrolled actuary (within the meaning of ERISA) engaged by the Committee.

1.4     **"Affiliate"** means any corporation which is included in a controlled group of corporations (within the meaning of Code Section 414(b)) which includes the Company, any trade or business (whether or not incorporated) which is under common control with the Company (within the meaning of Code Section 414(c)), any organization included in the same affiliated service group (within the meaning of Code Section 414(m)) as the Company and any other entity required to be aggregated with the Company pursuant to Code Section 414(o); except that for purposes of applying the provisions of Articles VI and XII with respect to the limitations on benefits, Code Section 415(h) shall apply.

1.5     **"Applicable Law"**, whether capitalized or not, means the Code, ERISA and any other law which governs the Plan, and any regulations, rulings, or other administrative or judicial clarifications thereunder.

1.6     **"Beneficiary"** means any person or entity validly designated by a Participant pursuant to Article VII to receive the amount, if any, payable under the Plan upon his death, other than those provided under Section 5.5 relating to children's pensions.

1.7     **"Board"** means the Board of Directors of the Company or a duly authorized committee thereof.

1.8     **"Break in Service"** means a Plan Year during which an individual has not completed more than 500 Hours of Service, as determined by the Committee in accordance with applicable law. Solely for purposes of determining whether a Break in Service has occurred, an individual shall be credited with the Hours of Service which such individual would have completed but for a

4

maternity or paternity absence, as determined by the Committee in accordance with this Section and applicable law; provided, however, that the total Hours of Service so credited shall not exceed 501 hours and that the individual timely provide the Committee with such information as it shall require. Hours of Service credited for a maternity or paternity absence shall be credited entirely (i) in the Plan Year in which the absence began if such Hours of Service are necessary to prevent a Break in Service in such Plan Year, or (ii) in the following Plan Year. For purposes of this Section, maternity or paternity absence shall mean an absence from work by reason of the individual's pregnancy, the birth of the individual's child or the placement of a child with the individual in connection with adoption of the child by such individual, or for purposes of caring for a child for the period immediately following such birth or placement.

1.9    **"Code"** means the Internal Revenue Code of 1986, as now in effect or as hereafter amended. All citations to sections of the Code are to such sections as they may from time to time be amended or renumbered.

1.10    **"Committee"** means the Administrative Committee provided for in Article IX. For purposes of ERISA, the members of the Committee shall be the named fiduciaries of the Plan with respect to the matters for which they are hereby made responsible under the Plan, and the Committee shall be the administrator of the Plan.

1.11    **"Company"** means Scandinavian Marine Claims Office, Inc., or any successor thereto.

1.12    **"Compensation"** means a Participant's salary or wages for each Plan Year paid or payable by the Employer, including any contributions made by an Employer on the Participant's behalf for such Plan Year which are excluded from the Participant's income by reason of Section 125 or 401(k), but

5

excluding commissions, bonuses, incentive compensation, overtime pay, reimbursement of expenses, directors' fees, severance pay, and deferred compensation.  For purposes of any determination under this Plan, Compensation for any calendar year (including calendar years prior to the date of determination) shall exclude any amount in excess of the applicable dollar limit under Code Section 401(a)(17) ($200,000, as adjusted under Code Section 401(a)(17), if the date of determination is before January 1, 1994, and $150,000, as adjusted under Code Section 401(a)(17), if the date of determination is on or after January 1, 1994).  In determining the Compensation and applying the dollar limitation under Code Section 401(a)(17) for a highly compensated employee (as defined in Code Section 414(q)) who is either a 5% owner of the Employer or one of the 10 most highly compensated employees and is therefore subject to the family aggregation rules of Code Section 414(q)(6), the highly compensated employee's family unit shall be treated as a single employee with one Compensation.  The term "family" shall include the highly compensated employee and any employee of the Employer or any Affiliate who is the highly compensated employee's spouse or any lineal descendants of the highly compensated employee who have not attained age 19 before the close of the Plan Year.  If as a result of applying the family aggregation rules, the dollar limitation under Code Section 401(a)(17) is exceeded, then such limitation will be allocated among the members of the family unit in proportion to each such member's Compensation, as determined prior to the application of such limitation.

    1.13    **"Deferred Retirement Date"** means the Participant's date of Retirement after his Normal Retirement Date, as provided in Section 3.2.

    1.14    **"Disability"** means the Participant's inability to perform his customary duties with the Employer as would constitute disability for receiving disability benefits under the Federal Social Security Act and under any long term disability

6

plan maintained by the Employer, as determined by the Committee in accordance with procedures uniformly applicable to all Participant.

