(ii)    with respect to a Participant whose Compensation for any calendar year prior to January 1, 1989 would exceed $200,000, but for the application of Code Section 401(a)(17), the annual amount of Accrued Benefit that would be determined under Section 4.2 or Section 4.3(i) if the Participant has terminated his employment as of December 31, 1988;

(iii)    with respect to a Participant whose Compensation for any calendar year prior to January 1, 1994 would exceed $150,000, but for the application of Code Section 401(a)(17), the greatest of annual amount of Accrued Benefit that would be determined under Section 4.2, 4.3(i) or 4.3(ii), if the Participant had terminated his employment as of December 31, 1993; or

(iv)    the amount of his NKP Pension.

**4.4    Money Purchase Plan Offset.**

(a) Subject to (b) below, the annual amount of Accrued Benefit determined under Section 4.1 as of any date (before the reduction provided by this Section 4.4) shall be reduced (but not below zero) by the amount of Accrued Benefit that would result from the Actuarial Equivalent of the Participant's Account under the (Scandinavian Marine Claims Office, Inc. Money Purchase Pension Plan as of such date, taking into account any contributions to which such Participant is entitled as of such date under such plan, but which have not yet been made.

(b) In the event that the date of determination of a Participant's Accrued Benefit, as specified in Article III, is prior to the date such Retirement Benefit is to commence, the offset under this Section 4.4 will be determined in accordance with (a) above by using the value of the Participant's Account under the referenced money purchase pension plan as of the date

such Retirement Benefit is to commence.  Nothing in this Section
4.4(b) shall affect the determinations under Sections 4.2
and 4.3.

     4.5     **Break in Service**.  If a Former Participant who
incurs a Break in Service is reemployed and is treated as a new
Employee pursuant to Section 2.3, then, on his subsequent
Retirement or termination of employment, his Accrued Benefit
shall be based only upon his Service subsequent to his
Reemployment Commencement Date.  In all other cases following a
Break in Service, a Participant's Accrued Benefit shall be based
on all of his Service (provided this does not decrease his
Accrued Benefit), reduced by the Actuarial Equivalent of any
payments to him before his Reemployment Commencement Date.

     4.6     **Nonduplication of Benefits**.  The Accrued Benefit
of a Participant shall be reduced by the Actuarial Equivalent of
any benefit provided for the Participant under any defined
benefit plan which is qualified under Code Section 401(a), to the
extent such benefit is attributable to service credited under
such other plan for which benefits are provided under this Plan.

## ARTICLE V
## METHOD OF PAYMENT

5.1      **Normal Form of Benefits**.

(a)  **Unmarried Participant**.  The Retirement Benefit to which an unmarried Participant is entitled under the Plan shall, except as otherwise provided in this Article V, be payable in the form of a Straight Life Annuity as defined in Section 5.2(a)(i).

(b)  **Married Participant**.  The Retirement Benefit to which a married Participant is entitled under the Plan shall, except as otherwise provided in this Article V, be payable in the form of a Qualified Joint and Survivor Annuity.  Such Retirement Benefit shall not be subject to any actuarial reduction or equivalency because it is payable in a different form than the Retirement Benefit described in Section 5.1(a).  A "Qualified Joint and Survivor Annuity" means an annuity for the life of the Participant, ending with the payment due for the month in which the Participant dies, and, if the Participant dies leaving a Surviving Spouse, an annuity for the life of such Surviving Spouse equal to 50% of the annuity payable for the life of the Participant, commencing on the first day of the month following the date of the Participant's death and ending with the payment due for the month in which such Surviving Spouse dies.  A married Participant may elect, in accordance with Section 5.4, to have his Retirement Benefit paid in one of the forms provided in Section 5.2, in lieu of the Qualified Joint and Survivor Annuity.

5.2      **Optional Forms of Benefit**.

(a)  Subject to Sections 5.6 and 5.7, in lieu of the form of Retirement Benefit described in Section 5.1, a Participant may elect to receive his Retirement Benefit in any of the optional forms of benefit described below; provided, however, that the Retirement Benefit under such optional forms shall be

the Actuarial Equivalent of the Retirement Benefit described in Section 5.1(a) (if the Participant is unmarried) or 5.1(b) (if the Participant is married).

