9.6        Committee Records.  The Committee shall appoint an individual who shall cause to be kept full and accurate accounts of receipts and disbursements of the Plan, and shall cause to be deposited all funds of the Plan to the name and credit of the Plan, in such depositories as may be designated by the Committee. Such individual shall cause to be disbursed the monies and funds of the Plan when so authorized by the Committee and shall generally perform such other duties as may be assigned to him from time to time by the Committee.  All demands for money of the Plan shall be signed by such officer or officers or such other person or persons as the Committee may from time to time designate in writing.

9.7        Claims Procedure.

(a)  All claims for benefits under the Plan shall be submitted to, and within a reasonable period of time, decided in writing by the Committee.  Written notice of the decision on each such claim shall be furnished reasonably promptly to the claimant.  If the claim is wholly or partially denied, written notice of the denial shall be furnished within 90 days after receipt of the claim; provided, however, that, if special circumstances require an extension of time for processing the claim, an additional 90 days from the end of the initial period shall be allowed for processing the claim, in which event the claimant shall be furnished with a written notice of the extension prior to the termination of the initial 90-day period indicating the special circumstances requiring an extension. Such written notice shall set forth an explanation of the specific findings and conclusions on which such denial is based.

(b)  A claimant may review all pertinent documents and may request a review by the Committee of such a decision denying the claim.  Such a request shall be made in writing and filed with the Committee within 60 days after delivery to the claimant of written notice of the decision.  Such written request

40

for review shall contain all additional information which the
claimant wishes the Committee to consider.  The Committee may
hold any hearing or conduct any independent investigation which
it deems necessary to render its decision, and the decision on
review shall be made as soon as possible after the Committee's
receipt of the request for review.  Written notice of the
decision on review shall be furnished to the claimant within 60
days after receipt by the Committee of a request for review,
unless special circumstances require an extension of time for
processing, in which event an additional 60 days shall be allowed
for review and the claimant shall be so notified in writing.
Such notice of denial shall include specific reasons for such
decision.  For all purposes under the Plan, such decisions on
claims (where no review is requested) and decisions on review
(where review is requested) shall be final, binding and
conclusive on all interested persons as to any matter of fact or
interpretation relating to the Plan.

    9.8     **Communications.**  Any notice, election,
application, instruction, designation or other form of
communication required to be given or submitted by any
Participant, other Employee or Beneficiary shall be in such form
as is prescribed from time to time by the Committee, sent by
first class mail or delivered in person, and shall be deemed to
be duly given only upon actual receipt thereof by the Committee.
Any notice, statement, report and other communication from the
Employer or the Committee to any Participant, other Employee or
Beneficiary required or permitted by the Plan shall be deemed to
have been duly given when delivered to such person or mailed by
first class mail to such person at his address last appearing on
the records of the Employer or the Committee.  Each person
entitled to receive a payment under the Plan shall file in
accordance herewith his complete mailing address and each change
therein.  A check or communication mailed to any person at his
address on file with the Employer or the Committee shall be
deemed to have been received by such person for all purposes of

the Plan, and no employee or agent of the Employer or member of
the Committee shall be obliged to search for or ascertain the
location of any such person except as required by ERISA.  If the
Committee is in doubt as to whether payments are being received
by the person entitled thereto, it may, be registered mail
addressed to such person at his address last known to the
Committee notify such person that all future payments will be
withheld until such person submits to the Committee his proper
mailing address and such other information as the Committee may
reasonably request.

      9.9      **<u>Information From Participant</u>**.  Each Participant
shall file with the Committee such pertinent information
concerning himself and his Beneficiary, and each Beneficiary
shall file with the Committee such information concerning
himself, as the Committee may specify, and in such manner and
form as the Committee may specify or provide, and no Participant
or Beneficiary shall have the right or be entitled to any
benefits or further benefits under the Plan unless such
information is filed by him or on his behalf.

# ARTICLE X
## TERMINATION OF EMPLOYER PARTICIPATION

10.1    **Right of Termination**.  Any Employer may terminate its participation in the Plan by giving the Committee prior written notice specifying a termination date which shall be the last day of a month at least 60 days subsequent to the date such notice is received by the Committee.  The Committee may terminate any Employer's participation in the Plan, as of any termination date specified by the Committee, for the failure of the Employer to make proper contributions or to comply with any other provision of the Plan and shall terminate an Employer's participation upon complete and final discontinuance of the Employer's contributions.

