EXHIBIT 7



# TELEFAX

*from*

BERGENS SKIBSASSURANSEFORENING

| TO | | DATE | |
|---|---|---|---|
| | TOM ØSTENSEN | | 29/8-90 |
| COMPANY | | TELEFAX NO | |
| | MARINE DEFENCE GROUP | | 095 1203 622 1702 |
| FROM | | NUMBER OF PAGES (INCL. FRONT PAGE) | 4 |
| | JOHN WIIK | | |

MESSAGE

*see attached translation*

Tom,

Vedlagt oversendes den oversikt som "Worl
i S.M.C.O. vil få seg forelagt.

Vennligst påse at tallene/momentene er i s
La meg få tilbakespill umiddelbart av hens

På forhånd takk.

Med vennlig hilsen

*John Wiik*

SIGNATURE



Bergens Skibsassuranseforening



Bergens Skibsassuranseforening

## VEDR. S.M.C.O. - M.D.G.

I utgangspunktet kan vi enkelt si at dette spørsmål har en "cost" og en "benefit" side. Skjematisk kan dette settes opp som følger:

1)   "COSTS."

Engangskostnader.

a.   Finansiering av "pensionfund" for å bringe MDG ansatte opp på
     det nivå som SMCO i dag yter.
     (eks. T. Østensen/E. Gravdal).                      USD   40.000,-

b.   Flytting av MDG til Stamford Harbour
     Park fra Greenwich                                  USD   50.000,-

c.   Ekstra husleie for MDG i Greenwich i det man
     må søke en alternativ leietager                     USD   50.000,-

d.   Div. uforutsette utgifter                           USD   25.000,-
                                                         USD  165.000,-

Årlige kostnader.

Disse er å regne som tilleggskostnader til det MDG tidligere
er blitt påført:

e.   Årlige pensjonsinnbetalinger (beløpet vil ligge vesentlig
     under a. over)                                             ?

f.   Sykeforsikring                                      USD   52.000,-

g.   Mulige rentesubsidier for å gi 2 MDG ansatte samme
     "benefit" som SMCO ansatte.
     (Antar at maksimal lånesubsidier mellom USD 75.000 og
     USD 100.000)
     rentesubsidieelement tilnærmet lik 8% p.a.          USD   16.000,-
                                                    CA.  USD   80.000,-



Bergens Skibsassuranseforening

I tillegg til de nominelle beløp som kostandsmessig påløper kan der muligens være ukvantifiserbare "kostnader" så som:

- mulig negativ mottagelse hos SMCO ansatte i det egne aspirasjoner ikke oppfylles. Konsekvens;organisatorisk "turbulens".

- Administrativ/styremessig ressursforbruk knyttet til å integrere organisasjonene.

- Mer komplisert styring i det antall produkter øker.

2)    "BENEFITS".

A.    På sikt bedre utnyttelse av visse støttefunksjoner så som:

- EDB/Regnskap/Økonomi.

- Kontoradmin./Resepsjon etc.

b.    Berikelse av fagmiljø, særlig på "claims" siden.

c.    Mindre "sårbart" fagmiljø - overtid.

d.    Større økonomisk spredning m.h.t. inntjening/overskudd.

e.    Utvikling mot et større kompetansesenter som skulle tiltrekke bedre arbeidskraft, i et marked som sannsynligvis vil ha rekrutterings-problemer i den maritime industri.

f.    Større evne til knoppskyting/opprettelse av satelitter (Miami/Gulf området).

g.    Bedring av administrativ kompetanse.

h.    Attraksjonsverdi øker overfor potensielle nye klienter.



Bergens Skibsassuranseforening

## KONKLUSJON

Dersom "cost"-siden kan reduseres/styres ved at Skuld overtar en del av elementene
er i prinsippet kostnadene knyttet til eventuell "frustasjon" blandt de ansatte i
SMCO.  Man kan neppe påregne besparelser på personellsiden, i allefall ikke i
første omgang, fordelene ligger sannsynligvis mer på felter som bredere kompetanse
i miljø, større appell på rekrutteringssiden og bedre administrativ kompetanse.

Det er dog mulig at enkelte støttefunksjoner så som EDB kan gjøres rimeligere i en
funksjonell organisasjon.  Man forutsetter i utgangspunktet at T.Ø. ikke på noen
måte står som eier av M.D.G. enn videre at det ikke fra M.D.G. eller Skuld's side
kreves vederlag for MDG aksjer.

# EXHIBIT 8

PENSION PLAN FOR EMPLOYEES OF SCANDINAVIAN MARINE CLAIMS OFFICE, INC.
As of 1/01/2000

Employee information for:
TOM OSTENSEN
------------

Social Security #:    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
Birth Date:           3/02/1944
Hire Date:            11/05/1984
Entry Date:           1/01/1992
Retirement date:      4/01/2009
Your current plan status:
Active Participant

Compensation:

| Plan year end | | Plan year end | |
|---|---|---|---|
| 12/31/1999 | $170,000.00 | 12/31/1994 | $150,000.00 |
| 12/31/1998 | $160,000.00 | 12/31/1993 | $150,000.00 |
| 12/31/1997 | $159,996.00 | | |
| 12/31/1996 | $159,996.00 | | |
| 12/31/1995 | $150,000.00 | | |

Your estimated pension starting on 4/01/2009:
Monthly pension from the retirement plan at age 65
based on your annual earnings of $170,000.00          $7,791.67
Monthly estimated Social Security benefit at age 65   $1,448.50
Total estimated monthly retirement benefit            $9,240.17

Estimated Social Security benefits are based on the current law and estimated
earnings.
Future changes in the law OR payments beginning at an age different from 65 may
change the amount shown.


The pension shown above is payable for your lifetime.
Survivor benefits of 50.00% will be paid to your surviving spouse.


Accrued benefits as of 1/01/2000:
Your accrued future monthly benefits are              $5,500.00
Your 100.00% vested accrued benefit is                $5,500.00


This statement was prepared on the basis of information supplied by your and
your employer. If any of the above information is missing or incorrect, please
notify employer.


If the value of your Money Purchase Plan account balance will provide a greater
benefit than that listed above, you will be entitled to the larger benefit.

# EXHIBIT 9

# THE PENSION PLAN FOR THE

## EMPLOYEES OF SCANDINAVIAN MARINE CLAIMS OFFICE, INC.

### AMENDMENT

THIS AGREEMENT, by and between Scandinavian Marine Claims Office, Inc. as the Employer and Tom Ostensen as Trustee:

WHEREAS, it is desired to amend The Pension Plan for Employees of Scandinavian Marine Claims Office, Inc., heretofore established by the Employer.

