# EXHIBIT 51

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------X

SCANDINAVIAN MARINE CLAIMS OFFICE, INC.

                     Plaintiff,

v.

SIRI OSTENSEN,

                     Defendant,

v.

SCANDINAVIAN MARINE CLAIMS OFFICE, INC., SCANDINAVIAN UNDERWRITERS AGENCY, SCUA AMERICAS, INC., S.M.C.O., A.S., AND NORWEGIAN HULL CLUB,

   Counterclaim and Third-Party Defendants.

------------------------------------------------------X

Civil Case No.
3:02 CV 678 (RNC)

Magistrate Judge Donna F. Martinez

September 29, 2005

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY RESPONSES

Plaintiff/Third-Party Defendant Scandinavian Marine Claims Office, Inc. ("SMCO") and Third-Party Defendants SCUA Americas, Inc. ("SCUAA"), SMCO A.S.[1], and Norwegian Hull Club ("NHC") (collectively, the "Opposing Parties") respectfully submit this Memorandum of Law in opposition to Defendant's Motion to Compel

---

[1] Because SMCO A.S. was one of the entities to which Defendant's Motion to Compel was directed, SMCO A.S. joins in this opposition, without prejudice to its pending motion to dismiss for lack of personal jurisdiction.

1335734.1

1

Discovery Responses, dated June 24, 2005, as amended by Defendant's counsel's letter to Magistrate Judge Martinez dated September 27, 2005.

## PRELIMINARY STATEMENT

Since the time that Defendant filed her Motion to Compel on or about June 27, 2005, counsel for the parties have been engaged in a continuing dialogue regarding document production. The Opposing Parties have produced over 3700 pages of documents since Defendant's Motion to Compel was filed (and over 6000 pages of documents in total during discovery).[2] As a result of these efforts, the Opposing Parties have been able to narrow the broad-based, scattershot discovery issues alleged in Defendants' voluminous Motion to Compel down to the four remaining issues articulated in Defendant's counsel's September 27, 2005 letter to the Court. (Zancolli Decl., Ex. 1 (9/27/05 Lundin letter to Magistrate Judge Martinez)).[3] These four remaining issues are addressed below in the order in which they were presented in Defendant's counsel's letter.

## ARGUMENT

### I. THE COURT SHOULD NOT COMPEL PRODUCTION OF DOCUMENTS REGARDING THE NON-QUALIFIED PLAN

Defendant's claims arising out of the Non-Qualified Plan are subject to arbitration and have been stayed pursuant to this Court's Order, dated September 29, 2003. Federal Courts have disfavored allowing discovery regarding claims that are subject to arbitration, and such discovery should be denied in the absence of extraordinary

---

[2] The document production establishes that assets were not stripped from SMCO and that no dividends were paid to the shareholder. The document production further shows that SMCO operated as a separate entity, maintained corporate records and minutes, had a positive shareholders equity from 1990 to 1999, and had an operating loss of $4,387,706 and a negative shareholder equity of $3,961,011 when it ceased operating in December 2000.

[3] References in the form "Zancolli Decl., Ex.___" are to the exhibits attached to the accompanying Declaration of Mark R. Zancolli, sworn to on September 29, 2005.

1335734.1

2

Case 3:02-cv-00678-RNC    Document 170-23    Filed 10/13/2005    Page 4 of 8

circumstances. In *Commercial Solvents Corp. v. Louisiana Liquid Fertilizer Co.*, 20 F.R.D. 259, 261 (S.D.N.Y. 1961), the Court ruled that "[b]y voluntarily becoming a party for a contract in which arbitration was the agreed mode for settling disputes thereunder respondent chose to avail itself of procedures peculiar to the arbitral process rather than those used in judicial determinations." Therefore, "[d]iscovery on the subject matter of a dispute to be arbitrated should be denied in the absence of extraordinary circumstances." *Hughes, Hooker & Co. v. American Steamship Owners Mutual Protection and Indemnity Assoc.*, No. 04 Civ. 1859 (SHS), 2005 WL 1384055 (S.D.N.Y. June 9, 2005) (quoting *Falcone Bros. Partnership v. Bear Stearns & Co.*, 699 F.Supp. 32, 35 (S.D.N.Y. 1988); *see also Cotter v. Shearson Lehman Hutton, Inc.*, 126 F.R.D. 19, 21 (S.D.N.Y. 1989).

In this context, "exceptional circumstances" are those circumstances under which discovery may be lost forever if not immediately obtained. For example, one of the "exceptional circumstances" in which discovery has been deemed proper is where a vessel with crew members possessing particular knowledge of the dispute is about to leave port. *See, e.g., Bergen Shipping Co., Ltd. v. Japan Marine Services, Ltd.*, 386 F.Supp. 430, 435 n. 8 (S.D.N.Y.1974) (allegations that crew was about to leave the United States sufficient to meet test of necessity).

Defendant has not, because she cannot, asserted any "extraordinary circumstances" warranting discovery regarding the Non-Qualified Plan that is the subject of arbitration. The discovery Defendant seeks is not in danger of being lost, nor will it be unavailable when she commences her arbitration regarding her claims arising out of the

1335734.1

3

Non-Qualified Plan. Accordingly, the Court should not compel production of documents regarding the Non-Qualified Plan.[4]

## II. THE NORWEGIAN HULL CLUB HAS PROVIDED DISCOVERY OF DOCUMENTS WHICH PRE-DATE ITS NAME CHANGE

Defendant's contention that the Norwegian Hull Club (NHC) refuses to provide discovery of documents dated before January 1, 2001 is not true. NHC did not exist until January 1, 2001 through the merger of Unitas and Bergen Hull Club, yet it has produced documents dating back as far as 1996, including (1) annual reports for itself and its predecessors which contain financial statements and detailed information about their board of directors and management from 1996 to 2004 (Bates Nos. NW 00010 to 00184; 00668 to 00906) and (2) business plans relating to SMCO from 1996 to 2000 (Bates Nos. NW 00362-00664).[5]

Defendant has not identified a specific document request of the NHC for relevant documents that have not been produced. Moreover, Defendant's counsel has not responded to our letter of August 16, 2005 (Zancolli Decl., Ex. 2) as it relates to the issues of NHC's document production.

