UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------X
                         :

SCANDINAVIAN MARINE CLAIMS OFFICE,   :
INC.                               :

               Plaintiff,      :

       v.                 : Civil Case No.
                          : 3:02 CV 678 (RNC)
SIRI OSTENSEN,                :

              Defendant,     :

                         : Magistrate Judge Donna F. Martinez
       v.               :

                         : NOVEMBER 4, 2005
SCANDINAVIAN MARINE CLAIMS OFFICE,   :
INC., SCANDINAVIAN UNDERWRITERS   :
AGENCY, SCUA AMERICAS, INC., S.M.C.O.,  :
A.S., AND NORWEGIAN HULL CLUB,     :

   Counterclaim and Third-Party Defendants.  :
                         :
                         :
---------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
SCANDINAVIAN MARINE CLAIMS OFFICE, INC.'S MOTION FOR
<u>SUMMARY JUDGMENT AGAINST SIRI OSTENSEN</u>**

Plaintiff Scandinavian Marine Claims Office, Inc. ("SMCO"), by its attorneys, Levett Rockwood P.C. and Carter Ledyard & Milburn LLP, respectfully submits this reply memorandum of law in further support of its motion for summary judgment against the defendant Siri Ostensen ("Ms. Ostensen").

## PRELIMINARY STATEMENT

Despite the volume of paper submitted by Ms. Ostensen in opposition to SMCO's motion for summary judgment, it is evident that none of the facts that are relevant to SMCO's claim on the Mortgage Notes[1] are in dispute. In the face of SMCO's entitlement to judgment, Ms. Ostensen substitutes rhetoric for proof and mischaracterization for fact in the hope that she can induce the Court to overlook the simple truth: that Ms. Ostensen signed the Mortgage Notes, received the funds and has not paid the Mortgage Notes. When the established law is applied to these undisputed facts, it becomes readily apparent that SMCO is entitled to summary judgment.

Confronted with SMCO's straightforward motion for summary judgment on its garden-variety claims to recover under the Mortgage Notes, Ms. Ostensen attempts to generate an issue of fact by contending that her defenses and counterclaims somehow justify her admitted default in payment under the Mortgage Notes. However, as demonstrated in Point I, infra, this argument fails because Ms. Ostensen's counterclaims are not grounds for preventing summary judgment in SMCO's favor with regard to Ms. Ostensen's payment obligations under the Mortgage Notes.

Likewise, as shown in Point II, infra, Ms. Ostensen's defenses and counterclaims under the Non-Qualified Plan and the Qualified Plan are insufficient to allege a setoff or preclude summary judgment in SMCO's favor. Ms. Ostensen's defenses and counterclaims under the Non-Qualified Plan even if valid, which they are not, are both unliquidated and not yet due and

---

[1]  Copies of the Mortgage Notes are attached as Exs. 1 and 2 to the Affidavit of Donald J. Kennedy, sworn to on July 15, 2005, in support of this motion (the "Kennedy Affidavit")).

1342703.1

payable. Her claims under the Qualified Plan even if valid, which they are not, are not claims against SMCO, are unliquidated and are not due and payable.

Furthermore, as shown in Point III, infra, Ms. Ostensen's claimed need for additional discovery is a red herring and does not preclude summary judgment in SMCO's favor. The discovery that Ms. Ostensen seeks has no bearing on her unconditional obligation to pay the Mortgage Notes. In any event, far from having been stonewalled during discovery, Ms. Ostensen has instead been provided with considerable documentary discovery, as well as ample opportunity to take deposition testimony, concerning all nonarbitrable subjects regarding which she has sought discovery, including, without limitation, veil piercing and the Qualified Plan.

For the foregoing reasons, as set forth herein, SMCO's motion for summary judgment should be granted in its entirety.

**STATEMENT OF FACTS**

The facts that are relevant in deciding this motion are set forth in SMCO's Local Rule 56(a)1 Statement of Material Facts and will not be repeated herein except for purposes of amplification. However, because Ms. Ostensen's opposition to this motion contains several statements of fact that are inaccurate and/or irrelevant, it is necessary to address the most glaring of those factual misstatements prior to turning to the legal arguments.

**A.**    **The Non-Qualified Plan**

Ms. Ostensen contends that SMCO's claims against her individually cannot be decided until after the arbitration of claims arising out of the Non-Qualified Plan with SMCO and the Related Other Companies. That argument should be rejected because (1) Ms. Ostensen was never an employee of SMCO and has no claims or defenses against SMCO that can affect liability on the Mortgage Notes, (2) SMCO's claim for default on the Mortgage Notes is before

1342703.1

3

this Court and not subject to arbitration, and (3) the Related Other Companies are not subject to arbitration.

