UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------- X

SCANDINAVIAN MARINE CLAIMS OFFICE, INC.

                Plaintiff,

    v.

SIRI OSTENSEN,

                Defendant,

    v.

SCANDINAVIAN MARINE CLAIMS OFFICE, INC., SCANDINAVIAN UNDERWRITERS AGENCY, SCUA AMERICAS, INC., S.M.C.O., A.S., AND NORWEGIAN HULL CLUB,

    Counterclaim and Third-Party Defendants.

Civil Case No.
3:02 CV 678 (RNC)

Magistrate Judge Donna F. Martinez

NOVEMBER 4, 2005

**AFFIDAVIT OF DONALD J. KENNEDY IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST SIRI OSTENSEN**

------------------------------------------------------------- X

STATE OF NEW YORK  )
                                ) ss:
COUNTY OF NEW YORK  )

    Donald J. Kennedy, being duly sworn, deposes and says:

    1.    I am an attorney with the firm of Carter Ledyard & Milburn LLP, co-counsel for plaintiff Scandinavian Marine Claims Office, Inc. ("SMCO") and Norwegian Hull Club. I submit this affidavit in response to the opposition submitted by defendant Siri Ostensen (Ms. Ostensen) and in further support of SMCO's motion for summary judgment against Ms. Ostensen. The affidavit is based on my personal knowledge and on documents which are part of the regularly kept business records of SMCO and Norwegian Hull Club.

1342678.1

A. **The Qualified Plan**

*Procedural Issues*

2. ERISA requires the SMCO Qualified Plan to have a claims procedure to provide for the disposition of benefit claims by the appropriate named fiduciary of the Qualified Plan. 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1(b). In this instance, the Qualified Plan identifies the Committee as the appropriate named fiduciary before whom Ms. Ostensen should have brought her claim for benefits. (Lundin Decl., Ex. 6 at § 9.7.) The Summary Plan Description of the Qualified Plan clearly describes the claims procedure. (See Summary Plan Description (Bates Nos. SM004746-004767), attached hereto as Ex. 1, at 11). Ms. Ostensen has not pursued the administrative remedies mandated under the Qualified Plan.

3. Moreover, in 2004, in the lawsuit styled <u>The Committee of the Pension Plan for Employees of Scandinavian Marine Claims Office, Inc. v. Tom Ostensen and Siri Ostensen</u>, Case No. 03 Civ. 3689 (S.D.N.Y.), the Committee sued the Ostensens to secure repayment of an improper loan that they had obtained from the Qualified Plan. Ms. Ostensen never asserted any claim against the Qualified Plan in that case, which has since been settled.

*Marine Defense Group Service Credit*

4. In December 1990, months after the memo Ms. Ostensen claims proves an agreement by SMCO to provide service credits to MDG employees, Tom Ostensen and SMCO were still negotiating the terms of an acquisition. (See December 7, 1990 Ostensen Memo to Bergen Hull Club (Bates Nos. SM004791-004792), attached hereto as Ex. 2). SMCO acquired specified trade assets of MDG for $1.00 effective as of January

1, 1991. (See January 3, 1991 SMCO letter signed by Tom Ostensen (Bates No. SM004793), attached hereto as Ex. 3). There was no mention of service credits in the documents.

5. Tom Ostensen still owned MDG as of 2000 when he designated it as the legal entity that would be used by him to purchase all of the stock and assets of SMQI Services Inc. (See Draft Stock Purchase Agreement (Bates Nos. SM002201-10), attached hereto as Ex. 4).

6. On January 7, 1991, Ostensen informed MDG employees that they were now employed by SMCO and would be entitled to participate in the SMCO retirement plan. He did not mention credit for service at MDG. (See January 7, 1991 SMCO memo from Tom Ostensen to P&I Staff (Bates No. SM004794), attached hereto as Ex. 5).

7. SMCO terminated Tom Ostensen's employment in 2000. In preparing for termination of the SMCO Pension Plan, counsel for SMCO in April 2001 asked the then-current actuary to provide the basis for the service credits to the former MDG employees -- instructions or correspondence, evidence of the dates of hire, or similar materials they received from SMCO directing the actuary to credit service with MDG as service under the SMCO plan. (See April 9, 2001 Carter, Ledyard & Milburn letter to The Comprehensive Group (Bates No. SM004730), attached hereto as Ex. 6). In reply, counsel for SMCO received a copy of a February 9, 1999 fax from Ostensen to the actuary, Kevin Sweeney of The Comprehensive Group (Bates No. SM004796, attached hereto as Ex. 7), indicating an employment date for Tom Ostensen which was the date of his employment at MDG, 1984, rather than the date of his employment at SMCO, 1991.