1.15    **"Early Retirement Date"** means the Participant's date of Retirement prior to his Normal Retirement Date, as provided in Section 3.4.

1.16    **"Effective Date"** of the amended and restated Plan means January 1, 1989.

1.17    **"Employee"** means any employee of the Employer, excluding any individual who (i) is a nonresident alien, (ii) is included in a unit of employees covered by a collective bargaining agreement which does not provide for his participation in the Plan, (iii) is an employee of an Affiliate which is not an Employer, (iv) is a Leased Employee, (v) serves only as a director of the Board, or (vi) renders service as an independent contractor or as an employee of an independent contractor.

1.18    **"Employer"** means the Company or any Affiliate which, with the consent of the Board, adopts the Plan and Trust by appropriate action and makes participation under the Plan available to its Employees in the manner and to the extent permitted by the Board.  Any Employer which adopts the Plan shall be deemed thereby to appoint the Company, the Committee and the Trustee its exclusive agents to exercise on its behalf all of the power and authority conferred by the Plan or by the Trust and shall make its allocable contributions to the Plan.  The authority of the Company, the Committee and the Trustee to act as such agents shall continue until the Plan is terminated as to such Employer and the relevant Trust assets have been distributed by the Trustee as provided in Article X.

1.19    **"Employment Commencement Date"** means the date on which an individual first performs an Hour of Service for the Employer or any Affiliate.

1.20    **"ERISA"** means the Employee Retirement Income Security Act of 1974, as now in effect or as hereafter amended.

1.21    **"Final Average Compensation"** means, as of any Plan Year, the average of a Participant's annual Compensation from the Employer for the 3-consecutive Years of Service (or total Service if less than 3 years) during which the average of the Participant's annual Compensation is the highest.

1.22    **"Former Participant"** means a Participant who has terminated his employment, whether or not he has received a distribution of his Retirement Benefit.

1.23    **"Hour of Service"** means each hour for which an individual is directly or indirectly paid or entitled to payment by the Employer or any Affiliate for the performance of Service (or is treated as performing Service under Section 1.37) including any back pay irrespective of mitigation of any damages.

1.24    **"IRS"** means the United States Internal Revenue Service.

1.25    **"Leased Employee"** means any person (other than an employee of the Employer) who pursuant to an agreement between the Employer and any other person (the "leasing organization") has performed services for the Employer (or for the Employer and any Affiliate) on a substantially full-time basis for a period of at least one year, and such services are of a type historically performed by employees in the business field of the Employer. Benefits provided for a Leased Employee by the leasing organization which are attributable to services performed for the Employer shall be treated as if provided by the Employer.

8

1.26    **"NKP Pension"** means the U.S. dollar equivalent of the Actuarial Equivalent of the pension that would have been payable under the NKP Plan, had it continued in effect, as determined by the Committee on the date of transfer of the assets and liabilities of the NKP Plan to the Plan.

1.27    **"NKP Plan"** means the Group Pension Insurance Plan of the Company underwritten by NORSK Kollektin Pensionskasse A/S, as in effect on December 31, 1985.

1.28    **"Normal Retirement Age"** means the date the Employer attains age 65.

1.29    **"Normal Retirement Date"** means the first day of the month coincident with or next following the Participant's Normal Retirement Age.

1.30    **"Participant"** means any Employee who participates in the Plan in accordance with Article II.

1.31    **"PBGC"** means the Pension Benefit Guaranty Corporation.

1.32    **"Plan"** means the Pension Plan for Employees of Scandinavian Marine Claims Office, Inc., as the same may be amended from time to time.

1.33    **"Plan Year"** means a twelve consecutive month period commencing on January 1st.

1.34    **"Reemployment Commencement Date"** means the first date that an Employee is credited with an Hour of Service following a Break in Service.

9

1.35     **"Retirement"** means, as applicable, a Participant's Normal, Early or Deferred Retirement.

1.36     **"Retirement Benefit"** means a benefit payable upon retirement or other termination of employment, as provided in Article III.

1.37     **"Service"** means employment (whether or not as an Employee) with the Employer or with any Affiliate.  To the extent and for the purpose determined by the Committee, under rules uniformly applicable to all Employees similarly situated and in accordance with applicable law (including Department of Labor Regulations Sections 2530.200b-2(b) and (c)), periods of Service shall include (i) periods of vacation, (ii) periods of absence authorized by the Employer for sickness, temporary disability or personal reasons and (iii) if and to the extent required by the Military Selective Service Act as amended, or any other Federal law, service in the Armed Forces of the United States.

1.38     **"Spouse" or "Surviving Spouse"** means the individual to whom a Participant or Former Participant is legally married (as determined by the Committee) on the earliest of (i) the date on which payment of benefits commence under the Plan or (ii) the date of the Participant's death.