> (i)   **Straight Life Annuity**.  An annuity for the Participant's life, payable in 12 equal monthly installments per year, ending with the payment due for the month in which the Participant dies.

> (ii)   **Joint and Survivor Annuity**.  An adjusted annuity for the Participant's life, payable in 12 equal monthly installments per year, and, after his death, a survivor annuity in the same or a lesser amount of such adjusted annuity payable to his Beneficiary for life.

> (iii)   **Certain and Life Annuity**.  An annuity for the Participant's life, payable in 12 equal monthly installments per year, with a guarantee that if the Participant dies before receiving a specified number of monthly payments (60, 120, 180 or 240), the Beneficiary shall continue to receive monthly payments until the total number of monthly payments made to the Participant and his Beneficiary equals the guaranteed number of monthly payments.

(b)   If the Beneficiary under any of the optional forms described above is not the Participant's Spouse, such optional form shall only be permitted if the Actuarial Equivalent of the benefits allocated to such Beneficiary is less than 50% of the Actuarial Equivalent of the Straight Life Annuity which the Participant could otherwise have received.

(c)   If a Participant elects to receive his Retirement Benefit in the form of a Joint and Survivor Annuity and his joint annuitant dies before the Participant's benefit payments have commenced, then the Participant's election under this Section 5.2 shall be null and void and the Participant shall be entitled to receive the benefit he would have received if no election had been made under this Section 5.2.

(d)   If a Participant elects to receive his Retirement Benefit in the form of a Joint and Survivor Annuity and dies before payment of his benefit has commenced, then his joint annuitant shall not be entitled to receive any benefit under the Joint and Survivor Annuity; provided, however, that if the Participant dies while in active service after his Normal Retirement Date without leaving a Surviving Spouse, payment of his benefit under the Joint and Survivor Annuity shall be deemed to have commenced on the date of his death.

**5.3      Preretirement Survivor Annuity.**

(a)   Subject to Section 5.7, a Preretirement Survivor Annuity shall be paid to the Surviving Spouse of a Participant or Former Participant who dies after earning a nonforfeitable right to his Accrued Benefit in accordance with Article III, but before payment of his Retirement Benefit has commenced.  A "Preretirement Survivor Annuity" means a life annuity to the Participant's Surviving Spouse, if any, payable in 12 equal monthly installments per year, equal to 50% of the reduced annuity which would have been payable for the life of the Participant under the circumstances described in (b) or (c) under the terms of Section 5.2(a)(ii) if the Participant were unmarried and had elected the Joint and Survivor Annuity option with a 50% continuation and had designated his surviving spouse as his Beneficiary.  Notwithstanding the foregoing, if a Participant who is otherwise described in the preceding provisions of this Section 5.3(a) married his spouse prior to attaining age 60, the provisions of Section 5.3(d) shall apply.

(b)   In the case of a Participant or Former Participant who dies on or after the first date which could have been his Early Retirement Date but before payment of his Retirement Benefit has commenced, the Preretirement Survivor Annuity shall be based on the Joint and Survivor Annuity which would have been payable if the Participant had retired on the day before his date of death, was unmarried, and had elected a Joint and Survivor Annuity Option with a 50% continuation commencing on the first day of the month coincident with or following the date of his death.

(c)   In the case of a Participant or Former Participant who dies before the first date which could have been his Early Retirement Date, the Preretirement Survivor Annuity shall be based on the Joint and Survivor Annuity which would have been payable if the Participant had terminated employment on the day before his date of death (or in the case of a Former Participant, the date of his termination of employment), was unmarried, survived until the first date which would have been his Early Retirement Date, immediately began receiving payments under a Joint and Survivor Annuity Option with a 50% continuation and died on the day following such Early Retirement Date.

(d)   If a Participant described in Section 5.3(a) married his spouse prior to attaining age 60, the Preretirement Survivor Annuity shall be determined in the manner described in (a), (b) and (c) above, but assuming instead, that the Participant was in fact, married at the time of his death and the provisions of Section 5.1(b) applied to the payment of his Retirement Benefit instead of those of Section 5.2(a)(ii).