10.2    **Rights of Participants on Termination**.  To the maximum extent permitted by ERISA, the rights of Participants no longer employed by the Employer and Former Participants and their Beneficiaries and Surviving Spouses shall be unaffected by a termination of the Plan as to any Employer.  Subject to the provisions of Section 11.3, the benefits provided under the Plan with respect to each Participant in service with such Employer as of the termination date will be paid or forfeited in accordance with the Plan as if such termination had not occurred, except that the Committee may direct the Trustee to segregate such portion of the assets of the Trust (the "Distributable Reserve") as the Actuary shall determine to be properly allocable in accordance with ERISA to the active employees of such Employer and direct the Trustee to apply the Distributable Reserve for the benefit of the Participants employed by the Employer as of the termination date in such manner as the Committee shall determine including, without limitation, payment to such Participants in lump cash sums or the purchase of immediate or deferred annuities, a transfer to a successor employee benefit plan which is qualified under Code Section 401(a), or any combination

thereof; provided, however, that in the event of any transfer of assets to a successor employee benefit plan, the provisions of Section 11.7 will apply.  Any such payments or transfers of the Distributable Reserve shall constitute a complete discharge of all liabilities under the Plan with respect to such Employer's participation in the plan and any Participant then employed by such Employer.  To the maximum extent permitted by ERISA, the termination of the Plan as to any Employer shall not in any way affect any other Employer's participation in the Plan.

ARTICLE XI

AMENDMENT OR TERMINATION
OF THE PLAN AND TRUST

11.1    <u>Right of Amendment or Termination</u>.

(a)  Subject to (b) and (c) below, the Board reserves the right at any time to amend, suspend or terminate the Plan, any contributions thereunder, the Trust or any contract issued by an insurance carrier forming a part of the Plan, in whole or in part and for any reason and without the consent of any Employer, Participant, Beneficiary or Surviving Spouse; provided, however, that the Committee may adopt amendments which do not materially affect the cost of the Plan and which may be necessary or appropriate to facilitate the administration, management or interpretation of the Plan or to conform the Plan thereto, to qualify or maintain the Plan and Trust as a plan and trust meeting the requirements of Code Sections 401(a) and 501(a) or any other provision of applicable law (including ERISA), and may exercise such additional powers and authority as may be granted by the Board from time to time.  Each Employer by its adoption of the Plan shall be deemed to have delegated this authority to the Board and the Committee.

(b)  No amendment or modification shall be made which would retroactively impair any rights to any benefit under the Plan which any Participant, Beneficiary or Surviving Spouse would otherwise have had at the date of such amendment by reason of the contributions theretofore made, except to such extent as may be necessary or appropriate to qualify or maintain the Plan and Trust as a plan and trust meeting the requirements of Code Sections 401(a) and 501(a) or any other provision of applicable law (including ERISA), or make it possible for any part of the funds of the Plan (other than such part as is required to pay taxes, if any, and administrative expenses as provided in Section

45

8.4) to be used for or diverted to any purposes other than for the exclusive benefit of Participants and their Beneficiaries and Surviving Spouses prior to the satisfaction of all liabilities with respect thereto.

(c)  Any amendment, modification, suspension or termination of any provisions of the Plan may be made retroactively if necessary or appropriate to qualify or maintain the Plan and Trust as a plan and trust meeting the requirements of Code Sections 401(a) and 501(a) or any other provision of applicable law (including ERISA).

11.2    **Notice**.  Notice of any amendment, modification, suspension or termination of the Plan shall be given by the Board or the Committee, whichever adopts the amendment, to the other and to the Trustee and all Employers and, where and to the extent required by law, to Participants and other interested parties.

11.3    **Plan Termination**.

(a)  Upon termination of the Plan, no amount shall thereafter be payable under the Plan to or in respect of any Participant except as provided in this Article XI, and to the maximum extent permitted by ERISA, transfers or distributions of the assets of the Plan as provided in this Article XI shall constitute a complete discharge of all liabilities under the Plan.  The Committee shall remain in existence and all of the provisions of the Plan which in the opinion of the Committee are necessary for the execution of the Plan and the distribution or transfer of the assets of the Plan shall remain in force.  All determinations and notifications referred to in this Article XI shall be in form and substance satisfactory to counsel for the Plan.