NOW THEREFORE, it is hereby agreed by and between the Employer and the Trustees that said Plan is hereby amended effective January 1, 1998 as follows:

4.2     **Accrued Benefit Formula.**   The annual amount of Accrued Benefit determined under the Section 4.2 for a Participant as of any date of determination is equal to (a) multiplied by (b), where:

(a)     is 2.75% of the Participant's Final Average Compensation; and

(b)     is the Participant's Years of Service as of the date of determination (including fractions thereof for the Plan Year in which the Participant's termination of employment occurs), not in excess of 20.

IN WITNESS WHEREOF, the Employer, by its duly authorized officers, and the Trustee have caused these presents to be signed this 15th day of October, 1998.

BY:  _____
                    President

       _____
                    Trustee

Y:\CEP\CLIENTS\S\SCANDINAV\AMEND2

SM 001782

# EXHIBIT 10

**AGREEMENT**                                                    6/13/95

This AGREEMENT made as of the ___13ᵗʰ___ day of ___June___,
199_5_, by and between Scandinavian Marine Claims Office, Inc. a
New York corporation (the "Company"), and Tom Ostensen, residing
at _7 Gilliam Lane, Riverside CT 06878_, (the "Employee").

**WITNESSETH**

WHEREAS, the Employee provides valuable services to the Company in
the performance of his duties for the Company; and

WHEREAS, the Company is desirous of ensuring the continued employment
of the Employee; and

WHEREAS, the Employee is desirous of maximizing the amount of
retirement income and related death benefits payable to him or on his
behalf, as a result of his service with the Company;

NOW THEREFORE, in consideration of the premises and mutual covenants
contained herein, the parties agree as follows:

**ARTICLE I - GENERAL AND DEFINITIONS**

1.1  The purpose of this Agreement is to provide for retirement and other
     related benefits to the Employee in addition to those he may accrue
     under the Pension Plan for Employees of Scandinavian Marine Claims
     Office, Inc. (the "Pension Plan") and the Scandinavian Marine Claims
     Office, Inc. Money Purchase Plan (the "Money Purchase Plan").  Such
     Plans shall hereinafter be referred to collectively as the "Plans".

1

1.2  All terms defined in either or both of the Plans shall have the same meanings when used herein unless expressly provided to the contrary herein, except that the determination of Final Average Compensation shall be made hereunder without regard to the limitation imposed under the Plans by Section 401(a)(17) of the Internal Revenue Code, and by treating the Employee as having Compensation in any Plan Year after 1993 equal to the greater of (i) his actual Compensation for such Plan Year, or (ii) his Compensation for 1993 Plan Year, increased by 5% per year, compounded annually up through the end of the Plan Year in question.


## ARTICLE II - RETIREMENT BENEFIT

2.1  If the Employee terminates employment on or after his Normal Retirement Date, the Company agrees to pay the Employee a monthly retirement benefit under this Agreement in an amount determined in accordance with Section 2.2, and payable at the time and in the manner provided in Section 2.3.  The monthly retirement benefit payable in accordance with this Agreement shall be in addition to any amounts payable to the Employee under either or both of the Plans

2.2  The amount of monthly retirement benefit referred in Section 2.1 shall be equal to 1/12 of the excess of (i) over (ii), where:

   (i)   is a dollar amount equal to 60% of the Employee's Final Average Compensation; and

   (ii)  is either (A) the dollar amount of monthly retirement benefit determined under Section 4.2 of the Pension Plan (even though the form of payment under such plan is different from the form of payment described in Section 2.3), or (B) in the event benefits are payable to the Employee under the Money Purchase Plan but not under

2

the Pension Plan, the dollar amount which is the Actuarial Equivalent under the Pension Plan of the amount payable to the Employee under the Money Purchase Plan.

2.3  The retirement benefit described above shall be payable commencing with the first day of the month coinciding with or otherwise next following the date of the Employee's termination of employment, and shall continue until the last such payment made prior to the Employee's death.  In the event the Employee dies after payment of such retirement benefit commences, but before 156 monthly payments are made to him, such payments shall continue to be made to the Employee's Beneficiary until the total number of monthly payments to the Employee and his Beneficiary total 156.

## ARTICLE III - EARLY RETIREMENT AND OTHER TERMINATION OF EMPLOYMENT

3.1  In the event that the Employee terminates employment before his Normal Retirement Date, he shall be entitled to a monthly retirement benefit equal to the amount provided by Section 2.2.  Such retirement benefit shall be payable commencing on the Employee's  Normal Retirement Date, in the manner described in Section 2.3.

3.2  Subject to Section 3.3, an Employee described in Section 3.1 may elect, in accordance with procedures established by the Committee, to begin receiving his retirement benefit on the first day of any month after the date of his termination of employment, but before his Normal Retirement Date.

3.3  In the event that an Employee's retirement benefit commences prior to his Normal Retirement Date in accordance with Section 3.2, the amount of such retirement benefit shall be an adjusted amount determined in accordance with this Section 3.3.  Such adjusted amount shall be determined by first determining a reduced amount equal to

3

the Actuarial Equivalent of the retirement benefit payable at Normal Retirement Date in accordance with Section 3.1, provided, that if the Employee is at least age 60 at the time of his termination of employment, he shall be deemed to be 2 years older for purposes of the determination of such Actuarial Equivalent.  The resulting amount of monthly retirement benefit shall then be increased by a dollar amount equal to the difference between (i) the dollar amount of actuarial reduction under the Pension Plan that would occur under Section 3.4(c) or 3.5(b) of such Plan if benefits were to commence thereunder as of the same date benefits commence under this Agreement and (ii) the dollar amount of the actuarial reduction that would have occurred under (i) above if the Pension Plan contained the 2 year increase in age for Participants terminating employment after age 60 that is described in the preceding provisions of this Section 3.3.

### ARTICLE IV - DEATH BEFORE BENEFIT COMMENCEMENT

4.1    In the event that the Employee dies while employed by the Company or after termination of his employment with the Company but before payment of his retirement benefit commences in accordance with Article III, a monthly death benefit shall be payable to his Beneficiary in accordance with this Article IV.