---

[4] Notwithstanding the fact that Ostensen has yet to commence arbitration proceedings against SMCO, during the process of document production, SMCO has produced documentation relating to the Non-Qualified Plan. (Bates Nos. SM 1731 to SM 1789). Documentation relating to the Non-Qualified Plan was also produced to the extent that the Non-Qualified Plan was referenced in the minutes of the meetings of the Board of Directors of SMCO, and SMCO produced twelve years of minutes of the meetings of its Board of Directors.

[5] This documentation and the SMCO documentation establishes that the Bergen Hull Club, the predecessor to NHC, did not have any representative on the Board of Directors of SMCO from 1991 to 1997 and had only one out of nine Board seats from 1997 to 2000.

1335734.1

4

### III. SMCO HAS ALREADY PRODUCED THE DOCUMENT THAT WAS PROVIDED TO THE COURT DURING THE PARTIES' MEDIATION

Defendant contends that SMCO refuses to respond to their repeated request for the production of the document it "provided to Your Honor at the parties mediation in March." Counsel for Defendant is incorrect. The document the Defendant's counsel is referring to is the "drop hands" letter dated June 27, 2001 that Tom Ostensen sent to the Board of SMCO. That document was produced by SMCO as part of its document production to Defendant and bears Bates Nos. SM 002796 to 2798. (Zancolli Decl., Ex. 3).

### IV. THE SEARCH FOR ADDITIONAL RECORDS REGARDING THE PAYMENT OF SMCO'S EXPENSES IS STILL ONGOING AND SUCH RECORDS WILL BE MADE AVAILABLE FOR DEFENDANT'S INSPECTION ONCE THEY ARE LOCATED

SMCO ceased operating in December, 2000. Since that time, it has not had any employees. The business records of SMCO, particularly most of its accounting ledgers, are in storage. In an effort to respond to Defendant's counsel's supplemental requests for information regarding what expenses of SMCO were paid and by whom, and for information regarding the entity that paid SMCO's legal bills when and if SMCO and a Related Other Entity were represented by the same counsel, we informed Defendant's counsel that responsive documents through December 31, 2001 (i.e., one year after SMCO ceased operating) would be searched for and produced if not unduly burdensome. (Zancolli Decl., Ex. 2 (8/16/05 Zancolli letter to Lundin)). SMCO has been attempting to determine what ledgers are available in storage and will have them shipped to New York where they will be made available to Defendant's counsel for inspection and copying.

1335734.1

5

V.  **DEFENDANT'S COUNSEL UNILATERALLY POSTPONED THE SCHEDULED DEPOSITION OF ERIC KAPPELIN, SMCO'S AND SCUAA'S RULE 30(b)(6) CORPORATE DESIGNEE**

Defendant's suggestion that the Opposing Parties are stonewalling discovery is belied by the fact that, notwithstanding the pending motion by certain of the Third-Party Defendants and Non-Parties for a protective order regarding the location of their depositions, on August 17, 2005 SCUAA, which is based in Florida, agreed to produce its Rule 30(b)(6) corporate designee, Eric Kappelin, for a deposition in New York, and counsel for Defendant agreed that Mr. Kappelin's deposition, as the corporate designee of both SMCO and SCUAA, would be conducted on September 20 and 21, 2005. (Zancolli Decl., Ex. 4 (August 17, 2005 Zancolli Letter to Lundin)). By letter dated September 13, 2005, Defendant's counsel unilaterally postponed Mr. Kappelin's deposition, notwithstanding the fact that Mr. Kappelin's deposition date had been scheduled for a number of weeks at that point and that it will be difficult to reschedule Mr. Kappelin's deposition in light of his busy travel schedule. (Zancolli Decl., Ex. 5 (September 13, 2005 Lundin Letter to Zancolli) and Ex. 6 (September 15, 2005 Zancolli letter to Lundin)). Mr. Kappelin is likely to have knowledge regarding, among other subjects, the location and accessibility of SMCO's and SCUAA's files and other information more appropriately obtainable through depositions than through document discovery. Defendant's counsel's unilateral postponement of Mr. Kappelin's deposition, as well as the prior sections of this Memorandum of Law, demonstrate that the Defendant's repeated and strident accusations that SMCO and the Third-Party Defendants have failed to cooperate in discovery are meritless.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel, as amended by Defendant's counsel's letter to Magistrate Judge Martinez dated September 27, 2005, should be denied in its entirety.

Respectfully submitted,

By: _____
Donald J. Kennedy
Federal Bar No. ct23620
Mark R. Zancolli
Federal Bar No. phv0498
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, New York 10005
Telephone: (212) 732-3200
Facsimile: (212) 732-3232

Madeleine F. Grossman
Federal Bar No. ct05987
Frank J. Silvestri, Jr.
Federal Bar No. ct05367
LEVETT ROCKWOOD P.C.
33 Riverside Avenue
Post Office Box 5116
Westport, Connecticut 06880
Telephone: (203) 222-0885
Facsimile: (203) 226-8025

Attorneys for Scandinavian Marine Claims Office, Inc., SCUA Americas, Inc., SMCO AS and Norwegian Hull Club

1335734.1

7