Ms. Ostensen has elected for reasons of her own not to commence arbitration proceedings and pursue her claims against SMCO. The claims which this Court held were arbitrable could have been submitted to, and decided by, arbitrators over the past two years. Instead, Ms. Ostensen has delayed, apparently on the theory that she first must pursue her veil-piercing claim against the Related Other Companies.

While Ms. Ostensen accuses SMCO and the Related Other Companies of "sharp practice", the reverse is the case. She has attempted to avoid reaching the underlying merits of this matter by pursuing her veil-piercing claims and engaging in burdensome and expensive discovery intended to wear down the defendants. All of this discovery will, of course, be moot if Ms. Ostensen is unable to prove her underlying claims against SMCO in arbitration.

This litigation is now three and a half years old. Ms. Ostensen's still unarbitrated but arbitrable claims are not a defense to the pending motion for summary judgment for default on the Mortgage Notes which contain an <u>unconditional</u> obligation to pay, to which there is no defense, and which are not arbitrable claims.

## B.    The Qualified Plan

Ms. Ostensen raises for the first time claims against the Qualified Plan that have nothing whatsoever to do with the Mortgage Notes. The Mortgage Notes are between Mr. and Ms. Ostensen and SMCO, and not between the Ostensens and the Qualified Plan. Consequently, the counterclaims raised by Ms. Ostensen are irrelevant to the motion for summary judgment on the Mortgage Notes.

In regard to the specific claims that Ms. Ostensen raises against the Qualified Plan, she claims a potential underpayment of approximately $101,550 based on (1) the refusal to credit Ms. Ostensen for her husband's years of service with Marine Defense Group ("MDG") and (2) the use of a 2 percent instead of 2.75 percent per year of service multiplier. (Def's Opp. Memo at 23). As explained below, Ms. Ostensen's claim is against the wrong party, in the wrong forum, and each of the alleged bases for Ms. Ostensen's claim under the Qualified Plan is without merit.

1. _Ms Ostensen's Counterclaim Is Against The Wrong Party And In The Wrong Forum_

The Qualified Plan is an employee benefit plan, subject to the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1003. ERISA establishes an employee benefit plan as a separate legal entity, distinct from the sponsor of such plan, in this case SMCO. 29 U.S.C. § 1132(d). Ms. Ostensen's claim for benefits under the Qualified Plan, if any, lies within 29 U.S.C. § 1132(a)(1)(B), which provides that a civil action may be brought by a participant or beneficiary, "to recover benefits due to him under the terms of his plan." If her claim succeeds, any recovery Ms. Ostensen might obtain is enforceable exclusively against the Qualified Plan pursuant to 29 U.S.C. § 1132(d)(2). Consequently, Ms. Ostensen's counterclaim against SMCO for a Qualified Plan benefit is brought against the wrong party.

The claim is also in the wrong forum. ERISA requires the Qualified Plan to have a claims procedure to provide for the disposition of benefit claims by the appropriate named fiduciary of the Qualified Plan. 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1(b). In this instance, the Qualified Plan identifies the Committee as the appropriate named fiduciary before whom Ms. Ostensen should have brought her claim for benefits. (Lundin Decl., Ex. 6 at § 9.7.) The summary plan description of the Qualified Plan clearly describes the claims procedure. (See

Kennedy Reply Aff.,[2] Ex. 1.) Ms. Ostensen disregarded the administrative remedies mandated under the Qualified Plan. Consequently, the Committee was never given the opportunity to hear her claims. Under the terms of the Qualified Plan, the Committee's decisions in such matters is "final, binding and conclusive on all interested persons as to any matter of fact or interpretations relating to the [Qualified] Plan." (Lundin Decl., Ex. 6 at § 9.7(b)).

Moreover, in 2004, in the lawsuit styled <u>The Committee of the Pension Plan for Employees of Scandinavian Marine Claims Office, Inc. v. Tom Ostensen and Siri Ostensen</u>, No. 03 Civ. 3689 (RNB) (S.D.N.Y.), the Committee sued the Ostensens to secure repayment of an improper loan that they obtained from the Qualified Plan. That case has been settled. At no time during the Committee's resolution of her husband's Qualified Plan loan, when the issue could have been handled properly and expeditiously, did she dispute the amount of her Qualified Plan benefit.

2.    *Marine Defense Group Service Credit*

Ms. Ostensen claims that "[a]s part of the merger SMCO and MDG, SMCO agreed that it would credit service with MDG in computing benefits under the Qualified Plan" (Def's Opp. Memo at 5). That statement is false. Ms. Ostensen's alleged support for the statement is not an agreement to credit service but rather an ambiguous document, generated at the beginning of the negotiations of an acquisition, about potential costs and benefits of the proposed acquisition. In fact, documents produced by SMCO summarizing the final agreement contradict Ms. Ostensen's claim.