8. There is no record that the Board of SMCO ever approved "service credit"

1342678.1

for former MDG employees.

*The 2% v. 2.75% Benefit Formula*

9. Notice of any amendment to the Plan is to be given by the Board or the Committee, whichever adopts the amendment, to the other and to the Trustee and all Employers and, where and to the extent required by law, to Participants and other interested parties (Lundin Decl., Ex. 6 at §11.2). The document dated October 15, 1998 (the "Amendment") is between Tom Ostensen as President of SMCO and Tom Ostensen as Trustee of the Pension Plan, signed by Tom Ostensen in both capacities. (Lundin Decl. Ex. 9). There is no record that the Committee or Mr. Ostensen ever notified the Board of the Amendment.

10. Counsel for SMCO in a letter dated October 24, 2001 (Bates No. SM003618, a copy of which is attached hereto as Ex. 8) asked the actuary for documents supporting the Amendment. When no response was forthcoming, counsel sent a follow up letter on November 13, 2001 (Bates No. SM004743, a copy of which is attached hereto as Ex. 9). The actuary did not provide supporting documentation for the Amendment.

11. After discovering that Mr. Ostensen had caused the Plan's actuary to calculate and report benefits on the basis of the purported Amendment, SMCO took immediate steps to disavow the Amendment by (i) notifying all participants that they should not rely on prior benefit statements provided to them that reflected the unauthorized Amendment, and (ii) negotiating with two retirees in pay status to correct benefit payments that had been calculated on the basis of the improper Amendment. Moreover, the matter was reviewed by the Department of Labor ("DOL") in an informal

1342678.1

inquiry, in which SMCO stated its position and provided the DOL agent with Board minutes and copies of Qualified Plan provisions to evidence the impropriety of the Amendment. The DOL found no basis for pursuing an investigation into the matter.

### B. The Mortgage Notes

12. The Mortgage Notes were to be secured by a mortgage on the Ostensens' residence. (See April 14, 1994 Letter from Havar Poulsson to Tom Ostensen (Bates No. SM001729), attached hereto as Ex. 10; May 19, 1994 Letter from Ostensen to Poulsson (Bates No. SM001728, attached hereto as Ex. 11). The Mortgage Notes provide in relevant part as follows:

> This note is to be secured by a mortgage of even date herewith on the property in the Town of Greenwich, County of Fairfield and State of Connecticut, and all agreements and provisions in said mortgage are made a part hereof by reference.

A copy of the Mortgage Notes is attached as Exhibits 1 and 2 to the Affidavit of Donald J. Kennedy, sworn to on July 15, 2005, in support of this motion.

17. Tom Ostensen, the president of SMCO, never filed the mortgage on the Greenwich land records.

18. On information and belief, during the pendency of this action, Ms. Ostensen sold the property against which the mortgages were to be recorded for approximately $1.8 million. I became aware of the sale through a newspaper publication, a copy of which is attached hereto as Ex. 12.

### C. Discovery

19. Ms. Ostensen's assertions that SMCO and the Related Other Companies have "stonewalled" discovery are incorrect.

20. SMCO and the Related Other Companies have produced over 6000 pages

1342678.1

of documents responsive to Ms. Ostensen's First Request for Documents (relating to her veil piercing claim), including, without limitation, Board minutes, financial statements and tax returns.

21.  Contrary to Ms. Ostensen's contention that SMCO and the Related Other Companies have not produced documents responsive to her Second and Third Requests for Documents (Def's Opp. Memo at 15), SMCO and the Related Other Companies have produced documents responsive to those requests (Bates Nos. SM000565, SM000572-000574, SM000811-000812, SM000818-000819, SM000970-000971, SM001197-001206, SM001824-002481, SM002844, SM002952, SM003031-004745, NW001188-001398, NW001642-001643, NW002146-002332, and SC000232-000260).