1.39     **"Termination of Employment"**, or words of similar import, means the termination of an Employee's employment with an Employer or Affiliate under circumstances where he is no longer employed by an Employer or Affiliate.  Transfer of employment from one Employer or Affiliate to another Employer or Affiliate shall not constitute a termination of employment.

1.40     **"Trust" or "Trust Fund"** means the trust established by the Company as a part of the Plan.

1.41    **"Trust Agreement"** means the agreement entered into between the Company and the Trustee to carry out the purposes of the Plan, as the same may be amended from time to time.

1.42    **"Trustee"** means the trustee or trustees of the Trust.

1.43    **"Year of Service"** means, except as provided herein, a Plan Year during which an individual completes at least 1,000 Hours of Service, as determined by the Committee in accordance with applicable law.  Solely for purposes of determining whether an Employee meets the eligibility requirements of Section 2.1, he shall be credited with a Year of Service for the 12 consecutive month period commencing on his Employment Commencement Date (or Reemployment Commencement Date), or on the first day of any Plan Year thereafter, during which he completes at least 1,000 Hours of Service.  Years of Service shall also be credited for any appropriate purpose under the Plan for service recognized for such purpose under the terms of the NKP Plan.

ARTICLE II

PARTICIPATION


2.1      <u>Eligibility To Participate</u>.

(a)   Each Employee who was a Participant of the Plan on December 31, 1988 shall continue to be a Participant. Each other Employee shall become a Participant of the Plan on the first January 1st or July 1st on or after January 1, 1989 on which he is at least age 21 and has completed at least one Year of Service.

(b)   An Employee who is eligible to participate in the Plan in accordance with (a) above shall complete and file the appropriate forms with the Committee.  Such forms shall include a Beneficiary designation and an agreement to be bound by all the terms and conditions of the Plan and Trust and any agreement with any other funding agency, including an insurance company, constituting a part of the Plan and Trust.

2.2      <u>Resumption of Participation</u>.  If a Former Participant again becomes an Employee following his Retirement or if any other Former Participant again becomes an Employee prior to incurring a Break in Service, he will again become a Participant on his Reemployment Commencement Date.  If a Former Participant (other than a Former Participant who retired) again becomes an Employee after he has incurred a Break in Service, he will again become a Participant only if he thereafter completes one Year of Service, in which case he will be treated as a Participant from his Reemployment Commencement Date.

2.3      <u>Break in Service</u>.  If a Participant who has no vested right to his Retirement Benefit incurs a Break in Service and if the number of his consecutive Breaks in Service equals or exceeds the greater of 5 or the aggregate number of his Years of Service prior to such Break in Service (excluding any Years of

12

Service previously disregarded under the Break in Service provisions of the Plan) then, in the event that he again becomes an Employee, his Years of Service prior to such Break in Service shall be disregarded and he shall be treated as a new Employee for all purposes of the Plan.   In all other cases following a Break in Service, if the Former Participant again becomes an Employee, his Years of Service prior to such Break in Service shall be counted if the Participant completes a Year of Service following his Break in Service.

## ARTICLE III
## RETIREMENT AND OTHER TERMINATION OF EMPLOYMENT

3.1        **Normal Retirement**.

(a)  A Participant may retire on his Normal Retirement Date.  Notwithstanding any provision herein to the contrary, a Participant shall be 100% vested in his Retirement Benefit upon attaining his Normal Retirement Age.

(b)  A Participant who retires on his Normal Retirement Date shall be entitled to receive a Retirement Benefit, commencing on his Normal Retirement Date and payable in accordance with Article V, equal to his Accrued Benefit determined as of his Normal Retirement Date.  In no event shall a Participant's Retirement Benefit commencing on his Normal Retirement Date be less than the largest Retirement Benefit the Participant could have received if he had retired on any date which could have been his Early Retirement Date and elected to have his Retirement Benefit commence immediately (determined by applying the actual offset determined under Section 4.4 as of his Normal Retirement Date).

3.2        **Deferred Retirement**.

(a)  The Deferred Retirement Date of a Participant who remains employed beyond his Normal Retirement Date shall be the date on which he terminates his employment.

(b)  Subject to Section 5.5, a Participant who retires on a Deferred Retirement Date shall be entitled to receive a Retirement Benefit commencing on the first day of the month following his Deferred Retirement Date and payable in accordance with Article V, equal to the greater of (i) his Accrued Benefit determined as of his Deferred Retirement Date, or (ii) the Actuarial Equivalent of the Retirement Benefit that would have been payable to him at his Normal Retirement Date if

he had retired in accordance with Section 3.1.  In no event shall a Participant's Retirement Benefit commencing on his Deferred Retirement Date be less than the largest Retirement Benefit the Participant could have received, if he had retired on any date which could have been his Early or Normal Retirement Date and elected to have his Retirement Benefit commence immediately (determined by applying the actual offset determined under Section 4.4 as of his Deferred Retirement Date).