(e)    Payment of a Preretirement Survivor Annuity shall commence on the first day of the month following the later of (i) the first month in which the Participant could have retired on an Early Retirement Date or (ii) the month in which the Participant dies; provided, however, to the extent required by applicable law, it shall not commence to be paid prior to the date which was or would have been the Participant's Normal Retirement Date (had the Participant lived) without the written consent of the Participant's Surviving Spouse. In the absence of consent, payment of the Preretirement Survivor Annuity shall not be made until the earlier of (i) the first day of the month following receipt of the required consent by the Committee or (ii) the date which would have been the Participant's Normal Retirement Date.

5.4    **Waiver of Qualified Joint and Survivor Annuity.** The Committee shall furnish or cause to be furnished to each married Participant, an explanation of the Qualified Joint and Survivor Annuity not less than 30 days and not more than 90 days prior to the Participant's annuity starting date under procedures established by the Committee in accordance with applicable law. A Participant or Former Participant may, with the written consent of his Spouse (unless the Committee makes a written determination in accordance with applicable law that no such consent is required), elect in writing to receive his Retirement Benefit in one of the optional forms described in Section 5.2 in lieu of a Qualified Joint and Survivor Annuity or revoke such election at any time and any number of times within the 90-day period ending on his annuity starting date. Such an election or revocation shall be made under procedures established by the Committee in accordance with applicable law. For purposes of this Section 5.4, a Participant's "annuity starting date" means (i) the first day of the first period for which an amount is payable as an annuity or (ii) in the case of a benefit not payable as an annuity, the first day on which all events have occurred which entitle the Participant to such benefit.

)

5.5     <u>Children's Pension</u>.

(a)  Upon the death of a Participant whose
Surviving Spouse is entitled to a Preretirement Survivor Annuity
in accordance with Section 5.3, or whose Surviving Spouse would
be entitled to such a benefit if the Participant had been married
on his date of death, a pension shall be payable to each child
of the Participant who has not attained age 18 as of the
Participant's date of death.  Such pension shall be payable from
the first day of the month in which the Participant's death
occurred up to and including the month in which the child attains
age 18; provided, however, that a child who has become totally
and lastingly disabled before attaining age 18 shall receive such
a pension so long as the disability lasts.  In no event shall the
children's pension be payable beyond the month following the
month in which the child's death occurred.

(b)  The children's pension shall be equal to (i)
in the case of one child, 40% of the Preretirement Survivor
Annuity under Section 5.3, and (ii) in the case of each
additional child, 20% of the Preretirement Survivor Annuity under
Section 5.3.  The children's pension shall be apportioned equally
among all the children entitled thereto.  Notwithstanding the
foregoing, in no event shall the payments made under this
Section, when added to the payments under Section 5.3, exceed the
applicable limitations of Article VI.

5.6     <u>Limitations on Distributions</u>.

(a)  Notwithstanding any other provision of the
Plan and subject to Section 14.5, unless otherwise provided by
law any benefit payable to a Participant shall commence
(in accordance with Code Section 401(a)(9)) no later than the
April 1st of the calendar year following the calendar year in
which such Participant attains age 70 1/2 (the "required
beginning date").  If not paid in a single sum payment, such
benefits shall be paid, in accordance with applicable law,

(i) over the life of the Participant, (ii) over the life of the Participant and a designated Beneficiary, (iii) over a period not extending beyond the life expectancy of the Participant, or (iv) over a period not extending beyond the joint life expectancies of the Participant and a designated Beneficiary.  The minimum distribution required for the Participant's first distribution calendar year must be made on or before the Participant's required beginning date.  The minimum distribution for each other calendar year, including the minimum distribution for the year in which the Participant's required beginning date occurs, must be made on or before December 31st of the distribution calendar year.  Life expectancies for purposes of this Section 5.6 shall be recalculated annually in accordance with applicable law.

(b) If distribution of a Participant's benefit has commenced prior to a Participant's death, and such Participant dies before his entire benefit is distributed to him, distribution of the remaining portion of the Participant's benefit to his Beneficiary shall be made at least as rapidly as under the method of distribution in effect as of the date of the Participant's death.