(b)  If the termination of the Plan does not constitute a plan termination for purposes of Title IV of ERISA, the assets of the Plan shall be applied for the benefit of

Participants, Former Participants, Beneficiaries and Surviving Spouses in such manner as the Committee shall determine; provided, however, that in the event of any transfer of assets to a successor employee benefit plan the provisions of Section 11.7 will apply.

   11.4     Distribution on Termination.

      (a)   If the termination of the Plan constitutes a plan termination for purposes of Title IV of ERISA, then the rights of all Participants to their Retirement Benefits accrued to the date of such termination shall thereupon be nonforfeitable, but only to the extent that such Retirement Benefits have then been funded by contributions made prior to such termination and that funds are available to provide such Retirement Benefits upon the allocations hereinafter provided in this Section 11.4.

      (b)   Upon the lapse of the period within which the PBGC may object, and assuming no such objection has occurred, the assets of the Plan which remain after reservation of an amount sufficient to pay all expenses of final administration shall be allocated, to the extent sufficient, in the following order of priority:

         (i)   To provide for the benefits payable under Article V to or in respect of Participants who retired or died, who could have retired, or who, having terminated employment, either began receiving payments of such benefits or could have begun receiving such payments if they had not elected to defer commencement of such payments, at least three years prior to the termination date, determined in each case on the basis of the provisions of the Plan at any time during the five-year period ending on the termination date when such benefits were or would have been the

47

lowest and without regard to any increases in such benefits which accrued less then three years prior to the termination date; then

(ii)  To provide all other benefits under the Plan which are guaranteed by the PBGC under Title IV of ERISA, or which would be guaranteed if ERISA Sections 4022(b)(5) and 4022(b)(6) were not applicable, but which have not been allocated under (i) above; then

(iii)  To provide all other benefits which had become nonforfeitable under the Plan prior to the termination date but which have not been allocated under (i) or (ii) above; then

(iv)  To provide all other benefits which had accrued under the Plan prior to the termination date but which have not been allocated under (i), (ii) or (iii) above; then

(v)  Any surplus assets of the Plan remaining after the payment of all expenses of final administration and after the satisfaction of all liabilities accrued to the termination date with respect to Participants, Former Participants and their Beneficiaries and Surviving Spouses shall, upon receipt of the IRS approval therefor, revert to the Company, provided, that subject to and in accordance with Section 4980(d) of the Code, the Board of Directors may direct that 25 percent of the maximum amount which the Employer could otherwise receive as an employer reversion pursuant to this clause less the amount equal to the present value of aggregate increase in the accrued benefits under the Plan of any

sufficient (or that such assets are insufficient) to discharge
when due all obligations thereunder with respect to benefits
which are guaranteed by the PBGC under Title IV of ERISA, the
assets of the Plan shall be allocated and distributed only as a
court having competent jurisdiction of the Plan or Trust or a
trustee appointed by such court shall direct or permit.

11.6    <u>**Partial Termination**</u>.  In the event that a partial
termination (within the meaning of ERISA) of the Plan has
occurred then (i) the rights of all Participants affected thereby
to their Accrued Benefits accrued to the date of such partial
termination shall thereupon be nonforfeitable, but only to the
extent that such Accrued Benefits have then been funded by such
portion of the assets of the Trust as are determined to be
properly allocable to such Participants and that such portion of
assets is available to provide such Retirement Benefits upon the
allocations provided in Section 11.4, and (ii) the provisions of
the Plan which, in the opinion of the Committee, are necessary
for the execution of the Plan and the allocation and distribution
of the assets of the Plan shall apply.  If a partial termination
of the Plan has occurred as to any Employer, then to the maximum
extent permitted by ERISA, only the Employer as to which the
partial termination of the Plan has occurred shall be liable to
the PBGC for any insufficiency of assets.

11.7    <u>**Successor Plan**</u>.  No transfer of the Plan's assets
and liabilities to a successor employee benefit plan (whether by
merger or consolidation with such successor plan or otherwise)
shall be made unless each Participant would, if either the Plan
or such successor plan then terminated, receive a benefit
immediately after such transfer which (after taking account of
any distributions or payments to them as part of the same
transaction) is equal to or greater than the benefit he would
have been entitled to receive immediately before such transfer if

the Plan had then been terminated.  The Committee may also request appropriate indemnification from the employer or employers maintaining such successor plan before making such a transfer.