4.2    Except as otherwise provided in Section 4.3, the monthly death benefit shall commence on the Employee's Normal Retirement Date.  In the case of an Employee who dies while employed by the Company, the amount of such monthly death benefit shall be equal to the monthly retirement benefit that would have been payable to the Employee had he terminate employment instead of died and had not elected to commence payment of his retirement benefit prior to his Normal Retirement Date.  In the case of an Employee described in Article III, the monthly death benefit shall be equal to the monthly Retirement Benefit that would have been payable in accordance with Article III if the Employee had not elected to commence payment of such Retirement Benefit prior to his Normal Retirement Date.

4

4.3.  The Company may in its sole discretion and in accordance with an election by the Beneficiary, commence payment of the monthly death benefit described in this Article IV as of the first day of any mont after the Employee's death but before his Normal Retirement Date.  I the event of such early commencement, the amount of monthly death benefit determined in accordance with the preceding provisions of this Article IV shall be reduced in the same manner as described in Section 3.3; provided, however, that the special treatment afforded to the Employee if he is over age 60 at his termination of employmen shall not apply to the Employee if his termination of employment occurred before he reached age 60, even though his death occurred after the date he reached age 60.

4.4  The monthly death benefit described in this Article IV, shall be payable to the Beneficiary until 156 consecutive monthly payments have been made.  If a Beneficiary dies before 156 monthly payments have been made, payments shall continue to a successor Beneficiary, or, if none, to the Employee's estate, until such time as 156 monthly payments have been made in total.  After 156 such monthly payments have been made, no further death benefits shall be payable hereunder.  Notwithstanding the foregoing, the Company may, in its sole discretion, pay a lump sum death benefit to the Beneficiary in lieu of any further death benefit payments under this Article IV. The amount of such lump sum payment shall be the Actuarial Equivalent of the monthly death benefits yet to be paid under this Article IV.

### ARTICLE V - FUNDING

5.1  The benefits provided by the Company under this Agreement shall be paid out of its general assets.  The Company is under no obligation to set aside any assets to provide the benefits hereunder, nor to enter into any funding arrangements to provide the benefits under this Agreement.

5

5.2  Notwithstanding the provisions of Section 5.1, the Company may
     set aside such assets, create such reserves or establish such
     funding vehicles, including the purchase of life insurance, as it
     deems necessary for the provision of benefits under this Agreement.
     Any such assets, reserves or funding vehicles shall be the sole
     property of the Company, shall be subject to the claims of its
     general creditors and shall not establish any right of ownership
     in the Employee or any of his beneficiaries, successors or assigns.


### ARTICLE VI - MISCELLANEOUS

6.1  Nothing in this Agreement shall give the Employee the right to be
     retained in the employ of the Company or affect the right of the
     Company to dismiss the Employee.

6.2  Notwithstanding anything in this Agreement to the contrary, the
     Employee (and any Beneficiary) shall forfeit all right to any benefit
     under this Agreement if the Employee has committed any act which is
     adjudicated to be a felonious criminal act against the Company.

6.3  The Company shall have the right to request such information from the
     Employee and require the completion of such forms as it deems
     necessary from time to time to administer the terms of this Agreement.

6.4  Any disagreements between the Company and the Employee in regard to
     this Agreement shall be settled by arbitration in accordance with the
     Commercial Arbitration Rules of the American Arbitration Association
     in effect as of the date of filing of the arbitration.

6.5  All communications between the Company and the Employee which
     pertain to this Agreement shall be in writing and shall be deemed to
     have been duly given if delivered personally or by mail, with return
     receipt requested and acknowledged, at the receiving party's last
     known address.

6.6    This Agreement shall be governed by and construed and enforced in accordance with the local laws of the State of Connecticut applicable to agreements made to be performed entirely within such state without regard to its conflicts of laws provisions.

6.7    This Agreement is the entire Agreement between the Company and the Employee with respect to the subject matter hereof and shall be binding upon and inure to the benefit of the parties and their respective heirs and permitted successors and assigns.

6.8    This Agreement may not be altered, modified, changed or discharged except in writing signed by both parties.  This Agreement may be executed in counterparts, and each such counterpart shall constitute an original and all such counterparts shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth above.

_____
Tom Ostensen

SCANDINAVIAN MARINE
CLAIMS OFFICE, INC.


By _____

7

# EXHIBIT 11

REPORT

TO

THE BOARD OF DIRECTORS

OF

SCANDINAVIAN MARINE CLAIMS OFFICE, INC.

1

SM 000600

1.    **Statement of Operations and Retained Earnings Compared with Budget
      For the Twelve Months Ended December 31, 1997.**

      Attached as Exhibit 1 is a copy of the Financial Statement for 1997. 1997 was an
      unusual year. The Company ceased to handle P&I matters for Skuld. However,
      we still have an account receivable of about $145,000 due from Skuld. Collection
      is slow.

      The Company's Balance Sheet has been significantly improved in 1997.
      Operating Cost was about $320,000 less than the Budget. Results from operations
      show a small loss of $31,110.

      Attached as Exhibit 2 is a schedule of hull fee income by underwriter and a
      schedule of hull cases for 1991-1997.

2.    **Pension Plan**

      In 1991 the Company had one pension plan, namely a defined benefit plan, that
      provided for retirement benefits at 50% of pay after 30 years of credited service.
      The cost was 14.5% of eligible annual salaries and rising.

      At the Board Meeting on October 19, 1992, a new Plan was adopted. The
      objectives of the amended Plan were twofold, increase benefits and obtain better
      cost control. Both objectives have been realized.

      We have asked our actuaries, Comprehensive Employee Plans ("CEP") to review
      our Plan again for funding purposes since one of the underlying plans is currently
      in a fully funded position as a result of the changes adopted in 1992.

      Attached, as Exhibit 3, is a copy of CEP's review and recommendation. The
      overall funding cost for both the qualified plan and the non-qualified plan is about
      $135,000 annually including cost of life insurance coverage for those covered
      under the non-qualified plan. The funding assumes that employee loans are
      assigned to the non-qualified plan. CEP further recommends that we undertake a
      review in 1998 to see if it is possible to shift in part the non-qualified plan
      benefits to the qualified plan at a reduced overall cost.

3.    **New Surveyor**

      For a number of years we have been looking at hiring a junior surveyor to
      complement our staff. We currently have five surveyors, two each in Miami and
      Houston and Pradeep Nayyar in Stamford. The average age of our surveyors is
      rather high and we need to hire a junior one this year.

SM 000601

We have advertised and have received a number of applicants, however, only one applicant, Mikul Advani, has a relevant background.   A copy of his resume is attached as Exhibit 4.