In December 1990, months after the memo Ms. Ostensen claims proves an agreement by SMCO to provide service credits to MDG employees, Tom Ostensen and SMCO were still

---

[2]    The accompanying affidavit of Donald J. Kennedy, sworn to on November 4, 2005, is referred to herein as the "Kennedy Reply Affidavit."

negotiating the terms of an acquisition. (See Kennedy Reply Aff., Ex. 2.) There was no mention of service credits in the December proposal by Ostensen that SMCO acquire the assets of MDG. In fact, SMCO acquired specified trade assets of MDG for $1.00 effective as of January 1, 1991. (See Kennedy Reply Aff., Ex. 3.) There was no mention of service credits in the documents.

Nor was MDG merged into SMCO as Ms. Ostensen claims. SMCO purchased only certain assets. MDG continued to exist. Tom Ostensen still owned MDG as of 2000 when he designated it as the legal entity that would be used by him to purchase all of the stock and assets of SMQI Services Inc. (See Kennedy Reply Aff., Ex. 4.)

On January 7, 1991, Ostensen informed MDG employees that they were now employed by SMCO and would be entitled to participate in the SMCO retirement plan. He did not mention credit for service at MDG. (See Kennedy Reply Aff., Ex. 5.)

SMCO terminated Tom Ostensen's employment in 2000. In preparing for termination of the SMCO Pension Plan, counsel for SMCO in April 2001 asked the then-current actuary to provide the basis for the service credits to the former MDG employees -- instructions or correspondence, evidence of the dates of hire, or similar materials they received from SMCO directing the actuary to credit service with MDG as service under the SMCO plan. (See Kennedy Reply Aff., Ex. 6.) In reply, counsel for SMCO received a copy of a February 9, 1999 fax from Ostensen to the actuary, Kevin Sweeney of The Comprehensive Group (Kennedy Reply Aff., Ex. 7) indicating an employment date for Tom Ostensen which was the date of his employment at MDG - 1984. Thus, Tom Ostensen unilaterally and improperly attempted to cause the actuary to change the employment "start" dates for himself and other former MDG employees employed by SMCO.

1342703.1

The Qualified Plan does not provide for MDG service credit; the Committee of the Qualified Plan never approved "service credit" for former MDG employees; and the Board of SMCO never approved "service credit" for former MDG employees. Accordingly, there is no legal basis for this claim.

3.    *The 2% v. 2.75% Benefit Formula*

The "Plan Amendment" purporting to change the Accrued Benefits Formula from 2% to 2.75% is also an instance of fraudulent self-dealing by Tom Ostensen.

The document dated October 15, 1998 (the "Amendment") is between Tom Ostensen as President of SMCO and Tom Ostensen as Trustee of the Pension Plan, signed by Tom Ostensen in both capacities. (Lundin Decl. Ex. 9). The Amendment purports to change the Accrued Benefits Formula under Section 4.2 of the Plan by increasing the multiplier for the Participant Final Average Compensation from 2% to 2.75% and reducing or capping the years of service at 20 instead of 25. Tom Ostensen obviously would personally benefit from this change.

Ms. Ostensen claims that after Tom Ostensen left SMCO, SMCO refused "to acknowledge the plan amendment awarding a 2.75 percent credit for each year served, significantly reducing the benefits under that plan." (Def's Opp. Memo at 6). Ms. Ostensen is correct. SMCO did not recognize the Amendment because the Amendment (Lundin Decl., Ex. 9) was not authorized by the SMCO Board of Directors or Plan Committee. Furthermore, under the Plan, Tom Ostensen was not authorized to unilaterally amend the Plan's terms. (See, Kennedy Reply Aff., ¶ 9.)

Only the Board of Directors of SMCO has the right to amend the Plan to increase benefits in this way. (Lundin Decl., Ex. 6 at §11.1(a)). The Plan is administered by the Committee, which consists of three or more members appointed by the Board of SMCO. The Committee has

the power to make minor amendments to the Qualified Plan limited to "amendments which do not materially affect the cost of the Plan . . ." (Lundin Decl., Ex. 6 at §11.1(a)). Plainly, an increase in the multiplier would increase the benefits payable to Ostensen under the Plan and "affect the cost of the Plan." Therefore, even if Mr. Ostensen had been acting on behalf of the Committee, the Committee could not have adopted the Amendment.

Notice of any amendment to the Plan is to be given by the Board or the Committee, whichever adopts the amendment, to the other and to the Trustee and all Employers and, where and to the extent required by law, to Participants and other interested parties (Lundin Decl., Ex. 6 at §11.2). There is no record that the Committee or Mr. Ostensen notified the Board of the Amendment.