22.  Contrary to Ms. Ostensen's contention that SMCO and the Related Other Companies have refused to produce party-affiliated witnesses in Connecticut for deposition (Def's Opp. Memo at 16), on August 17, 2005 SCUAA, which is based in Florida, agreed to produce its Rule 30(b)(6) corporate designee, Eric Kappelin, for a deposition in Connecticut or New York, and counsel for Ms. Ostensen agreed that Mr. Kappelin's deposition, as the corporate designee of both SMCO and SCUAA, would be conducted on September 20 and 21, 2005. (See August 17, 2005 Zancolli Letter to Lundin, attached hereto as Ex. 13). By letter dated September 13, 2005, Ms. Ostensen's counsel unilaterally postponed Mr. Kappelin's deposition, notwithstanding the fact that Mr. Kappelin's deposition date had been scheduled for a number of weeks at that point. (See September 13, 2005 Lundin Letter to Zancolli, attached hereto as Ex. 14; September 15, 2005 Zancolli letter to Lundin, attached hereto as Ex. 15). Mr. Kappelin is likely to have knowledge regarding, among other subjects, the location and accessibility of

1342678.1

SMCO's and SCUAA's files and other information more appropriately obtainable through depositions than through document discovery.

23. While Ms. Ostensen contends that she is entitled to discovery regarding the Non-Qualified Plan including communications between the Ostensens and SMCO and the Related Other Companies regarding the Non-Qualified Plan (Def's Opp. Mem. at 21, 22), SMCO and the Related Other Companies have objected to providing such discovery because Ms. Ostensen's claims under the Non-Qualified Plan are subject to arbitration and have been stayed pursuant to this Court's Order, dated September 5, 2003. Documents regarding the Non-Qualified Plan have, nevertheless, been produced, including (1) various minutes with attachments and (2) the SMCO file regarding the Non-Qualified Plan (Bates Nos. SM001738-001789).

24. While Ms. Ostensen contends that NHC has refused to produce any documents relating to periods prior to 2001 (Def's Opp. Memo at 21), NHC did not exist until January 1, 2001 through the merger of Unitas and Bergen Hull Club. Nevertheless, NHC has produced documents dating back to 1996, including (1) annual reports for itself and its predecessors which contain financial statements and detailed information about the board of directors and management from 1996 to 2004 (Bates Nos. NW 00010-00184; NW00668-00906) and (2) business plans relating to SMCO from 1996 to 2000 (NW00362-00664).

25. Contrary to Ms. Ostensen's contention that SMCO and the Related Other Companies have not responded to her demands regarding the Qualified Plan (Def's Opp. Memo at 21), SMCO and the Related Other Companies have produced documents responsive to those requests (Bates Nos. SM003031-004745).

1342678.1

26.     Contrary to Ms. Ostensen's contention that SMCO and the Related Other Companies have not responded to her demands regarding the "salary and benefits, including vacation pay and reimbursable expenses" received by Mr. Ostensen (Def's Opp. Memo at 21), SMCO and the Related Other Companies have produced documents responsive to those requests (Bates Nos. SM001195-001196, SM003028, SM003615, SM003624, SM003799-003802, SM003865, SM004011, SM004026, SM004452-004460, SM004466-004477, SM004480-004481, SM004623, SM004632-004634).

27.     Contrary to Ms. Ostensen's contention that SMCO and the Related Other Companies have not responded to her demands regarding investigations conducted on or behalf of SMCO or the Related Other Companies regarding Mr. Ostensen or the Non-Qualified Plan including the investigation by Arthur Andersen (Def's Opp. Memo at 21), SMCO and the Related Other Companies have produced documents responsive to those requests (Bates Nos. SM001197-001206).

28.     Contrary to Ms. Ostensen's contention that SMCO and the Related Other Companies have not responded to her demands regarding the Mortgage Notes, SMCO and the Related Other Companies have produced documents responsive to those requests (Bates Nos. SM001728-001729, SM002527, SM002539, SM002761, SM002699).

*/s/ Donald J. Kennedy*
Donald J. Kennedy

Subscribed and sworn to before me on this 4th day of November, 2005

Carol Antoci
Notary Public, State of New York
No. 01AN6113971
Qualified in Richmond County
Commission Expires, August 9, 2008

*/s/ Carol Antoci*
Notary Public
Commissioner of the Superior Court
My Commission Expires: 8-9-08

1342678.1

## CERTIFICATION

This is to certify that I caused a copy of the foregoing to be served on this the 4th day of November, 2005 on the following counsel of record:

**By Hand Delivery and Federal Express to:**
Jeffrey M. Eilender, Esq.
Schlom Stone & Dolan
26 Broadway, 19th Floor
New York, NY 10004

**By Federal Express to:**
Sharon E. Jaffe, Esq.
Levin & Glasser
3 Ledgebrook Court
Weston, CT 06883

_____
Mark R. Zancolli

1342678.1