    3.3     **Disability Before Retirement**.

       (a)  A Participant who incurs a Disability before his Early Retirement Date and is receiving payments under a long-term disability program maintained by the Employer shall continue to be credited with Years of Service during such Disability (in the same manner as if he had continued in full time employment with the Employer) until the earlier of (i) the date such long-term disability payments cease, or (ii) his Normal Retirement Date.  In addition, for purposes of determining the Accrued Benefit of a Participant described in the preceding sentence, such Participant shall be deemed to be receiving Compensation from the Employer during the period of his Disability for which Service is credited at the same rate that was in effect at the commencement of his Disability.

       (b)  If a Participant reaches his Normal Retirement Date while on Disability, or recovers from his Disability prior to his Normal Retirement Date, and does not return to the employ of an Employer or Affiliate immediately upon his recovery, he shall be treated under the Plan as if he had terminated employment or retired as of the earlier of his Normal Retirement Date or the date of such recovery, and his right to benefits, if any, shall be determined under the provisions of this Article III, taking into account the Service credited to him and the Compensation deemed to have been paid to him during the period of his Disability, as provided in (a) above.

(c)  The Committee shall establish such procedures as it deems necessary to evaluate the continued Disability of any Participant, and the cooperation of a Participant with such procedures, including the supplying of any medical information and the submission to medical examination, shall be a condition to the treatment afforded to such Participant under this Section 3.3.

3.4    **Early Retirement.**

(a)  A Participant who (i) has completed at least 10 Years of Service and has attained age 60, or (ii) has completed at least 3 Years of Service and has attained age 63, may retire on an Early Retirement Date which is the first day of any month prior to his Normal Retirement Date.

(b)  A Participant who retires on an Early Retirement Date shall be entitled to receive a Retirement Benefit, commencing on his Normal Retirement Date and payable in accordance with Article V, equal to his Accrued Benefit determined as of his Early Retirement Date (subject to the provisions of Section 4.4(b)).  In no event shall such Retirement Benefit be less than the largest Retirement Benefit the Participant could have received if he had retired on any earlier date which could have been his Early Retirement Date and elected to have his Retirement Benefit commence immediately (determined by applying the actual offset determined under Section 4.4 as of the date on which his Retirement Benefit actually commences).

(c)  A Participant who retires on an Early Retirement Date may elect, in accordance with procedures established by the Committee, to begin receiving payment of his Retirement Benefit on the first day of any month on or after his Early Retirement Date, but not later than his Normal Retirement Date.  The amount of such Retirement Benefit shall be equal to the Retirement Benefit that would be payable at Normal Retirement Date in accordance with Section 3.4(b) above (subject to the

16

provisions of Section 4.4(b)), reduced to its Actuarial Equivalent to reflect commencement prior to the Participant's Normal Retirement Date.  Such an election may be revoked in accordance with procedures established by the Committee.

    3.5    **Other Termination of Employment**.

    (a)  A Former Participant whose termination of employment occurs prior to his Early Retirement Date, but after completing at least 3 Years of Service (disregarding any such Years of Service credited prior to the Participant's 18th birthday), shall receive a Retirement Benefit, commencing on his Normal Retirement Date (unless he makes an election under (b) below) and payable in accordance with Article V, equal to his Accrued Benefit determined as of the date of his termination of employment (subject to the provisions of Section 4.4(b)).

    (b)  A Former Participant described in (a) above may elect, in accordance with procedures established by the Committee, to have his Retirement Benefit commence on the first day of any month following the later of (i) his termination of employment, and (ii) his attainment of age 60, but prior to his Normal Retirement Date.  Such Benefit shall be equal to the Retirement Benefit that would have been payable at Normal Retirement Date (subject to the provisions of Section 4.4(b), reduced to its Actuarial Equivalent to reflect commencement prior to Normal Retirement Date.

    3.6    **Required Consent**.  Notwithstanding any other provision of the Plan to the contrary, to the extent required by applicable law, if the Actuarial Equivalent of the Retirement Benefit of a Participant who retires prior to his Normal Retirement Date is in excess of $3,500, no benefit shall be paid prior to the Participant's Normal Retirement Date without his written consent and, if the Participant is married on the date payment would otherwise commence, the written consent of his Spouse.