(c)  If a Participant dies before distribution of his benefit has commenced, distributions to his Beneficiary shall be made on or before December 31st of the calendar year which contains the fifth anniversary of the date of such Participant's death; provided, however, at the Beneficiary's irrevocable election, duly filed with the Committee before the applicable commencement date set forth in the following sentence, any distribution to a Beneficiary may be made over a period not extending beyond the life expectancy of the Beneficiary.  Such distribution shall commence no later than the December 31st of the calendar year immediately following the calendar year in which the Participant dies or, in the event such Beneficiary is the Participant's Surviving Spouse, on or before December 31st of the calendar year in which such Participant would have attained

age 70 1/2, if later (or, in either case, on any later date prescribed by applicable law). If such Participant's Surviving Spouse dies after the Participant, but before distributions to such Surviving Spouse commence, this subsection (c) shall be applied to require payment of any further benefits as if such Surviving Spouse were the Participant.

(d)    Pursuant to applicable law, any benefit paid to a child shall be treated as if paid to a Participant's Surviving Spouse if such amount will become payable to such Surviving Spouse on the child's attaining majority, or other designated event permitted by applicable law.

(e)    Notwithstanding the foregoing and subject to Plan Section 14.5, unless the Participant elects a later date, payment of benefits under the Plan shall commence no later than the 60th day after the latest of the last day of the Plan Year in which the Participant (i) attains his Normal Retirement Date, (ii) attains his 10th anniversary of Plan participation or (iii) terminates his employment.

5.7    **Cash Outs**. Notwithstanding any other provisions of the Plan and in accordance with applicable law, payment of any vested Retirement Benefit with an Actuarial Equivalent value of $3,500 or less shall be made immediately in a single sum payment in full settlement of the Plan's liability therefor; provided, however, that no such single sum payment shall be made after benefits have commenced without the consent of the Participant and, if the Participant is married at the time such payment would otherwise commence, the consent of his Spouse or, if the Participant has died, his Surviving Spouse. For purposes of this Section 5.7, if the Actuarial Equivalent of a Participant's vested Retirement Benefit is zero, such Participant shall be deemed to have received a distribution of his vested Accrued Benefit.

28

5.8     <u>Reemployment Following Retirement</u>.  Except as may
be otherwise required in Section 5.8 and notwithstanding any
other provisions of this Article V, if a Former Participant whose
Retirement Benefit is in pay status again becomes an Employee,
payment of his Retirement Benefit shall, to the extent permitted
by applicable law, be suspended until his subsequent termination
of employment or Retirement, at which time his Retirement Benefit
shall be recomputed on the basis of his Service and other factors
both before and after his reemployment, but shall be reduced by
the Actuarial Equivalent of any benefit paid prior to his
reemployment; provided; however, that his Retirement Benefit
shall in no event be less than the Retirement Benefit payable
prior to his reemployment.  To the extent that the application of
this Section 5.8 constitutes a suspension of benefits, such
suspension shall be in accordance with ERISA, the Code and
applicable law.

5.9     <u>Direct Rollover</u>.  This Section 5.9 applies to
distributions made on or after January 1, 1993.  Solely to the
extent required under applicable law and regulations, and
notwithstanding any provision of the Plan to the contrary that
would otherwise limit a Distributee's election under this Section
5.9, a Distributee may elect, at the time and in the manner
prescribed by the Committee, to have any portion of an Eligible
Rollover Distribution paid directly to an Eligible Retirement
Plan specified by the Distributee in a Direct Rollover.

For purposes of this Section 5.9, the following terms shall
have the following meanings:

(i)  Eligible Rollover Distribution:  Solely to
the extent required under applicable law and regulations, an
Eligible Rollover Distribution is any distribution of all or any
portion of the balance to the credit of the Distributee, except
that an Eligible Rollover Distribution does not include:  any
distribution that is one of a series of substantially equal

29

periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's designated beneficiary, or for a specified period of ten years or more; any distribution to the extent such distribution is required under Section 401(a)(9) of the Code; and the portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities).

(ii)  Eligible Retirement Plan:  An Eligible Retirement Plan is an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 408(b) of the Code, an annuity plan described in Section 403(a) of the Code, or a qualified trust described in Section 401(a) of the Code, that accepts the Distributee's Eligible Rollover Distribution.  However, in the case of an Eligible Rollover Distribution to a surviving spouse, an Eligible Retirement Plan is an individual retirement account or individual retirement annuity.