## ARTICLE XII
## TOP HEAVY PROVISIONS

**12.1**     <u>**Top Heavy Plan**</u>.

(a)   The Plan will be considered a Top Heavy Plan for any Plan Year if it is determined to be a Top Heavy Plan as of the last day of the preceding Plan Year.  For purposes of determining whether the Plan is a Top Heavy Plan, uniform actuarial assumptions which reflect reasonable mortality experience and a reasonable interest rate shall be used.  The present value of a Participant's Accrued Benefit shall be determined as of the last valuation date used for computing Plan costs for minimum funding purposes which occurs within the Plan Year in which the determination is being made (the "Valuation Date"), and shall include amounts distributed to or on behalf of the Participant within the four preceding Plan Years.

(b)   Notwithstanding any other provisions in the Plan, the provisions of this Article XII shall apply and supersede all other provisions in the Plan during each Plan Year with respect to which the Plan is determined to be a Top Heavy Plan.

**12.2**     <u>Definitions</u>.  For purposes of this Article XII and as otherwise used in the Plan, the following terms shall have the meanings set forth below:

(a)   <u>"Required Aggregation Group"</u> means (i) the group composed of each qualified plan maintained by the Employer or any Affiliate in which at least one Key Employee participates or participated in the Plan Year containing the Determination Date or any of the four preceding Plan Years, regardless of whether the plan has been terminated, and (ii) any other qualified plan maintained by the Employer or any Affiliate which

enables a plan described in clause (i) during the period tested to meet the requirements of Code Section 401(a)(4) or 410.

sufficient (or that such assets are insufficient) to discharge when due all obligations thereunder with respect to benefits which are guaranteed by the PBGC under Title IV of ERISA, the assets of the Plan shall be allocated and distributed only as a court having competent jurisdiction of the Plan or Trust or a trustee appointed by such court shall direct or permit.

11.6    **Partial Termination**.  In the event that a partial termination (within the meaning of ERISA) of the Plan has occurred then (i) the rights of all Participants affected thereby to their Accrued Benefits accrued to the date of such partial termination shall thereupon be nonforfeitable, but only to the extent that such Accrued Benefits have then been funded by such portion of the assets of the Trust as are determined to be properly allocable to such Participants and that such portion of assets is available to provide such Retirement Benefits upon the allocations provided in Section 11.4, and (ii) the provisions of the Plan which, in the opinion of the Committee, are necessary for the execution of the Plan and the allocation and distribution of the assets of the Plan shall apply.  If a partial termination of the Plan has occurred as to any Employer, then to the maximum extent permitted by ERISA, only the Employer as to which the partial termination of the Plan has occurred shall be liable to the PBGC for any insufficiency of assets.

11.7    **Successor Plan**.  No transfer of the Plan's assets and liabilities to a successor employee benefit plan (whether by merger or consolidation with such successor plan or otherwise) shall be made unless each Participant would, if either the Plan or such successor plan then terminated, receive a benefit immediately after such transfer which (after taking account of any distributions or payments to them as part of the same transaction) is equal to or greater than the benefit he would have been entitled to receive immediately before such transfer if

the Plan had then been terminated.  The Committee may also request appropriate indemnification from the employer or employers maintaining such successor plan before making such a transfer.

## ARTICLE XII
## TOP HEAVY PROVISIONS

**12.1**    **Top Heavy Plan.**

(a)   The Plan will be considered a Top Heavy Plan for any Plan Year if it is determined to be a Top Heavy Plan as of the last day of the preceding Plan Year.  For purposes of determining whether the Plan is a Top Heavy Plan, uniform actuarial assumptions which reflect reasonable mortality experience and a reasonable interest rate shall be used.  The present value of a Participant's Accrued Benefit shall be determined as of the last valuation date used for computing Plan costs for minimum funding purposes which occurs within the Plan Year in which the determination is being made (the "Valuation Date"), and shall include amounts distributed to or on behalf of the Participant within the four preceding Plan Years.

(b)   Notwithstanding any other provisions in the Plan, the provisions of this Article XII shall apply and supersede all other provisions in the Plan during each Plan Year with respect to which the Plan is determined to be a Top Heavy Plan.