Mr. Advani is very well known to us.  He is in his early 40's and has worked for one of our sub-agents in Houston, Texas, since 1990 handling in part work for our principals.  He speaks Spanish and Portuguese.  We ask permission to hire him. He will initially work out of Stamford, but move back to Houston after his tenure in Stamford.

3

SM 000602

Scandinavian Marine Claims Office, Inc.

Balance Sheets
December 31, 1997

| | 1997 | 1996 | Increase/ (Decrease) |
|---|---|---|---|
| **ASSETS** | | | |
| **CURRENT ASSETS** | | | |
| Cash | $ 171,118 | $ (50,409) | $ 221,527 |
| Accounts Receivable | 429,430 | 930,490 | (501,060) |
| Advances for Surveys | 20,725 | 524 | 20,201 |
| Other Receivables | 42,717 | 55,119 | (12,402) |
| Due from Affiliates | 147,475 | 106,137 | 41,338 |
| Prepaid Expenses | 95,219 | 50,980 | 44,239 |
| Prepaid Corporate Income Tax | 9,213 | 12,713 | (3,500) |
| Total Current Assets | 915,896 | 1,105,554 | (189,658) |
| **PROPERTY ACCOUNTS** | | | |
| Computer Software | 24,465 | | 24,465 |
| Furniture & Fixtures | 649,689 | 627,858 | 21,831 |
| Leasehold Improvements | 70,582 | 58,082 | 12,500 |
| Telecom System | 35,703 | 35,703 | |
| | 780,440 | 721,643 | 58,797 |
| LESS: ACCUMULATED DEPRECIATION & AMORTIZATION | 473,281 | 410,951 | 62,330 |
| Net Property | 307,158 | 310,692 | (3,534) |
| **OTHER ASSETS** | | | |
| Deposits | 11,278 | 12,103 | (825) |
| Other Receivables | 23,000 | 23,000 | |
| Investment in Affiliates | 122,488 | 189,486 | (66,998) |
| Due from Officers & Emp.(Mort.) | 894,644 | 914,863 | (20,219) |
| Trust Restricted Cash - Contra | 123,874 | 241,899 | (118,025) |
| Restricted Investment | | 1 | (1) |
| | 1,175,283 | 1,381,352 | (206,069) |
| TOTAL ASSETS | 2,398,338 | 2,797,598 | (399,260) |
| **LIABILITIES & STOCKHOLDER'S EQUITY** | | | |
| **CURRENT LIABILITIES** | | | |
| Accounts Payable - Other | 332,939 | 346,772 | (13,833) |
| Total Current Liabilities | 332,939 | 346,772 | (13,833) |
| **LONG TERM LIABILITIES** | | | |
| Note Payable | 1,030,000 | 1,630,000 | (600,000) |
| Restricted Investment Payable | | | |
| Total Long Term Liabilities | 1,030,000 | 1,630,000 | (600,000) |
| Trust Accounts Payable-Contra | 123,874 | 241,900 | (118,026) |
| **STOCKHOLDER'S EQUITY** | | | |
| Capital Stock | 88,000 | 88,000 | |
| Capital Contributions | 400,000 | | 400,000 |
| Retained Earnings | 423,524 | 490,926 | (67,402) |
| Total Stockholder's Equity | 911,524 | 578,926 | 332,598 |
| TOTAL LIABILITIES & STOCKHOLDER'S EQUITY | $ 2,398,337 | $ 2,797,598 | $ (399,260) |

SM 000603

Scandinavian Marine Claims Office, Inc.

Statement of Operations and Retained Earnings
Compared with Budget
For the Twelve Months Ended December 31, 1997

| | Hull | P & I | 1997 Total | Budget | 1996 Total |
|---|---|---|---|---|---|
| **FEE INCOME** | | | | | |
| Hull | $ 1,942,499 $ | $ | 1,942,499 $ | 2,220,996 $ | 1,903,600 |
| P & I | | 1,574,063 | 1,574,063 | 1,405,992 | 1,561,709 |
| Total Fees | 1,942,499 | 1,574,063 | 3,516,561 | 3,626,988 | 3,465,309 |
| | | | | | |
| **OPERATING EXPENSES** | | | | | |
| Hull | 2,279,040 | | 2,279,040 | 2,470,920 | 2,479,673 |
| P & I | | 1,464,624 | 1,464,624 | 1,590,900 | 1,821,572 |
| Total Oper. Exp. | 2,279,040 | 1,464,624 | 3,743,664 | 4,061,820 | 4,301,245 |
| | | | | | |
| **LESS: NET CHARGES TO CLIENTS** | | | | | |
| Hull | 128,455 | | 128,455 | 259,992 | 181,504 |
| P & I | | 67,538 | 67,538 | 195,000 | 209,021 |
| Affiliates | | | | | 70,000 |
| Total Chgs to Clients | 128,455 | 67,538 | 195,993 | 454,992 | 460,525 |
| | | | | | |
| **NET OPERATING EXPENSE** | 2,150,585 | 1,397,086 | 3,547,671 | 3,606,828 | 3,840,720 |
| | | | | | |
| **RESULTS FROM OPERATIONS** | (208,086) | 176,977 | (31,110) | 20,160 | (375,411) |
| | | | | | |
| **OTHER INCOME** | | | | | |
| Interest | 21,669 | 23,699 | 45,367 | 39,984 | 61,673 |
| Equity in net income of affiliated companies | (33,499) | (33,499) | (66,998) | | 11,959 |
| Miscellaeous | (5,503) | (5,503) | (11,006) | | |
| | | | | | |
| **INCOME BEFORE TAXES** | (225,419) | 161,674 | (63,746) | 60,144 | (301,779) |
| | | | | | |
| **PROVISION FOR TAXES** | | | | | |
| Hull | 3,655 | | 3,655 | 12,996 | 580 |
| P & I | | | | 12,996 | |
| | | | | | |
| **NET INCOME** | (229,074) | 161,674 | (67,401) | 34,152 | (302,359) |
| | | | | | |
| RETAINED EARNINGS (Begin) | 1,328,963 | (838,037) | 490,925 | 490,925 | 793,280 |
| | | | | | |
| RETAINED EARNINGS (End) | $ 1,099,889 $ | (676,363) $ | 423,524 $ | 525,077 $ | 490,921 |