The Trustee does not have the right to amend the Plan. Therefore, Tom Ostensen acting in his capacity as Trustee could not amend the Plan. The Employer, SMCO, is not authorized to amend the Plan unless authorized by the Board. SMCO's Board minutes do not contain any reference to an increase in the multiplier from 2% to 2.75%, nor do they approve the October 15, 1998 "Amendment".

Counsel for SMCO in a letter dated October 24, 2001 (Kennedy Reply Aff., Ex. 8) asked the actuary, who had been retained by Ostensen, for documents supporting the Amendment. When no response was forthcoming, counsel sent a follow up letter on November 13, 2001 (Kennedy Reply Aff., Ex. 9.) The actuary did not provide supporting documentation for the Amendment. Accordingly, absent evidence that the Amendment was ever approved by the Board, the benefit formula was never increased from 2.0% to 2.75%, and there is no legal basis for this claim.

## C.    The Mortgage Notes Were Not Intended To Fund The Non-Qualified Plan

Incredibly, while trying to generate the false impression that the Mortgage Notes were earmarked to fund Tom Ostensen's personal Non-Qualified Plan and are somehow "inextricably interrelated" to that Plan, Ms. Ostensen disregards the clear, unambiguous and contrary language of the very Non-Qualified Plan document on which she purports to rely:

> 5.1    The benefits provided by the Company under this Agreement shall be paid out of its general assets. The Company is under no obligation to set aside any assets to provide the benefits hereunder, nor to enter into any funding arrangements to provide the benefits under this Agreement.

> 5.2    Notwithstanding the provisions of Section 5.1, the Company may set aside such assets, create such reserves or establish such funding vehicles, including the purchase of life insurance, as it deems necessary for the provisions of benefits under this Agreement. Any such assets, reserves or funding vehicles shall be the sole property of the Company, shall be subject to the claims of its general creditors and shall not establish any right of ownership in the Employee or any of his beneficiaries, successors or assigns.

(Lundin Decl., Ex. 10 at §§ 5.1 and 5.2).

The Mortgage Notes themselves are equally unambiguous. Neither of the two Mortgage Notes make any reference to the "Non-Qualified Plan". In fact, the Ostensens signed the First Note more than a year before the date of the Non-Qualified Plan document. In the correspondence approving the Second Note, there is no reference to the Non-Qualified Plan. (Kennedy Reply Aff., Exs. 10 and 11). The Mortgage Notes contain unconditional, unequivocal promises on the part of both Siri and Tom Ostensen to pay SMCO the sums of $180,000 and $125,000, plus interest at specified rates and intervals. The Mortgage Notes further provide that the entire principal will immediately become due and payable upon demand after six months notice in the event Tom Ostensen's employment from SMCO is terminated.

Moreover, the Mortgage Notes were to be secured by a mortgage on the Ostensens' residence by providing in relevant part as follows:

This note is to be secured by a mortgage of even date herewith on

1342703.1

10

> the property in the Town of Greenwich, County of Fairfield and State
> of Connecticut, and all agreements and provisions in said mortgage
> are made a part hereof by reference.

(Kennedy Aff., Exs. 1 and 2). However, during the pendency of this action, Ms. Ostensen sold

the property against which the mortgages were to be recorded for $1.8 million. (Kennedy Reply

Aff., Ex. 12).

Although Ms. Ostensen suggests that the Defendants used the notes for "other purposes",

implying some nefarious scheme (Ostensen Memo, p. 10), that suggestion is extraordinarily

misleading. Ms. Ostensen's own evidence demonstrates that all of SMCO's available assets plus

additional funds provided by its shareholders were, in fact, used to pay SMCO's obligations

including benefits to SMCO employees. (e.g., Lundin Decl., Ex. 30.)

## ARGUMENT

### I.    Ms. Ostensen's Counterclaims Do Not Prevent Entry Of Summary Judgment On The Mortgage Notes In SMCO's Favor

As emphasized in SMCO's initial brief, under Conn. Gen. Stat. § 42a-3-308(b), if the

validity of the signatures to an instrument is admitted, a party producing a promissory note is

entitled to payment if the party proves entitlement to enforce the instrument and the defendant

does not prove a defense or recoupment. The Connecticut Bank & Trust Co. v. Dadi, 182 Conn.

530, 531 (1980). Here, as the Court recognized in its September 5, 2003 Order, Ms. Ostensen

has admitted to signing the Mortgage Notes and failing to pay them. Moreover, when two or

more parties jointly execute a promissory note, they are jointly and severally liable for the full

value of the note. Conn. Gen. Stat. § 42a-3-116. Ms. Ostensen does not dispute that the

Ostensens jointly executed the Mortgage Notes, received the value of the Mortgage Notes and

have not paid the Mortgage Notes in full. SMCO is, therefore, entitled to summary judgment for

nonpayment of the Mortgage Notes against Ms. Ostensen.