(iii)  Distributee:  A Distributee includes an employee or former employee.  In addition, the employee's or former employee's spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in Section 414(p) of the Code, are Distributees with regard to the interest of the spouse or former spouse.

(iv)  Direct Rollover:  A Direct Rollover is a payment by the Plan to the Eligible Retirement Plan specified by the Distributee.

ARTICLE VI

MAXIMUM AMOUNT OF RETIREMENT BENEFIT

6.1        **Applicable Benefits**.   The provisions of this
Article VI shall govern the benefits to which it is applicable
notwithstanding any other provision of the Plan.   The benefits to
which this Article VI is applicable are (i) any annuity payable
to a Participant for life as part of a Qualified Joint and
Survivor Annuity or as part of a Joint and Survivor Annuity
elected by the Participant under Section 5.2 and having the
effect of a qualified joint and survivor annuity within the
meaning of Code Section 401(a)(11) (excluding in either case any
survivor annuity payable to a Surviving Spouse thereunder), (ii)
any Straight Life Annuity payable to a Participant under Section
5.1 or elected by a Participant under Section 5.2, (iii) any
other optional form of benefit payment elected by a Participant
(including both the annuity payable to the Participant and any
other annuity or benefit payable thereunder), and any Children's
Pension payable in accordance with Section 5.5.

6.2        **Limitations on Benefits**.   The benefits to which
this Article VI is applicable may not exceed the limitations set
forth in Code Section 415, which are incorporated by reference
herein.   For these purposes, the "limitation year" means the Plan
Year.   If a Participant also participates in any defined
contribution plan (as defined in Code Sections 414(i) and 415(k))
maintained by the Employer or any Affiliate, in the event that in
any Plan Year the sum of the Participant's defined benefit
fraction (as defined in Code Section 415(e)(2)) and the
Participant's defined contribution fraction (as defined in Code
Section 415(e)(3)) would otherwise exceed 1.0, then the benefit
payable under this Plan shall be reduced so that the sum of such
fractions in respect of that Participant will not exceed 1.0.   If
the above reduction does not ensure that the limitation set forth
in this Section 6.2 is not exceeded, then the annual additions

31

(as defined in Code Section 415(c)(2)) to any defined contribution plan maintained by the Employer or any Affiliate in which the Participant participates, shall be reduced in accordance with the provisions of that plan, but only to the extent necessary to ensure that such limitation is not exceeded. If a Participant also participates in another defined benefit plan (as defined in Code Sections 414(j) and 415(k)) maintained by the Employer or any Affiliate, in the event that in any Plan Year such Participant's aggregated accrued benefit under such plans exceeds the applicable limits under Code Section 415, the benefit payable under such other plan shall be reduced to the extent necessary to comply with such limits.

# ARTICLE VII
## DESIGNATION OF BENEFICIARIES

**7.1** **Beneficiary Designation.** Each Participant shall file with the Committee a written designation of one or more persons as the Beneficiary who shall be entitled to receive the amount, if any, payable under the Plan upon his death. Subject to the requirements of Article V, a Participant may from time to time revoke or change his Beneficiary designation without the consent of any prior Beneficiary by filing a new designation with the Committee. Notwithstanding the foregoing, if the Participant is married, his Spouse must consent in writing to the designation of a Beneficiary other than the Participant's Spouse (unless the Committee makes a written determination in accordance with applicable law that no such consent is required). The last such designation received by the Committee shall be controlling; provided, however, that no designation, or change or revocation thereof, shall be effective unless received by the Committee prior to the Participant's death, and in no event shall it be effective as of a date prior to such receipt.

**7.2** **Lack of Designated Beneficiary.** If no valid Beneficiary designation is in effect at the time of a Participant's death, or if no validly designated Beneficiary survives the Participant or if each surviving validly designated Beneficiary is legally impaired or prohibited from taking, then the Participant's Beneficiary shall be his Surviving Spouse, if any, or if the Participant has no Surviving Spouse, then his estate. If the Committee is in doubt as to the right of any person to receive such amount, it may direct the Trustee to retain such amount, without liability for any interest thereon, until the rights thereto are determined, or the Committee may direct the Trustee to pay such amount into any court of appropriate jurisdiction and such payment shall be a complete discharge of the liability of the Plan and the Trust therefor.