**12.2**    **Definitions.**  For purposes of this Article XII and as otherwise used in the Plan, the following terms shall have the meanings set forth below:

(a)   **"Required Aggregation Group"** means (i) the group composed of each qualified plan maintained by the Employer or any Affiliate in which at least one Key Employee participates or participated in the Plan Year containing the Determination Date or any of the four preceding Plan Years  regardless of whether the plan has been terminated, and (ii)  any other qualified plan maintained by the Employer or any Affiliate which

51

enables a plan described in clause (i) during the period tested
to meet the requirements of Code Section 401(a)(4) or 410.

(b)  **"Permissive Aggregation Group"** means Required
Aggregation Group plus any other qualified plan or plans
maintained by the Employer or any Affiliate which, when
considered as a group, would continue to satisfy the requirements
of Code Sections 401(a)(4) and 410.

(c)  **"Key Employee"** means any employee or former
employee (and the beneficiaries of such employee) of the Employer
who at any time during the Plan Year containing the Determination
Date and the four preceding Plan Years was (i) an officer of the
Employer whose annual compensation from the Employer exceeds
50% of the dollar limitation in effect under Code Section
415(b)(1)(A), (ii) an owner (or considered an owner under Code
Section 318) of one of the 10 largest interests in the Employer
and whose annual compensation from the Employer exceeds 100% of
the dollar limitation in effect under Code Section 415(c)(1)(A),
(iii) a 5% owner of the Employer, or (iv) a 1% owner of the
Employer whose annual compensation from the Employer is more than
$150,000.  For the purpose of determining who are Key Employees,
"annual compensation" means compensation as defined in Code
Section 415(c)(3), but including amounts contributed by the
Employer pursuant to a salary reduction agreement which are
excludable from the employer's gross income under Code Sections
125, 402(e)(3), 402(h) or 403(b).

(d)  **"Top Heavy Plan"** shall mean a "Top Heavy
Plan" as defined in Section 416(g) of the Code and the
regulations thereunder.  Solely for the purpose of determining if
the Plan, or any other plan included in a Required Aggregation
Group or Permissive Aggregation Group of which the Plan is a
part, is Top Heavy, the Accrued Benefit of a Member, other than a
Key employee, shall be determined under   a   the method   if any
that under the   under the accrual purposes under all plans

maintained by the Company or an Affiliate, or (b) if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional rate of Section 411(b)(1)(C) of the Code.

12.3     **Effect of Top Heavy Status on Vesting**.

(a)  If the Plan is a Top Heavy Plan with respect to any Plan Year, the nonforfeitable percentage of the Accrued Benefit of each Participant who is credited with at least one Hour of Service on or after the date the Plan becomes Top Heavy shall not be less than the amount determined in accordance with the following vesting schedule:

| Years of Vesting Service | Nonforfeitable Interest |
|---|---|
| Less than 3 years | 0% |
| 3 years or more | 100% |

(b)  In the event the vesting provided the Section 3.5 is amended, or changed on account of the Plan becoming or ceasing to be a Top Heavy Plan, any Participant who has completed at least three Years of Vesting Service may irrevocably elect to have the amount of his nonforfeitable right to his Retirement Benefit computed under the Plan without regard to such amendment or change in accordance with procedures established by the Committee.  The election period shall begin on the date such amendment is adopted or the date such change is effective, and shall end no earlier than the latest of the following dates:

(i)   The date which is 60 days after the day such amendment is adopted; or

(ii)  The date which is 60 days after the day such amendment or change becomes effective; or

(iii) The date which is 60 days after the day the Participant is given written notice of such amendment or change by the Committee.

**12.4     Effect of Top Heavy Status on Accrued Benefit.**

(a)   Subject to the provisions of Section 12.5, if the Plan is a Top Heavy Plan at any point in time, the Accrued Benefit for each Participant who has completed a one-year Period of Service and who is a non-Key Employee shall not, at such point, be less than such Participant's average compensation, multiplied by the lesser of (i) 2% multiplied by the Participant's Years of Service or (ii) 20%. For purposes of the preceding sentence, a Participant's Years of Service shall not include any Years of Service credited with respect to a Plan Year during which the Plan was not a Top Heavy Plan.