SM 000604

Scandinavian Marine Claims Office, Inc.
Actual Operating Expenses Compared with Budget
For the Twelve Months Ended December 31, 1997

| | HULL (Schedule 1) | P & I (Schedule 2) | 1997 Expenses | Budget | 1996 Expenses |
|---|---|---|---|---|---|
| **EXPENSES** | | | | | |
| **SALARIES & SOCIAL EXPENSES** | | | | | |
| Salaries | $ 1,112,010 | $ 742,792 | $ 1,854,802 | $ 2,025,996 | $ 2,427,994 |
| Med., Life & LTD Ins. | 129,108 | 64,630 | 193,738 | 207,984 | 231,609 |
| Unemployment Ins. | 4,546 | 2,834 | 7,380 | 10,992 | 14,423 |
| SMCO Pension Account | 82,401 | 37,136 | 119,537 | 319,992 | 95,988 |
| Pensions | 119,290 | | 119,290 | 101,988 | |
| Interest Expense | 38,341 | 19,154 | 57,494 | 81,996 | 68,129 |
| F.I.C.A. Expense | 60,204 | 39,005 | 99,209 | 114,000 | 130,071 |
| | 1,545,899 | 905,551 | 2,451,451 | 2,862,948 | 2,968,214 |
| **TRAVEL & ENTERTAINMENT** | | | | | |
| Corp. Travel & Enter. | 106,377 | 105,533 | 211,910 | 173,988 | 178,549 |
| **RENT, ELECTRICITY, ETC.** | | | | | |
| Rent & Electricity | 140,637 | 147,002 | 287,639 | 344,988 | 364,415 |
| General Insurance | 83,111 | 40,174 | 123,284 | 141,996 | 158,931 |
| | 223,748 | 187,176 | 410,924 | 486,984 | 523,346 |
| **COMMUNICATIONS** | | | | | |
| Telephone & Telegraph | 86,927 | 48,781 | 135,708 | 142,992 | 160,797 |
| **STATIONERY, MAINTENANCE, ETC.** | | | | | |
| Print., Stat. & Supp. | 19,997 | 11,712 | 31,709 | 26,988 | 31,219 |
| Postage | 27,338 | 12,189 | 39,527 | 45,000 | 44,680 |
| Copier Rental & Supp. | 20,152 | 13,766 | 33,918 | 34,992 | 35,879 |
| Subscriptions & Pub. | 10,563 | 10,531 | 21,094 | 15,000 | 16,025 |
| Equipment Maint. | 14,385 | 8,243 | 22,628 | 23,988 | 25,678 |
| | 92,435 | 56,441 | 148,876 | 145,968 | 153,481 |
| **DEPRECIATION & AMORTIZATION** | | | | | |
| Dep.-Furnit. & Fixt. | 50,533 | 35,290 | 85,823 | 70,992 | 75,051 |
| Dep.-Telecom System | | | | | 533 |
| Amort.-Leasehold | 8,171 | 5,448 | 13,619 | 5,988 | 6,574 |
| | 58,704 | 40,738 | 99,442 | 76,980 | 82,158 |
| **TAXES** | | | | | |
| Personal Prop. Tax | 4,561 | 4,743 | 9,304 | 9,996 | 11,804 |
| **OTHER EXPENSES** | | | | | |
| General Office Exp. | 43,959 | 39,271 | 83,230 | 69,000 | 62,460 |
| Professional Serv. | 32,094 | 57,575 | 89,669 | 61,992 | 121,845 |
| Contributions | 371 | 240 | 612 | 9,996 | 3,356 |
| Bank Charges | 10,225 | 3,831 | 14,057 | 8,988 | 7,971 |
| Bad Debts | | | | | |
| Dues | 13,251 | 3,892 | 17,144 | 11,988 | 13,786 |
| Cons. Fees & Exp. | | 795 | 795 | | |
| Moving Expenses | 18,616 | 5,545 | 24,162 | | 13,478 |
| Training | 41,872 | 4,510 | 46,382 | | |
| | 160,390 | 115,660 | 276,050 | 161,964 | 222,896 |
| | $ 2,279,040 | $ 1,464,624 | $ 3,743,664 | $ 4,061,820 | $ 4,301,245 |

SM 000605

Scandinavian Marine Claims Office, Inc.                    Schedule 1
Actual Operating Expenses Compared with Budget
For the Twelve Months Ended December 31, 1997

| | Hull | | | |
|---|---|---|---|---|
| | 1997 Actual | Budget | Over/(Under) Budget | 1996 Actual |
| **EXPENSES** | | | | |
| **SALARIES & SOCIAL EXPENSES** | | | | |
| Salaries $ | 1,112,010 | $ 1,245,996 | $ (133,986) | $ 1,434,910 |
| Medical, Life & LTD Ins. | 129,108 | 121,992 | 7,116 | 128,061 |
| Unemployment Insurance | 4,546 | 6,000 | (1,454) | 7,919 |
| SMCO Pension Account | 82,401 | 201,000 | (118,599) | 59,090 |
| Pensions | 119,290 | 101,988 | 17,302 | |
| Interest Expense | 38,341 | 48,996 | (10,655) | 39,780 |
| F.I.C.A. Expense | 60,204 | 69,000 | (8,796) | 72,805 |
| | 1,545,899 | 1,794,972 | (249,073) | 1,742,565 |
| **TRAVEL & ENTERTAINMENT** | | | | |
| Corporate Travel & Enter. | 106,377 | 104,988 | 1,389 | 115,323 |
| **RENT, ELECTRICITY, ETC.** | | | | |
| Rent & Electricity | 140,637 | 210,996 | (70,359) | 186,412 |
| General Insurance | 83,111 | 90,996 | (7,885) | 93,515 |
| | 223,748 | 301,992 | (78,244) | 279,927 |
| **COMMUNICATIONS** | | | | |
| Telephone & Telegraph | 86,927 | 85,992 | 935 | 99,169 |
| **STATIONERY, MAINTENANCE, ETC.** | | | | |
| Print., Stationery & Suppl | 19,997 | 15,996 | 4,001 | 18,792 |
| Postage | 27,338 | 27,000 | 338 | 25,744 |
| Copier Rental & Supplies | 20,152 | 21,000 | (848) | 20,630 |
| Subscriptions & Publicatio | 10,563 | 9,000 | 1,563 | 8,526 |
| Equipment Maintenance | 14,385 | 13,992 | 393 | 14,936 |
| | 92,435 | 86,988 | 5,447 | 88,628 |
| **DEPRECIATION & AMORTIZATION** | | | | |
| Depreciation-Furnit. & Fix | 50,533 | 42,000 | 8,533 | 42,771 |
| Depreciation-Telecom Syste | | | | 266 |
| Amortization-Leasehold | 8,171 | 3,996 | 4,175 | 3,995 |
| | 58,704 | 45,996 | 12,708 | 47,032 |
| **TAXES** | | | | |
| Personal Property Tax | 4,561 | 6,000 | (1,439) | 5,755 |
| **OTHER EXPENSES** | | | | |
| General Office Expenses | 43,959 | 42,000 | 1,959 | 35,177 |
| Professional Services | 32,094 | 22,992 | 9,102 | 34,738 |
| Contributions | 371 | 6,000 | (5,628) | 1,964 |
| Bank Charges | 10,225 | 6,996 | 3,229 | 6,645 |
| Bad Debts | | | | |
| Dues | 13,251 | 6,996 | 6,255 | 9,272 |
| Consultant Fees & Expenses | | | | |
| Moving Expenses | 18,616 | | 18,616 | 13,478 |
| Training | 41,872 | | 41,872 | |
| | 160,390 | 84,984 | 75,406 | 101,274 |
| $ | 2,279,040 | $ 2,470,920 | $ (191,880) | $ 2,479,673 |