1342703.1

11

Ms. Ostensen's contention that her defenses and counterclaims serve as a setoff to SMCO's claim, and that summary judgment is therefore inappropriate, is incorrect. Indeed, federal courts have routinely granted summary judgment on claims similar to that asserted by SMCO in this action, notwithstanding the existence of counterclaims.

For example, in EMI Music Marketing v. Avatar Records, Inc., 317 F. Supp. 2d 412 (S.D.N.Y. 2004), the court rejected a similar attempt to avoid summary judgment on an account stated claim. The court noted that the defendant's counterclaim, although nonfrivolous, "does not negate the absence of any dispute on [the plaintiff's] account stated claim." Citing both Second Circuit and Supreme Court authority, the court held that, even though the claims and counterclaims arose from the same set of underlying facts, the plaintiff's claim was "analytically distinct." Id. at 424. The court directed entry of a final judgment on that claim, and the same outcome is warranted in this case. Accord Logan v. Williamson & Co., 64 A.D.2d 466, 470, 409 N.Y.S.2d 883 (N.Y.App.Div. 1978) (ruling that plaintiff's motion for summary judgment on a promissory note should not be denied based on a "related but independent and unliquidated counterclaim, one arising out of the same general transaction but one which does not constitute a defense to plaintiff's cause of action"); Miller v. Steloff, 686 F. Supp. 91, 93-94 (S.D.N.Y. 1988) (granting summary judgment on promissory note, despite evidence and claims regarding prior or contemporaneous documents regarding the note).

Similarly, in Pereira v. Cohen, 267 B.R. 500 (S.D.N.Y. 2001),[3] a Chapter 7 trustee moved for summary judgment against a corporate debtor's former chief executive officer (the "CEO") to recover sums owing to the debtor on promissory notes. Id. at 503. The CEO, in turn,

---

[3] On June 30, 2005, the Second Circuit in that case subsequently vacated a judgment entered against the defendants on the grounds that they were improperly denied a jury trial. Pereira v. Farace, Nos. 03-5053(L), 2005 U.S. App. LEXIS 13040 (2d Cir. June 30, 2005). The district court's order granting summary judgment to plaintiff on the promissory notes claim was unaffected.

contended that he was entitled to an offset based on compensation due to him under certain prepetition and employment agreements with the debtor. Id. at 504. In ruling that the CEO's offset claims did not bar summary judgment on the promissory notes, the court, again, recognized that "[o]ffset claims do not bar summary judgment on promissory notes or other payment obligations, unless such obligations and the offset claims involve contractually 'dependent' promises." Id. at 507 (citations omitted). As the court found that the CEO's offset claims concerning his employment agreements with the debtor were unrelated to his indebtedness on the notes, it ruled that it could grant the trustee's summary judgment motion and did so. Id. at 507, 516.

The law is thus clear that (1) a set-off or counterclaim that may ultimately serve to offset liability on plaintiff's claim(s) does not prevent entry of summary judgment in plaintiff's favor and (2) a counterclaim based on a contract separate and distinct from a promissory note -- even where related and where the note and other contract were in essence a single transaction, or executed contemporaneously -- does not preclude summary judgment on the note itself.[4]

---

[4]    The cases cited by Ms. Ostensen for the proposition that she has a right to set off her counterclaims against SMCO's claims are readily distinguishable from the instant case and do not serve as reliable precedent in this case. For example, in Valley Disposal Inc. v. Central Vermont Solid Waste Mgmt. District, 113 F.3d 357 (2d Cir. 1997) (cited on p.17 of Def's Opp. Memo), the Court ruled that defendant, a municipal solid waste management district, waived any right under Vermont law to set off a state court judgment that defendant had obtained against plaintiff, a solid waste hauler, against the amount that defendant owed plaintiffs under a judgment for attorney's fees, where defendant failed to notify the court of the setoff claim prior to entry of the judgment for attorney's fees. In RPJ Softwear, Inc. v. Xylo Tex, Ltd., 681 F. Supp. 225 (S.D.N.Y. 1988) (cited on pp. 17 and 18 of Def's Opp. Memo), the court ruled that the defendant, a fabric supplier, was not entitled to summary judgment on its counterclaim for unpaid invoices relating to goods sold to plaintiff, a women's clothing manufacturer, where plaintiff had a pending claim against defendant for damages arising from defendant's alleged breach of the underlying contract of sale and UCC Section 2-717 specifically authorizes a buyer to set off damages resulting from a seller's breach of a contract of sale against the outstanding balance of the purchase price. Finally, in In re Colonial Realty Co., 208 B.R. 616 (Bankr. D. Conn. 1997) (cited on p. 18 of Def's Opp. Memo), the court denied defendant bank's motion for summary judgment in an adversary proceeding brought by a Chapter 7 trustee seeking to avoid and recover a pledge of a $1 million certificate of deposit by the debtor to the bank as collateral for the debtor's $4 million then-existing indebtedness to the bank, where issues of fact existed as to whether the bank had an enforceable right to set off the amount of the certificate of deposit against the debtor's indebtedness to the bank. Unlike the cases cited by Ms. Ostensen, this action involves a straightforward claim to recover amounts due under promissory notes which Ms. Ostensen has an unconditional obligation to pay. The counterclaims alleged by Ms. Ostensen have no bearing on