ARTICLE VIII

FUNDING AND CONTRIBUTIONS

8.1        **Contributions**.    Subject to the provisions of
Articles X and XI, the Employer shall contribute to the Trust
during each Plan Year in accordance with Code Section 412(m), the
amounts recommended by the Actuary to the Committee as necessary
to maintain the Plan on a sound actuarial basis, in accordance
with ERISA and the Code.   The Committee shall arrange for the
establishment and maintenance by the Actuary, or in accordance
with his recommendations, of such funding accounts as are
required by ERISA.

8.2        **Actuarial Valuation**.   The Committee shall adopt
and may change from time to time, in accordance with the
provisions of ERISA and the Code, such actuarial assumptions and
methods as are recommended by the Actuary for purposes of
actuarial valuations of the Plan.   The Actuary shall make an
annual actuarial valuation of the Plan and shall estimate the
contributions required under Section 8.1 on the basis thereof.
At least once in each three-year period the Actuary shall make an
actuarial study of the mortality, service and compensation
experience of the Participants of the Plan and the investment
experience of the Plan, including such calculations as may be
necessary to determine whether the Plan is adequately funded, and
shall report the results of its study to the Committee.   Prior to
termination of the Plan, forfeitures of benefits arising from
termination of employment, death or any other reason under the
Plan shall not be applied to increase the benefits that any
Participant would otherwise be entitled to receive under the
Plan, but may be anticipated in estimating costs under the Plan
and shall be applied to reduce the Employer's contributions under
the Plan.

8.3    **Trustee**.  All monies, securities or other property received as contributions under the Plan shall be delivered to the Trustee under the Trust, to be managed, invested, reinvested and distributed in accordance with the Plan, the Trust and any agreement with an insurance company or other financial institution constituting a part of the Plan and Trust and the investment guidelines, if any, prescribed by the Committee and communicated to the Trustee.

8.4    **Plan Expenses**.  The expenses of administering the Plan, including (i) the fees and expenses of any employee and of the Trustee for the performance of their duties under the Trust, (ii) the expenses incurred by the members of the Committee in the performance of their duties under the Plan (including reasonable compensation for any legal counsel, certified public accountants, actuary and any agents and cost of services rendered in respect of the Plan) and (iii) all other proper charges and disbursements of the Trustee or the members of the Committee (including settlements of claims or legal actions approved by counsel to the Plan) are to be paid out of the Trust unless the Employer pays such expenses directly in such proportions as shall be determined by the Committee.  In estimating costs under the Plan, administrative costs may be anticipated.

8.5    **Exclusive Benefit Rule**.  Prior to the satisfaction of all liabilities with respect to Participants and their Beneficiaries, the assets of the Trust shall not inure to the benefit of any Employer and shall be held for the exclusive purpose of providing benefits to Participants and/or their Beneficiaries and for defraying the reasonable expenses of administering the Plan.  Notwithstanding the foregoing, (i) any portion of an Employer's contribution which is made by virtue of a mistake of a fact shall be returned to the Employer within one year after the payment of the contribution; and (ii) each Employer's contribution is conditioned upon the deductibility of the contribution for federal income tax purposes under Code

35

Section 404 and, to the extent any such contribution is disallowed as a deduction, such contribution (to the extent disallowed) shall be returned to the Employer within one year of the disallowance.

## ARTICLE IX
## ADMINISTRATION OF THE PLAN

9.1    **The Committee.**

(a)  The Plan shall be administered by a Committee
which shall have general responsibility for the administration
and interpretation of the Plan (including, but not limited to,
complying with applicable reporting and disclosure requirements,
establishing and maintaining Plan records, issuing instructions
to the Trustee regarding the benefits that are to be paid from
the Trust Fund to Participants and Beneficiaries and adopting
amendments to the Plan as described in Section 11.1) and may
exercise such other rights and powers as may be specifically
granted to it herein or by the Board.  The Committee shall engage
the Actuary and such certified public accountants, who may be
accountants for the Company, as it shall require or may deem
advisable for purposes of the Plan.