(b)   For purposes of this Section 12.4, "average compensation" shall mean the average of a Participant's compensation for the period of five consecutive years (or his actual number of consecutive years if less than five) during which the Participant had the greatest aggregate compensation.

(c)   For each Plan Year that the Plan is a Top-Heavy Plan, 1.0 shall be substituted for 1.25 as the multiplicand of the dollar limitation in determining the denominator of the defined benefit plan fraction and of the defined contribution plan fraction for purposes of Code Section 415(e).

(d)   If, after substituting 90% for 60% wherever the latter appears in Code Section 416(g), the Plan is determined not to be a Top Heavy Plan, the provisions of (c) above shall not be applicable if the Accrued Benefit for each Participant who is a non-Key Employee is determined in accordance with (a) above, substituting "3%" for "2%" in (a) above and increasing "20%" in (a) above by 1% for each Plan Year described in the last sentence

12.5    **<u>Nonduplication of Benefits</u>**.  The Committee shall, to the maximum extent permitted by the Code and in accordance with the Regulations, abate the minimum benefit provisions of Section 12.4 by first taking into account the contributions made under any other plans maintained by the Employer which are qualified under Code Section 401(a) to prevent duplication of minimum benefits.

## ARTICLE XIII
## SPECIAL LIMITATIONS IMPOSED BY GOVERNMENT REGULATIONS

13.1     **Application**.  In order to qualify the Plan and the Trust as a qualified plan and trust under the Code the benefits to be provided to certain Participants will be subject to the limitations set forth in this Article XIII.

13.2     **Restriction of Benefits**.

(a)  In the event of the termination of the Plan, the benefits of any highly compensated employee (and any highly compensated former employee), as defined in Section 414(q) of the Code and the regulations thereunder, shall be limited to a benefit that is nondiscriminatory under Section 401(a)(4) of the Code.

(b)  The annual payments to a Restricted Employee (as defined below) may not exceed an amount equal to the payments that would be made on behalf of such Restricted Employee under a single life annuity that is the Actuarial Equivalent of the sum of the Restricted Employee's Accrued Benefit and his other benefits under the Plan.  However, the restriction described in the foregoing sentence shall not apply if:

(i)  after payment to a Restricted Employee of all Benefits (as defined below), the value of the assets of the Plan equals or exceeds 110% of the value of current liabilities (as defined in Section 412(l)(7) of the Code) under the Plan; or

(ii)  the value of the Benefits for a Restricted Employee is less than 1% of the value of current liabilities (as defined in Section 412(l)(7) of the Code) under the Plan; or

(iii)   the value of the Benefits for
Restricted Employee does not exceed $3,500.

(c)   For purposes of this Section 13.2, a
"Restricted Employee" means a Participant who is a highly
compensated employee or highly compensated former employee of the
Employer (as defined in Section 414(q) of the Code and the
regulations thereunder).   In any year, the total number of
individuals who are subject to the restrictions described in this
Section 13.2 shall be limited to a group of not less than 25
highly compensated employees and highly compensated former
employees and the employees included in the group shall be
determined on the basis of such employees with the greatest
compensation.

(d)   For purposes of this Section 13.2, the
"Benefits" includes loans in excess of the amounts set forth in
Section 72(p)(2)(A) of the Code, any periodic income, any
withdrawal values payable to a living Employee, and any death
benefits not provided for by insurance on the Restricted
Employee's life.

13.3      For periods prior to January 1, 1994, the
provisions of Treas. Reg. Sec. 1.401-4(c) shall apply in lieu of
the provisions of Section 13.2.

# ARTICLE XIV
## GENERAL LIMITATIONS AND PROVISIONS

**14.1**    **Rights of Employer**.  Nothing contained in the Plan shall give any employee the right to be retained in the employment of the Company,  Employer or any Affiliate or affect the right of any such employer to dismiss any employee.  The adoption and maintenance of the Plan shall not constitute a contract between an Employer and any employee or consideration for, or an inducement to or condition of, the employment of any employee.

**14.2**    **Trust as Source of Benefits**.  Any and all rights or benefits accruing to any persons under the Plan shall be subject to the terms of the Trust Agreement which the Company shall enter into with the Trustee.  The Trust shall be the sole source of benefits under the Plan and, except as otherwise required by ERISA, the Employer and the Committee assume no liability or responsibility for payment of such benefits, and each Participant, Surviving Spouse, Beneficiary or other person who shall claim the right to any payment under the Plan shall be entitled to look only to the Trust for such payment and shall not have any right, claim or demand therefor against the Employer, or the Committee or any member thereof or any employee or director of the Employer.