SM 000606

Scandinavian Marine Claims Office, Inc.                    Schedule 2
Actual Operating Expenses Compared with Budget
For the Twelve Months Ended December 31, 1997

|  | 1997 Actual | | Budget | P & I | Over/(Under) Budget | | 1996 Actual |
|---|---|---|---|---|---|---|---|
| **EXPENSES** | | | | | | | |
| **SALARIES & SOCIAL EXPENSES** | | | | | | | |
| Salaries | $ | 742,792 | $    780,000 | $ | (37,208) | $ | 993,084 |
| Medical, Life & LTD Ins. | | 64,630 | 85,992 | | (21,362) | | 103,548 |
| Unemployment Insurance | | 2,834 | 4,992 | | (2,158) | | 6,504 |
| SMCO Pension Account | | 37,136 | 118,992 | | (81,856) | | 36,898 |
| Interest Expense | | 19,154 | 33,000 | | (13,846) | | 28,349 |
| F.I.C.A. Expense | | 39,005 | 45,000 | | (5,995) | | 57,266 |
| | | 905,551 | 1,067,976 | | (162,425) | | 1,225,649 |
| **TRAVEL & ENTERTAINMENT** | | | | | | | |
| Corporate Travel & Enter. | | 105,533 | 69,000 | | 36,533 | | 63,226 |
| **RENT, ELECTRICITY, ETC.** | | | | | | | |
| Rent & Electricity | | 147,002 | 133,992 | | 13,010 | | 178,003 |
| General Insurance | | 40,174 | 51,000 | | (10,826) | | 65,416 |
| | | 187,176 | 184,992 | | 2,184 | | 243,419 |
| **COMMUNICATIONS** | | | | | | | |
| Telephone & Telegraph | | 48,781 | 57,000 | | (8,219) | | 61,628 |
| **STATIONERY, MAINTENANCE, ETC.** | | | | | | | |
| Print., Stationery & Suppl | | 11,712 | 10,992 | | 720 | | 12,427 |
| Postage | | 12,189 | 18,000 | | (5,811) | | 18,936 |
| Copier Rental & Supplies | | 13,766 | 13,992 | | (226) | | 15,249 |
| Subscriptions & Publicatio | | 10,531 | 6,000 | | 4,531 | | 7,499 |
| Equipment Maintenance | | 8,243 | 9,996 | | (1,753) | | 10,742 |
| | | 56,441 | 58,980 | | (2,539) | | 64,853 |
| **DEPRECIATION & AMORTIZATION** | | | | | | | |
| Depreciation-Furnit. & Fix | | 35,290 | 28,992 | | 6,298 | | 32,280 |
| Depreciation-Telecom Syste | | | | | | | 267 |
| Amortization-Leasehold | | 5,448 | 1,992 | | 3,456 | | 2,579 |
| | | 40,738 | 30,984 | | 9,754 | | 35,126 |
| **TAXES** | | | | | | | |
| Personal Property Tax | | 4,743 | 3,996 | | 747 | | 6,049 |
| **OTHER EXPENSES** | | | | | | | |
| General Office Expenses | | 39,271 | 27,000 | | 12,271 | | 27,283 |
| Professional Services | | 57,575 | 39,000 | | 18,575 | | 87,107 |
| Contributions | | 240 | 3,996 | | (3,756) | | 1,392 |
| Bank Charges | | 3,831 | 1,992 | | 1,839 | | 1,326 |
| Bad Debts | | | | | | | |
| Dues | | 3,892 | 4,992 | | (1,100) | | 4,514 |
| Consultant Fees & Expenses | | 795 | | | 795 | | |
| Moving Expenses | | 5,545 | | | 5,545 | | |
| Training | | 4,510 | | | 4,510 | | |
| | | 115,660 | 76,980 | | 38,680 | | 121,622 |
| | $ | 1,464,624 | $  1,590,900 | $ | (126,276) | $ | 1,821,572 |

SM 000607

SCANDINAVIAN MARINE CLAIMS OFFICE, INC.

HULL STATISTICS BY UNDERWRITER
AS OF 12/31/97

NORWEGIAN
| | |
|---|---|
| 102 - BERGEN HULL CLUB | $   271,013.22 |
| 108 - INDUSTRIFORSIKRING A.S. | 8,899.09 |
| 117 - GJENSIDIGE MARINE & ENERGY INSURANCE A/S | 29,934.55 |
| 118 - ZURICH PROTECTOR FORSIKRING AS | 88,285.86 |
| 122 - UNITAS  GJENSIDIG ASSURANSEFORENING | 397,857.69 |
| 124 - VESTA FORSIKRING A/S | 147,845.04 |
| 130 - STOREBRAND SKADEFORSIKRING AS | 176,127.88 |
| 141 - KYSTSKIPSASSURANSEN | 25,774.50 |
| 157 - STAR FORSIKRING A/S | 630.00 |

$1,146,367.83

SWEDISH
| | |
|---|---|
| 200 - ATLANTICA INSURANCE CO. LTD. | 20,685.69 |
| 209 - THE SWEDISH CLUB | 133,083.86 |
| 210 - TRYGG HANSA INSURANCE COMPANY LTD. - MARINE | 26,490.17 |
| 214 - LF INSURANCE COMPANY LTD. | 15,200.75 |

$   195,460.47

FINNISH
| | |
|---|---|
| 302 - FINNISH MARINE | 8,495.00 |
| 308 - THE ALANDIA GROUP | 9,191.50 |
| 311 - THE POHJOLA GROUP | 788.45 |