SMCO also notes that Ms. Ostensen has no defense to the Mortgage Notes. She has not pled an affirmative defense of fraudulent inducement to sign the Mortgage Notes, and could not do so in good faith, because she and Mr. Ostensen admittedly received the $305,000.

Accordingly, summary judgment in SMCO's favor is warranted.

**II.   Because Ms. Ostensen's Counterclaims Arising Out Of The Qualified Plan Are Not The Obligation Of SMCO -- And Because Ms. Ostensen's Counterclaims Arising Out Of The Non-Qualified Plan And The Qualified Plan Are Neither Liquidated Nor Presently Due -- Those Counterclaims Are Not A Proper Setoff And Do Not Preclude Summary Judgment.**

It is well-settled that "[a] proper setoff alleges a debt that is presently due and arising from a liquidated claim." See, e.g., Mikkelson v. Allen, Russell & Allen, Inc., No. CV 93-0458824S, 1994 WL 185653, at *1 (Conn.Super.Ct. 1994); In re Allen-Main Assocs., Ltd. Partnership, 233 B.R. 631, 635 (Bankr.D.Conn. 1999); see also Conn. Gen Stat. § 52-139. Here, Ms. Ostensen's counterclaims arising out of the Non-Qualified and Qualified Plans, are not based on a liquidated debt. As such, those counterclaims are insufficient to allege a setoff.

Moreover, Ms. Ostensen's counterclaims arising out of the Qualified and Non-Qualified Plans are not a proper setoff because they allege a debt that is not presently due. Indeed, in her brief, Ms.Ostensen acknowledges that she will not be entitled to payments under the Non-Qualified Plan **until April 2009**. (Def's Opp. Br. at 20). Thus, even assuming arguendo that Ms. Ostensen's counterclaims under the Non-Qualified Plan had any merit (which they do not), they would still not be a proper setoff because, in addition to being unliquidated, they are not presently due and payable. Similarly, by her own admission, Ms. Ostensen's claims under the Qualified Plan are for amounts allegedly due her over the next 20 years (Lundin Decl., ¶¶ 54 -

---

her payment obligations under the Mortgage Notes, and therefore Ms. Ostensen's reliance of the foregoing cases is misplaced.

56.) Those amounts obviously also are not presently due and not a proper setoff.[5]  See Ferguson

v. Lion Holding, Inc., 312 F. Supp. 2d 484, 503-505 (S.D.N.Y. 2004)(ruling that "obligations . . .

must be due for setoff to apply" and rejecting defendants' argument that disputed factual issues

regarding plaintiffs' indemnity obligations precluded summary judgment in plaintiff's favor

where no indemnity payments were due from plaintiffs); see also Bridgeport-City Trust Co. v.

Niles-Bement-Pond Co., 128 Conn. 4, 10, 20 A.2d 91, 94 (1941); Hartford Nat. Bank & Trust

Co. v. Riverside Trust Co., 117 Conn. 276, 167 A. 811, 813 (1933).

Moreover, Ms. Ostensen's claims regarding the Qualified Plan are not the liability of

SMCO. (See Kennedy Reply Aff., ¶ 2.) A setoff is only appropriate when mutual debts are due

to and from the same persons in the same capacity. Westinghouse Credit Corp. v. D'Urso, 278 F.

3d 138, 149-50 (2d Cir. 2002); First Union National Bank v. Grills, No. CV97543720, 2001

Conn. Super. LEXIS 2447 (Conn. Super. Ct. Aug. 16, 2001).  Here, the Qualified Plan is an

independent entity liable for its own debts.

In sum, Ms. Ostensen's setoff claims should not preclude summary judgment on the

Mortgage Notes.