(b)  The Committee shall periodically review the
investment performance and methods of the Trustee and any other
funding agency, including any insurance company, under the Plan
and may appoint and remove or change the Trustee and any such
funding agency.  The Committee shall have the power to appoint or
remove one or more investment managers and to delegate to such
manager authority and discretion to manage (including the power
to acquire and dispose of) the assets of the Plan, provided that
(i) each manager with such authority and discretion shall be
either a bank, an insurance company or a registered investment
adviser under the Investment Advisers Act of 1940 and shall
acknowledge in writing that it is a fiduciary with respect to the
Plan and (ii) the Committee shall periodically review the
investment performance and methods of each manager with such
authority and discretion.  The Committee shall determine any
requirements and objectives of the Plan (including any interest
rate or other actuarial assumptions) which may be pertinent to

37

the investment of Plan assets and shall establish investment
standards and policies incorporating such requirements and
objectives and communicate the same to the Trustee (or other
funding agencies under the Plan).  If annuities are to be
purchased under the Plan, the Committee shall determine what
contracts should be made available to terminated Participants or
purchased by the Trust.

     **9.2**     <u>**Composition of the Committee**</u>.  The Committee shall
consist of three or more members, each of whom shall be appointed
by, shall remain in office at the will of, and may be removed,
with or without cause, by the Board.  Any member of the Committee
may resign at any time.  No member of the Committee shall be
entitled to act on or decide any matter relating solely to
himself or any of his rights or benefits under the Plan.  The
members of the Committee shall not receive any special
compensation for serving in their capacities as members of the
Committee but shall be reimbursed for any reasonable expenses
incurred in connection therewith.  Except as otherwise required
by ERISA, no bond or other security need be required by the
Committee or any member thereof in any jurisdiction.  Any person
may serve on the Committee and any member of the Committee, any
sub-committee or agent to whom the Committee delegates any
authority, and any other person or group of persons, may serve in
more than one fiduciary capacity (including service both as a
trustee and administrator) with respect to the Plan.

     **9.3**     <u>**Indemnity**</u>.  To the maximum extent permitted by
law, no member of the Committee shall be personally liable by
reason of any contract or other instrument executed by him or on
his behalf in his capacity as a member of such Committee nor for
any mistake of judgment made in good faith, and the Company shall
indemnify and hold harmless, directly from its own assets
(including the proceeds of any insurance policy the premiums of
which are paid from the Company's own assets), each member of the
Committee and each other officer, employee, or director of the

Company to whom any duty or power relating to the administration or interpretation of the Plan or to the management and control of the assets of the Plan may be delegated or allocated, against any cost or expense (including counsel fees) or liability (including any sum paid in settlement of a claim with the approval of the Company) arising out of any act or omission to act in connection with the Plan unless arising out of such person's own fraud or bad faith.

9.4 **Services to the Plan**. The Committee may arrange for the engagement of such legal counsel, who may be counsel for the Company, and make use of such agents and clerical or other personnel as they each shall require or may deem advisable for purposes of the Plan. The Committee may rely upon the written opinion of such counsel and the Actuary and accountants engaged by the Committee and may delegate to any such agent or to any sub-committee or member of the Committee its authority to perform any act hereunder, including without limitation those matters involving the exercise of discretion, provided that such delegation shall be subject to revocation at any time at the discretion of the Committee. The Committee shall report to the Board, at such times as shall be specified by the Board, with regard to the matters for which it is responsible under the Plan.

9.5 **Action of the Committee**. The Committee shall elect or designate its own Chairman, establish its own procedures and the time and place for its meetings, and provide for the keeping of minutes of all meetings. A majority of the members of a Committee shall constitute a quorum for the transaction of business at a meeting of the Committee. Any action of the Committee may be taken upon the affirmative vote of a majority of the members of the Committee at a meeting or, at the direction of its Chairman, without a meeting by mail, telegraph or telephone, provided that all of the members of the Committee are informed by mail or telegraph of their right to vote on the proposal and of the outcome of the vote thereon.