**14.3**    **Incompetent Payee**.  If the Committee shall find that any person to whom any amount is payable under the Plan is found by a court of competent jurisdiction unable to care for his affairs because of illness or accident, or is a minor, or has died, then any payment due him or his estate  unless a prior claim therefor has been made by a duly appointed legal representative  may  if the Committee so elects  be paid to his spouse  a child  a relative  an institution maintaining or having

Committee to be a proper recipient on behalf of such person otherwise entitled to payment. Any such payment shall be a complete discharge of the liability of the Plan and the Trust therefor.

    14.4   **Nonalienation of Benefits**. Except insofar as may otherwise be required by law or pursuant to the terms of a Qualified Domestic Relations Order, no amount payable at any time under the Plan and the Trust shall be subject in any manner to alienation by anticipation, sale, transfer, assignment, bankruptcy, pledge, attachment, charge or encumbrance of any kind nor in any manner be subject to the debts or liabilities of any person and any attempt to so alienate or subject any such amount, whether presently or thereafter payable, shall be void. If any person shall attempt to, or shall, alienate, sell, transfer, assign, pledge, attach, charge or otherwise encumber any amount payable under the Plan and Trust, or any part thereof, or if by reason of his bankruptcy or other event happening at any such time such amount would be made subject to his debts or liabilities or would otherwise not be enjoyed by him, then the Committee may, in accordance with procedures applied in a uniform and nondiscriminatory manner, direct that such amount be withheld and that the same or any part thereof be paid or applied to or for the benefit of such person, his Spouse, children or other dependents, or any of them, in such manner and proportion as the Committee may deem proper. For purposes of the Plan, a "Qualified Domestic Relations Order" means any judgement, decree, or order including approval of a property settlement agreement, which has been determined by the Committee in accordance with procedures established under the Plan, to constitute a qualified domestic relations order within the meaning of Code Section 414 p 1 .

**14.5**    <u>Lost Payee</u>.  If the Committee cannot ascertain the whereabouts of any person to whom a payment is due under the Plan, including an alternate payee under a Qualified Domestic Relations Order as provided in Section 14.4, and if, after 3 years from the date such payment is due, a notice of such payment due is mailed to the last known address of such person, as shown on the records of the Committee or the Employer, and within 3 months after such mailing such person has not made written claim therefor, the Committee, if it so elects, after receiving advice from counsel to the Plan, may direct that such payment and all remaining payments otherwise due to such person be cancelled on the records of the Plan and the amount thereof applied to reduce the contributions of the Employer, and upon such cancellation, the Plan and the Trust shall have no further liability therefor, except that, in the event such person later notifies the Committee of his whereabouts and requests the payment or payments due to him under the Plan, the amount so applied shall be paid to him as provided in Article V.

**14.6**    <u>Insurance Contracts</u>.  If the payment of any benefit under the Plan is provided for by a contract with an insurance company, the payment of such benefit shall be subject to all the provisions of such contract.

**14.7**    <u>Credit for Prior Service</u>.  Upon such terms and conditions as the Committee may approve, and subject to any required IRS approval, benefits may be provided under the Plan to a Participant with respect to any period of his prior employment by any organization, and such benefits  and any Service credited with respect to such period of employment  may be provided for, in whole or in part, by funds transferred  directly or indirectly  including a rollover from an individual retirement account or an individual retirement annuity as described in Code Section 408 to the Trust from a defined benefit plan of such organization within the limitations of the applicable law.

14.8      <u>Gender</u>.  Whenever used in the Plan, the masculine gender includes the feminine.

14.9      <u>Captions</u>.  The captions preceding the Sections of the Plan have been inserted solely as a matter of convenience and in no way define or limit the scope or intent of any provisions of the Plan.

14.10      <u>Governing Law</u>.  The Plan and all rights thereunder shall be governed by and construed in accordance with ERISA and the laws of the State of New York.

IN WITNESS WHEREOF, this amended and restated Plan has been executed this ____ day of _____, 1994.

SCANDINAVIAN MARINE
CLAIMS OFFICE, INC.

ATTEST:

By: _____
Title: _____

_____