$    18,474.95

DANISH
| | |
|---|---|
| 403 - TRYG BALTICA FORSIKRING, SKADESFORSIKRINGSSELSKA | 1,811.25 |
| 410 - CODAN INSURANCE LTD. | 53,967.79 |

$    55,779.04

OTHER
| | |
|---|---|
| MISCELLANEOUS | 526,416.72 |

TOTAL

$1,942,499.01

SM 000608



## Hull Cases 1991-1997

|                  | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 | 1997 |
|------------------|------|------|------|------|------|------|------|
| Tech. and Legal  | 209  | 145  | 104  | 113  | 99   | 71   | 87   |
| Technical        | 475  | 331  | 253  | 208  | 194  | 188  | 167  |
| Total            | 684  | 476  | 357  | 321  | 293  | 259  | 254  |

SM 000609

# SCANDINAVIAN MARINE CLAIMS OFFICE, INC.

# RETIREMENT PROGRAM ANALYSIS

Kevin M. Sweeney
Director of Pension Services

**COMPREHENSIVE EMPLOYEE PLANS**

SM 000610

## OBJECTIVES

- Project current costs for funding benefits for the 1998 plan year.

- Review options for funding these costs.

- Review options for changes in Plan Design.

## Current Status

The current retirement program is composed of two types of plans:

- Qualified Plans for all employees:      1) Defined Benefit Plan
                                           2) Money Purchase Plan

- Non-Qualified Plan for certain members of management.  This plan provides for a benefit equal to the difference between the qualified plan benefit and 60% of considered compensation with a minimum compensation threshold.

The Qualified Plan Program consists of a defined benefit and a defined contribution plan operating in a floor-offset arrangement (defined below).   The defined benefit plan provides a benefit of 2% of pay for each year of credited service up to 25.  The maximum benefit, therefore, is equivalent to 50% of considered compensation.  The funding for benefits under this plan is based on the monthly benefit expected to be paid at normal retirement.  This benefit is offset by the projected value of the benefit attributable to the accumulation of contributions under the money purchase plan which provides for annual contributions of 3% of payroll for each participant.  Therefore, the money purchase plan acts as a funding vehicle for the defined benefit plan.  If the projected accumulation under the money purchase plan results in a benefit that is greater than that determined under the plan's formula, there is no projected funding cost under the defined benefit plan.  These two plans operate interdependently.

The actuarial cost method or funding method utilized under the defined benefit plan is the Frozen Entry Age Actuarial Cost Method.  The normal cost under this method is determined as a level percentage of the total considered compensation of all employees under normal retirement age.  In addition, there is a contribution required to amortize the various amortization bases that have been established over the plan's lifetime.

SM 000611

**Definition of floor-offset plan:** A floor-offset plan is a hybrid arrangement in which the employer maintains a defined benefit plan and a defined contribution plan and the benefits under the defined benefit plan will be reduced by the value of the participant's account in the defined contribution plan. In essence, the defined benefit plan provides a guaranteed floor benefit, but the amount is offset by the benefit provided under the defined contribution plan.

If the value of the participant's account in the defined contribution plan declines, the participant will be insulated from the risk of investment loss because the full amount of pension benefits will be provided under the defined benefit plan. Conversely, if the value of the participant's account in the exceeds the amount of the benefit under the defined benefit plan, the participant will receive benefits exclusively from the defined contribution plan.

## Current Costs

Based on our preliminary projections and a combined asset value of $ 3,765,000 as of December 31, 1997, we expect that the defined benefit plan will remain fully funded and will not require a contribution for the current plan year. We have assumed that salaries will remain level in determining the current funding projections. The cost for the money purchase plan as of December 31, 1997 will be 3% of covered payroll.

The projected funding cost for the non-qualified plan is $ 93,740, including the annual premium for the insurance coverage under the plan. In funding for this plan, we have assumed that the current outstanding employee mortgages which were valued at $894,644 will be assigned to fund the future obligations under this plan and that the income stream from the mortgages will be applied towards the cost of the plan. We have funded the present value of future benefits payable through the next 15 years, net of the reduction for the assigned mortgage values and the current cash value of the insurance policies, on a level annual basis through January 1, 2013. We have not assumed any mortality gain which might be derived from the death benefits payable under the insurance contracts. Benefits after the 15th year are assumed to be payable on a then current basis.

## Options

The defined benefit plan overfunding may be sufficient to allow for a modest increase in the qualified benefits payable under the plan. If this is true, the increase in the value of qualified benefits will reduce the funding obligation under the non-qualified plan for those affected participants.

SM 000612

## Recommendations

Once the valuation for the defined benefit plan year beginning January 1, 1998 has been completed, the overfunding, if any, should be considered in determining if the qualified plan benefits are to be increased. An increase in the percentage of pay for each year of service or an increase in the number of years of credited service, would result in a higher projected benefit under the qualified plan. The effect of any qualified plan benefit increase would be a reduction in the non-qualified plan cost. This is because of the corresponding decrease in the projected benefit values under the plan. The determination of the possible qualified plan benefit increase will require an actuarial study of the possible plan amendment alternatives, including a study of the reduction in the non-qualified plan contribution amounts.

SCANDINA/ANALYSIS

SM 000613

RECEIVE

JUL 25 199

S.M.C.O.

Mukul H.Advani
105 Whipple Dr
Bellaire, Texas 77401.

Date: July 19, 1996

To
Scandinavian Marine Claims Office, Inc.
P.O.Box 120020,
333 Ludlow Street,
Stamford, CT 06912-0020

Re: Your advertisement for an Engineer Surveyor.

Dear Sir/Madam:

With reference to your advertisement in The Journal Of Commerce of June 25, 1996,
I would like to apply for the position of an Engineer Surveyor.

I am a Marine Chief Engineer, with a Class I Motorship Certificate (unlimited
horsepower). Currently employed with Russell Brierly & Associates, Inc., I have several
years of experience with various kinds of Surveys, with particular reference to Hull &
Machinery Surveys and P&I Club Surveys, as detailed in my attached resume. I have
worked for Major Marine Underwriters worldwide, and am very familiar with their
requirements with respect to surveys, claims, follow-up surveys, etc.

As a matter of fact, with my present employers, I have worked for your office for
numerous years, when requested by your good selves.

I believe I would be well suited to your requirements and would welcome the opportunity
of meeting with you to discuss this position further and then joining your team.