## III.    Ms. Ostensen's Alleged Need For Discovery Is A Red Herring And Does Not Warrant Denial Of SMCO's Motion For Summary Judgment

No matter how many times Ms. Ostensen repeats the very same allegations regarding the

alleged deficiencies in the discovery provided to her (Def's Opp. Memo at 21-27), they are not

sufficient to delay summary judgment.  Not only are the allegations misleading as to the extent

---

[5]   As for Ms. Ostensen's claim for Tom Ostensen's unpaid vacation pay, she is not entitled to a setoff because this motion seeks summary judgment against Ms. Ostensen in her individual capacity, not as executrix for Tom Ostensen's estate.  In her brief, Ms. Ostensen acknowledges that the claim for unpaid vacation pay is owed to Tom Ostensen's estate.  (Def's Opp. Memo at 25 ("SMCO thus owes **Mr. Ostensen's estate** $65,071...") (emphasis added)).

1342703.1

of the discovery already provided, but they concern issues which are not relevant to the summary judgment motion.

It is well settled that a party's claimed need for discovery will not defeat a motion for summary judgment where the issues regarding which discovery is sought are not material to the claim at issue or are speculative. See AAI Recoveries, Inc. v. Pijuan, 13 F.Supp.2d 448, 452 (S.D.N.Y. 1998) (ruling that litigants seeking relief under summary judgment rule governing additional discovery "must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative..."); Travelers Ins. Co. v. Broadway West Street Assocs., 164 F.R.D. 154, 161 (S.D.N.Y. 1995) ("The mere existence of some theoretical factual issues, however, where those issues are not material to the claim before the Court, will not suffice to defeat a motion for summary judgment . . . A Rule 56(f) application must be rejected where the evidence sought is almost certainly non-existent or is the object of pure speculation.").

In Pereira v. Cohen, besides ruling that the CEO's offset claims did not bar summary judgment on the promissory notes at issue in that case, the court also rejected the CEO's contentions in support of his request for relief under Rule 56(f). 267 B.R. at 516. Specifically, the CEO contended that he was opposing the trustee's summary judgment motion without having full access to all of the debtor's corporate books and records. Id. In rejecting that argument, the court stated that "[e]ven if [the CEO] obtained what [he] stated would be uncovered, the information would have been insufficient to defeat summary judgment." Id. (citations omitted). In a later decision, Pereira v. Cogan, 275 B.R. 472 (S.D.N.Y. 2002) ("Pereira II"), the District Court granted a motion to enter judgment and stayed entry of the judgment on the condition that the judgment be paid into court.

Likewise, here, even if Ms. Ostensen were to obtain what she believes would be uncovered through additional discovery, that information would be insufficient to defeat SMCO's motion for summary judgment. In any event, SMCO has already provided Ms. Ostensen with considerable written and documentary discovery regarding the nonarbitrable areas concerning which she has sought discovery, including, without limitation, veil piercing and the Qualified Plan, and has offered to produce a corporate representative for a deposition. (Kennedy Reply Aff., ¶¶ 20-28). Specifically,

- SMCO and the Related Other Companies have provided full discovery regarding Ms. Ostensen's veil piercing claim, consisting of over 6000 pages of documents responsive to Ms. Ostensen's First Request for Documents (relating to her veil piercing claim), including, without limitation, Board minutes, financial statements and tax returns. (Kennedy Reply Aff., ¶ 20).

- SMCO and the Related Other Companies have produced documents responsive to Ms. Ostensen's Second and Third Requests for Documents (Bates Nos. SM000565, SM000572-000574, SM000811-000812, SM000818-000819, SM000970-000971, SM001197-001206, SM001824-002481, SM002844, SM002952, SM003031-004745, NW001188-001398, NW001642-001643, NW002146-002332, and SC000232-000260). (Kennedy Reply Aff., ¶ 21).

- On August 17, 2005, SCUAA, which is based in Florida, agreed to produce its Rule 30(b)(6) corporate designee, Eric Kappelin, for a deposition in New York, and counsel for Ms. Ostensen agreed that Mr. Kappelin's deposition, as the corporate designee of both SMCO and SCUAA, would be conducted on September 20 and 21, 2005. By letter dated September 13, 2005, Ms. Ostensen's counsel unilaterally postponed Mr. Kappelin's deposition, notwithstanding the fact that Mr. Kappelin's deposition date had been scheduled for a number of weeks at that point and that it will be difficult to reschedule Mr. Kappelin's deposition in light of his busy travel schedule. As for the other Third-Party Defendants and Non-Parties that Ms. Ostensen noticed for depositions, they all reside in Norway and their depositions should be conducted in Norway for the reasons stated in the papers submitted by them in support of their pending motion for a protective order to modify the locations of their depositions. (Kennedy Reply Aff., ¶ 22).