I look forward to hearing from you;

Yours sincerely,

Mukul H.Advani

SM 000614

**NAME**
Mukul H.Advani

**ADDRESS**
105 Whipple Drive,
Bellaire, Texas 77401
Phone: (713) 668 5786
Fax    : (713) 668 4721

## OBJECTIVE

A position as a Marine Surveyor with a major Marine Surveying Company that requires strong technical capabilities, encourages professional achievement and rewards according to merit.

## STRENGTHS

Proven ability to organize and execute projects in a logical, timely manner, to develop rapport and communicate well with individuals of every professional and cultural background, and to negotiate with skill.

## EDUCATION AND CERTIFICATES

| | | |
|---|---|---|
| 1982 | CERTIFICATE OF COMPETENCY<br>Marine Engineer Officer, Class I, Motorship<br>(Chief Engineer, Unlimited Horsepower) | United Kingdom |
| 1981 | MERCHANT NAVY TRAINING BOARD<br>First Aid and Fire Fighting At Sea | United Kingdom |
| 1976 | MARINE ENGINEERING COLLEGE<br>Graduation Certificate, Marine Engineer | Bombay, India |

SM  000615

## PROFESSIONAL HIGHLIGHTS

Extensive experience on various slow and medium speed Main Propulsion Marine
Diesel Engines, power generation systems, boilers and auxiliaries.

| | |
|---|---|
| 08/90-Present | RUSSELL BRIERLY & ASSOCIATES, INC. |
| | Houston, Texas |
| | **Marine Surveyor** |

- Hull & Machinery Surveys
- P & I Club Surveys
- Cargo Surveys
- Collision Damage Surveys
- Grounding Damage surveys
- Salvage Operation Surveys
- Dock Damage Surveys
- Pre-Entry Condition Surveys
- Pre-Purchase Condition Surveys
- Condition & Valuation Surveys of
  Marine Equipment
- Appraisal Surveys
- Trip-In-Tow Surveys
- Consultation Services
- Testifying as Expert Witness

Surveys are carried out on behalf of Major International Marine Hull & Machinery
Underwriters and P&I Clubs based in countries such as Norway, Sweden, Denmark,
England, Germany and Japan, Shipowners, Oil Companies, Financial Institutions and other
such entities. Surveys have required extensive domestic and/or international travel to
various parts of the country from coast to coast, Latin America, Africa and the Middle
East.

| | |
|---|---|
| 08/86-08/90 | FLORIDA FUELS, INC. |
| | Miami, Florida |
| | **Cargo Supervisor** |

- Training ship's crew in STS procedures.
- Loading/Discharging Company Tankers
- Calculating various blends of Fuel Oils/Diesel Oils
- Maintaining strict quality/quantity control
- Preparing products for delivery to client vessels
- Offshore deliveries via tankers to VLCCs, ULCCs

SM 000616

- Liaison with Client Ships, Agencies, Head Office, Oil Companies etc.

10/85–04/86        T&M, INC.
                   Monte Carlo, Monaco
                   **Marine Engineer Superintendent**

- Operation and maintenance of Marine Power Plants
- Monitoring Fuel Economy
- Major Engine Overhauls, Hull Repairs, Dry Docking Hull & Machinery Surveys.
- Ship staff supervision, maintenance recommendations, material procurement, repair bids procurement, negotiations with contractors, ensuring timely completion, record keeping of Deck/Engine repair costs, payroll calculations and disbursements.
- Crew Management, hiring from Overseas Crewing Agencies
- Contract negotiations with unions, agents and clients.

10/79–04/84        ATLANTIC MARITIME SERVICES
                   Hamilton, Bermuda
                   **Chief Engineer**    (11/83–04/84)
                   **Second Engineer**   (01/81–10/83)
                   **Third Engineer**    (10/79–12/80)

- Major overhauls of machinery, dry docking and maintenance of power plants.

12/78–07/79        KUWAIT LIVESTOCK CARRIERS
                   Kuwait
                   **Third Engineer**

- Major overhauls, dry docks, Classification Surveys
- Watch keeping and maintenance

10/76–12/78        SHIPPING CORPORATION OF INDIA
                   Bombay, India
                   **Junior Engineer**

- Watch Keeping, repairs and maintenance
- Working with Senior Engineers as directed

References available on request.

SM  000617

# EXHIBIT 12

THE PENSION PLAN FOR EMPLOYEES OF
SCANDINAVIAN MARINE CLAIMS OFFICE, INC.
and
SCANDINAVIAN MARINE CLAIMS OFFICE, INC.
MONEY PURCHASE PENSION PLAN

### Benefit Statement as of December 31, 2000

**Prepared for**: Tom Ostensen          **Social Security Number**:  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

**Section 1:  Personal Data**  Your benefit calculation depends on your personal data in the plan records.   If any of the data below is incorrect, immediately notify the contact indicated at the end of this Statement.

| | | | |
|---|---|---|---|
| Date of Birth: | 3/2/1944 | Benefit Service: | 10 years |
| Date of Hire: | 1/1/1991 | Marital Status: | Married |
| Date of Participation: | 1/1/1992 | Date of Termination: | 6/30/2000 |

**Section 2:  Compensation History**  The Plan pays a benefit based on the average of your compensation for the highest paid 36-month period of your employment.

| | | |
|---|---|---|
| Highest 36 months: | 7/1/1999 – 6/30/2000 | $160,000.00 |
| | 7/1/1998 – 6/30/1999 | $160,000.00 |
| | 7/1/1997 – 6/30/1998 | $159,998.00 |

**Section 3:  Benefits**   Your accrued benefit under both the Pension Plan and Money Purchase Pension Plan is shown below in the form of a single life annuity for your life if you are single or a 50% joint and survivor annuity if you are married.  The amount of the benefit that you actually receive may be affected by your election of any optional form of distribution under the Plans.  *Effective December 31, 2000, all future benefit accruals under both Plans ceased.*

The Pension Plan for Employees of Scandinavian Marine Claims Office, Inc.:
- Monthly annuity benefit at age 65:                    $1,586.13

Scandinavian Marine Claims Office, Inc. Money Purchase Pension Plan:
- Account balance as of 12/31/2000:                 $59,079.53
- Monthly annuity benefit at age 65:                   $1,080.52

Total monthly annuity benefit at age 65 (from both plans):      $2,666.65
You are currently vested in your accrued benefit from the Plans:      100%

*If you have any questions about this benefit statement or corrections to make in your personal data, please notify Perla Palomino, SCUA Americas, Inc., 250 Catalonia Avenue, Suite 304, Coral Gables, FL 33134, telephone (305) 529-5882 during normal business hours.*