- Although NHC did not exist until January 1, 2001 through the merger of Unitas and Bergen Hull Club, it has produced documents dating back to 1996, including (1) annual reports for itself and its predecessors which contain financial statements and detailed information about the board of directors and management

from 1996 to 2004 (Bates Nos. NW 00010-00184; NW00668-00906) and (2) business plans relating to SMCO from 1996 to 2000 (NW00362-00664). (Kennedy Reply Aff., ¶ 24).

- SMCO and the Related Other Companies have produced documents responsive to Ms. Ostensen's demands regarding the Qualified Plan (Bates Nos. SM003031-004745). (Kennedy Reply Aff., ¶ 25).

- SMCO and the Related Other Companies have produced documents responsive to Ms. Ostensen's demands regarding the "salary and benefits, including vacation pay and reimbursable expenses" received by Mr. Ostensen (Bates Nos. SM001195-001196, SM003028, SM003615, SM003624, SM003799-003802, SM003865, SM004011, SM004026, SM004452-004460, SM004466-004477, SM004480-004481, SM004623, SM004632-004634) (Kennedy Reply Aff., ¶ 26).

- SMCO and the Related Other Companies have produced documents responsive to Ms. Ostensen's demands regarding investigations conducted on behalf of SMCO or the Related Other Companies regarding Mr. Ostensen or the Non-Qualified Plan (Bates Nos. SM001197-001206). (Kennedy Reply Aff., ¶ 27).

- SMCO and the Related Other Companies have produced documents responsive to Ms. Ostensen's demands regarding the Mortgage Notes (Bates Nos. SM001728-001729, SM002527, SM002539, SM002761, SM002699) (Kennedy Reply Aff., ¶ 28).

- SMCO A.S. has objected to providing jurisdictional discovery because Ms. Ostensen has not established a prima facie case for the Court's exercise of jurisdiction over SMCO A.S.   The Second Circuit has refused to permit jurisdictional discovery to plaintiffs who cannot establish a prima facie case for exercising personal jurisdiction over a non-resident defendant, as set forth at greater length in Point III of the Reply Memorandum of Law in Further Support of SMCO AS's Motion to Dismiss the Claims Against It for Lack of Personal Jurisdiction, filed on September 9, 2005.   In any event, such jurisdictional discovery is irrelevant to the summary judgment issues.

- SMCO and the Related Other Companies have objected to providing discovery regarding the Non-Qualified Plan because Ms. Ostensen's claims under the Non-Qualified Plan are subject to arbitration and have been stayed pursuant to this Court's September 5, 2003 Ruling on SMCO's Motion for Stay Pending Arbitration. Federal courts have disfavored allowing discovery regarding claims that are subject to arbitration in the absence of extraordinary circumstances, none of which are present here, as set forth at greater length in Point I of the Memorandum of Law in Opposition to Defendant's Motion to Compel Discovery Responses, filed on September 29, 2005.   Documents regarding the Non-Qualified Plan have nevertheless been produced, including (1) various minutes

with attachments and (2) the SMCO file regarding the Non-Qualified Plan (Bates Nos. SM001738-001789). (Kennedy Reply Aff., ¶ 23).

Accordingly, because Ms. Ostensen has been provided with considerable written and documentary discovery, as well as ample opportunity to take deposition testimony, concerning all nonarbitrable subjects regarding which she has sought discovery, her claimed need for additional discovery should be rejected and should not serve as a basis for denying SMCO's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that this Court:

(1) grant plaintiff's motion for summary judgment;

(2) award plaintiff attorneys' fees[6]; and

(3) award such other and further relief as this Court deems just and proper.

Dated: November 4, 2005
New York, New York

Respectfully submitted,

Madeleine F. Grossman
Federal Bar No. ct05987
LEVETT ROCKWOOD P.C.
33 Riverside Avenue
Post Office Box 5116
Westport, Connecticut 06880
Telephone: (203) 222-0885
Facsimile: (203) 226-8025

Donald J. Kennedy
Federal Bar No. ct23620
Mark R. Zancolli
Federal Bar No. phv0498

---

[6] See Mortgage Notes, Kennedy Aff., Exs. 1 and 2.

1342703.1

19

CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, New York  10005
Telephone:  (212) 732-3200
Facsimile:  (212) 732-3232

Attorneys for Scandinavian Marine Claims Office, Inc.,
SCUA Americas, Inc., SMCO AS and Norwegian Hull
Club

1342703.1

## CERTIFICATION

This is to certify that I caused a copy of the foregoing to be served on this the 4th day of

November, 2005 on the following counsel of record:

**By Hand Delivery and Federal Express to:**
Jeffrey M. Eilender, Esq.
Schlom Stone & Dolan
26 Broadway, 19th Floor
New York, NY 10004

**By Federal Express to:**
Sharon E. Jaffe, Esq.
Levin & Glasser
3 Ledgebrook Court
Weston, CT 06883

Mark R. Zancolli

1342703.1